**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MAXUS ENERGY CORPORATION, *et al.*, | ) |
| | ) Case No. 16-11501 (CSS) |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |
| | ) |
| MAXUS LIQUIDATING TRUST, | ) |
| | ) |
| Plaintiff, | ) Adversary Proceeding |
| | ) Case No. 18-50489 (CSS) |
| v. | ) |
| | ) |
| YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO., | ) |
| | ) |
| Defendants. | ) |

**OCCIDENTAL CHEMICAL CORPORATION'S
MOTION FOR LEAVE TO JOIN AS REAL PARTY IN INTEREST
<u>AND INTERVENE IN ADVERSARY PROCEEDING</u>**

Pursuant to Bankruptcy Rules 7017 and 7024—and to prevent the injustice that would result if YPF prevailed on its motion to dismiss with prejudice—Occidental Chemical Corporation (Occidental) seeks leave to join and intervene in this adversary proceeding, if the Court rules the Liquidating Trust lacks standing to pursue the claims that formerly belonged to Occidental.

**I. Introduction**

During the Debtors' bankruptcy proceedings, YPF argued strenuously and repeatedly that *only* the Debtors' had standing to pursue the alter ego and common law claims formerly pursued by Occidental in pre-petition litigation in New Jersey. The Court twice ruled those claims belonged to the Debtors' Estates.[1] Based on those rulings, Occidental worked in good faith with other creditors, including the United States, and the States of Wisconsin and Ohio, to structure a consensual Plan of Reorganization that not only permitted—but funded—the Liquidating Trust's pursuit of these claims for the benefit of *all* creditors. Consistent with the Court's rulings, the Plan states plainly that the Liquidating Trust owns and is the exclusive party authorized to pursue causes of action formerly belonging to the Debtors.

Despite this record, YPF has now reversed course, urging the Court to dismiss the Liquidating Trust's alter ego and common law claims *with prejudice* because Occidental is the only proper party with standing to pursue those claims. If the Court is inclined to grant YPF's motion to dismiss with prejudice on this ground, then Occidental must be permitted to intervene and join this action as a plaintiff to avoid injustice, to avoid any potential forfeiture of these valuable claims, and to put an end to YPF's claim ownership "heads we win, tails Occidental loses" game.

In support of its right to join and intervene, Occidental argues as follows:

**II.    Governing Law**

Federal Rule 17(a), made applicable by Bankruptcy Rule 7017, requires joinder of an additional plaintiff as the real party in interest and prohibits dismissal where the real party in

---

[1] *N.J. Dept. of Env't. Protection v. Occidental Chem. Corp. (In re Maxus Energy Corp.)* ("*Maxus I*"), 560 B.R. 111, 119–20 (Bankr. D. Del. 2016) ("The OCC Claims are Property of the Bankruptcy Estate" and "[t]he OCC Claims are in fact property of the estate, and as such, the proper party to bring the Claims is the Debtor, not OCC."); *N.J. Dept. of Env't. Protection v. Occidental Chem. Corp. (In re Maxus Energy Corp.)*, ("*Maxus II*"), 571 B.R. 650, 656 (Bankr. D. Del. 2017) (same).

2

interest can be joined. Rule 17's substitution and joinder provision "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Del Re v. Prudential Lines, Inc.*, 669 F.2d 93, 96 (2d Cir. 1982) (quoting Advisory Committee Notes to Rule 17); *Crowder v. Gordons Transps., Inc.*, 387 F.2d 413, 418 (8th Cir. 1967) (same). The Third Circuit has upheld the application of Rule 17 to substitute the real party in interest when it was not the original plaintiff.[2]

Federal Rule of Civil Procedure 24, governing intervention, applies in adversary proceedings. FED. R. BANKR. P. 7024. This Court has recognized that, under Rule 24(a)(1), creditors have a statutory right to intervene in adversary proceedings: "Section 1109(b) of the Code grants creditors and parties in interest the ability to raise, appear, and be heard on any issue in a Chapter 11 case. The Third Circuit has held that § 1109(b) provides an unconditional statutory right to intervene in adversary proceedings under Rule 24(a)(1)." *In re Money Ctr. of Am., Inc.*, 544 B.R. 107, 112 (Bankr. D. Del. 2016) (Sontchi, J.). A claimant like Occidental, which had sued debtors to recover environmental cleanup costs, is entitled to mandatory intervention in an adversary proceeding between debtors' successors and third-party insurance company. *Compare In re Stone & Webster*, 380 B.R. 366, 374 (Bankr. D. Del. 2008).

Rule 24(b)(1)(B) provides that a court may in its discretion permit intervention for someone who "has a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* at 24(b)(3).

---

[2] *See, e.g.*, *Marks Law Offices, LLC v. Mireskandari*, 704 F. App'x 171, 174–75 (3d Cir. 2017) (district court had not abused its discretion in allowing law firm to substitute as the real party in interest under Rule 17(a)). A court abuses its discretion when it fails to provide adequate opportunity for the real party in interest to ratify, join, or be substituted into an action when the original plaintiff is found not to be the real party in interest. *See Durabla Mfg. Co. v. Goodyear Tire & Rubber Co.*, 124 F. App'x 732, 734-35 (3d Cir. 2005) (district court abused its discretion when, after finding that an insured was not the real party in interest and that the insurers were, it did not give the insured an opportunity to offer the insurers' ratifications that would allow the insured to maintain the suit).

Permissive intervention is appropriate to allow the intervenor to protect its interests and to achieve "judicial economy and consistency." *See In re Money Ctr. of Am., Inc.*, 544 B.R. at 117.

**III.    Occidental is Entitled to Join as Party Plaintiff Because YPF's Motions to Dismiss Allege Occidental is the Real Party in Interest.**

YPF argues that the Liquidating Trust's alter ego and unjust enrichment claims must be dismissed with prejudice because, in YPF's current view, the claims asserted in the Trust's complaint belong to creditors. YPF's claim, that "a bankruptcy trustee may not rely on the claims of creditors as a basis for recovery under an alter ego theory,"[3] directly contradicts arguments on which YPF prevailed in the Debtors' bankruptcy. Then, YPF urged the Court to hold that Occidental's claims against YPF had become property of the Debtors' Estates by virtue of the Debtors' bankruptcy, arguing that:

> The claims asserted by OCC against YPF are based on, among other things, alter-ego theories. The conduct complained of by OCC, if true, would have the effect of harming all of the Debtors' creditors. Thus, under prevailing bankruptcy law, the claims asserted by OCC against YPF are property of the Debtors' estates and subject to the Debtors' exclusive control. Accordingly, the YPF Defendants believe that this Court should ultimately dismiss the YPF Claims in any adversary proceeding before this Court because, among other things, such claims belong to the Debtors' estates and OCC lacks standing to pursue such claims.[4]

---

[3] *See Maxus Liquidating Tr. v. YPF, S.A.*, Adv. Case No. 18-50489, Maxus Adv. Dkt. No. 101, YPF Defendants' Motion for Leave to Correct the Record at 4-5 (*citing U.S. Bank, Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 421 & n. 6 (5th Cir. 2014) and *Yaquinto v. Ward (In re Ward)*, 558 B.R. 771, 784 (Bankr. N.D. Tex. 2016)); *see also* Maxus Adv. Dkt. 51, YPF Defendants' Motion to Dismiss at 6, 62 (arguing that the Trust's unjust enrichment claim "improperly seeks to vindicate harms to the Debtors' creditors rather than to the Debtors" and that the "Trust Cannot Assert a Claim for Unjust Enrichment that *Belongs to the Debtors' Creditors*") (emphasis added).

[4] *See In re Maxus Energy Corp.*, Bankr. Case No. 16-11501 (Bankr. D. Del.), Maxus Bankr. Dkt. No. 91, Statement of YPF S.A., YPF Holdings, Inc., YPF International S.A., and CLH Holdings, Inc. with Respect to (1) Notice of Removal of Claims and (2) Statement of Repsol, S.A, at 3-4.

4

This was not a random aside: YPF maintained this position in multiple pleadings in which it urged the Court to rule that Debtors—not Occidental—had exclusive standing to pursue alter ego and other common law claims.[5]

In *Maxus I*, the Court ruled that, "[t]he OCC Claims are in fact property of the estate, and as such, the proper party to bring the Claims is the Debtor, not OCC." 560 B.R. at 120. On August 2, 2017, this Court denied Occidental's motion to reconsider, holding again that:

> Similar to the facts of *Emoral*,[6] . . . it is true that the OCC Claims are unique. As noted by Occidental, "the OCC Claims are a direct product of the indemnity provision in the Stock Purchase Agreement, which can only be invoked by Occidental. However, based upon the theory of alter ego liability, and given the fact that Repsol's liability for environmental cleanup costs would inure to the benefit of all creditors, the OCC Claims are properly considered "general," and therefore property of the Debtors' estates.

---

[5] *See, e.g.*, *New Jersey Dep't of Enviro. Prot. v. Occidental Chemical Corporation*, Adv. Case. No. 16-51025, NJDEP Adv. Dkt. No. 33, The YPF Entitles' Objection to Repsol's Motion to Remand, at 3-4 ("All pre-petition general claims or rights pertaining to the Passaic River Litigation, including the Repsol Claims and the YPF Claims now belong to the estate . . . a remand of the Repsol Claims would infringe on the Debtors' sole authority to pursue these claims on behalf of the Debtors' estates). As defined in the relevant pleadings, the Repsol claims were "all cross-claims asserted by Occidental against Repsol, S.A." *See also* Maxus Bankr. Dkt. No. 300, Debtors' Motion for Entry of an Order (A) Approving the Settlement Agreement by and among the Debtors, YPF S.A., YPF International S.A., YPF Holdings, Inc., CLH Holdings, Inc., and YPF Services USA Corporation, and (B) Granting Related Relief, at ¶ 6 (arguing Debtors now owned Occidental's alter ego claims); NJDEP Adv. Dkt. No. 48, Debtors' Sur-Reply to Reply of Occidental Chemical Corporation for Clarification or, in the Alternative, for Reconsideration of Court's Order Granting Repsol's Motion for Remand of Repsol Claims and Repsol Counter-Claim to New Jersey State Court, at 4 (Debtors arguing they owned Occidental's claims); NJDEP Adv. Dkt. No. 52, YPF Sur-reply to the Reply of Occidental to Debtors' Objection to the Motion of Occidental for Clarification or, in the alternative for Reconsideration of Court's Order Granting Repsol's Motion for Remand of Repsol Claims and Repsol Counter-Claim to New Jersey State Court at ¶ 9 ("Of course, Occidental sought recovery only for its alleged damages, not those of other creditors. But the alleged wrong on which Occidental's alter ego claims were based was an alleged generalized wrong to Maxus and all its creditors based on sales of Maxus' assets for allegedly less than fair value.").

[6] *In re Emoral*, 740 F.3d 875 (3d Cir. 2014). In its ruling, this Court explained that the *Emoral* decision was "fundamental to the Court's determination that the claims were property of the Debtors' estates." *Maxus II*, 571 B.R. at 656.

*Maxus II*, 571 B.R. at 660. Having prevailed on this issue in the bankruptcy, *Maxus II*, 571 B.R. at 660, YPF is judicially estopped from reversing course to seek dismissal on the theory that the Liquidating Trust's claims belong to creditors.[7]

Given this history, joining Occidental and granting it a right to intervene is necessary to prevent injustice if the Court is inclined to accept YPF's newfound argument that the Liquidating Trust's claims must be dismissed for lack of standing. In reliance on the Court's ruling that the claims belonged to the Debtors, Occidental and other creditors cooperated to create a Plan that would ensure the claims could be pursued for the benefit of all creditors. Occidental also complied with the Court's ruling individually, ceasing its pursuit of those claims on its own behalf. YPF would have the Court rule that all of this was for naught, because the Trust *cannot* pursue the claims since they allege injury to Occidental and other creditors.[8] But it cannot be true that neither the Liquidating Trust nor Occidental can pursue alter-ego claims against YPF.

If YPF is correct that the Liquidating Trust lacks standing because the alter ego and unjust enrichment claims belong to creditors,[9] then the corollary must be that Occidental retains standing to pursue them. Occidental's claims remain pending in the action it removed to this Court.[10] Occidental cannot be barred from pursuing its own claims, if the Liquidating Trust is

---

[7] Judicial estoppel is intended to prevent parties from "playing fast and loose with the courts" by asserting inconsistent positions. *Scarano v. Cent. Ry*, 203 F.2d 510, 513 (3d Cir. 1953). "A [party] who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention." *Id*.

[8] Maxus Adv. Dkt. 51, YPF Motion to Dismiss at 62-63 (unjust enrichment) and 74-75 (alter ego claim fails because it rests on injury to creditors). *See also* Maxus Adv. Dkt. 82, YPF Reply Brief at 2, 5 (arguing that the Trust was asserting "a standalone alter ego remedy based *solely* on the Debtors' creditors' claims, as opposed to an underlying substantive claim belonging to the Debtors") and Maxus Adv. Dkt. 101, YPF Motion to "Correct the Record" at 4-5 (quoting *Yaquinto*, 558 B.R. at 788-89 and arguing again that the Trust's claims should be dismissed because it had no claims other than claims that belonged to creditors and, "a bankruptcy trustee may not rely on the claims of creditors as a basis for recovery under an alter ego theory.").

[9] Maxus Adv. Dkt. No. 101, YPF Motion to Correct the Record, at 4-5 (citing *Yaquinto* to argue (now) that "a bankruptcy trustee may not rely on the claims of creditors as a basis for recovery under an alter ego theory.").

[10] *See* NJDEP Adv. Dkt.

*also* barred from pursuing the claims because Occidental owns them. As this Court explained in *Maxus II*,

> At the end of the day, it would not comport with fundamental bankruptcy policy, nor would it be rationally or legally sound, to at one moment require that the trustee bring claims that inure to the benefit of all creditors, and then at the next moment fail to provide any legal framework under which such claims would be asserted.

*Id.*

The Federal Rules prohibit dismissal of the Liquidating Trust's claims with prejudice for lack of standing.[11] Under Bankruptcy Rules 7017 and 7041, the remedy for any alleged lack of standing is an order permitting the party with standing to intervene to pursue the claims. If the alter ego claims were not property of the Debtors' Estates, then they were always Occidental's and Occidental is entitled to pursue them. Joinder of Occidental must also "relate back" to Occidental's removed action, because Occidental's adversary proceeding remains pending and asserts the claims at issue in YPF's motion to dismiss. Accordingly, if the Court is inclined to grant YPF's standing motion, then Occidental must be granted intervention and be joined as a plaintiff, to prevent injustice and ensure that the valuable alter ego and unjust enrichment claims it held are not forfeited.

---

[11] Under Federal Rule 41 (made applicable, except in portions not relevant here, by Fed. R. Bankr. Pro. 7041), a dismissal for lack of jurisdiction is not an adjudication on the merits. FED. R. CIV. P. 41(b). Standing is a jurisdictional requirement. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim. Ordinarily, such a dismissal is without prejudice." *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980). *See also H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002) ("[L]ack of standing is not an issue that goes to the merits … [and] a dismissal of a complaint for lack of standing would not normally be expected to be made with prejudice."); *In re Magnesium Corp. of Am.*, 583 B.R. 637, 655 (Bankr. S.D.N.Y. 2018) (dismissing without prejudice, for lack of standing, creditor's attempt to bring adversary proceeding objecting to claims of other creditors); *U.S. Bank, Nat'l Ass'n v. U.S. Timberlands Klamath Falls, L.L.C.*, 2004 WL 1699057 at *5 (Del. Ch. July 29, 2004) (dismissing Indenture Trustee's claims for lack of standing, without prejudice).

Allowing Occidental to intervene would not prejudice YPF; instead, it would preserve judicial resources, avoid gamesmanship, and maintain consistency with the Court's rulings.[12] The Court and the parties spent enormous time and effort to work toward a consensual Plan of Reorganization. Under the Plan, all causes of action held by the Debtors—including the YPF Causes of Action and the Repsol Causes of Action—were transferred to the Liquidating Trust, which was vested with full authority to pursue those claims.[13] Occidental and all of the other creditors acted in compliance with this Court's prior rulings concerning claim ownership, by working together to implement and confirm a Plan that would permit Occidental's former claims (and the claims of all other creditors) to be pursued for the benefit of all creditors.

The creditors and the Trustee did not act unreasonably in seeking to implement the Court's rulings through the Plan. The two cases on which YPF rests its standing argument are from outside this Circuit.[14] Neither can be reconciled with the Third Circuit's decision in *Emoral* or this Court's rulings in *In re Maxus*. It is true that those courts concluded that the alter ego claims must be dismissed based on the holding that alter ego and veil piercing are remedies under Texas law. But this Court found that Delaware law, and the law of the Third Circuit which

---

[12] The purpose of Rule 7017's substitution mechanism is to "prevent forfeiture of an action when determination of the correct party to bring the action is difficult or when an understandable mistake has been made." *Del Re*, 669 F.2d at 96 (quoting Advisory Committee Notes to Rule 17).

[13] *See* Maxus Bankr. Dkt. No. 1460-1, ¶16 (definition of "Causes of Action"); ¶ 120 (defining "Liquidating Trust Causes of Action" as "all Claims and Causes of Action of the Estates that are not otherwise settled or released on or prior to the Effective Date that will be transferred to the Liquidating Trust on the Effective Date, including any Claims and Causes of Action set forth in the Plan Supplement. For the avoidance of doubt, Liquidating Trust Causes of Action shall include the YPF Causes of Action, the Repsol Causes of Action, and the Preserved Contribution Claims."); ¶ 217 (defining "YPF Causes of Action" as "any and all Causes of Action held by the Debtors and their estates against any of the YPF Entities."); ¶ 185 (defining "Repsol Causes of Action" as "any and all Causes of Action held by the Debtors and the Estates against any of the Repsol Entities."); Article IV H. Preservation of Causes of Action ("The Liquidating Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Causes of Action…without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court….The Liquidating Trustee is deemed the representative of the Estates for the purpose of prosecuting, as applicable, the Liquidating Trust Causes of Action and any objections to Claims.").

[14] *Verizon*, 761 F.3d at 421 & n. 6 and *Yaquinto*, 558 B.R. at 784.

governs here, require a different result: namely, that the alter ego claims are "claims" that are property of the Debtors' estates. State law also controls whether veil piercing is a "claim" or "remedy."[15] Under Delaware law, this Court found that a subsidiary may assert an independent claim to pierce its own veil. *Maxus II*, 571 B.R. at 659-60. Since that ruling, another federal court has observed that while Delaware state courts have not yet addressed this question directly, numerous federal courts have done so, and "*all* have concluded that the Delaware Supreme Court would allow a subsidiary to self-pierce its corporate veil to reach its parent." *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 616 (D. Del. 2018) (emphasis added). By the time the Liquidating Trust filed its complaint, each of these courts had also ruled that alter ego liability was a *claim* belonging to the debtor that became an *estate claim* in bankruptcy:

- *New Jersey Dep't of Envt'l Protection v. Occidental Chem. Corp.* (*In re Maxus Energy Corp.*), 571 B.R. 650, 658 (Bankr. D. Del. 2017) ("[T]his Court holds that under Delaware law, a wholly-owned corporate subsidiary can, in fact, pierce its own corporate veil and hold liable a third-party non-debtor.").

- *Duke Trading & Mktg., L.L.C. v. Enron Corp.* (*In re Enron Corp.*), 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17. 2003) ("Based on the fact that Delaware law allows a subsidiary to maintain an action against a corporate parent, courts have found that a Delaware court would permit a debtor corporation to assert a claim to pierce its own corporate veil").

- *Murray v. Miner*, 876 F.Supp. 512, 516-17 (S.D.N.Y. 1995) ("One can only conclude that for purposes of applying federal bankruptcy law, Delaware courts would permit a debtor corporation to 'assert[ ] an alter ego claim to pierce its own corporate veil . . . .'") (internal citations omitted).

- *Raytheon Co. v. Boccard USA Corp.*, 369 S.W.3d 626, 633 (Tex. Ct. App. 2012) ("Federal courts have held that Delaware law allows a debtor corporation to pierce its own corporate veil, thereby giving a bankruptcy trustee or debtor-in-

---

[15] If state law recognizes that a subsidiary may hold a claim to "self-pierce" its veil, then that claim becomes an estate claim in bankruptcy. *See Duke Energy Trading & Mktg., L.L.C. v. Enron Corp. (In re Enron Corp.)*, 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003) ("Where a debtor has a right to assert an alter ego claim to pierce its own corporate veil under applicable state law, that claim is property of the debtors' estate and the claim may only be asserted by the trustee or debtor-in-possession.").

9

possession exclusive standing to assert an alter ego claim on behalf of the bankruptcy estate.").[16]

If it is now YPF's position that the creditors, the Trust, the former United States District Judge who serves as the Liquidating Trust's Trustee and the Trustee's skilled counsel were all somehow mistaken in understanding that the Court's earlier rulings afforded the Trust *exclusive* standing to pursue Occidental's claims under the Plan, then Rule 17 mandates that this mistake be corrected by joinder of Occidental. *See Del Re*, 669 F.2d at 96 (2d Cir. 1982) (explaining that intervention should be granted to avoid forfeiture of valuable claims). Intervention will in no way prejudice YPF: the court has not yet entered *any* ruling dismissing the case and the matter is in its earliest stages. Blocking Occidental's intervention, however, would serve no purpose other than to reward YPF's gamesmanship. Denying intervention and dismissing with prejudice, as YPF urges, would injure Occidental and all other creditors, all of whom worked in good faith to ensure these valuable claims could and *would* be pursued for their mutual benefit.

The injustice of rewarding YPF's gotcha argument is particularly acute when one considers the role YPF's claim ownership arguments played in the creditors' efforts to structure a Plan and a Liquidating Trust that complied with the Court's ruling in *Maxus I*[17] and the role its ruling in *Maxus II* played in the Liquidating Trust's Complaint. The creditors had other options available to them to structure the resolution of Debtors' estates to ensure these valuable claims were pursued. For example, the Debtors might also have abandoned the claims back to the creditors who owned them. In the absence of adequate litigation funding in the Plan, the creditors could also have sought an order turning them over to the creditors to pursue. The Liquidating

---

[16] *See also In re Emoral*, 740 F.3d at 880 ("[C]ourts applying New York and New Jersey law have held that state law causes of action for successor liability, *just as for alter ego and veil-piercing causes of action*, are properly characterized as property of the bankruptcy estate") (emphasis added); *In re Alper Holdings USA*, 2008 WL 541154, at *5 (Bankr. S.D.N.Y. Feb. 25, 2008) ("Under Delaware law, an alter ego cause of action constitutes *a corporate right*.") (emphasis added).

[17] The Plan was confirmed before the Court issued its ruling in *Maxus II*.

Trust could also have joined all of the creditors in the Trust's Complaint, had it known YPF intended to contest the Trust's exclusive standing to pursue the alter ego and common law claims formerly owned by the creditors. There were any number of other alternatives the creditors might have pursued, had YPF chosen to be candid with the creditors and the Court regarding its intention to claim that the Liquidating Trust would lack standing to pursue the very claims YPF asserted the Debtors owned.

In sum, if the Court is inclined to accept YPF's new position that the Liquidating Trust *lacks* standing to pursue the alter ego and common law claims against YPF in Count I (Veil Piercing/Alter Ego Liability), Count XXII (Unjust Enrichment), and Count XXIII (Civil Conspiracy) of the Trust's Complaint, then it should grant Occidental intervention and mandate that it be joined as a party plaintiff, to ensure that these valuable claims are not rendered forfeit by YPF's sleight of hand.

**V.    Conclusion**

The purpose of a Bankruptcy proceeding is to resolve creditors' claims against debtors equitably, not to relieve solvent third parties like YPF of obligations *they* owe to creditors. Pre-petition, Occidental owned and was pursuing claims for breach of contract, alter ego, breach of fiduciary duty, and unjust enrichment against YPF, Repsol, Maxus, and Tierra. Those claims sought hundreds of millions of dollars in damages, and YPF lost a motion seeking summary judgment against them. Post-petition, those valuable claims landed somewhere. If—despite the provisions of the Plan and the Court's prior rulings—YPF now proves that Occidental's alter ego claims did *not* go to the Liquidating Trust, then they remained with Occidental and Occidental must be permitted to pursue them.

11

Accordingly, for the reasons stated above, if the Court rules the Liquidating Trust lacks standing to pursue the claims that formerly belonged to Occidental, then Occidental should be granted leave to join as a party plaintiff, with its joinder deemed to relate back to the date of the removal of its claims to this Court, so there will be no gap in prosecution of the claims and no risk that the claims against YPF will be forfeited.

Dated: February 13, 2019
       Wilmington, Delaware

By   */s/ Russell C. Silberglied*
RICHARDS, LAYTON & FINGER, P.A.
Russell C. Silberglied (No. 3462)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
silberglied@rlf.com
schlauch@rlf.com

- and -

GIBBS & BRUNS LLP
Kathy D. Patrick (admitted *pro hac vice*)
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903
kpatrick@gibbsbruns.com

*Counsel for Occidental Chemical Corporation*

12