# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

**CHRISTOPHER S. SONTCHI**
**CHIEF JUDGE**



**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-2888**

February 15, 2019

Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 North Market Street
Wilmington, DE 19801
    -and-
J. Christopher Shore
Thomas MacWright
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020

Adam G. Landis
Matthew B. McGuire
Landis Rath & Cobb LLP
919 Market Street
Wilmington, DE 19801
    -and-
James F. Conlan
Jessica C. Knowles Boelter
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
    -and-
James G. Hutchinson
John J. Kuster
Martin B. Jackson
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

Robert J. Dehney
Curtis S. Miller
Daniel B. Butz
Morris, Nichols, Arsht & Tunnel LLP
1201 North Market Street
Wilmington, DE 19899-1347
    -and-
Edward Soto
Weil, Gotshal & Manges LLP
1395 Brickell Avenue
Miami, FL 33131
    -and-
Robert Lemons
767 Fifth Avenue
New York, NY 101539

RE: Maxus Energy Corporation, Case No.: 16-11501 (CSS)
<u>Maxus Liquidating Trust v. YPF S.A., *et al.*, Case No.: 18-50489 (CSS)</u>

Dear Counsel:

The Maxus Liquidating Trust (the "Trust"), which is the successor in interest to Maxus Energy Corporation ("Maxus" or the "Debtor"), filed a 23 count complaint against YPF S.A. and numerous of its affiliates ("YPF") and Repsol, S.A. and numerous of its affiliates ("Repsol"). YPF and Repsol both filed motions to dismiss. The Court held oral argument on January 22, 2019. This is the Court's decision on the motions to dismiss.[1]

There are wrongs. But not every wrong is actionable, and not every cause of action is remediable. If the facts in the complaint are true, then YPF and Repsol committed a series of obvious and serious wrongs. After YPF bought equity interests in Maxus without performing adequate diligence it discovered it owned a company with valuable assets and huge environmental liabilities. YPF embarked on a scheme, in which Repsol joined for some time, to strip Maxus of its assets through fraudulent conveyances, to keep the company on life support until the statute of limitations passed and to institute a bankruptcy to discharge the environmental liabilities leaving the burden on third parties and the American taxpayer to remediate the pollution caused by Maxus.

But, are these wrongs actionable? The Complaint contains 23 counts, 20 of which are claims for the avoidance of fraudulent conveyances under theories of both actual and constructive fraud. Applying Rule 7008 of the Federal Rules of Bankruptcy Procedure, the constructive fraudulent claims are sufficient to survive a motion to dismiss. *Beskrone v. OpenGate Capital Grp.*, 587 B.R. 445, 455-56 (Bankr. D. Del. 2018) (applying Rule 7008 to constructive fraudulent transfer claim). Moreover, under a liberal interpretation of Rule 7009(b) of the Federal Rules of Bankruptcy Procedure, the actual fraudulent claims are sufficient to survive a motion to dismiss. *Forman v. Kelly Capital, LLC*, No. 12-12057 (MFW), 2015 Bankr. LEXIS 2029, at *9 (Bankr. D. Del. June 18, 2015) (applying Rule 7009(b) to actual fraudulent transfer claim). *See also Official Comm. Of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P.*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) ("The requirements of Rule 9(b) are relaxed and interpreted liberally where a . . . trust formed for the benefit of creditors, as here, is asserting the fraudulent transfer claims.").[2] The argument that more pleading is required to put the defendants on fair notice of the fraudulent claims against them is without merit.

---

[1] Repsol also filed a motion for abstention. The court will issue a decision on that motion separately.

[2] The Court is not convinced that actual fraudulent transfer claims should be reviewed under Rule 7009(b) as opposed to Rule 7008. However, as the actual fraudulent transfer claims here clearly meet the Rule

The remaining counts are for alter ego liability, unjust enrichment and civil conspiracy. The Court is satisfied that these claims must survive the motions to dismiss.

As to alter ego liability, the Court disagrees that piercing the corporate veil or asserting a claim for alter ego is only a remedy and not an independent cause of action. When coupled with allegations of another wrong, such as a breach of fiduciary duty or a fraudulent conveyance, alter ego can constitute an independent claim. *In re Maxus Energy Corp.*, 571 B.R. 650, 660 (Bankr. D. Del. 2017) ("a trustee possesses standing to bring—and by logical extension, settle and release—an alter ego claim on behalf of a creditor of the debtor, as long as the claim qualifies as a 'general' claim.") (quoting *In re Alper Holdings USA, Inc.*, 398 B.R. 736, 759 (S.D.N.Y. 2008)). *See also Harrison v. Soroof Int'l, Inc.*, 320 F.Supp. 602, 613 (D. Del. 2018); and *Duke Energy Trading & Mktg., L.L.C. v. Enron Corp.*, 2003 WL 1889040 at *3 (Bankr. SDNY Apr. 17, 2003). Moreover, under the Third Circuit's decision in *In re Emoral*, 740 F.3d 875 (3d Cir. 2014) and this Court's ruling in *Maxus*, 571 B.R. at 660, which is the law of the case, the alter ego claims of the Debtor's creditors are property of the estate and may only be pursued by the Trust. Having required Maxus's creditors to defer to the Debtor it would be inequitable for the Court to expunge those claims by not allowing the Trust, which is the successor in interest to the Debtor, to pursue the claims. In other words, as the Court quipped at oral argument, it would be inequitable to have a collective proceeding and not to allow the creditors to proceed collectively.

The main argument against the unjust enrichment claim is an affirmative defense, which is addressed below. The only prima facie argument is that the Trust lacks standing to pursue an unjust enrichment claim because it is a creditor claim. For the reasons discussed above, to the extent the unjust enrichment claim is a creditor claim it is a generalized claim under *Emoral* and, thus, can be brought by the Trust. Moreover, the Trust is indeed acting on behalf of creditors and it would be inequitable not to allow the claim to be brought.

As with the claim of unjust enrichment, the defendants' main argument for dismissal is an affirmative defense, which is addressed below. The remaining argument is that the civil conspiracy claim must be dismissed because there is no claim for civil conspiracy based on fraudulent conveyances. While it may or may not be true that one cannot civilly conspire to perpetrate a fraudulent conveyance, the defendants' argument is based on a misreading of the complaint.[3] The allegations supporting the civil conspiracy claim go well beyond the alleged fraudulent conveyances and constitute a valid prima facie claim.

---

7009(b) standard the Court will not opine on whether Rule 7008 would indeed be the correct standard to apply.

[3] The Court offers no opinion as to whether a claim for civil conspiracy to perpetuate a fraudulent conveyance is a valid cause of action.

That brings us to our final question, whether the alleged wrongs that give rise to legal claims are remediable? In this case, that means whether some or all of the claims are barred by res judicata, collateral estoppel, statutes of limitation, laches or New Jersey's entire controversy doctrine. As set forth below, the answer is no – the claims are not barred.

In order to address the preclusion arguments, a brief recitation of the New Jersey litigation, which is the initial proceeding for purposes of analyzing preclusion, is required. In December 2005, the State of New Jersey (the "State") filed a civil action against Maxus, Tierra Solutions, Inc. ('Tierra"), CLH Holdings, YPF, YPF Holdings, Repsol, and Occidental Chemical Corporation ("OCC") (the "Defendants") alleging they were liable for environmental damage and pollution of the Passaic River in New Jersey (the "New Jersey Action"). Specifically, the State alleged that the pollution stemmed from 80 Lister Avenue in Newark, New Jersey (the "Lister Site"), a former site of Maxus, which is expressly covered as part of Maxus's defense and indemnity obligation to OCC in the Stock Purchase Agreement (wherein Maxus sold its chemicals business to OCC)—and that the Defendants were responsible for environmental remediation of the Passaic River arising out of the Lister Site.

In November 2006, the State amended its complaint to include "alter ego allegations that YPF and Repsol, the corporate parents of Maxus from 1995 to 1999 (YPF), 1999 to 2012 (YPF and Repsol), and 2012 to the present (YPF), had improperly dominated Maxus and stripped it of its assets."

In June 2007, OCC filed cross-claims against Tierra, Maxus, Maxus International Energy Company, YPF, YPF Holdings, YPF International, and Repsol, asserting 12 causes of action relating to contractual indemnity claims predicated on an alter ego theory of liability, among others. Additionally, Maxus impleaded over 250 third parties, arguing that the parties shared liability for the Passaic River pollution. On October 18, 2010, OCC filed its First Amended Cross–Claims adding YPF International as a cross-claim defendant and asserting claims against the YPF Defendants for alter ego liability.

In August 2011, an order was entered by the New Jersey Court against Maxus affirming its contractual indemnification obligations, providing in part, that "Maxus Energy Corporation is required to indemnify Occidental Chemical Corporation for any costs, losses and liabilities that may be incurred by Occidental Chemical Corporation in the above-captioned action as a result of Occidental Chemical Corporation's acquisition of Diamond Shamrock Chemicals Company."

The following year, in May 2012, the New Jersey Court held that "Maxus was the alter ego of Tierra, and that both entities were strictly, jointly, and severally liable under the Spill Act for any 'cleanup and removal costs' later shown to be associated with the Lister Site discharges, based solely on Tierra having acquired title to the Lister Site in

1986." The New Jersey Court then proceeded to refer the New Jersey Action to a Special Master.

On September 26, 2012, OCC filed its Second Amended Cross-Claims Complaint, adding claims for civil conspiracy and aiding and abetting against all Cross-Claim Defendants, as well as breach of fiduciary duty and aiding and abetting breach of fiduciary duty against the YPF Defendants and Repsol (the "Second Amended Cross–Claims").

After a series of settlements were approved by the New Jersey Court, the only remaining claims in the New Jersey Action were that of OCC's Second Amended Cross–Claims against the Cross–Claim Defendants, and Repsol's Counter–Claims against OCC. Repsol's Counter–Claims, asserted against OCC in February 2015, sought to recover from OCC the $65 million paid by Repsol pursuant to a New Jersey Court approved settlement. In response, and based upon previous holdings of the New Jersey Court, OCC then submitted an indemnity claim to Maxus for any amount for which OCC may be held liable to Repsol, in addition to the $190 million that OCC paid pursuant to a consent judgment.

The YPF corporate group entities, the Maxus corporate group entities, and the Repsol corporate group entities separately moved to dismiss OCC's claims against them. The New Jersey Court granted the YPF Defendants' and Repsol Defendants' motions to dismiss all of OCC's cross-claims for fraudulent transfer, unjust enrichment and civil conspiracy on the ground that the claims are time barred under New Jersey's codification of the Uniform Fraudulent Transfer Act ("NJUFTA"). The New Jersey Court's orders dismissed OCC's fraudulent transfer claims, its unjust enrichment and civil conspiracy claims, and its claim for a declaratory judgment regarding its alter ego liability remedy to the extent that any alter ego liability was predicated on the dismissed causes of action. *N.J. Dep't of Envtl. Prot v. Occidental Chem. Corp.*, ESX-L-9868-05 (PASR), 2015 N.J. Super. LEXIS 230, at *24-25 (N.J. Super. Ct. Law Div. Essex Co. Jan 13, 2015) ("[T]o the extent each of the [] claims are barred, so is alter-ego liability based on them."). As the New Jersey Court explained, "[a]lter-ego liability is not a separate cause of action; it is a remedy." *Id.* at *25. As such, a plaintiff invoking the doctrine must "first establish an independent basis to hold the corporation liable," and without such an "independent basis" for liability, there is no ground for imposing alter ego liability. *Id.* at *25 (citation omitted).

The YPF Defendants and the Repsol Defendants later moved for summary judgment as to the remaining cross claims, all of which were asserted on alter ego liability theories: (i) breach of the SPA (both YPF and Repsol Defendants), (ii) contractual indemnification (both YPF and Repsol Defendants), (iii) contribution liability under the Spill Act (YPF Defendants only), and (iv) environmental contribution liability under other New Jersey statutes (YPF Defendants only). The New Jersey Court granted the

Repsol Defendants' motion for summary judgment. (Compl. n. 192.) The New Jersey Court, however, denied the YPF Defendants' motion, and a bench trial was scheduled to start on June 18, 2016.

Maxus filed for bankruptcy prior to the trial on the remaining issues.

YPF and Repsol argue that the Trust is precluded under res judicata and collateral estoppel from pursuing the claims in the New Jersey Action that were decided adversely to OCC. More specifically, they seek to preclude the Trust from pursuing the claims asserted in the Complaint because the New Jersey Court dismissed OCC's identical claims as time barred under NJUFTA.[4] In addition, Repsol seeks to dismiss the alter ego claims because the New Jersey Court entered summary judgment against OCC on an identical claim.

Under New Jersey law, which is controlling, in order for the Trust to be precluded from bringing the actions asserted in the Complaint the Trust must be identical to or in privity to a party in the New Jersey Action. *Bondi v. Citigrp., Inc.*, 32 A.3d 1158, 1185 (N.J. Super. Ct. App. Div. 2011) (Claim preclusion requires "the parties in the later action [to] be identical to or in privity with those in the prior action.").

The Trust and OCC are not the same party, and they are certainly not "identical." Nor is the Trust in privity with any party to the New Jersey Action. Under New Jersey law, "[t]he concept of privity, as well as its parameters, are necessarily imprecise: 'privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.'" *Zirger v. Gen. Acc. Ins. Co.*, 144 N.J. 327, 338 (N.J. 1996) (quoting *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir. 1950) (Goodrich, J., concurring)). "A relationship is usually considered 'close enough' only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." *Id.* (internal quotation marks omitted). New Jersey courts have described the scope of privity as "small." *Collins v. E.I. Dupont de Nemours & Co.*, 34 F.3d 172, 176 (3d Cir. 1994) (applying New Jersey law). "[A] commonality of interest in seeking recovery" from the same party is not sufficient to find privity. *O'Brien v. Telcordia Techs., Inc.*, 420 N.J. Super. 256, 269 (N.J. Super. Ct. App. Div. 2011). Whether viewed as res judicata, collateral estoppel or law of the case, all preclusion doctrines require that the party to be precluded was a party, or in privity with a party, to the first action. *See Wadeer*, 220 N.J. at 604 (entire controversy doctrine); see also *Cafferata v. Peyser,* 251 N.J. Super. 256, 261 (App. Div. 1991) (entire controversy doctrine); *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (res judicata) ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims

---

[4] The Trust contests whether the claims are identical. As it is not germane to the Court's decision, the Court will assume, arguendo, the claims are identical.

and issues settled in that suit"); Restatement (Second) of Judgments § 34 cmt. a (noting that rationale for res judicata is that parties had an opportunity to litigate claims in the first action).

Defendants' preclusion case is based on their contention that OCC is effectively the Trust's privy. This is incorrect for several reasons. First, YPF's argument that OCC controls the Trust is not supported by the facts before the Court. The Liquidating Trust Agreement appoints Mr. Joseph Farnan, Jr. as an Independent Liquidating Trustee and affords him the authority "to perform any and acts necessary and desirable to accomplish the purposes of this Liquidating Trust Agreement." Plan, Ex. A, § 3.02(a). While the Liquidating Trust Oversight Committee possesses authority to make decisions about whether to prosecute or settle any Causes of Action, the Oversight Committee is required to do so "in good faith and in the best interests of the Liquidating Trust," not in the interests of OCC alone. *Id.* at § 4.09. As it pertains specifically to the litigation of the Trust's claims against Defendants, OCC itself is situated no differently than are other creditors: if a potential settlement does not include a contribution release by Defendants of claims against "the Gibbons Group, the current and former members of the CPG [the Cooperating Parties Group], the United States, [OCC], and the states of Alabama, Ohio, New Jersey, and Wisconsin," (id. at § 4.09(a)(i)), then the votes of OCC's representatives on the Trust's board are not sufficient to approve it. Id. at § 4.09(a)(ii).

Second, the Trust is simply not "close enough" to OCC for OCC's prosecution of claims in the New Jersey Action to have a preclusive effect on the claims brought by the Trust. The distinction between claims that once belonged to creditors and those that later became property of a debtor's estate is an important one. Indeed, it is well settled that a bankruptcy trustee is not in privity with any particular prepetition creditor for purposes of preclusion analyses. For example, in *Williams v. Marlar* (*In re Marlar*), 267 F.3d 749, 753 (8th Cir. 2001), one creditor filed an unsuccessful pre-bankruptcy suit to set aside a transfer of real property. The bankruptcy trustee for the debtor's estate later filed an adversary proceeding to set aside the same transfer under section 544, invoking the rights of two different creditors. *See id.* at 752-53. The court noted that claim preclusion clearly barred the first creditor from relitigating the transfer, but held that the trustee was not in privity with the first creditor for purposes of claim preclusion because he "represents all unsecured creditors of the bankruptcy estate." *Id.* at 754. The court also rejected the argument that the other creditors on whose behalf the trustee sued were themselves in privity with the first creditor. *Id.*; *see also Slone v. Anderson* (*In re Anderson*), 511 B.R. 481, 506-07 (Bank. S.D. Ohio 2013) (holding that bankruptcy trustee not in privity with secured creditors who brought foreclosure action because they did not have identity of interest with all creditors and were representing only their individual interests in the prior suit), aff'd, 510 B.R. 113 (B.A.P. 6th Cir. 2014); *Alexander v. Clark* (*In re Clark*), Adv. Pro. No. 07-3026-DHW, 2008 WL 5044558, at *5-6 (Bankr. M.D. Ala. Oct. 2, 2008) (holding that a bankruptcy trustee was not in privity with a creditor in a prior unsuccessful fraudulent-conveyance action because "[a] trustee represents all creditors—not just one"); *Rieser v.*

*Dinsmore & Shohl, LLP* (*In re Troutman Enters., Inc.*), 356 B.R. 786 (table), 2007 WL 205640, at *7 n.8 (B.A.P. 6th Cir. Jan. 26, 2007) (holding that bankruptcy trustee's adversary proceeding not precluded by order entered in prior bankruptcy case because "a bankruptcy trustee is not merely a successor in interest to particular creditors of the estate"); *Hudgins v. Davidson,* 127 B.R. 6, 8 (E.D. Va. 1991) (same); *In re Shuman*, BAP No. NV 87- 1037-ASEME 78 B.R. 254, 256, 1987 Bankr. LEXIS 891 at *5 (B.A.P. 9th Cir. Sept. 30, 1987) ("The trustee is not the 'virtual representative' of one judgment creditor or the debtor.").

Third, the Trust can not be considered "close enough" to the prepetition entity, Maxus, that it can be precluded based on claims that Maxus did not assert in the New Jersey *See also Maxfield v. Quarles & Brady LLP* (*In re Jennings*), 378 B.R. 687, 694 (Bankr. M.D. Fla. 2006) (same); *In re Troutman Enters.,* 2007 Bankr. LEXIS 147, at *23 n.8 (same); *Nationstar Mortg., LLC v. Palsgrove,* No. 13-CV009521, 2014 Ohio Misc. LEXIS 10249, *26-29 (Ct. Com. Pl. Sept. 3, 2014) (same); *Russell v. Jones* (*In re Pro Page Partners, LLC*), 292 B.R. 622, 634 (Bankr. E.D. Tenn. 2003) (same); *Cardiello v. Arbogast* (*In re Arbogast*), 466 B.R. 287, 304-305 (Bankr. W.D. Pa. 2012) (same). The Third Circuit has made clear that a bankruptcy trustee "is not simply the successor in interest to the [d]ebtor: he represents the interests of all creditors of the [d]ebtor's bankruptcy estate." *In re Montgomery Ward, LLC,* 634 F.3d 732, 738 (3d Cir. 2011). "Because the trustee also represents the general creditors' interests, the legal relationship between the trustee and the pre-bankruptcy debtor is incomplete, particularly when the interests of the creditors diverge from those of the debtor." *Id.; see also In re Good Time Charley's, Inc.,* 54 B.R. 157, 160 (Bankr. D.N.J. 1984) (finding that bankruptcy trustee was not a privy to the prepetition debtor for res judicata, collateral estoppel, or entire controversy doctrine since the trustee "is seeking to protect the rights of creditors who did not have the opportunity to challenge the mortgage in the state court proceeding"); *In re Tzanides,* 574 B.R. at 522 (finding that bankruptcy trustee was not a privy to the debtor for res judicata because the "[t]rustees' interest in asserting this claim for the benefit of creditors is directly opposite to the Debtor's interest in shielding property from his creditors"); *In re Montgomery Ward*, 634 F.3d at 738 (recognizing that a bankruptcy trustee "is not simply the successor in interest to the [d]ebtor: he represents the interests of all creditors of the [d]ebtor's bankruptcy estate"). Here, Maxus not only had no independence to assert claims against its shareholders, it had no actionable pre-petition fraudulent conveyance claims. Thus, the Trust was neither a party to or in privity with a party to the New Jersey Litigation.[5] As

---

[5] After its establishment, the Trust intervened in the New Jersey Litigation as successor in interest to Maxus. The Defendants argue that the Trust's intervention as a party makes the Trust a party for preclusive purposes even though the decisions upon which preclusion is based occurred prior to the intervention. That is incorrect as a matter of law and would be inequitable as well. The intervention does not "relate back" to the prior decisions for preclusion purposes. The operative date is that of the intervention. *See Evanston Insurance Company v. Dan Ryan Builders, Inc.*, 2017 WL 262620 at *4 (D. Md. Jan. 20, 2017); and *Braxton v. Virginia Folding Box Co.*, 72 FRD 124 (ED Va. 1976). Moreover, it would be inequitable to preclude

such, the Court cannot give preclusive effect to the New Jersey Court's rulings in this action.[6]

The defendants also seek to bar the Trust's alter ego claims under New Jersey's Entire Controversy Doctrine. "The claim preclusion aspect of the entire controversy doctrine is essentially res judicata by another name." *See McNeil v. Legislative Apportionment Comm'n,* 177 N.J. 364, 395 (2003) (quoting *Long v. Lewis,* 318 N.J. Super. 449, 459 (App. Div. 1999)). Consistent with other claim preclusion doctrines, New Jersey courts have declined to apply the entire controversy doctrine to parties that were not a "privy" to a prior litigant. *See N.M. v. J.G.,* 255 N.J. Super. 423, 429 (App. Div. 1992) (rejecting application of entire-controversy doctrine for lack of privity between nonparty to be precluded and party to first action). For the reasons discussed above, there is no privity here and this argument fails.

This leads to the final affirmative defense – statute of limitations. The defendants argue, quite correctly, that the bulk, if not all, of the alleged fraudulent conveyances that form the basis of the Complaint occurred outside the operable statute of limitations. The Trust asserts, however, that strict application of the statutes of limitations under the facts alleged here "would permit a shrewd and unscrupulous enterprise to divest itself of 'substantially all of its assets'. . . continue to satisfy environmental liabilities from the cash flow of the combined entity until the statute of limitations period had run and the divestiture was ready for completion, and then split the good assets from the bad. If the architects of such a scheme could claim that the statute of limitations had already run by virtue of the first step in the scheme, they would have free reign to hinder and delay creditors so long as they could do it in two steps several years apart." *Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239, 271 (Bankr. S.D.N.Y. 2013) ("*Tronox II*"). The Trust urges the Court to reject defendants' argument that the transactions were foreclosed as of June 17, 2012 by the statute of limitations, and examine the fraudulent transfers "for their substance, not their form," and hold that "[w]here a transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implications." *Id.* at 268 (*citing Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993).) Here, the Complaint alleges that YPF (and, later, Repsol) carried out a "single integrated scheme" to siphon the valuable and profitable assets from the Debtors in order to leave the environmental liabilities stranded in empty corporate shells. As described in the Complaint, YPF became aware shortly after its acquisition of Maxus that Maxus was exposed to potentially massive environmental liabilities, and YPF enlisted its advisors and experts to form a plan to segregate good assets from the bad liabilities. Compl. at ¶¶ 73-74. YPF followed that plan as the first step in the "Strategy." Repsol, enlisting its own advisors and experts,

---

the Trust from pursuing these claims against YPF and Repsol based on decisions that were adverse to the interest of Maxus's creditors when Maxus was dominated and controlled by YPF and Repsol.

[6] As this element of the preclusion test is not met the Court need not and does not address the remaining elements.

picked up and even embellished the Strategy after it acquired YPF. *Id.* at ¶ 131. Following the expropriation of Repsol's interest in YPF, YPF ultimately forced the Debtors into this Court with the YPF Settlement in hand that they hoped would close the curtain on the whole drama. *Id.* at ¶¶ 205-206. Thus, the Trust asserts that the very strategy that the *Tronox II* court rejected has happened in this case, and, as such, the statute of limitations does not bar the Trust's claims. The Court agrees. While it remains to be seen whether the Trust can prove its allegations, the facts alleged in the Complaint support a plausible theory that would expand the statute of limitations under *Tronox II*.

Thus, for the reasons set forth herein the Court will deny the motions to dismiss. An order will be entered.[7]

_____
Christopher S. Sontchi
Chief United States Bankruptcy Judge

---

[7] The Court is cognizant that this letter is relatively short. Indeed, it pales in comparison to the 408 pages of briefing submitted by the parties and over 6 hours of oral argument. Nonetheless, the Court believes the issues are clear and, at this stage of the proceedings, i.e., on motions to dismiss, they do not require further elaboration. The Court has not specifically addressed every argument submitted by the defendants but has limited itself to those it believes are material. Arguments in favor of the motions to dismiss that are not specifically referenced in this letter are rejected by the Court.