IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Bankr. Case No. 16-11501-CSS |
| MAXUS ENERGY CORPORATION, *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| | : | |
| MAXUS LIQUIDATING TRUST, | : | Adv. Proc. No. 18-50489-CSS |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| YPF S.A., YPF INTERNATIONAL S.A., YPF | : | |
| HOLDINGS, INC., CLH HOLDINGS, INC., | : | Misc. No. 19-63-RGA |
| REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., | : | |
| REPSOL USA HOLDINGS CORP., REPSOL | : | |
| E&P USA, INC., REPSOL OFFSHORE E&P | : | |
| USA, INC., REPSOL E&P T&T LIMITED, and | : | |
| REPSOL SERVICES CO., | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM**

Brian E. Farnan, Esq., Michael J. Farnan, Esq., Farnan LLP, Wilmington, DE, attorneys for plaintiff Maxus Liquidating Trust.

Robert J. Dehney, Esq., Curtis S. Miller, Esq., Daniel B. Butz, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Edward Soto, Esq., Weil, Gotshal & Manges LLP, Miami, FL; and Robert Lemons, Esq., Weil Gotshal & Manges LLP, New York, NY, attorneys for Repsol.

December 19, 2019

Pending before the Court is the Motion for Leave to file interlocutory appeal from a

Bankruptcy Court decision, *Maxus Liquidating Trust v. YPF S.A., et al. (In re Maxus Energy*

*Corp.)*, 597 B.R. 235 (Bankr. D. Del. 2019)[1] ("Opinion") and accompanying Order (Adv. D.I.

112) ("Order"), which denied Repsol's Motion for Abstention (Adv. D.I. 32, 36) in the above-

captioned adversary proceeding. On February 25, 2019, the Bankruptcy Court entered the Order.

On March 11, 2019, Repsol filed its Motion for Leave to file interlocutory appeal from the

Order. (D.I. 1). On March 15, 2019, the Bankruptcy Court issued the amended Opinion. On

March 29, 2019, and with consent of plaintiff Maxus Liquidating Trust (the "Trust"), Repsol

filed a Supplement to their Motion for Leave. (D.I. 6). The Trust has filed its opposition, and

the Motion for Leave is fully briefed. (D.I. 7, 8). The Court did not hear oral argument because

the facts and legal arguments are adequately presented in the briefs and record, and the

decisional process would not be significantly aided by oral argument. For the reasons set forth

below, the Court will deny the Motion for Leave.

## I.   BACKGROUND

The Motion for Abstention is directed at the Trust's complaint (Adv. D.I. 1) concerning

environmental liabilities of the bankrupt energy firm Maxus Energy Corporation ("Maxus" or

"Debtor"). The background facts are set forth in the Opinion and only briefly summarized

herein. *Maxus*, 597 B.R. at 239-43.

### A.   Pre-Petition Litigation

In the mid-1980s, Debtors sold their chemicals business to Occidental Chemical

Corporation through a stock sale. The business was sold amidst health concerns about Debtors'

_____

[1] The docket in *Maxus Liquidating Trust v. YPF S.A., et al.,* Adv. No. 18-50489-CSS (Bankr. D. Del.), is cited herein as "Adv. D.I. __." The Chapter 11 docket, *In re Maxus Energy Corp., et al.,* No. 16-11501-CSS (Bankr. D. Del.), is cited herein as "B.D.I. __."

plant in northern New Jersey. Just a few years earlier, the EPA declared that plant – and three other related locations – a superfund site and placed the site on its National Priorities List. Dioxin, a byproduct of the Agent Orange the plant manufactured, had been contaminating the area. Occidental sought indemnification through the stock sale. The clean-up effort was ongoing when, in 2005, the State of New Jersey sued Maxus, its parents, and Occidental in New Jersey Superior Court ("New Jersey Court") for their role in polluting the site ("New Jersey Action"). Occidental cross-claimed against Maxus for indemnification under the stock sale. Occidental also alleged that Maxus, its affiliate Tierra Solutions, Inc., YPF S.A. (parent of Maxus) and Repsol S.A. (grandparent of Maxus) were alter egos of each other. Maxus asserted various causes of action based on: (1) alter ego (declaratory relief), (2) breach of contract and contractual indemnification, (3) fraudulent transfers, (4) unjust enrichment, (5) tortious interference with contract, (6) civil conspiracy, (7) statutory contribution for environmental liabilities, and (8) fiduciary duty-based claims (collectively, the "New Jersey Claims"). Maxus, arguing that it was being scapegoated, impleaded hundreds of entities for polluting the site and contributing to its degradation. After nearly ten years, New Jersey settled with the parties, and Occidental agreed to pay $190 million. Other litigation continued.

**B.    Chapter 11 Cases and Abstention from Occidental's Claims**

On June 17, 2016, Maxus filed for bankruptcy, with Occidental as its largest creditor. The New Jersey Claims were removed to the United States Bankruptcy Court for the District of New Jersey and transferred to the Delaware Bankruptcy Court. Repsol moved the Bankruptcy Court to abstain from hearing the New Jersey Claims and remand those proceedings to the New Jersey Court. The Bankruptcy Court granted Repsol's abstention and remand motion under both mandatory and permissive abstention. *In re Maxus Energy Corp.*, 560 B.R. 111, 121 (Bankr. D. Del. 2016). For mandatory abstention to apply under 28 U.S.C. § 1334(c)(2), six separate factors

3

must be met, including that the matter is non-core, such that it is related to a bankruptcy proceeding but neither arises under title 11 nor in a case under title 11. With respect this factor, the Bankruptcy Court determined that the alter ego-based claims were non-core, as they "do not invoke a substantive right provided by title 11, nor are they part of a proceeding – even when analyzed separately from the NJ Environmental Claims – that could only arise in the context of a bankruptcy case." *Maxus*, 560 B.R. at 122. Occidental moved for clarification as to whether it or the Debtors owned the alter ego-based claims. The Bankruptcy Court found that "[a]s a matter of controlling law, the claims are property of debtors' estates." *In re Maxus Energy Corp.*, 571 B.R. 650, 658 (Bankr. D. Del. 2017) ("Clarification Opinion").

On May 22, 2017, the Bankruptcy Court confirmed Maxus' Chapter 11 Plan, which created the Trust and vested it with the authority to pursue the Debtors' causes of action. (B.D.I. 1231). On November 1, 2017, the Trust moved to intervene in the New Jersey Action as of right. On November 17, 2017, the New Jersey Court granted the motion, ordering that the Trust "shall be treated as a party in this matter for all purposes." From then on, the Trust would bear the burden of litigation and of distributing to creditors any recovery, which would have otherwise inured to Occidental alone. Immediately thereafter, on November 22, 2017, the New Jersey Court entered final judgment on all of the New Jersey Claims in favor of Repsol, dismissing OCC's claims, including those for unjust enrichment, alter ego, fraudulent transfer, and civil conspiracy. On January 8, 2018, the Trust appealed the final judgment, and the appeal is pending. That appeal has divested the trial court of jurisdiction over the matter. Thus, the Trust is blocked from litigating in the New Jersey Court unless the appellate court remands and revives jurisdiction.

### C. Complaint and Motion for Abstention

On June 14, 2018, the Trust filed the Complaint, which asserts twenty-three counts based on the same transactions, occurrences, and allegations that Occidental had asserted and lost in the

4

New Jersey Action. The claims are against Repsol as well as YPF. As Occidental had

previously asserted, the crux of the Trust's Complaint is that, for twenty years, Maxus' parents

acted together to rob Maxus of its assets and leave third parties and taxpayers on the hook for its

environmental liabilities. The Trust asserts fraudulent transfer claims ("544 Claims") under the

Uniform Fraudulent Transfer Act of several states and under §§ 544 and 550 of the Bankruptcy

Code. The Trust further asserts claims of unjust enrichment, alter ego, and civil conspiracy

("Non-544 Claims") only under state law.

On September 10, 2018, Repsol filed the Motion for Abstention, arguing that the Non-

544 Claims were subject to mandatory abstention under 28 U.S.C. § 1334(c)(2),[2] while all counts

were subject to permissive abstention. Additionally, the Motion for Abstention argued the

Bankruptcy Court must abstain due to its lack of jurisdiction under the *Rooker-Feldman* doctrine.

Repsol argued that the Bankruptcy Court should not hear the Complaint because the Trust is

using it to get around or disturb the New Jersey Court's judgment.

Following briefing and oral argument (Adv. D.I. 100), the Bankruptcy Court denied the

Motion for Abstention in its entirety. With respect to mandatory abstention, the Bankruptcy

Court determined that it was not applicable because the Non-544 Claims were core and because

the required state court action had not been commenced. *Maxus*, 597 B.R. at 242-46. In

reaching this conclusion, the Bankruptcy Court held, "The New Jersey suit does not suffice

because Occidental only sought relief for wrongs committed against itself. Here, the Trust sues

on behalf of all creditors for 'all damages' that they have sustained. While the state suit may

eventually be enlarged to cover the relief sought here, such change is speculative. Thus, for

purposes of mandatory abstention, a state action had not been commenced." *Id.* at 240. The

Bankruptcy Court further determined not to permissively abstain as doing so would complicate

---

[2] The docket reflects that YPF did not join the Motion for Abstention or file a request of its own.

5

and potentially compromise the creditors' recovery. *See id.* at 246-50. "Were the Court to abstain," the Bankruptcy Court concluded, "the Trust would have to wait and see if it could litigate the alter ego, unjust enrichment, and conspiracy claims in New Jersey. And if the New Jersey appellate court does not remand, the Trust may be unable to do so. Therefore, abstention would stymie the Trust's efforts to recover for creditors." *Id.* at 240-41. Addressing the *Rooker-Feldman* doctrine, the Bankruptcy Court observed that the "narrow doctrine" is "concerned only with prohibiting federal courts from reviewing state court decisions" and such "'review differs from mere attempts to litigate in federal court a matter previously litigated in state court.'" *Id.* at 241 (quoting *In re Philadelphia Entm't & Dev. Partners*, 879 F.3d 492, 500 (3d Cir. 2018)). The Bankruptcy Court held that the doctrine did not mandate abstention, as Repsol's position boiled down to just such a re-litigation argument. *See id.* at 250-52.

## II. JURISDICTION AND LEGAL STANDARDS

This Court has jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3). The parties do not dispute that the Order is interlocutory. Appeals of decisions not to exercise mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) are permitted under 28 U.S.C. § 1334(d). *In re Seven Fields Development Corp.*, 505 F.3d 237, 249 (3d Cir. 2007).

Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal. *See id.* "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D.

6

Del. 2011).[3] Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

28 U.S.C. § 1334 governs federal courts' jurisdiction over claims and mandates that the federal court abstain from hearing non-core bankruptcy matters concerning state-law issues under certain circumstances. Referred to as the mandatory abstention provision, section 1334(c)(2) provides:[4]

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall

---

[3] *See also In re Philadelphia Newspapers, LLC,* 418 B.R. 548, 556 (E.D. Pa. 2009) ("Based upon the decision of the Third Circuit in *Bertoli v. D'Avella (In re Bertoli)*, 812 F.2d 136, 139 (3d Cir. 1987), courts within this Circuit confronted with the decision whether to grant leave to allow an interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b).").

[4] Section 1334(d) provides that decisions "not to abstain in a proceeding described in subsection (c)(2), are reviewable by appeal under section 1292."

7

abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Mandatory abstention requires that all six of the following elements are met: (1) the motion to abstain was timely brought; (2) the underlying action or proceeding pending in federal court is based upon a state law claim or cause of action; (3) the matter is non-core, such that it is related to a bankruptcy proceeding, but neither arises under title 11 nor in a case under title 11; (4) section 1334 is the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court. *See In re Longview Power, LLC*, 516 B.R. 282, 293-94 (Bankr. D. Del. 2014). Section 1334(c) reflects a congressional judgment that parties wishing to litigate a state claim in state court but finding themselves in bankruptcy court purely "because the controversy is related to a bankruptcy, should be able to insist upon a state adjudication if that will not adversely affect the bankruptcy proceedings." *Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006).

### III. PARTIES' CONTENTIONS

By the Motion for Leave, Repsol requests that this Court consider its appeal of the Order on an interlocutory basis. The Bankruptcy Court denied abstention both on a discretionary and mandatory basis as to all claims asserted by the Trust against Repsol. Repsol does not seek leave to appeal the discretionary portion of the Opinion denying abstention. With respect to mandatory abstention of the Non-544 Claims – the Trust's claims for unjust enrichment, alter ego, and conspiracy – Repsol does not dispute that the Bankruptcy Court properly identified each of the statutory elements that must be satisfied for mandatory abstention to be appropriate. Repsol challenges two specific aspects of the Opinion. First, Repsol claims that the Bankruptcy Court improperly determined that the Non-544 Claims alleged in the Complaint were "core," having previously determined that those claims, asserted by Occidental in the New Jersey Action, were non-core. Second, according to Repsol, the Bankruptcy Court improperly

8

determined that there was no pending state court action in which the Trust's claims could be timely adjudicated.

## IV. ANALYSIS

### A. Controlling Question of Law

A controlling question of law is one that (1) "would be reversible error on final appeal" or (2) is "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 at 755. An order involves a "controlling question of law" when it concerns a question of law, as opposed to one of fact or a mixed question of law and fact. *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 451 B.R. 343, 347-48 (D. Del. 2011). "[O]n the practical level, saving of time of the district court and of expense to the litigants [has been] deemed . . . to be a highly relevant factor." *Id.* (internal citation omitted).

Repsol claims that the Bankruptcy Court improperly determined that the Non-544 Claims alleged in the Complaint were "core." The Bankruptcy Court held, as a matter of law, that the Non-544 Claims were "core" bankruptcy claims – not subject to mandatory abstention – because: (i) the "alter ego claims of the Debtors' creditors are property of the estate and may only be pursued by the Trust," and (ii) the Non-544 Claims arose under the same events and are intimately connected with the core 544 Claims. *See Maxus*, 597 B.R. at 243-44. The Bankruptcy Court also held, as a matter of law, that the "appropriate action in state court ha[d] not been commenced" – and therefore could not be timely adjudicated – because the New Jersey Action was one in which Occidental (now the Trust) was seeking monetary relief only for itself and its own damages, while the Trust is now seeking to recover for *all* creditors. *See id.* at 245-46. The Court agrees these rulings are controlling questions of law, satisfying the first element.

### B. Substantial Ground for Difference of Opinion

The "controlling question of law" also must be one as to which there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). This calls for more than mere disagreement with the ruling of the bankruptcy court. To satisfy this standard, "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd,* 141 F.3d 1154 (3d Cir. 1998); *see also In re Physiotherapy Holdings, Inc.,* 2017 WL 6524524, at *6 (D. Del. Dec. 21, 2017) (same). Conflicting and contradictory opinions can provide substantial grounds for a difference of opinion. *White v. Nix,* 43 F.3d 374, 378 (8th Cir. 1994). Additionally, the absence of controlling law on a particular issue can constitute substantial grounds. *Chase v. Manhattan Bank v. Iridium Africa Corp.,* 324 F. Supp. 2d 540, 545 (D. Del. 2004). This factor is also met when "the bankruptcy court's decision is contrary to well-established law." *In re Marvel Entm't Grp., Inc.*, 209 B.R. 832, 837 (D. Del. 1997).

## 1. Determination that the Non-544 Claims Are Core[5]

In the Opinion, the Bankruptcy Court found that the third requirement for mandatory abstention – that the claims to be abstained from are non-core – was not met. Repsol concedes that the Bankruptcy Court properly determined that the Trust's fraudulent conveyance claims (the "544 Claims") are core, but disputes the Bankruptcy Court's finding that the "Non-544 Claims" are also core. "Whether claims are considered core or non-core proceedings dictates not only the bankruptcy court's role and powers but also the availability of mandatory abstention." *In re Broad St. Media LLC*, 2017 WL 5624879, at *6 (Bankr. D. N.J. Nov. 20, 2017) (quoting *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008)). To determine whether a claim is core, a

---

[5] Repsol selectively quotes the Opinion and repeatedly argues that the Bankruptcy Court held that the Trust can bring the alter ego, unjust enrichment, and conspiracy counts under section 544 of the Bankruptcy Code. *See, e.g.,* Motion for Abstention at ¶ 35. The Court disagrees. The Bankruptcy Court did not hold that those claims were brought under § 544, only that the Non-544 Claims and the 544 Claims are factually intertwined.

court must first consult the list of core proceedings found in 28 U.S.C. § 157(b)(2). *Id.* That list is illustrative and non-exhaustive. *See Shubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.)*, 554 F.3d 382, 405 (3d Cir. 2009) (citing *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). Under Third Circuit law, "a matter may be core even if it is not enumerated as such, "[1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Official Comm. of Unsecured Creditors of Allied Sys. Holdings v. Yucaipa Am. All. Fund I, L.P. (In re Allied Sys. Holdings)*, 524 B.R. 598, 605 (Bankr. D. Del. 2015). "More recently, the Third Circuit expounded on this test, stating that each claim within the same cause of action must be analyzed and each alone must satisfy this test in order to be considered a core proceeding." *Broad St. Media LLC,* 2017 WL 5624879, at *6.

According to Repsol, the Bankruptcy Court's analysis is contrary to well established law. (*See* D.I. 1 at 10-11). Recognizing that the Bankruptcy Court would need to evaluate each claim individually, Repsol argues that it sought mandatory abstention over the Non-544 Claims only based on established case law holding that state-law alter ego, unjust enrichment, and civil conspiracy claims are non-core. (*See* D.I. 1 at 9-10 (citing *In re LTC Holdings, Inc.*, 587 B.R. 25, 39 (Bankr. D. Del. 2018) (alter ego claims); *DeGirolamo v. Devonshire Fund, LLC (In re Myers)*, 2013 WL 6080270, at *7 (Bankr. N.D. Ohio Nov. 18, 2013) (civil conspiracy claims)). However, Repsol argues, the Bankruptcy Court's analysis did not proceed claim by claim. The Court agrees. The Bankruptcy Court's analysis included two main points, neither of which clearly supports a core finding under prevailing Third Circuit law.

### a. Trustee's Power to Bring the Creditors' Non-544 Claims

After detailing why the 544 Claims (fraudulent transfers) are core (undisputed by Repsol), the Bankruptcy Court noted that even though state law provides the substance of the 544 Claims, "the power to bring the claim in the first place arises under federal law. Similarly,

11

the alter ego, unjust enrichment, and conspiracy counts are core." *Maxus,* 597 B.R. at 243-44. The Bankruptcy Court noted that when coupled with allegations of another wrong, alter ego can constitute an independent claim, and under the Third Circuit's decision in *Emoral*, the alter ego claims of the Debtor's creditors are property of the estate and may only be pursued by the Trust. (*Id.* at 244 (citing *In re Emoral, Inc.,* 740 F.3d 875 (3d Cir. 2014)). This is one aspect of the Bankruptcy Court's decision that the Non-544 Claims are core.

As noted in the Clarification Opinion, "The Third Circuit has long recognized that alter ego actions are often considered non-core, 'related to' proceedings." *Maxus*, 571 B.R. at 661. The Bankruptcy Court previously relied on the Third Circuit's decision in *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1239, 1239-40 (3d Cir. 1994), holding that proceedings by debtor corporations to pierce their own veils are non-core. *See id.* Although the Bankruptcy Court had previously abstained from the same Non-544 Claims asserted by Occidental,[6] the Bankruptcy Court found in the Opinion that the Non-544 Claims are core. *See Maxus*, 597 B.R at 243-44. Repsol argues that there was no basis for this reversal. In response to Repsol's argument that the Bankruptcy Court has already determined that the Non-544 claims are non-core, Trustee argues that the Bankruptcy Court made no such finding. (D.I. 1 at 9-10; D.I. 7 at 8). In its previous consideration of mandatory abstention, Trustee argues, the Court was faced with the issue of whether Occidental's claims against Repsol were non-core. (D.I. 7 at 8). According to Trustee, Repsol's current argument improperly glosses over the key legal distinction made by the Bankruptcy Court: "the Trust, unlike Occidental, is a debtor estate representative seeking redress of all of the harm visited upon the Debtors and their creditors by Repsol's alter ego conduct," and "those claims are core to the underlying bankruptcy proceeding." (*See id.* at 8-9).

---

[6] *See Maxus*, 560 B.R. at 122 (determining that Occidental's alter-ego claims were non-core).

However, the Third Circuit rejects the proposition that a claim is core merely by virtue of the fact that the Trustee advances those claims on behalf of the Debtor or for the purpose of bringing property into the estate. *See Phar-Mor*, 22 F.3d at 1239 n.19 (observing such a notion "[s]urely [] sweeps too broadly" given that even a "debtor corporation's state law breach of contract action against a third party, if successful, will bring property into the estate of the debtor. But such a proceeding is precisely the type of proceeding that is non-core and outside the power of the bankruptcy court to adjudicate."). The cases cited by Trustee do not support the argument that a claim is core merely by virtue of the fact that a Trustee asserts those claims in his official capacity on behalf of the estate. *See In re Sys. Eng'g & Energy Mgmt. Assocs., Inc.*, 252 B.R. 635, 643-44 (Bankr. E.D. Va. 2000) (rejecting Trustee's contention that "claims asserted in this adversary proceeding are core proceedings, in part, because they represent claims that the Trustee advances in his official capacity pursuant to 11 U.S.C. § 544"). Outside the Third Circuit, there is a split among courts considering the issue of whether veil piercing or alter ego claims are subject to the core jurisdiction of the bankruptcy court. *See id.* at 649 & n.17. Repsol cites various decisions finding such claims non-core.[7] Those decisions predate the *Emoral* decision cited by the Bankruptcy Court and the main case relied upon by the Trustee.

As the Bankruptcy Court noted in the Clarification Opinion, *Emoral* "provides the current Third Circuit framework for determining whether claims predicated upon successor or alter ego liability against a third-party non-debtor constitute property of the bankruptcy estate." *Maxus*, 571 B.R. at 656. "Specifically, *Emoral* confronted the issue of whether personal injury claims arising from the alleged wrongful conduct of the debtor could be asserted on a 'mere continuation' theory of successor liability against a third-party non-debtor corporation who was

---

[7] *In re LTC Holdings,* Inc., 587 B.R. 25 (Bankr. D. Del. 2018) (proceeding, which asserts a series of state law claims against third-parties affiliated with Debtors, including fraud and piercing the corporate veil, was non-core).

the prepetition purchaser of the debtor's assets." *Id.* As a threshold matter, "[a]fter a company

files for bankruptcy, creditors lack standing to assert claims that are property of the estate." *Id.*

(citing *Emoral*, 740 F.3d at 879). The Bankruptcy Code defines the "estate" as including "all

legal or equitable interests of the debtor in property as of the commencement of the case."

*Emoral* expounded on this definition, holding that this necessarily includes:

> [C]auses of action, which are considered property of the bankruptcy estate if the claim
> existed at the commencement of the filing and debtor could have asserted the claim on
> his own behalf under state law. In order for a cause of action to be considered property
> of the estate, the claim must be a general one, with no particularized injury arising from
> it. On the other hand, if the claim is specific to the creditor, it is a "personal" one and is a
> legal or equitable interest only of the creditor. A claim for an injury is personal to the
> creditor if other creditors generally have no interest in that claim.

*Emoral,* 740 F.3d at 879. The Third Circuit instructed that, to determine whether the claims at

issue constituted property of the estate, the nature of the cause of action itself must be examined.

*Id.* In *Emoral*, the Third Circuit ruled that the plaintiff's claims were "general" instead of

"individualized," and, therefore, property of the bankruptcy estate.[8] The *Emoral* decision was

"[f]undamental to the [Bankruptcy] Court's determination that [Occidental's alter ego claims

against Repsol] were property of the Debtors' estates and ultimately the Court's remand of those

claims." *Maxus*, 571 B.R. at 656.

Although the Bankruptcy Court previously determined the Non-544 Claims to be "non-

core" in the Abstention and Clarification Opinions,[9] Trustee relies on the Bankruptcy Court's

reference to *Emoral* in opposing the Motion for Leave. (*See* D.I. 7 at 8). Pursuant to *Emoral*,

---

[8] The Third Circuit found, "While the Diacetyl Plaintiffs focus on the individualized nature of
their personal injury claims against Emoral," they "fail to demonstrate how any of the factual
allegations that would establish their cause of action based on successor liability are unique to
them as compared to other creditors of Emoral." *Emoral,* 740 F.3d at 879-80. The Diacetyl
Plaintiffs further "fail[ed] to demonstrate how recovery on their successor liability cause of
action would not benefit all creditors of Emoral given that Aaroma, as a mere continuation of
Emoral, would succeed to all of Emoral's liabilities." *Id.* at 881.
[9] *See Maxus*, 571 B.R. at 661.

Trustee argues, only the bankruptcy estate has standing to pursue alter ego claims once a

bankruptcy petition is filed; thus, estate claims can only "arise in" the context of a bankruptcy

case, in which individual creditors' causes of action alleging a generalized harm to the Debtors

and their creditors have become property of the estate under Section 541 and *Emoral,* or "arise

under" Section 541. (*See id.*) Those estate claims are, accordingly, core. Critically, however,

*Emoral* provides no analysis of whether the claims at issue were "core." While it is unclear

whether *Emoral* has altered the analysis at all, the Court finds some ground for a difference of

opinion as to whether the Non-544 Claims are core on this basis.

### b. Determination that the Non-544 Claims Are Intertwined with Core 544 Claims

A second aspect of the Bankruptcy Court's determination – that the Non-544 Claims

"arise under the same events as the 544 Claims and are intimately connected to them," as "part of

the same story as the core fraudulent transfer claims" – appears insufficient to establish that the

Non-544 Claims are core under prevailing Third Circuit law. *See Maxus,* 597 B.R. at 244.

Repsol correctly argues that such a "predominantly core" analysis has been rejected by the Third

Circuit, which requires that an action must be analyzed on a claim-by-claim basis. *See In re

Exide,* 544 F.3d at 206; *Halper,* 164 F.3d at 839 ("the claim-by-claim approach [i]s the only one

consistent with the teachings of *Marathon* …"). Repsol further argues that courts routinely find

alter ego claims brought by a trustee to be non-core even when they were allegedly "intertwined"

with core claims, including fraudulent transfers. *See Rodriguez v. Four Dominion Drive, LLC

(In re Boyd),* 2012 WL 5199141, at *6 (Bankr. W.D. Tex. Oct. 22, 2012) (holding alter ego

action was not core and warning that "generous reading of section 157(b)(2)(A) [] would sweep

all related to matters under the core umbrella"); *Moshannon Valley Citizens Inc. v. Rosewood

Real Estate, Inc. (In re Moshannon Valley Citizens, Inc.),* 2009 WL 522906, at *4 (Bankr. M.D.

Pa. Feb. 25, 2009) ("Alter ego claims are not core proceedings because they target the assets of a

15

non-debtor.")). Conversely, Trustee argues that "[o]ther courts, including Delaware bankruptcy courts, have reached similar conclusions in conducting their core/non-core analysis in factual circumstances similar to those pleaded in the Trust's Complaint." (D.I. 7 at 7-8).

The Court agrees with Repsol that the cases cited by Trustee are non-controlling and factually dissimilar,[10] contrary to controlling precedent,[11] or have been specifically rejected by the Third Circuit.[12] The Court further agrees with Repsol that this aspect of the Bankruptcy Court's analysis is contrary to Third Circuit law governing the core determination, which requires that an action must be analyzed on a claim-by-claim basis. Finally, the Court must reject Trustee's argument that Repsol has merely identified a fact-intensive determination not appropriate for interlocutory appeal. According to Trustee, Repsol's assertion that courts routinely find alter ego claims brought by a trustee to be non-core, even where they are allegedly intertwined with core claims including fraudulent transfers, establishes, at most, that the core analysis is highly fact-dependent and that courts reach different determinations based on the specific facts at hand. (D.I. 7 at 7-8). Trustee asserts that such a mixed question of law and fact falls short of establishing a substantial ground for disagreement as required for immediate appeal. (*Id.*) The Court disagrees. Repsol has cited Third Circuit cases establishing genuine doubt as to the correct legal standard for evaluating whether the Non-544 Claims are core.

---

[10] *Medallic Art Co., LLC v. Calvert (In re Northwest Territorial Mint, LLC)*, 2017 WL 568821, *3 (W.D. Wash. Feb. 13, 2017) (considering defendant's request for determination that plaintiff was alter ego of debtor and holding that such a request is core because "it goes directly to identifying property of the estate, which is key to administering it").

[11] *Zazzali v. AFA Financial Group, LLC (In re DBSI, Inc.)*, 2012 WL 1078079, *4 (Bankr. D. Del. Mar. 30, 2012) (determining that "the unjust enrichment claim here is in the nature of an action for fraudulent conveyance, and thus it is core").

[12] Trustee cites *Messer v. Bentley Manhattan Inc. (In re Madison Bentley Assocs., LLC)*, 474 B.R. 430 (S.D.N.Y. 2012) and *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186 (2d Cir. 2003). Both of those cases rely on *St. Paul Fire and Marine Insurance Co. v. PepsiCo, Inc.*, 884 F.2d 688, 192 (2d Cir. 1989), which found alter ego claims to be core because they "had the effect of bringing property into the estate of the debtor." The Third Circuit rejected this rationale for classifying claims as core in *Phar-Mor*, 22 F.3d at 1239 n. 19.

## 2. Existence of a Parallel State Action in Which Claims Can Be Timely Adjudicated

According to Repsol, the Bankruptcy Court improperly determined that there was no pending state court action in which the Trust's claims could be timely adjudicated. In finding that mandatory abstention did not apply, as an appropriate action in state court has not been commenced, the Bankruptcy Court observed that:

> Repsol is right that it is already fighting similar alter ego, unjust enrichment, and conspiracy claims in New Jersey appellate court. However, that suit cannot provide the relief sought here. In New Jersey, [Occidental] sought monetary relief only for itself and its own damages. That suit is still limited to those very same damages, except that now the Trustee may divide any winnings among creditors. Here, the Trust seeks greater recovery. It looks to recover damages for the harm *all* creditors suffered – not just [Occidental].

*Maxus*, 597 B.R. at 245. Recognizing that the Trust intervened in the New Jersey Action as a party "for all purposes," and could conceivably "further amend[] to mirror the federal proceeding," the Bankruptcy Court observed that "this enlargement is hypothetical and has not happened yet." *Id.* While the Trust has replaced Occidental as the party to bring the state appeal, the Bankruptcy Court reasoned that, as the litigation currently stands, its scope is still limited to Occidental's remedies, and if the Trust prevails in New Jersey, at most it could recover the damages for harm Occidental suffered – it could not recover the damages for any other creditor's harm. *Id.* "[T]o the extent that other creditors could recover at all from the New Jersey Litigation, they would be confined to whatever share of Occidental-related damages Trustee distributes to them. Other than [Occidental], no creditor could recover for its own damages in the New Jersey Litigation. This is precisely what the Trust is trying to do here: allow creditors to recover for all their relevant damages, not just share in OCC's." *Id.* at 245-46. "The Trust's late-stage intervention and appeal do not render the New Jersey Litigation capable of providing relief from the harm of all creditors, not just [Occidental]. Because the New Jersey

Litigation is confined to remedying [Occidental] for its harm and cannot offer the more expansive remedy sought here, it does not support mandatory abstention." *Id.*

Repsol argues that this determination misapprehends the significance of damages to the analysis and the Trust's role in the New Jersey Action. According to Repsol, the amount of damages sought is irrelevant and does not change the fact that the Trust is pursuing the substantively identical claims in the adversary proceeding as those that were asserted in New Jersey. (*See* D.I. 1 at 13-16; D.I. 6 at 2, 6-9). Repsol asserts, "By ignoring the identical nature of the actions pursued by the Trust in New Jersey and the Bankruptcy Court in terms of the legal theories advanced, transactions and occurrences alleged, and the causes of action pursued," and "instead focusing on the number of creditors or amount of damages sought to be recovered," the Bankruptcy Court will unfairly expose Repsol to multiple rounds of litigation on the same causes of action. (*See* D.I. 6 at 7).

In considering whether an action has been commenced in state court, the Bankruptcy Court noted, "Though the Code itself does not articulate the kind of state court action that satisfies [28 U.S.C. § 1334(c)(2)], any action will not do." *Maxus*, 597 B.R. at 245. "[T]his Court has denied abstention when the state action does not "parallel … the substance of the adversary proceeding." *Id.* (citing *Matter of Total Tech. Servs. Inc.*, 142 B.R. 96, 100 (Bankr. D. Del. 1992)). "Other courts interpreting this provision consider whether the federal proceeding could afford relief that the state proceeding could not." *Id.* (citing *In re Nationwide Roofing and Sheet Metal, Inc.*, 130 B.R. 768, 778-79 (Bankr. S.D. Ohio 1991)).

Trustee argues that the Bankruptcy Court was correct, as the Trust has never commenced any action in New Jersey to vindicate its claims, and given the procedural posture of the New Jersey Action – the entire matter now on appeal – the Trust cannot presently intervene in the New Jersey Court to assert its Non-544 Claims. Repsol responds that the law requires only that

18

"an action has been commenced in state court, not that the same plaintiff (Trust) commence the action." (D.I. 8 at 7-8). Repsol further asserts that the Trust does not need to assert any "new" claims because all of the Trust's Non-544 Claims are pending in New Jersey. However, the Trustee cites three prior orders entered in the New Jersey Action which, it argues, demonstrate that the New Jersey Action cannot be a parallel proceeding, including one order dismissing Occidental's second-amended cross-claims. (Adv. D.I. 34-16). Pursuant to that order, the New Jersey Court held that Occidental's claims for fraudulent transfer, unjust enrichment, fiduciary duty breaches, tortious interference, and civil conspiracy, as well as the alter ego remedy sought in connection with those claims, were barred by statutes of limitation applicable to Occidental. (D.I. 7 at 10-11).[13] Repsol argues that none of the orders cited by the Trustee limited damages or limited the Trust from making arguments on appeal regarding statute of limitations issues. (D.I. 8 at 8). The Trust's point is well taken. Unless and until the New Jersey Appellate Division reverses and remands the entire action – which may not happen – the Trust will never have the opportunity to litigate its non-544 Claims at the trial court level.

To be appropriate for interlocutory appeal, a difference of opinion must arise out of genuine doubt as to the correct legal standard. The Court finds no genuine disagreement as to the correct legal standard here. Moreover, the Bankruptcy Court determination's was consistent with well established Third Circuit law that the New Jersey Action is not a "parallel proceeding" to which the Trust's Non-544 Claims can be appended. *See, e.g., In re Samson Resources Corp.*, 559 B.R. 360, 371 (Bankr. D. Del. 2016) ("inherent in the concept of abstention is the presence of a pendent state action"); *In re SemCrude, L.P.*, 428 B.R. 82, 101 (Bankr. D. Del. 2010)

---

[13] However, in denying the Defendants' motions to dismiss this adversary proceeding, the Bankruptcy Court held that this limitations-based dismissal does not bar the Trust from bringing its own claims because "the Trust is simply 'not close enough' to [Occidental] for [Occidental]'s prosecution of claims in the New Jersey Action to have a preclusive effect on the claims brought by the Trust." (Adv. D.I. 107 at 7).

(holding that "a state action has not properly been commenced" because "the state court proceeding could not, if [plaintiff] prevailed, provide the relief which Nationwide could obtain in this adversary.")

### C.     Whether Immediate Appeal Will Materially Advance Termination of Litigation and Whether Exceptional Circumstances Justify Relief

Courts do not allow interlocutory appeals where a successful appeal "would only promote piecemeal determination of the questions raised in the adversary action and would likely create unnecessary delay." *AE Liquidation*, 451 B.R. at 347. *See In re Advanced Marketing Services, Inc.*, 2008 WL 5680878 (D. Del. Apr. 3, 2008). Additionally, "interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *AE Liquidation*, 451 B.R. at 349 (internal quotation marks omitted).

Repsol argues that an immediate appeal will materially advance the termination of the litigation because the correct opinion would limit the claims against Repsol to the 544 Claims, "eliminate significant discovery and briefing on the Non-544 Claims," and focus the Bankruptcy Court and the parties on the substance of the Complaint: [whether] Repsol fraudulently transfer[ed] Maxus's assets." (D.I. 1 at 16-17; D.I. 8 at 8). Additionally, Repsol argues that appeal certification will facilitate settlement discussions by eliminating unsupportable claims. (D.I. 8 at 9). Courts routinely reject settlement as a controlling contention for § 1292(b) certification, and the Court agrees. *Piazza v. Major League Baseball*, 836 F. Supp. 269, 272 n. 7 (E.D. Pa. 1993).

According to the Trustee, Repsol's argument, that the "544 Claims lend themselves to tailored discovery and legal issues," must be rejected in the context of a motion for abstention, which is premised on the availability of a parallel proceeding in which the claims can actually be litigated. (D.I. 7 at 14). Additionally, the Trustee argues, the 544 Claims will in fact necessarily

20

overlap with discovery on the Non-544 Claims: as the Bankruptcy Court determined, the alter-ego, conspiracy, and unjust enrichment claims "arise under the same events as the [core] 544 Claims and are intimately connected with them." *Maxus*, 597 B.R. at 244. Trustee argues the relief requested by Repsol could only promote piecemeal litigation, as YPF Defendants have not sought abstention; thus, Repsol's Motion for Leave contemplates no fewer than three separate sets of litigation, all centered on the same operative set of facts: "(1) the Trust and YPF will continue to litigate both the 544 Claims and the Non-544 Claims in the Bankruptcy Court; (2) Repsol will defend the 544 Claims in Delaware; and (3) Repsol will defend the Non-544 Claims in New Jersey both through the appeal and any subsequent remand." (D.I. 7 at 13).

Repsol's point is well-taken that abstention on the Non-544 Claims has the potential to significantly reduce discovery and briefing in the adversary proceeding, as those claims require narrow discovery regarding the value of the allegedly fraudulently transferred assets, as opposed to discovery regarding corporate behavior. However, even if the Court were to grant leave to appeal the Bankruptcy Court's core determination with respect to the Non-544 Claims, based on grounds for disagreement discussed above, the Court has already determined that leave to immediately appeal the other elements required for mandatory abstention – an existing state action in which the claims can be timely adjudicated – is not justified here. As all six elements of the statute must be met for mandatory abstention to apply under 28 U.S.C. § 1334(c)(2), granting immediate leave to appeal the core determination would not serve to eliminate claims or advance the litigation of the adversary proceeding.

## IV. CONCLUSION

For the reasons explained above, the Court will deny the Motion for Leave. A separate order shall be entered.

December 19, 2019

Richard G. Andrews

United States District Judge