## Weil, Gotshal & Manges LLP

1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
+1 305 577 3100 tel
+1 305 374 7159 fax

**Edward Soto**
+1 (305) 577-3177
edward.soto@weil.com

VIA EMAIL

March 30, 2020

Chief Judge Christopher Sontchi
United States Bankruptcy Court
for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

Re:  *Maxus Liquidating Trust v. YPF, et al*., Adv. Proc. No. 18-50489

Dear Chief Judge Sontchi:

On behalf of Repsol S.A., Repsol Exploración, S.A., Repsol USA Holdings Corp., Repsol E&P USA, Inc., Repsol Offshore E&P USA, Inc., Repsol E&P T&T Ltd. and Repsol Services Company ("**Repsol**"), we write regarding certain discovery disputes with the Plaintiff Maxus Liquidating Trust ("**Trust**," and collectively with Repsol, the "**Parties**") that the Parties have been unable to resolve despite various discussions including: (1) the number of depositions per side, and (2) the scope of discovery. Each issue is outlined in further detail below.

I. **Repsol Requests Leave for the Defendants to Depose More Than the 10 Witnesses Allotted by the Federal Rules for all Defendants to Include Critical Witnesses with Relevant Information of the Transactions and Facts Alleged in this Complex Matter**

The Trust seeks to impose on Repsol $700 million of liquidated Maxus creditor claims—and potentially billions more of unliquidated ones—based on international transactions and activities spanning nearly three decades. Yet despite the breadth and complexity of this case, and the fact that Repsol has its own independent defenses that it must be permitted to establish to defend itself, the Trust refuses to allow the ***Defendants collectively*** to depose more than 15 witnesses, a mere five depositions beyond the 10 already permitted by the Federal Rules of Civil Procedure ("**Rules**"). The Trust's position is unreasonable, particularly in light of its statements to the Court that the Court adopted in critical rulings leading the Parties to their positions today.

As the Court recalls, the issue of the number of depositions—and the related issue of the Parties' ability to utilize the depositions from the substantially similar New Jersey action—is not new. The issue first arose last spring when the Parties attempted to arrive at a consensual discovery schedule. As Defendants told the Trust then, and as Repsol maintains today, Defendants will need significantly more than the 10 depositions allowed by the Rules or the five additional offered by the Trust, to defend against this significant action.

Hon. Christopher Sontchi  
March 30, 2020  
Page 2

**Weil, Gotshal & Manges LLP**

The need for additional depositions is self-evident. The New Jersey action—which the Trust has admitted, and this Court has stated, is substantially similar to this one[1]—took over a decade to complete and necessitated over 50 depositions. There, the State of New Jersey and Occidental Chemical Corporation ("**OCC**") asserted alter ego, fraudulent transfer, unjust enrichment, and civil conspiracy claims against Repsol predicated on the same transfers (*i.e.*, the Crescendo asset, various YPFI transfers, Gulf of Mexico assets, and various settlement agreements). In addition to those claims and issues, as well as the identical ones lodged against YPF, the Trust's claims here—all of which survived dismissal—involve an additional five years of potentially relevant events, transactions, and information, all of which post-dated the expropriation of Repsol's YPF shares. The Trust's notion that this case necessitates almost half of the number of depositions is illogical and highly prejudicial.

As Defendants previously proposed, the Parties could avoid the time and expense of re-taking dozens of depositions if the Parties agreed to treat the New Jersey depositions as if they were taken in this matter. The Trust refused and the Parties briefed whether the Defendants, pursuant to Rule 32 and Federal Rule of Evidence 803, could treat the 50-plus depositions taken in the New Jersey action as if they were taken here given the overlap in claims, issues and facts, and OCC's same motivation and interest to prove what the Trust wants to prove here. *See* Repsol Defendants' Motion to Modify the Scheduling Order to Include a Provision Treating Depositions Taken in the New Jersey Action as if They Were Taken in This Action, or in the Alternative, to Amend the Scheduling Order (A.D.I. 154).

In its opposition, the Trust characterized the Defendants' concerns as overblown because: (1) it intended to notice a number of former Maxus employees for deposition, "including Jon Slater, David Smith, and David Wadsworth;" (2) it "intend[ed] to take the depositions of several of the prior Maxus witnesses;" (3) there were "twenty witnesses whose prior testimony could be sufficiently relevant to this action to require any deposition (which the Trust is already intending to take)"; and (4) it "intend[ed] to depose many of [the Defendants'] defense witnesses." *See* Plaintiff Maxus Liquidating Trust's Opposition to Repsol and YPF Defendants' Motions to Modify or Amend the Scheduling Order to Provide for the Use of Deposition Testimony from a Prior Action (A.D.I. 165) (the "**Deposition Opposition**") at 18, 22, 2, 7. The Trust also attached a list of New Jersey action deponents it conceded had relevant information, including 11 Maxus witnesses, 7 non-party deponents from the New Jersey litigation, 5 Repsol deponents, and 7 YPF deponents. *See id*. at Ex. A.

Yet when the parties shared their initial list of intended deponents in this matter on January 10, 2020, the Trust's list included *none* of the Maxus-associated deponents the Trust had told the Court and the Defendants it intended to call, which would force the Defendants to use their 10 depositions to establish testimony that had already been given under oath. *See* Jan. 10, 2020 Letter from Matthew L. Nicholson Re: *Maxus Liquidating Trust v. YPF S.A. et* al, No. 18-50489-CSS (Ex. B). Save for the

---

[1] *See, e.g.*, A.D.I. 193 ("As this Court has previously held, the claims in this action are 'substantially similar' to those in the New Jersey Action.") (citing *Maxus Liquidating Trust v. YPF (In re Maxus Energy Corp.)*, 597 B.R. 235, 240 (Bankr. D. Del. 2019)).

Hon. Christopher Sontchi  
March 30, 2020  
Page 3

**Weil, Gotshal & Manges LLP**

Defendants' 30(b)(6) witnesses and Repsol's Legal Director of E&P, Pablo Blanco Perez, the Trust's initial list of intended deponents did not include *any* of the witnesses that the Trust conceded had potentially relevant information and that it "[was] already intending to take." The Defendants' concerns proved not to be overblown.

Notably, the Trust argued, in part, that the New Jersey depositions could not be used in this case because the fraudulent transfer claims had already been dismissed as time-barred in the New Jersey action by the time many of the depositions took place. *See* Deposition Opposition (A.D.I. 165) at 5. The Court ruled in the Trust's favor, in part, because "at the time OCC took or defended the majority of the depositions in the New Jersey Action, the New Jersey Court had already barred discovery into the fraudulent conveyance claims … all which are at issue in this action…. ***Thus, in this action, the scope of claims is significantly expanded***…." A.D.I. 193 at 7 (emphasis added). Despite persuading the Court that the issues involved are more expansive than the New Jersey action, the Trust steadfastly refuses to agree to at least the same number of depositions in this case as were taken in New Jersey, much less additional ones to cover facts the Trust says were never covered. Perhaps even more mind-boggling is the Trust's apparent lack of interest in discovering the very facts it claims were never addressed before; the Trust did not identify any witnesses with first-hand factual knowledge of the allegedly fraudulent transfers. If the Trust believes that it can prevent the Defendants from using the New Jersey depositions but that it can use those same very same depositions offensively, the Trust is mistaken. Due process requires nothing less than allowing the Defendants to discover, gather, and put forth evidence that the Trust's claims lack merit.

Repsol raised these issues to the Trust but the Trust has refused to agree to more than 15 depositions per side. *See* Feb. 18, 2020 Repsol Letter (Ex. C); Mar. 4, 2020 Trust Letter (Ex. D). In fact, the Trust surmised that this Court would "never" grant more than 15 depositions and suggested that the Defendants take the Trust's offer while it was still on the table. Given the complexity of this matter, Repsol's right to defend itself, and the Trust's previous statements that it intended to take a number of the relevant depositions from the New Jersey action, Repsol was stunned by the Trust's unwillingness to accommodate Defendants' request. Not only is the Trust's position unreasonable, but it is egregious in light of the Trust's previous statements to both the Defendants and the Court regarding its intentions to depose many of the witnesses that Defendants sought to treat as if taken in this matter. Accordingly, Repsol respectfully requests that the Court grant them leave to take the 35 depositions set forth on their January 10, 2020 Initial Intended Deponent List.

> a. *Courts Frequently Permit More Than 10 Depositions in Highly Complex Cases, Such as This One, That Span Multiple Decades, Seek Significant Damages, Cover Numerous Transactions, and Involve Almost a Dozen Defendants*

The Rules state that "[a] party must obtain leave of court, and the court ***must*** grant leave to the extent consistent with the principles stated in Rule 26(b)(2)." Fed. R. Civ. P. 30 (a)(2)(A). "[A] party seeking more than ten depositions must overcome this presumptive limit by demonstrating that the

Hon. Christopher Sontchi
March 30, 2020
Page 4

**Weil, Gotshal & Manges LLP**

additional depositions are reasonable and necessary." *Id.* (quoting *Alaska Elec. Pension Fund v. Pharmacia Corp.*, Case No. 03-1519, 2006 WL 6487632, at *3 (D.N.J. Aug. 22, 2006)).

Courts frequently allow for additional depositions where the court finds that the case is complex, covers a substantial time period, or the additional depositions are material to a party's case.[2] This case is without a doubt complex as it involves 11 Defendants, 23 claims, spans 30-plus years, and involves allegations of alter ego, fraudulent transfers and civil conspiracy. The Court need not take Repsol's word alone on the complexity and the need for additional depositions: a subset of this case, which covered less time and fewer transactions, *already* required nearly twenty more depositions than the Trust has proposed. Having successfully resisted making use of that deposition testimony before this Court, the Trust cannot now complain that the Defendants are seeking too many depositions to defend against the 23 claims asserted against them. As set forth below, the witnesses who Defendants seek to depose over and above the allotted 10 depositions all have critically relevant information to the matters set forth in the Trust's 129-page, 485-paragraph Complaint by which the Trust seeks to impose *all* of Maxus's liabilities—whenever and wherever incurred—on Repsol.

> b. *The Trust Conceded That Most of the Additional Witnesses the Defendants Have Identified Are Relevant and Critical to This Action*

The Defendants have composed a chart, attached as Exhibit A, demonstrating why they are entitled to the relief sought. The chart contains: (1) the names of the witnesses whose depositions they need to take; (2) their affiliation; (3) their relevance in terms of specific transactions, events, or facts based on the Parties' pleadings and written discovery; and (4) the Trust's assessment of the witness's relevance and subject matter, if applicable. Repsol anticipates that these witnesses would testify to the following critical facts and time periods, among others:

(1) **The YPF Era**: The Trust alleges that after acquiring Maxus in 1995, YPF realized the extent of Maxus's environmental liabilities and concocted a "scheme" to strip Maxus's valuable E&P assets and leave the liabilities behind. *See, e.g.*, Compl. ¶¶ 8-10. The Trust also contends that during this period, YPF dominated and controlled Maxus to effectuate these transfers such that YPF should be held liable as Maxus's alter ego. *See, e.g.*, *id.* ¶ 10. Defendants seek to depose certain witnesses that the Trust has already admitted have "relevant" information relating to

---

[2] *See Jenkins v. Miller*, No. 2:12-CR-184, 2020 WL 64306, at *2 (D. Vt. Jan. 7, 2020) (additional 10 nonparty depositions in "complex case involving allegations of a broad conspiracy involving many individuals"); *Acronic Inc. v. Novelis Inc.*, 2018 WL 6732992, at *5-7 (W.D. Pa Nov. 6, 2018) (12 additional depositions where plaintiff sought "$800 million in alleged damages," asserted "hundreds of separate trade secrets," defendant plead over ten counter claims; plaintiff produced over 2.25 million pages of documents; there were a large number of third parties that possessed relevant information; and the case involved complex legal theories); *Citgo Petroleum Corp. v. Ranger Enterprises, Inc.*, No. 07-CV-657-BBC, 2009 WL 2058213, at *1 (W.D. Wis. July 13, 2009) ("Complex litigation will require often that the parties depose more than ten witnesses on each side."); *L.W. v. Lackawanna County, Pa.*, 2015 WL 2384229, at *1 (M.D. Pa. May 19, 2015) (22 additional depositions after finding the requested depositions necessary to plaintiffs' case).

Hon. Christopher Sontchi  
March 30, 2020  
Page 5

**Weil, Gotshal & Manges LLP**

these allegations. These witnesses include David Blair, Paul Bohannon, William Cline, Johanna Coulter, Linda Engelbrecht, Peter Gaffney, Rick Hartline, an OCC Rule 30(b)(6), Michael O'Donnell, Dexter Peacock, David Rabbe, Mel Skaggs, David Smith, Harvey Smith, Alex Sundich, and David Wadsworth. *See* Ex. A.

(2) **The Repsol Era**: The Trust also alleges that Repsol joined YPF's "scheme" of stripping Maxus's assets, including via the sale of the Crescendo asset and acquisition of Maxus's Gulf of Mexico assets, employees, data and technologies. *See, e.g.*, Compl. ¶ 11. Defendants seek to depose certain witnesses who, again, the Trust has already conceded have relevant information but whose depositions the Trust blocked Repsol from using here, including Fernando Calegari, Shaun Finnie, Walter Forwood, Rick Hartline, Mike Mills, an OCC Rule 30(b)(6), David Rabbe, Jon Slater, Harvey Smith, and David Wadsworth. *See* Ex. A.

(3) **The Post-Expropriation Era and Bankruptcy Filing**: The Trust then alleges facts as to a period of time that post-dates Repsol's involvement as a result of the Argentine government's expropriation and post-dates the New Jersey action: the alleged "scheme" concluded when Maxus was thrown into bankruptcy to discharge all of its environmental liabilities after having run out the applicable statutes of limitations. *See, e.g.,* Compl. ¶¶ 14–16. None of the relevant witnesses previously testified about these allegations in the New Jersey action. The Defendants have identified Maxus's two independent directors at the time Maxus filed for chapter 11 protection who have knowledge relevant to Maxus's decision-making at the time (Bradley Dietz and Theodore Nikolis), as well as Rule 30(b)(6) depositions of Maxus's counsel Morrison & Foerster LLP and financial advisors Zolfo Cooper, LLC.

(4) **Alter Ego Damages**: As set forth *infra* Section II, Repsol is also entitled to take discovery on the Trust's alter ego claim. While Repsol continues to dispute the validity of such a standalone alter ego claim, there can be no dispute that the element of causation is a critical component. Accordingly, Repsol seeks to depose certain creditors—*i.e.*, the U.S. Environmental Protection Agency and the U.S. Department of the Interior—holding allowed claims to discover facts relating to the element of alter ego causation.

As further shown in Exhibit A, each of the witnesses identified are necessary for the Defendants to prepare an adequate defense.[3] In fact, the Defendants worked diligently to bring down the number of

---

[3] The Trust cannot proceed on a Section 544(b) fraudulent transfer claim without putting forth a creditor that possesses a viable fraudulent transfer claim under state law that is not time-barred. *Zazzali v. Swenson (In re DBSI, Inc.)*, No. 08-12687 PJW, 2011 WL 607442, at *2 (Bankr. D. Del. Feb. 11, 2011). While the Trust has yet to disclose such creditor(s) despite multiple requests, the Parties agreed that the Trust may identify its triggering creditor(s) at a later date so long as: (1) such creditors were disclosed in the fact discovery period with sufficient time to conduct document and deposition discovery on them; and (2) such creditors would not count towards the Defendants' deposition limit. Repsol does not waive and reserves its arguments that the Trust must disclose its triggering creditor(s) and discovery may be conducted thereon.

Hon. Christopher Sontchi  
March 30, 2020  
Page 6

**Weil, Gotshal & Manges LLP**

requested depositions to 35 by, among other things, agreeing not to include Defendant-associated witnesses on the list, even though Repsol would be entitled to depose YPF witnesses and vice-versa. For months, the Defendants have negotiated in good faith with the Trust to find a solution that fairly balances the cost and effort of deposing the witnesses necessary to mount their defense to the Trust's significant claims with the fact that a large portion of those depositions had already been taken by a party (OCC) that asserted substantively identical claims against the Defendants. At each step, the Trust has refused to even discuss more than 15 depositions so as to gain a litigation advantage that this Court should not permit.

**II.     Repsol Is Entitled to Take Discovery into Underlying Creditors' Claims if the Trust Intends to Impose Those on Repsol**

During the Parties' meet and confers, the Trust stated that it opposed any discovery into the allowed claims against the Maxus estate, notwithstanding the fact that the Trust explicitly intends to recover for each and every one of those claims from Repsol on its alter ego cause of action. Repsol is entitled to conduct discovery into underlying creditor claims in Maxus's chapter 11 case (the "**Underlying Claims**") because they are relevant to Repsol's defenses against the Trust's causes of action.

The Trust intends to bring a purported standalone alter ego claim—one without any substantive, underlying cause of action other than Maxus creditors' unpaid claims against the Maxus estate. While Repsol has maintained that no such claim exists, the Court has ruled otherwise, rendering the Underlying Claims undeniably relevant. "[D]iscovery is ordinarily allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *In re Energy Future Holdings Corp.*, 513 B.R. 651, 656 (Bankr. D. Del. 2014).

One of Repsol's many defenses to the Trust's alter ego claim is that Repsol did not dominate and control Maxus and that, even assuming it did, it did not use that domination and control to cause that particular creditor a fraud or injustice. As a result, discovery is necessary to explore whether there is a causal connection between the specific unpaid Underlying Claim and the purported alter ego conduct. If Repsol's purported alter ego conduct did not cause the Underlying Claim to go unpaid, then Repsol cannot be held liable for it as Maxus's alter ego. *See, e.g.*, *Wallace, ex rel. Cencom Cable Income Partners II, L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("Piercing the corporate veil under the alter ego theory 'requires that the corporate structure cause fraud or similar injustice.'") (citation omitted). The Underlying Claims not only have "a possible bearing upon the subject matter of the action," they are directly at issue in this adversary proceeding. Therefore, "the broad standards of discovery permit the information to be obtained." *In re Energy Future Holdings Corp.*, 513 B.R. at 658.

Repsol explicitly reserved the right in the bankruptcy to discover facts related to the Underlying Claims in the normal course. Specifically, the Confirmation Order provides that:

6

Hon. Christopher Sontchi  
March 30, 2020  
Page 7

**Weil, Gotshal & Manges LLP**

> Notwithstanding anything to the contrary set forth in the Plan, the Plan Supplement or this Order, nothing contained therein or herein. . . shall have any precedential, preclusive or other effect against any of the Repsol Entities in any litigation, including with respect to any Cause of Action preserved under the Plan. . .

Confirmation Order ¶ 72. The Plan similarly contained a reservation:

> Neither the allowance or disallowance of any Claim against any Debtor in these Chapter 11 Cases, nor the allowed amount of any Claim, shall have any precedential, preclusive or other effect, including as a purported measure of any valuation or damages, against any person or entity in any litigation, including in any Causes of Action preserved under the Plan.

Plan § XV.P. When Repsol advised the Trust of these provisions in the Confirmation Order and Plan, the Trust ignored them. *See* Mar. 4 Trust Letter (Ex. D). Instead, the Trust claimed that regardless of these reservations, the Underlying Claims were allowed or settled and approved by the Court, and as result, Repsol is not entitled to discovery. The Trust is wrong.

First, Repsol was not a "party in interest" in Maxus's chapter 11 bankruptcy; it did not have bankruptcy standing to object to or challenge actions taken by the Debtors, Trust, or claims asserted by Maxus's creditors. This is because Repsol was not a creditor of Maxus and did not file a proof of claim in its bankruptcy and so it did not have standing to object to every single individual creditor's claims against the Maxus estate. In a similar context, this Court denied standing to a party alleged to be the debtor's alter ego to object to plan confirmation. *See In re Flintkote Co.*, 486 B.R. 99, 114 (Bankr. D. Del. 2012), *aff'd*, 526 B.R. 515 (D. Del. 2014). Similarly, the Bankruptcy Court for the Southern District of New York rejected the attempts of the sole owner of the debtors ***that had actually been sued in an adversary proceeding*** on the basis that it was the alter ego of the debtors to object to creditor claims in the debtors' bankruptcy. *See In re Manshul Const. Corp.*, 223 B.R. 428, 429, 431 (Bankr. S.D.N.Y. 1998).

Second, and recognizing that it had no standing to object to individual creditor claims, Repsol specifically reserved the right to object to the Underlying Claims in the event a party like the Trust asserted alter ego-based claims against it in the Plan and this Court's Confirmation Order. According to the Trust, these reservations meant nothing.[4] At best, the Trust says, the Underlying Claims are merely

---

[4] *See, e.g.*, May 28, 2019 Hr'g Tr. 35:14-36:2 (Trust Counsel: "In the Chapter 11 OCC filed a claim, so did the EPA, the DOJ, the Ohio EPA, the CPG, all those parties, and as part of the plan process those claims were settled and approved by the court. Unless the court rules otherwise we're not going to be re-litigating that issue. It's not fair game to say you know what we're going to do, we're going to have one trial on whether OCC was entitled to contractual indemnification and then we're going to have a trial on whether the Ohio EPA has a claim. We're not doing that. These claims were the party who was primarily responsible had independent directors put in place by YPF who agreed to the claims. So, YPF and Repsol had notice of that and they didn't object. As far as we're concerned we're not having trials on all these issues.").

Hon. Christopher Sontchi  
March 30, 2020  
Page 8

**Weil, Gotshal & Manges LLP**

not "preclusive" on Repsol, but that the Trust intends to essentially tender the claims to the Court and argue that they can all be passed on to Repsol on an alter ego basis because they were settled and approved by the Court as reasonable.[5] There is no basis in law or fact for the Trust's assertion that so long as independent parties settled claims against the Maxus estate and the Court approved them as reasonable that Repsol is limited to only challenging the propriety of the claim settlement process and not whether it is liable as Maxus's alter ego for the underlying claim.

Given the broad scope of Rule 26 discovery, the fact that Repsol had no standing to previously challenge Maxus creditor claims, and the express reservation of rights in the Confirmation Order and Plan, Repsol should be permitted to conduct discovery into the Underlying Claims.

### III. The Trust's Belated Request for Additional Document Discovery is Beyond What the Parties Agreed to and Would Impose an Undue Burden on Repsol, But the Parties are Continuing to Negotiate a Consensual Resolution

The Parties agreed in August 2019 that Repsol would not run the search terms agreed to in this matter (the "**Agreed-Upon Search Terms**") over the millions of documents previously collected in the New Jersey matter (the "**New Jersey Documents**").[6] Despite this agreement, during a meet and confer on February 7, 2020—six months later—the Trust dramatically changed its position and requested that Repsol run the Agreed-Upon Search Terms over the New Jersey Documents. As Repsol made clear to the Trust during subsequent meet and confers, doing so would be inconsistent with the Parties' agreement, place a severe undue burden on Repsol to require it to run the terms, as well as review, produce, and log privileged documents, and delay the matter significantly. *See* Feb. 18, 2020 Repsol Letter (Ex. C).

Based on the agreements between the Parties, Repsol had already reviewed around 100,000 documents for potential production, and on October 23, 2019, Repsol substantially completed its

---

[5] *See id.* at 53:7-24 (Trust Counsel: "It is not preclusive on them. I am not going to be permitted to put the plan in and say, see, all these claims are allowed. What I intend to do is say there was an arm's length negotiation that took place as part of the plan process in which the independent directors agreed with the EPA that they have a Class 4 claim of $170 million dollars and a Class 5 claim. That was settled. The primary obligor and the claimant agreed on a claim. That claim was presented to the court and approved as reasonable….To go back and say we're going to actually present evidence or try to find evidence to present to the court that when the EPA's claim was allowed at $26 million dollars, Ohio EPA, they really don't have a claim at all and here are the soil samples; that is not going to happen.").

[6] *See* Aug. 7, 2019 Repsol Proposed Custodians and Proposed Search Terms (the "**Repsol Custodial Search Terms**") (Ex. E) (The Repsol Custodial Search Terms document included a "Date Range" that ranged from the "Date of [the] New Jersey Action Document Collection," which was 2012, through the "Effective Date," which was the agreed-upon cutoff date for document collection and review); *see* Dec. 3, 2019 Letter from M. Nicholson (Ex. F) (the Trust "agreed with Repsol's proposal to limit its collection to a period going from the close of the Repsol Defendants' collection of documents for production during the New Jersey Litigation [] to the Effective Date").

Hon. Christopher Sontchi  
March 30, 2020  
Page 9

**Weil, Gotshal & Manges LLP**

production of documents.[7] The Trust waited nearly four months later to even question whether Repsol applied the Agreed-Upon Search Terms to the New Jersey Documents. Despite backtracking on the Parties' agreement and the belated request, in the spirit of cooperation, Repsol has proposed running targeted searches over the New Jersey Documents.[8] The Parties are currently negotiating targeted search terms to apply and review, and Repsol believes the Parties will come to a consensual resolution shortly.

Accordingly, Repsol requests that the Court grant the Defendants the ability to depose 25 additional witnesses beyond that permitted by the Rules and allow the Defendants to take discovery into Underlying Creditors' Claims.

We thank you in advance and wish the Court and staff well during this global pandemic.

Sincerely,

*/s/ Edward Soto*

Edward Soto

cc:  Counsel for Plaintiff Maxus Liquidating Trust  
     Counsel for Defendant YPF, S.A.

---

[7] This production is in addition to the millions of documents already produced in the New Jersey matter—regarding the same transactions and causes of actions—that the Parties agreed did not require re-production.

[8] Repsol does not waive, and in all respects preserves, its arguments that the Parties entered into an agreement that Repsol would not run the Agreed-Upon Search Terms over the New Jersey Documents. *See* March 4, 2020 Trust Letter (Ex. C).