# EXHIBIT B



SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

+1 212 839 5622
MALTERNELSON@SIDLEY.COM

AMERICA • ASIA PACIFIC • EUROPE

October 7, 2020

**By Email**

Matthew L. Nicholson, Esq.
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
matthew.nicholson@whitecase.com

    Re:    *Maxus Liquidating Trust v. YPF S.A., et al.*,
              Adv. Pro. 18-50489 (CSS) (Bankr. D. Del.): Request to Supplement Production

Dear Matt,

        On behalf of YPF S.A., YPF International S.A., YPF Holdings, Inc. and CLH Holdings, Inc. (collectively, the "YPF Defendants"), we write in response to your letter, dated September 30, 2020.

**I.    Clawback of the Documents Identified by the Trust, Which Were Inadvertently Produced**

        Pursuant to Paragraph 19 of the Parties' *Confidentiality and Discovery Agreement and Protective Order* entered by the Court on November 7, 2019 [D.I. 209] (the "Protective Order"), Defendants YPF Sociedad Anonima, YPF International S.A., YPF Holdings, Inc. and CLH Holdings, Inc. (collectively, the "YPF Defendants") hereby notify the Trust that the documents identified in the Trust's September 30, 2020 letter with the Bates numbers YPF_MAXUS_PRIV_0000011277 through YPF_MAXUS_PRIV_0000011281 and YPF_MAXUS_PRIV_0000002140 through YPF_MAXUS_PRIV_0000002172, as well as YPF_MAXUS_PRIV_0000011068 through YPF_MAXUS_PRIV_0000011100, contain material protected by the attorney-client privilege and/or work product doctrine and were inadvertently produced by the YPF Defendants (the "Inadvertently Produced Privileged Material") that the YPF Defendants intend to claw back via this letter.

        The YPF Defendants unintentionally identified the documents constituting the Inadvertently Produced Privileged Material as documents exchanged with Mr. Garcia Tobar during the course of his employment with the Debtors. As we recently informed the Trust, at the time Mr. Garcia Tobar exchanged the Inadvertently Produced Privileged Material with YPF, S.A.'s in-house legal counsel and external legal counsel at Chadbourne & Parke LLP

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

**SIDLEY**

Matthew Nicholson
October 7, 2020
Page 2

("Chadbourne"), Mr. Garcia Tobar was not an officer or employee of the Debtors and he was the Controller for International Business at YPF, S.A. While Mr. Garcia Tobar became a member of the boards of directors of Maxus and YPF Holdings, Inc. on December 14, 2012, he was not a member of the Debtors' management until he became the Chief Financial Officer of Maxus on August 1, 2013. Similarly, Chadbourne represented YPF, S.A., not any of the Debtors. Therefore, the Inadvertently Produced Privileged Material was not subject to the Court's June 23, 2020 decision, which required the production of privileged documents withheld that were exchanged with "shared employees." *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 617 B.R. 806, 818 (Bankr. D. Del. 2020) ("Discovery Opinion").[1]

More specifically, in the Discovery Opinion, the Court explained that its ruling was limited to the issue presented to the Court concerning "shared employees" in which the YPF Defendants were relying upon a privilege applicable to "YPFH or CLHH":

> *YPF Defendants purport to rely on privilege applicable to YPF Holdings Inc. ("YPFH") or CLH Holdings, Inc. ("CLHH") as a basis to withhold producing documents and communications* that were prepared by or sent to directors, officers, or employees of the Debtors to prevent the Trust from using those documents and communications in this matter. *These "shared" employees include the Debtors' management, including their ex-Chief Executive Officers, Chief Financial Officers, treasurer, comptroller, Human Resources director, and Debtors' successive general counsels*. YPF asserts that because these individuals simultaneously worked for *YPFH or CLHH*, the holding companies that held all of the Debtors' equity, because they were working in their capacity as YPF employees and not for the Debtors.
>
> The Trust asserts that the facts on record establish that *YPFH and CLHH* never had corporate identity independent of the Debtors and both were merely empty holding companies for the Debtors' equity. The Trust further argues that all corporate actions of *YPFH and CLHH* related exclusively to management of the Debtors. . . . The Court presumes that these *shared employees* were acting on behalf of Maxus, as YPF has not met its burden. As a result, the [two hat] documents must be produced.

*Discovery Opinion*, 617 B.R. at 817-18 (emphases added).[2]

---

[1] The Court's corresponding June 23, 2020 Order [Dkt. No. 227] ("Discovery Order") simply provided: "The 'two-hat' basis for withholding production of documents and communications claimed by YPF is DENIED and production of the purportedly privileged documents is required."

[2] The Court issued its Discovery Opinion in the context of the parties' exchange of categorical (rather than line-by-line) privilege logs, without permitting the YPF Defendants to present the privileged documents for in-camera review.

**SIDLEY**

Matthew Nicholson
October 7, 2020
Page 3

Due to the fact that Mr. Garcia Tobar did not become the Chief Financial Officer of Maxus until August 1, 2013, and was not a "shared employee" as defined by the Court in the Discovery Opinion, the documents exchanged with Mr. Tobar as the Controller for International Business at YPF, S.A. prior to August 1, 2013 (i) are not covered by the Court's Discovery Opinion and Discovery Order, (ii) were inadvertently produced, and (iii) are hereby clawed back pursuant to the terms of the Protective Order.

Accordingly, we request that you and your client do not use any of the documents referenced above for any purpose and that you return or destroy each of the documents, including all copies that you sent to any parties or non-parties and any summaries thereof. We would appreciate notification once this is done.

## II. The Court's Discovery Opinion and Discovery Order Do Not Require the Production of the Documents Sought by the Trust

In the September 30, 2020 letter, the Trust improperly demands that the YPF Defendants "immediately produce [a privileged Chadbourne memo that is referenced in the Inadvertently Produced Privileged Material] as well as any drafts thereof, all exhibits thereto and any related materials of which the YPF Defendants are in possession" (the "Privileged Chadbourne Material"). Sept. 30 Letter at 2.

Neither the Discovery Opinion nor the Discovery Order require production of documents that were not exchanged with a "two-hat" or "shared" employee of the Debtors during the term of his or her employment with the Debtors. As we have already confirmed, the documents sought by the Trust were not exchanged with a "two-hat" or "shared" employee during the term of his or her employment with one of the Debtors. Therefore, the Discovery Opinion and Discovery Order do not require production of the Privileged Chadbourne Material sought by the Trust.

## III. The YPF Defendants Have Not Waived Their Right to Assert Privilege Over the Documents Sought by the Trust

### A. The Inadvertently Produced Privileged Material Is Protected from Disclosure by Attorney-Client Privilege and Work Product Doctrine

The Inadvertently Produced Privileged Material is subject to the protections of the attorney-client privilege and work product doctrine. The documents contain legal advice provided by Chadbourne (which only represented the YPF Defendants and never represented any of the Debtors) solely to YPF, S.A. personnel. The attorney-client privilege protects from compelled disclosure "(1) a communication (2) made between privileged person (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Comm'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (citation omitted). The

**SIDLEY**

Matthew Nicholson
October 7, 2020
Page 4

Inadvertently Produced Privileged Material unquestionably contains legal advice prepared by Chadbourne for the YPF Defendants, not for the Debtors.

Similarly, the Inadvertently Produced Privileged Material is protected from disclosure pursuant to the attorney work product doctrine. The work product doctrine "protect[s] the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). As discussed above, the Inadvertently Produced Privileged Material, which was prepared by Chadbourne solely for YPF, S.A.'s benefit, directly bears on, among other things, the implications of the New Jersey Action for the YPF Defendants. This brings the Inadvertently Produced Privileged Material squarely within the protection of the work product doctrine.

### B. The Privileged Chadbourne Material Sought by the Trust Is also Protected by the Attorney-Client Privilege and Work Product Doctrine

The additional documents sought by the Trust are also unquestionably privileged materials protected by the attorney-client privilege and the related work product doctrine. The documents sought by the Trust were not shared with any two-hat or shared employees during the period of their two-hat or shared employee status. Moreover, as we previously informed the Trust, the additional documents sought by the Trust in the September 30, 2020 letter were not exchanged with any individuals acting in a capacity as a director of any of the Debtors during the period he or she served as a director of the Debtors. Therefore, there is no basis to require production of the privileged documents sought by the Trust under the Court's Discovery Order or otherwise.

### C. The YPF Defendants Have Not Waived Privilege Over the Privileged Chadbourne Material

Finally, in the September 30, 2020 letter, the Trust contends that even if the documents sought by the Trust were not shared with or disclosed to a two-hat individual, the documents it seeks must still be produced on the grounds of an alleged subject matter waiver. The Trust's argument is without any basis in the law, and the Trust does not cite any authority permitting such unfettered access to the YPF Defendants' confidential and privileged communications and discussions.

Federal Rule of Evidence 502(a) provides that a "waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." As set forth in the explanatory notes provided by the advisory committee for F.R.E. 502, the "subject matter waiver is limited to situations in which a party *intentionally puts protected information into the litigation in a selective, misleading, and unfair manner*." F.R.E. 502(a) advisory committee's notes to

# SIDLEY

2008 amendment (emphasis added). As such, the scope of a subject matter waiver is generally narrow, even when the disclosure of attorney-client privileged information is intentional, and courts have accordingly refused to order a subject matter waiver of privilege where the disclosing party had not attempted to use the privileged information offensively or made a selective or misleading presentation of such privileged information. *See, e.g.*, *In re Hechinger Inv. Co. of Delaware*, 303 B.R. 18, 26 (D. Del. 2003) (disclosure of attorney work product constituted waiver but did not extend to the entire subject matter of the documents in absence of evidence that debtor was using documents as sword and shield).[3] Here, there was no waiver of privilege with respect to the Privileged Chadbourne Material.

In addition to the lack of any waiver, there is no "fairness" or other similar equity principle that would support the disclosure of "undisclosed communications or information concern[ing] the same subject matter" as required under F.R.E. 502(a). The YPF Defendants have not used the Inadvertently Produced Privileged Material or any privileged information contained therein. Similarly, the YPF Defendants have not made any selective or other presentation of the privileged information. Therefore, the YPF Defendants have not made any use of any privileged information that would support finding a waiver. *See In re Maxus*, 617 B.R. at 820. To the contrary, the YPF Defendants *wholly withheld* such privileged information from production, and strenuously objected to and litigated the issue before the Court. Only *after* the Court ordered the production of certain two-hat documents did the YPF Defendants unintentionally produce the Inadvertently Produced Privileged Material. Moreover, when the Inadvertently Produced Privileged Material was provided to the Trust, the YPF Defendants made it abundantly clear that they objected to producing those documents and other privileged information by endorsing an objection on every page of every document: "This document is being produced pursuant to the June 23, 2020 Order of the Court and the YPF Defendants reserve all rights and objections to such production on the basis that the document is privileged." Moreover, upon learning of the production, the YPF Defendants have promptly taken steps to claw-back the Inadvertently Produced Privileged Material and to prevent further disclosure upon learning of the inadvertent disclosure as provided for in the Protective Order.

\* \* \*

For the avoidance of doubt, nothing in this letter waives, or is intended to waive, any of the YPF Defendants' rights or objections, including their standing objection to the production of

---

[3] Delaware Rule of Evidence 510 identically provides that a waiver of privilege or work-product protections "extends to an undisclosed communication or information only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." D.R.E. 510(b). The comments make clear that the rule is based on F.R.E. 502, and "clarifies that when a voluntary disclosure constitutes a waiver of attorney-client privilege as to a communication or information, the scope of the waiver is generally limited to the privileged communication or information disclosed." *Id.* cmts. As such, even when considered through the lens of Delaware law, there is no basis for producing the Privileged Chadbourne Material.

# SIDLEY

Matthew Nicholson
October 7, 2020
Page 6

"two-hat" documents on the basis that such documents are privileged notwithstanding the Court's Discovery Opinion and Discover Order. The YPF Defendants further reserve all of their rights and objections, and the YPF Defendants' production of any documents pursuant to the Court's Discovery Order has been and remains subject to the YPF Defendants' reservation of all such rights and objections.

    Sincerely,

    */s/ Marissa Alter-Nelson*

    Marissa Alter-Nelson

cc:    Counsel for Repsol Defendants