

October 27, 2020

**VIA E-FILING**
The Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 Market Street
Wilmington, Delaware 19801

**Re:**   *Maxus Liquidating Trust v. YPF S.A., et al.*, **Adv. No. 18-50489-CSS (*In re Maxus Energy Corp., et al.*, No. 16-11501-CSS)**

Dear Judge Sontchi:

We write on behalf of the Trust regarding another discovery dispute that, unfortunately, has arisen in this proceeding.  Specifically, during the October 23, 2020 deposition of Mr. Roberto Fernando Segovia (Maxus's former CFO and acting CEO during the Chapter 11 Cases), Mr. Segovia was repeatedly directed by counsel for the YPF Defendants not to answer questions regarding his deposition preparation on the basis of privilege.  The Trust disputes this privilege assertion and respectfully requests that the Court address this issue in conjunction with the other privilege disputes framed in prior correspondence with the Court, particularly in light of the YPF Defendants' assertion that they will not produce for deposition *any* witness until this Court addresses the issue raised in Mr. Segovia's deposition.

By way of background, Mr. Segovia served as the purchasing manager at Debtor Tierra from 2011 to 2014, and served as the CFO and acting CEO of Maxus between 2014 and the Effective Date of the Plan.[1]  The YPF Defendants have conceded that Mr. Segovia "has not had any positions at YPF that would be relevant to this litigation,"[2] and counsel for the YPF Defendants initially conceded that the Trust could inquire as to matters pertaining to Mr. Segovia's work for Maxus.  Tr. at 28:22-29:12.  Nonetheless, because YPF rehired Mr. Segovia after the conclusion of the Chapter 11 Cases to work as a project manager in Bolivia,[3] he was voluntarily represented by Martin Jackson of Sidley Austin, LLP, counsel for the YPF Defendants, both in preparing for and attending the deposition.  *See* Tr. 2:17-19.  During that deposition, Mr. Jackson repeatedly directed Mr. Segovia not to answer questions about their pre-deposition discussions of documents

---

[1] Mr. Segovia also served as a financial director for YPF Holdings between early 2015 and the commencement of the Chapter 11 Cases.  Rough Transcript of October 23, 2020 Deposition of Fernando Segovia ("Transcript" or "Tr.") at 23:24-24:3.  Cited portions of the Transcript are included in the attached Exhibit A.

[2] August 13, 2019 email from Martin B. Jackson to Matthew Nicholson (Exhibit B hereto).

[3] It appears that, as a further implementation of the Strategy, YPF has rehired many of the directors and officers it sent to administer Maxus prebankruptcy, and now takes the position that their fealty and privileges run solely to YPF.  As a result, the Trust is now left in the position of having to interview its former CEOs, CFOs and directors in on-the-record depositions, while the only party that can have a privileged conversation with them is Maxus's direct adversary.

(Tr. 33:21-36:16),[4] as well as substantive matters, such as (i) events that occurred while Mr. Segovia was purchasing manager at Tierra (Tr. 39:23-41:9); (ii) events that occurred while Mr. Segovia was CFO of Maxus (Tr. 41:10-41:25); and (iii) Maxus's solvency in the years prior to its bankruptcy filing (Tr. 46:3-48:4).

To be clear, the question presented by this dispute is not whether a witness can have privileged communications with his personal counsel when preparing to give deposition testimony. The problem here is that Mr. Segovia's "personal counsel" is also counsel for the YPF Defendants. Thus, the question at bar is whether counsel for one party to a litigation can prepare for deposition a former employee of its litigation *adversary* about the prior employment by the adversary, and then seek to foreclose the adversary from learning what was discussed during that preparation. As the party asserting privilege, the YPF Defendants bear the burden of proof. They cannot meet that burden here.

First, there is no special cloak over a pre-deposition preparation session with counsel that forecloses discovery into non-privileged factual material. As a general matter, privilege only protects disclosure of communications pertaining to legal advice, not underlying facts, by those who communicated with the attorney. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981); *Hickman v. Taylor*, 329 U.S. 495 (1947). Further, privilege over communications with prior employees during pre-deposition preparation sessions is narrowly construed. As a leading opinion notes, only two types of information remain privileged after such a pre-deposition preparation session of a former employee of a corporation: (A) privileged information that the former employee received during his or her employment;[5] and (B) communications designed to allow the employer's counsel to ascertain facts relevant to the lawsuit that the former employee witnessed while employed. *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 41 (D. Conn. 1999). The Trust is not aware of any case that extends any privilege to an adversary's preparation of the corporation's former employee. Thus, any discussions between Mr. Segovia and Mr. Jackson regarding Maxus, including regarding the key issue of solvency, cannot be shielded.

Second, the YPF Defendants' interests and Maxus's are adverse, and thus the YPF Defendants cannot have privileged communications with Mr. Segovia on topics that relate to the

---

[4] Pursuant to the parties' agreement on a deposition protocol, the Trust provided a list of exhibits to counsel that it expected to cover during the deposition, with the express proviso that counsel was not to discuss these documents with the witness. October 21, 2020 email from Erin Smith to the Defendants (Exhibit C hereto). Nevertheless, counsel for YPF Defendants appears to have reviewed these documents with Mr. Segovia, professing confusion as to the purpose of the list provided by the Trust prior to the deposition. *See* Tr. 48:7-49:9.

[5] As to matters of *Maxus's* privileges, Mr. Segovia had no authority to waive any Maxus privilege by discussing matters with counsel for the YPF Defendants. *See* Plan Art. VI.C [Case No. 16-11501, D.I. 1460]; *see also CFTC v. Weintraub*, 471 U.S. 343, 358 (1986) (holding that a trustee of a bankrupt corporation exercises authority over corporate privilege); *Gary Friedrich Enter., LLC v. Marvel Enter., Inc.*, No. 08 Civ. 1533(BSJ)(JCF), 2011 U.S. Dist. LEXIS 54154, at *11-12 (S.D.N.Y. May 20, 2011) (employee has no independent right to exercise or waive corporate privilege); *DCG Sys., Inc. v. Checkpoint Tech., LLC*, No. C 11-03792 PSG, 2012 U.S. Dist. LEXIS 149707, at *3-4 (N.D. Cal. Oct. 17, 2012) (same).

Trust's claims against the YPF Defendants.  Mr. Jackson's concurrent representation of the YPF Defendants and Mr. Segovia (purportedly in his individual capacity) *weakens* rather than bolsters any possible claim of privilege over the pre-deposition conferences.  If Mr. Jackson, wearing his YPF-counsel hat, sat in on a pre-deposition conference between Mr. Segovia and personal counsel from a firm that did not concurrently represent the YPF Defendants, his attendance would destroy any privilege over the communications in that conference regarding the claims at issue.  *See, e.g.*, *SEC v. Gupta*, 281 F.R.D. 169, 172 (S.D.N.Y. 2012) ("The ability of a party to meet with a non-party witness, show him documents and ask him questions, and then mask the entire preparation session in the cloak of work product protection would serve to facilitate even the most blatant coaching of a witness if it could not be the subject of inquiry.").

Third, the only other conceivable basis to find privilege over Mr. Jackson's pre-deposition communications with Mr. Segovia would be if they addressed an area of common interest privilege shared by the YPF Defendants and Mr. Segovia personally.  *See* Tr. 73:23-14; *see also Performance Credit Corp. v. EMC Mortg. Corp.*, No. SACV 07-383 DOC (RNBx), 2009 U.S. Dist. LEXIS 138874, at *16 (C.D. Cal. June 1, 2009) (where defendant and non-party witness and former employee of defendant's affiliate could not show a common interest privilege, the substance of the former employee's preparatory meetings with his counsel and defendants' counsel were not privileged).  While the YPF Defendants did not assert a common interest claim at the deposition, the Trust notes that where Mr. Segovia has been exculpated and released from personal liability under the Plan, there can be no assertion of privilege on the grounds that the YPF Defendants and Mr. Segovia share a common interest against the Trust.  *See* Plan Art. XI, C, D, and E.  And, of course, this Court has already found that Maxus and the YPF Defendants are directly adverse in this lawsuit.

In light of the foregoing, the Trust respectfully requests that the Court direct Mr. Segovia to answer the Trust's questions about his discussion with Mr. Jackson concerning his former employment with Maxus during the pre-deposition preparation sessions.  The Trust also respectfully requests that the Court resolve this issue as soon as practicable, as Sidley has indicated that the YPF Defendants will not make *any* witnesses available until the Court clarifies that Sidley may prepare for deposition Maxus's former officers and directors who now work for YPF and shield those discussions from the Trust.  Tr. 171:3-15.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (Via E-Filing)

3