

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

+1 212 839 7336
JKUSTER@SIDLEY.COM

AMERICA • ASIA PACIFIC • EUROPE

November 2, 2020

**By ECF**

The Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

    Re:    *Maxus Liquidating Trust v. YPF S.A., et al.*, Adv. Pro. 18-50489 (Bankr. D. Del.)

Dear Judge Sontchi:

    The YPF Defendants respectfully submit this letter in opposition to the October 27, 2020 letter Motion to Compel the Deposition Testimony of Roberto Fernando Segovia filed by the Trust (the "Motion" or "Ltr.") [Adv. D.I. 288].[1]  The Trust has no right to discover what is classically privileged information:  confidential communications between a deponent and his or her counsel during preparation for a deposition.  Its attempt to do so here is based on the false premise that an employee of a company cannot be represented by that company's lawyers in a suit relating to his or her employment, merely because he or she may also have worked for an adverse party at some point.  That is patently wrong; of course the employee can choose his own attorney.  The Trust is kicking up dust to try to gain an unfair tactical advantage and undermine the fundamental rights of the witness, Mr. Segovia, and the YPF Defendants here.  Indeed, the Trust's tactics are all the more improper given that the Trust was aware that Sidley was representing Mr. Segovia and the other YPF employee witnesses that the Trust seeks to depose, and yet took no action until only *after* Sidley prepared him for his deposition.  Thus, the Trust waived its ability to raise any issue about Sidley's ability to represent Mr. Segovia at a time when he had every expectation that his discussions with his lawyers would remain privileged and confidential.  Such tactics are improper, prejudicial to Mr. Segovia and the YPF Defendants, and should not be countenanced by this Court.

    To level set here, the fact is that the Trust's counsel, Mr. Shore, was able to ask Mr. Segovia *any* questions he wanted on the non-privileged underlying facts relevant to the case,

---

[1] The YPF Defendants also respectfully request that the Court direct the Trust to meet and confer with the YPF Defendants with respect to the timing and substance of proposed hearings prior to contacting the Court.  On two recent occasions, the Trust has sought hearings from the Court on disputed matters without first conferring with the YPF Defendants:  during Mr. Segovia's deposition, and again to attempt to secure a court date for argument on this Motion.

The Honorable Christopher S. Sontchi
November 2, 2020
Page 2

including *every* topic the Trust raised in its Motion. He was able to ask about events that occurred while Mr. Segovia was purchasing manager at Tierra, while he was CFO of Maxus, and non-privileged facts regarding Maxus' solvency (Ltr. at 1-2), as well as his time at the YPF Defendants. Thus, the only issue for the Court to resolve is a very narrow one: whether the Trust is able to invade the attorney-client and/or work product privileges belonging to Mr. Segovia and the other noticed YPF employee witnesses in order to compel them to answer questions about what they "discuss[ed]" with their lawyer in preparation for their deposition. (Tr. 42:10-16) (Segovia deposition transcripts excerpts are attached as Ex. A hereto). Mr. Shore also improperly asked Mr. Segovia to reveal all the documents he reviewed with his lawyer. (Ex. A (Tr. 36:13-20).) That is classic privileged and work product protected information. The Trust's Motion is wholly meritless, and should be denied.

I. **Mr. Segovia Is the Former Accounting and Finance Director of Both Defendants YPF Holdings, Inc. and CLH Holdings, Inc.**

The Trust first argues that "the YPF Defendants have conceded that Mr. Segovia 'has not had any positions at YPF [S.A.] that would be relevant to this litigation'" in order to give the wrong impression that Mr. Segovia was not an employee of the YPF Defendants such that no attorney-client communication could arise. (Ltr. at 1.) First, Mr. Segovia is, in fact, a former employee of Defendants YPF Holdings, Inc. ("YPFH") and CLH Holdings, Inc. ("CLHH") and a current employee of YPF S.A.'s subsidiary (YPF Bolivia), as the Trust concedes. (*See* Ltr. at 1 n.1.) Second, the Trust grossly mischaracterizes an email exchange (Ltr. at 1 & Ex. B thereto) relating to the parties' identification of document review custodians, which referred to Mr. Segovia's employment at *Repsol YPF S.A.* from 2001 to 2011 as an internal auditor, and addressed whether he should be a document custodian from whom a consent would be required under the laws of Argentina. (*See* Ltr., Ex. B.) That Sidley email addressed Mr. Segovia's employment at Defendants YPFH and CLHH, which Mr. Segovia assumed around the same time Mr. Segovia became the CFO of Maxus (Ex. A (Tr. 82:17-21)), and pointed out that the Trust already had possession of Mr. Segovia's records for those periods.[2] (Ltr. Ex. B.) That email is of no import, however. Mr. Shore clearly concluded that Mr. Segovia's role as accounting and finance director of Defendant YPFH was indeed highly relevant, as he focused many of his questions during Mr. Segovia's deposition about his activities in that role, and the only document he marked during that seven-hour deposition was a copy of Defendant YPFH's audited consolidated financial statements. *See, e.g.,* Ex. A (Tr. 25:4-26:14; Tr. 80:14-81:17; Tr. 82:6-15; Tr. 126:23-127:25; Tr. 163:25-165:13.)

---

[2] After Maxus ceased to exist in 2017, Mr. Segovia returned to YPF and thereafter became Head of Development for YPF Bolivia, a position he holds today. Without support, the Trust asserts that YPF "rehired" many of the YPF employees who also served as an officer or director of Maxus, at some point, "as a further implementation of the "Strategy." (Ltr. at 1 n.2.) That is factually wrong and without support. Each of the YPF witnesses at issue were also officers of one or more of the YPF Defendants in addition to their employment at Maxus. The Trust's resort to such groundless assertions only underscores the fact that the Trust is unable to rely on any facts to support the so-called "Strategy."

The Honorable Christopher S. Sontchi
November 2, 2020
Page 3

**II.    Communications between Mr. Segovia and His Counsel Are Privileged**

Given there can be no doubt that Mr. Segovia was a former employee of the YPF Defendants, and is a current employee of Defendant YPF S.A.'s affiliate, there similarly can be no doubt that Mr. Segovia's selection of Sidley to represent him at his deposition created an attorney-client privilege protecting his deposition preparation from discovery. *See, e.g., McNeal v. Glazman,* No. 17-1397-RGA, 2018 WL 4109266, at *3 (D. Del. Aug. 29, 2018) (noting generally that Rule 1.13(g) allows an organization's lawyer to represent its current employees and other constituents subject to conflict rules). Yet the Trust contends that "there is no special cloak over a pre-deposition preparation session with counsel that forecloses discovery into non-privileged factual material," suggesting that the YPF Defendants were somehow precluding the Trust from questioning Mr. Segovia about such material. (Ltr. at 2.) As the deposition transcript itself makes plain, however, Mr. Segovia was never instructed not to answer questions about any underlying "non-privileged material," whether or not it was discussed between Mr. Segovia and his counsel during the preparation sessions. In fact, of nearly 200 pages of deposition testimony, Mr. Segovia was only instructed not to answer four questions seeking privileged information from Mr. Segovia's deposition preparation, and nothing else. (Ex. A (Tr. 35:24-38:19; Tr. 42:7-44:6; Tr. 48:10-50:11)).

The Trust also argues that Mr. Segovia cannot select Sidley to serve as his counsel because he worked at Debtors for a time, notwithstanding the fact that Mr. Segovia was also previously employed by two YPF Defendants (YPFH and CLHH) during the relevant period, and is a current employee of another YPF affiliate. (Ltr. at 2.) The Trust is wrong here too. Courts routinely hold that a corporation's counsel may represent a current or former employee at the latter's deposition, and that their communications in preparation for the deposition are privileged. *See, e.g., Price v. Porter Novelli, Inc.*, 2008 WL 2388709, at *2 (S.D.N.Y. June, 11, 2008) (motion to compel denied where Plaintiff's counsel "was only seeking information about the [defendant former employee] witness's preparation and not the substance" of her knowledge). Mr. Segovia selected Sidley to represent him in connection with his deposition, (Ex. A (Tr. 56:4-57:6)), and there is no basis for the Trust to now invade his confidential and privileged conversations with his appropriately chosen counsel.

**III.    Mr. Segovia and the YPF Defendants Are Not "Adverse"**

The Trust next argues that counsel for the YPF Defendants cannot have privileged communications with Mr. Segovia because the interests of Mr. Segovia and the YPF Defendants are somehow "adverse." (Ltr. at 2-3.) This is meritless. The Trust cites no case to support the proposition that because the YPF Defendants and the Trust are now adverse parties, it must follow that the YPF Defendants and Mr. Segovia have a conflict due to the fact that Mr. Segovia at one time also worked for the Debtors, such that no privilege can exist. (*Id.*) The only relevant inquiry with respect to "adversity" is whether one client will be directly adverse to another client, where the lawyer reasonably believes the lawyer will be able to provide competent and diligent representation to each affected client. *See* Del. & N.Y. Rule Prof. Conduct 1.7 ("Rules"); *McNeil*, 2018 WL 4109266, at *3 (a lawyer representing an organization may also represent employees of the corporation, rejecting motion to remove defense counsel where "[t]here is no evidence that any of the defense attorneys have a conflict of interest in this matter… and

The Honorable Christopher S. Sontchi
November 2, 2020
Page 4

employee and corporations interests are aligned").[3]  Nothing in the record supports finding any conflict between Mr. Segovia and the YPF Defendants, nor does the Trust cite to anything.  Mr. Segovia's truthful testimony has been, and will continue to be, perfectly consistent with the YPF Defendants' defense.  Moreover, conflicts with respect to representing both a corporation and a former employee typically arise where he or she may face some kind of individual liability, but here, as the Trust readily concedes, it waived any potential claims against Mr. Segovia.  (Ltr. at 3.)  Accordingly, there is no basis for the Trust to challenge Mr. Segovia's use of Sidley to represent him in his deposition.

Nor does the Trust cite any authority for its baseless argument that a corporation may not make its counsel available to represent former employees, where the former employee may have been employed, at one point in time, at an adversary in the pending litigation.  (Ltr. at 3.)[4]  As an initial matter, none of the former Maxus employees being deposed are current or former employees of the *Trust*; they all are former employees of *Debtors*.  As the Trust previously argued in this case, it is "an independent fiduciary for the Maxus estate" and therefore the Maxus witnesses' interests were not "aligned" with it.  *See* Trust Opp. To Defs' Mot. Re: Use of Prior Deposition Testimony [Adv. D.I. 165], at 19.  Thus, Mr. Segovia is decidedly *not* "a former employee of [the YPF Defendants'] litigation adversary." (Ltr. at 2.)

Further, an adversary is permitted to obtain information from a former employee of an adversary so long as any privilege with the adversary is protected.  *See, e.g.* Rule 4.2 cmt (expressly permitting counsel to obtain non-privileged information from former employee of opposing party not represented by counsel).  Indeed, in *LaPoint v. AmerisourceBergen Corp.*, Civil Action No. 327-N 2006 WL 2105862, *3 (Del. Ch. July 18, 2006) a former manager of *defendant* requested that *plaintiff* represent her.  The court rejected defendant's attempts to block the representation on the basis that *ex parte* contacts were permitted pursuant to Rule 4.2 "so as long as the attorney is seeking only key non-privileged facts, and makes the former employee aware that she cannot divulge any communications she may have had with the adverse party's attorneys, or any other privileged information."  *See also DiOssi v. Edison*, 583 A.2d 1343, 1344 (Del. Super. Ct. 1990) (motion to exclude evidence denied because "the [ethics rules] do not prohibit *ex parte* communications with former employees.").  Here, Mr. Segovia testified that he never discussed with counsel anything regarding his activities at Maxus after the bankruptcy

---

[3] The Trust wrongly relies on *Peralta v. Cendant Corp,* 190 F.R.D. 38 (D. Conn 1998) (Ltr. at 2), because that case involved pre-deposition communication between a lawyer for the defendant corporation and a former employee *who was not represented* at the deposition by counsel for her former employer.  *Peralta,* 190 F.R.D at 41-42.  Moreover, the *Peralta* court held that all communications regarding matters involving the former employee's employment remained privileged (*id.* at 41), as did defendant's counsel's legal conclusions or opinions relevant to defendant's legal strategy, which were subject to work product doctrine protection.  *Id.* at 42.
[4] The Trust cites to *SEC v. Gupta*, 281 F.R.D. 169, 172 (S.D.N.Y. 2012), but that case is inapposite.  In *Gupta,* a non-party, Lloyd Blankfein, CEO of Goldman Sachs, was interviewed by the SEC.  Counsel for the defendant then questioned Mr. Blankfein regarding his interview with the SEC and U.S. attorneys.  The court rejected the SEC's objections based on work product because Mr. Blankfein was a third party witness who was not represented by the Government lawyers, who had his own attorney, and whose employer (Goldman Sachs) was not a party in the case.  *Id.* at 172.  Notably, the *Gupta* court observed work product doctrine is available to protect disclosures by a defendant company's lawyers to an employee of that company.  *Id.* at 172-73.  Here, Mr. Segovia is not a "third party" witness, but both a current employee of an affiliate of the YPF Defendants, and a former employee of YPF Holdings, a defendant in this case.  If anything, *Gupta* compels denial of the Trust's Motion here.

The Honorable Christopher S. Sontchi
November 2, 2020
Page 5

filing (Ex. A (Tr. 41:25-42:6)), the only time such a privilege could exist in light of the Trust's broad waiver of Debtors' attorney-client privilege in this case.

The Trust's argument here fall flat for another reason: before the Segovia deposition the Trust informed Defendants that its counsel is representing John Slater and Mel Skaggs – two witnesses who served as both Maxus and Defendant YPFH and/or CLHH officers in addition to their employment by Maxus.  Surely, the Trust's newfound objection has no merit if the Trust itself can represent these witnesses at their depositions.[5]

### IV. The Trust's Arguments that Communications between Mr. Segovia and the YPF Defendants' Counsel Can Only Be Subject to Privilege if They Have a "Common Interest" Also Fails

The Trust's final argument that the "only other conceivable basis to find privilege over [Sidley's] pre-deposition communications with Mr. Segovia would be if they addressed an area of common interest privilege shared by the YPF Defendants and Mr. Segovia personally" (Ltr. at 3), also fails.[6]  As shown above (*supra* at Section II), Mr. Segovia had the right to retain Sidley in conjunction with his deposition.  He does not need a "common interest" privilege to have his attorney-client communications protected, nor for the YPF Defendants to have their privileged work product protected.  However, even if a common interest was required – it is not – such a common interest exists, as Mr. Segovia was the accounting and finance director of defendants YPFH and CLHH.  There can be no dispute that Mr. Segovia, a former officer of Defendants YPFH and CLHH and a current employee of YPF S.A.'s subsidiary (YPF Bolivia), shares a common interest with the YPF Defendants.

### V. The Court Should Deny the Trust's Motion In Light of Its Improper Gamesmanship

There is another important point for the Court to consider here.  The Trust fails to disclose to the Court in its Motion that it has known for seven months – since *March 4, 2020* – that Mr. Segovia and other current or former employees of the YPF Defendants and their affiliates are being represented by Sidley.  Sidley told this to the Trust's counsel in emails and during multiple meet and confer sessions including when Sidley informed the Trust that it would accept notices of deposition for those witnesses rather than forcing the Trust to subpoena them.  *See, e.g.,* Ex. B (March 4, 2020 Letter from J. Kuster to M. Nicholson).[7]  The Trust never

---

[5] The Trust also insinuates that Sidley improperly reviewed certain documents with Mr. Segovia prior to his depositions that were governed by the parties' Deposition Protocol.  (Ltr. at 2 n.4.)  This is false.  Nothing in the Deposition Protocol precludes a lawyer preparing a witness from independently reviewing documents that may or may not also be on a list of "possible exhibits" sent by the lawyers taking the deposition.

[6] The Trust's reliance on *Performance Credit Corp. v. EMC Mortg. Corp.*, No. SACV 07-383 DOC (RNBx), 2009 U.S. Dist. LEXIS 138874, at *16 (C.D. Cal. Jun. 1, 2009) is misplaced.  The plaintiff in that case sought testimony regarding communications between the defendant and a non-party.  The court rejected defendant's reliance on the common interest privilege in light of Defendants' "consistent representations" that "[the non-party] is not an employee of any of the defendants and is a third party witness over which they have no control.'"  Here, Mr. Segovia is a current employee of Defendant YPF S.A.'s affiliate, and a former employee of two YPF Defendants.

[7] Specifically, YPF Defendants' counsel told the Trust that "we can confirm that the YPF Defendants will produce those witnesses on the Trust's Deposition List who are currently employees:  Fernando Giliberti, Roberto

The Honorable Christopher S. Sontchi
November 2, 2020
Page 6

objected to Sidley doing so prior to Mr. Segovia's deposition.  Accordingly, as requested by the Trust, Sidley accepted service of notices of depositions for each of these deponents as lawyers for the individual YPF witnesses.  *See e.g.,* Ex. C (Notice of Deposition of Mr. Segovia [Adv. D.I. 243]); Ex. D (September 22, 2020 Email from M. Farnan).  Had the Trust truly believed there was a conflict issue, the Trust and its counsel had plenty of time to raise it before Mr. Segovia's deposition. But it never did.  Sidley not only prepared Mr. Segovia for his deposition – at which time Mr. Segovia believed his communications with Sidley were privileged and confidential – but it also appropriately began to prepare other YPF witnesses for their upcoming depositions.[8]

The Trust's gamesmanship here is self-evident.  It waited until the first deposition to spring its new-found "objection" on the YPF Defendants, in an improper attempt to invade the attorney-client privilege and obtain the work product of their lawyers.  The Trust therefore waived any objection to Sidley serving as counsel to YPF witnesses such that no privileged communications allegedly can exist in connection with their deposition preparation.  *See, e.g., Conley v. Chaffinch*, 431 F. Supp. 2d 494, 500 (D. Del. 2006) (finding waiver where plaintiff did not timely raise potential conflict of interest).

For all of the foregoing reasons, the YPF Defendants respectfully request that the Court deny the Trust's Motion in full.

Respectfully submitted,

*/s/ John J. Kuster*

John J. Kuster

cc:  Counsel of record (via ECF)

---

(Fernando) Segovia Tejerina, Francisco Garcia Tobar, Sebastian Sanchez Trolliet. *The YPF Defendants also expect to represent* and produce Jose (Daniel) Rico Gonzalez."  (Emphasis added.)

[8] The Trust wrongly asserts that the YPF Defendants have refused to produce any witnesses for deposition until the Court rules on their Motion.  Rather, the YPF Defendants will not produce the five current YPF employees (Messrs. Trolliet, Garcia Tobar, Rico, Monti, and Segovia) who were also former officers, directors, or employees of the Debtor.  Nothing prevents the Trust from proceeding with other deponents on its witness list while its Motion is pending.