IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 16-11501 (CSS)<br>(Jointly Administered) |
| MAXUS LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>-against-<br><br>YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO.,<br><br>Defendants. | Adv. Proc. No. 18-50489 (CSS) |

**DECLARATION OF DANIEL GONZÁLEZ CASARTELLI IN SUPPORT OF
THE YPF DEFENDANTS' MOTION TO DISQUALIFY WHITE & CASE
LLP AS COUNSEL FOR THE MAXUS LIQUIDATING TRUST**

I, Daniel González Casartelli, pursuant to 28 U.S.C. § 1746, declare as follows:

1. Between April 2018 and May 2020, I was Chief Executive Officer of YPF S.A. ("YPF"), a defendant in the above-captioned action. Before serving as YPF's CEO, I was the company's Chief Financial Officer from July 2012 to April 2018. Prior to joining YPF, I was Head of Mergers and Acquisitions for Latin America and later President for the Southern Cone at Merrill Lynch & Co. I submit this declaration in support of the YPF Defendants' Motion to Disqualify White & Case LLP as Counsel for the Maxus Liquidating Trust in the above-



captioned action.

2. As part of my role as CEO, I was involved with the engagement and supervision of YPF's outside counsel in major litigation, including *Maxus Liquidating Trust v. YPF S.A. et al.* ("Maxus Litigation"). The below declaration is based on my own personal knowledge, my review of YPF files and records, and my conversations with other personnel at YPF. By providing these statements and the information contained therein, I do not intend to waive, and to the contrary I intend to preserve, all applicable privileges under all applicable law, including by not limited to the attorney-client privileged and the work product doctrine.

3. I first met Jessica Boelter, who was then a partner at Sidley Austin LLP ("Sidley"), in July of 2018 during the negotiation of Sidley's engagement with YPF, when she was one of two Sidley partners responsible for the negotiation and conclusion of Sidley's engagement as counsel to YPF in the Maxus Litigation.

4. After Sidley was engaged, I regarded Ms. Boelter as one of YPF's primary contact points with Sidley.

5. For example, on October 26, 2018, I and other YPF senior management visited New York City to ring the closing bell at the New York Stock Exchange, as part of a ceremony commemorating YPF's twenty-five years as a publicly listed company. That evening, YPF held a reception at the Rockefeller Center attended by myself and those senior managers, and to which various YPF financial advisors and business partners were invited. The only legal counsel YPF invited to the reception were James Conlan and Ms. Boelter of Sidley; none of YPF's other attorneys were invited to attend. Ms. Boelter attended the reception as Sidley's sole representative. At the event, I met with Ms. Boelter and we discussed various aspects of the Maxus Litigation.



6.      During my time as YPF CEO, I was frequently updated on the status of the Maxus Litigation and was apprised of the legal strategy that our team at Sidley devised and executed on YPF's behalf. At all times during this period, I regarded Ms. Boelter as an integral part of YPF's outside legal team and depended on her advice, counsel and discretion on a wide range of highly sensitive topics, including strategy for litigating the case and approaching the Court, the tactics of the Maxus Liquidating Trust and its counsel White & Case LLP ("White & Case"), potential outcomes, settlement options, and other critical topics.

7.      I would receive these updates by phone, email, and in certain instances at in-person meetings with our outside counsel at Sidley. For example, on May 15, 2019, I traveled to New York City and met with the senior Sidley team members, including Ms. Boelter, to discuss the conduct of the Maxus Litigation and our strategy going forward. At the meeting, we discussed key aspects of YPF's litigation strategy, potential strategies for settlement or other out-of-court resolutions, and the larger business and corporate dimensions of the litigation. Ms. Boelter actively participated in the discussion of these issues, each of which were and remain highly sensitive.

8.      In general, to the best of my recollection, nearly all of my interactions with Sidley attorneys included Ms. Boelter.

9.      At no time did Ms. Boelter tell me or, to the best of my knowledge, anyone else at YPF that she planned to reduce or cease her involvement in the Maxus Litigation. Nor did Ms. Boelter inform me or, to the best of my knowledge, anyone else at YPF that she was in a romantic relationship with Thomas Lauria of White & Case.

10.     On or shortly after September 12, 2020, I learned that another Sidley lawyer had informed YPF that Ms. Boelter planned to leave Sidley for White & Case. This was also the first



time I heard it reported that Ms. Boelter had been involved for some time in a romantic relationship with Mr. Lauria.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 14, 2020
       Buenos Aires, Argentina

_____
Daniel González Casartelli