IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 16-11501 (CSS)<br>(Jointly Administered) |
| MAXUS LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>-against-<br><br>YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO.,<br><br>Defendants. | Adv. Proc. No. 18-50489 (CSS) |

**DECLARATION OF GERMÁN FERNÁNDEZ LAHORE IN SUPPORT OF THE YPF DEFENDANTS' MOTION TO DISQUALIFY WHITE & CASE LLP AS COUNSEL FOR THE MAXUS LIQUIDATING TRUST**

I, Germán Fernández Lahore, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney admitted to practice in the city of Buenos Aires in the Argentine Republic. I am currently Vice President of Legal Affairs at YPF S.A. ("YPF"), defendant in the above-captioned action. I have worked in the legal department of YPF since 2002 and have been Vice President of Legal Affairs since 2015. Previously, I was an attorney with the firm Beccar Varela in Buenos Aires, Argentina. I submit this declaration in support of the YPF Defendants' Motion to Disqualify White & Case LLP as Counsel for the Maxus Liquidating Trust in the

above-captioned action.

2.      As Vice President of Legal Affairs, I serve as YPF's general counsel, and am responsible for managing YPF's relationships with its outside counsel and supervising their representation of YPF. The below statements are based on my personal knowledge and recollection, my conversations with other YPF personnel, and my review of internal YPF files and records. By providing these statements and the information contained therein, I do not intend to waive, and to the contrary I intend to preserve, all applicable privileges under all applicable law, including but not limited to the attorney-client privilege and the work product doctrine.

3.      I was first introduced to Jessica Boelter in July 2018, when she was a Sidley Austin LLP ("Sidley") partner who was seeking to represent YPF in bankruptcy-related litigation. The Chairman of the Legal and Institutional Affairs Committee of the YPF board informed me he had been speaking with Ms. Boelter and her colleague James Conlan concerning the potential retention of Sidley as YPF's counsel with respect to the Maxus Liquidating Trust's action against YPF and its affiliates ("Maxus Litigation"). At this time, Ms. Boelter and Mr. Conlan provided an initial assessment of the case and proposed a strategic approach to the litigation. Following this pitch, the Chairman suggested I speak with Ms. Boelter and Mr. Conlan to negotiate the potential representation.

4.      I was responsible for negotiating the terms of Sidley's engagement, and Ms. Boelter was responsible for negotiating on behalf of Sidley, alongside Mr. Conlan. She also negotiated the fee structure and other details of the engagement letter YPF ultimately concluded with Sidley. That letter was signed on July 20, 2018. Mr. Conlan signed for Sidley, with a "cc" to Ms. Boelter. No other Sidley attorneys had their names on the engagement letter.

5.      Once the engagement began, Ms. Boelter continued to be extensively involved both in the conduct of the Maxus Litigation and communications about that litigation. Based upon a review of my emails, I exchanged over 300 emails with Ms. Boelter concerning the Maxus Litigation and related legal matters. Ms. Boelter was also copied on several hundred other emails between Sidley lawyers and YPF personnel, with the last email being sent on September 11, 2020. I also spoke with Ms. Boelter on the telephone about the case and met in person with her as well.

6.      In the course of these communications, Ms. Boelter was privy to and provided legal advice to YPF on numerous highly sensitive and confidential topics related to the Maxus Litigation, including, but not limited to, YPF's motion to dismiss; the Court's decision denying the motion to dismiss; review of YPF's relevant documents (including for purposes of making privilege determinations); YPF's engagement of local counsel; YPF's communications; advice with respect to a possible motion to withdraw the reference, and the merits of litigating the case in another forum; the possibility of settlement or other out-of-court resolution of the case; YPF's disclosures pursuant to securities laws; certain transactions between YPF and Maxus Energy Corp.; YPF agreements with Repsol; and corporate law issues related to the case. In addition, Ms. Boelter was copied on numerous emails concerning YPF's efforts to obtain third-party discovery from Occidental ("Occidental") and other strategic points with respect to Occidental, as well as on emails concerning Occidental's litigation against YPF in New Jersey. She also participated in calls with YPF's communications team to discuss the public relations aspects of the case.

7.      In addition to these many emails and telephone communications, I and other members of YPF's senior management met in person with Ms. Boelter to discuss the Maxus

Litigation. For example, alongside YPF's Controller, Diego Pando, I met with Ms. Boelter and other Sidley lawyers in New York City on September 20, 2018. We discussed various aspects of the litigation strategy at this meeting, and Mr. Pando provided Ms. Boelter and the other Sidley lawyers with numerous confidential details about YPF's financial and business situation as they related to the litigation.

8.      On February 21, 2019, I flew from Buenos Aires to New York City to meet with Ms. Boelter and other Sidley partners. The purpose of the meeting was to discuss various strategic options in response to the Court's denial of the YPF Defendants' Motion to Dismiss the Adversary Complaint. At this meeting, in which Ms. Boelter was an active participant, we discussed various aspects of YPF's ongoing litigation strategies, related confidential corporate and business considerations, and the possibility of out-of-court resolution of the case.

9.      To the best of my recollection, Ms. Boelter never told me that she planned to reduce or end her involvement in the Maxus litigation. Nor, to my knowledge, did Ms. Boelter say as much to any other YPF personnel. On August 5, 2020, Sidley sent me a strategic presentation summarizing the status of the Maxus Litigation; the materials included Ms. Boelter's photograph and biography among the list of Sidley partners working on the case.

10.     The first time I was informed that Ms. Boelter might no longer be involved with the case was on Saturday, September 12, 2020, when another partner at Sidley informed me that Ms. Boelter was planning to leave the firm for White & Case. At that time, I was also informed of Ms. Boelter's romantic relationship with Mr. Thomas Lauria, Global Head of White & Case's Financial Restructuring and Insolvency Practice. I understand that White & Case and in particular Mr. Lauria are counsel of record to Occidental in the above-captioned bankruptcy matter and, as noted above, Ms. Boelter and other members of the Sidley team received YPF

confidential information concerning and provided YPF with legal advice concerning litigation between YPF and Occidental.

11. I was both surprised and alarmed when I learned that Ms. Boelter intended to join the law firm representing YPF's adversaries in the Maxus Litigation. I had regarded Ms. Boelter as one of YPF's key legal advisers and understood her to possess both an intimate understanding of YPF's litigation strategy and a great deal of YPF's other confidential information. Now that Ms. Boelter has joined White & Case, I have significant concerns that this information has been or will be exposed and could be used against YPF in the Maxus Litigation, or for other purposes.

12. To my knowledge, neither White & Case nor Ms. Boelter ever asked YPF to waive the conflict created by Ms. Boelter's decision to take on a role at White & Case.

13. I am aware of at least one occasion on which White & Case sought a conflict waiver from YPF in connection with its representation of the Maxus Liquidating Trust in litigation against YPF. On April 8, 2020, White & Case informed YPF through its counsel that White & Case had made an offer of employment to a former associate of Norton Rose Fulbright LLP ("Norton"). Norton was counsel to YPF in the bankruptcy of Maxus Energy Corporation, and this junior associate had performed some work for YPF and its affiliates in the Maxus Energy Corporation bankruptcy. White & Case requested that YPF waive any conflict that would be created by hiring this associate because of White & Case's representation of the Maxus Liquidating Trust, and that YPF agree not to object to White & Case's continued representation of the Trust. YPF declined to waive the conflict due to its significant concerns about the protection of the confidential information YPF had disclosed to Norton.

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Dated: December 18, 2020
      Buenos Aires, Argentina

                                                                                   Germán Fernández Lahore