# Exhibit A

**WHITE & CASE**

December 4, 2020

VIA E-MAIL

Howard Zelbo, Esq.
Victor Hou, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006-1470

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
**T** +1 212 819 8200

whitecase.com

Dear Messrs. Zelbo and Hou:

We respond to your inquiries of Tuesday evening as follows:

1.    We do not understand your first inquiry. This Firm is no longer representing any of Occidental Chemical Corporation, Occidental Petroleum Corporation, or any affiliates thereof ("Occidental") in connection with *In re Maxus Energy Corp.*, No. 1:16-bk-11501 (Bankr. D. Del.) (the "Bankruptcy Proceedings"). Our work for Occidental in connection with the Bankruptcy Proceedings commenced in July 2016 and concluded in July 2017. We note that an inclusionary screen was established for that matter on July 1, 2016 and that all timekeepers who billed time to that matter received notice of the inclusionary screen.

2.    With respect to your second inquiry, a total of 13 lawyers from our Financial Restructuring & Insolvency group have recorded time to the present dispute between the Maxus Liquidating Trust and your client since the date Ms. Boelter joined the Firm. Twelve of the thirteen received notice of the screen on October 1, 2020, the date Ms. Boelter joined the Firm. The thirteenth lawyer, an associate, did not join the Firm until mid-October and was not assigned to the matter until November 17, 2020. That lawyer received notice of the screen on November 17, 2020. Of the 13 lawyers, four are partners affiliated with our New York office and nine are associates, seven of whom are employees of our New York office, one of whom is an employee of our Miami office and one of whom is an employee of our Chicago office.

3.    With respect to your third inquiry, Mr. Shore did not state on the call last week that Mr. Lauria had ever assisted in any respect with this Firm's representation of the Maxus Liquidating Trust (nor is that the case). What Mr. Shore did say on the call was that he might have conferred briefly with Mr. Lauria about this Firm's prior representation of Occidental in the Bankruptcy Proceedings and that we would check our records in that matter. We have now checked and, in fact, no time was diaried by Mr. Lauria to this Firm's work for Occidental in the Bankruptcy Proceedings which, in any event, concluded in July 2017, over three years before Ms. Boelter joined this Firm. We trust this satisfies your inquiry.

4.    With respect to your fourth inquiry, Firm management was aware of Mr. Lauria's and Ms. Boelter's relationship long before Ms. Boelter became a candidate for partner of this Firm. We cannot provide a precise date on which the relationship was known to us.

**WHITE & CASE**

Howard Zelbo, Esq.
Victor Hou, Esq.
December 4, 2020

We note your continued reservation of rights and in return remind you that we reserve all rights ourselves, including the right to treat your continued inquiries as an inappropriate manner of seeking discovery and any motion you choose to bring as a tactical ploy to deprive our client of counsel of choice.

Sincerely,

**Jennifer Paradise**
Partner and General Counsel

**T** +212.819.2664
**E** jparadise@whitecase.com

cc:    Christopher Shore, Esq.
        Glenn Kurtz, Esq.

2

# Exhibit B

WHITE & CASE

October 1, 2020

John J. Kuster, Esq.
*Sidley Austin LLP*
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
Fax: (212) 839-5599
jkuster@sidley.com

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
**T** +1 212 819 8200

whitecase.com

Dear Mr. Kuster,

As you are aware, Jessica Boelter joined White & Case LLP ("W&C") as a partner this morning.  The purpose of this letter is to confirm that W&C has taken appropriate steps to screen Ms. Boelter from its work for the Maxus Liquidating Trust in the matters captioned *Maxus Energy Corporation*, Docket No. 1:16-bk-11501 (Bankr. D. Del.) and *The Maxus Liquidating Trust v. YPF S.A. et al*, Docket No. 1:18-ap-50489 (Bankr. D. Del.) and related proceedings (collectively the "Screened Matter").  Please accept this notice pursuant to ABA Model Rule 1.10(a)(2), which governs the Screened Matter pursuant to the District of Delaware Local Rule 83.6(d).

The screening procedures include, but are not limited to:

•       Restricting Jessica Boelter from all electronic files in W&C's document management systems related to the Screened Matter;

•       Segregating hard copy files related to the Screened Matter and placing them in a restricted location to which Jessica Boelter does not have access;

•       Instructing W&C's personnel working on the Screened Matter not to discuss the Screened Matter with or in the presence of Jessica Boelter;

•       Instructing W&C's personnel working on the Screened Matter to share files related to the Screened Matter with Jessica Boelter or otherwise permit her access to such files;

•       Instructing Jessica Boelter that she is prohibited from discussing the Screened Matter with anyone at W&C;

John J. Kuster, Esq.
October 1, 2020

• Instructing Jessica Boelter that she is prohibited from accessing any electronic or hard copy files related to the Screened Matter and that she has been restricted from accessing those files; and

• Ensuring that Jessica Boelter will not be apportioned any part of the fee from the Screened Matter pursuant to ABA Model Rule 1.10(a)(2).

Jessica Boelter has acknowledged receipt of the screening instructions and agrees to follow the instructions.

Although you are permitted to seek judicial review of this screen, we are confident that the screen meets all required criteria under applicable ethical rules and case law.  If you have any questions, please contact me.

Very truly yours,

**Jennifer Paradise**
Partner and General Counsel

2

# Exhibit C

# WHITE & CASE

October 27, 2020

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
**T** +1 212 819 8200

whitecase.com

VIA E-MAIL: hzelbo@cgsh.com

Howard Zelbo, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY  10006-1470

**Re:   Maxus Entergy Corp., Docket No. 1:16-bk-11501 (Bankr. D. Del.) and
       _The Maxus Liquidating Trust v. YPF S.A. et al._, Docket No. 1:18-ap-50489
       (Bankr. D. Del.) (together with all related negotiations and proceedings,
       "the Maxus Proceedings")**

Dear Mr. Zelbo:

We respond to your October 14, 2020 letter as follows:

_First,_ we disagree with your assertion that the ABA Model Rules of Professional Conduct do not apply here.  They do.

_Second,_ we do not agree that any special or extraordinary circumstances exist that would compel a court to conclude that compliance with the screening provisions set forth in the ABA Model Rules will not provide your client with adequate protection to ensure a fair trial proceeding.  The applicability of the Model Rules' screening procedures are not dependent on the seniority of the lawyer involved or the type of work he or she performed. We also reject the proposition that, because Ms. Boelter happens to be engaged to Tom Lauria, the Global Head of our Financial Restructuring and Insolvency Practice, the screen is somehow ineffective.  Ms. Boelter has been instructed not to discuss her prior involvement in the Maxus Proceedings with Mr. Lauria.  Mr. Lauria has no day-to-day involvement in the Maxus Proceedings.  That case is just one of almost 1800 matters that he oversees as Global Head of this practice.  Given the detailed screen W&C has imposed, there is no realistic risk that YPF's confidences will be disclosed and certainly no claim that such disclosure has occurred in the two years Ms. Boelter and Mr. Lauria's relationship has lasted.  We understand YPF's trial team from Sidley Austin LLP has been aware of the relationship for more than a year and has not previously raised any concerns.

_Third,_ we do not understand the relevance to these proceedings of our decision <u>not</u> to hire a junior associate from Norton Rose who worked on the Maxus Proceedings after your client repeatedly refused to grant a waiver to permit the associate to join this Firm.  We note in this regard that the associate you refer to was not admitted pro hac vice in Delaware in connection with the Maxus Proceedings.

Howard Zelbo, Esq.
October 27, 2020


     In short, as my October 1, 2020 letter makes clear, the Firm intends to fully comply with Model Rule 1.10(a)(2).  We wish to assure YPF that in accordance with our policies, any breach, inadvertent or otherwise, of an ethical screen will be treated as a serious disciplinary offense.  We have communicated this to Ms. Boelter, and she has acknowledged it.

     Notwithstanding our strong disagreement with the assertions in your letter, we will, of course, make ourselves available to discuss with you the steps we have taken to screen Ms. Boelter from the lawyers representing Maxus Liquidating Trust.  Please contact me with suggested dates and times if you would like to take us up on this offer.


Very truly yours,

**Jennifer Paradise**
Partner and General Counsel


cc:    Mr. Victor Hou

2

# Exhibit D

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

THOMAS J. MOLONEY
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
HOWARD S. ZELBO
DAVID E. BRODSKY
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE

CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
RESIDENT PARTNERS

SANDRA M. ROCKS
JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

D: +1 212 225 2452
hzelbo@cgsh.com

October 14, 2020

Jennifer Paradise, Esq.
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095

> Re:  *Maxus Energy Corporation*, Docket No. 1:16-bk-11501 (Bankr. D. Del.) and *The Maxus Liquidating Trust v. YPF S.A. et al*, Docket No. 1:18-ap-50489 (Bankr. D. Del.)

Dear Ms. Paradise:

I write on behalf of our clients YPF S.A. and certain affiliated entities (collectively, "YPF") in response to your October 1, 2020 letter to John J. Kuster, Esq., of Sidley Austin LLP, counsel to YPF in the above-referenced proceedings. Your letter notes that Jessica Boelter, Esq., formerly of Sidley Austin, recently joined White & Case LLP and purports to provide notice that your firm has implemented screening procedures pursuant to ABA Model Rule 1.10(a)(2) and District of Delaware Local Rule 83.6(d). You assert that these procedures operate to remove any conflict of interest arising from Ms. Boelter's transition to your law firm.

We disagree. Although your letter cites certain Delaware Rules of Professional Conduct to justify the use of screening procedures, YPF justifiably expected that the New York Rules of Professional Conduct would apply to its relationship with Ms. Boelter. Specifically, the engagement letter between YPF and Sidley Austin, which was negotiated in part by Ms. Boelter herself, expressly provides that the rules of professional conduct and laws of the State of New York will govern. This is consistent with the fact that YPF retained lawyers in Sidley Austin's New York office, most of whom, including Ms. Boelter herself, are admitted to practice in New York, to represent it in these matters. There is no question that the screening procedures you have described cannot, absent YPF's consent, cleanse the conflict that Ms. Boelter and her partners at White & Case have under New York Rule of Professional Conduct 1.10(c).

This conclusion is reinforced by White & Case's prior conduct in this matter. Specifically, in April 2020, in an analogous (though less egregious) circumstance, White & Case requested that YPF formally waive, in writing, any conflict of interest arising from your firm's hiring of a former associate in Norton Rose's New York office. That associate possessed far less confidential information belonging to YPF than Ms. Boelter.

Moreover, even applying the Delaware Rules of Professional Conduct, the screen proposed by White & Case in the specific circumstances of this case is insufficient to mitigate the consequences of the firm's conflict of interest, now that Ms. Boelter is one of its members. Ms. Boelter played a key role in negotiating Sidley Austin's engagement with YPF and was a key architect of YPF's legal strategy in litigating the above-referenced matter. In her role, Ms. Boelter acquired substantial client confidences and secrets relating to this specific litigation, and won YPF's trust.

To YPF's great shock, Ms. Boelter is now a partner in White & Case's Financial Restructuring and Insolvency Practice in New York, the *very* Practice that is actively prosecuting the above-referenced litigation against YPF. Indeed, the caption in this litigation lists as counsel to plaintiff (inter alia) White & Case partner Thomas MacWright, who is described on White & Case's website as a member of the Financial Restructuring and Insolvency Practice in New York, and White & Case partner Chris Shore, who identifies the firm's Commercial Litigation Practice and its Financial Restructuring and Insolvency Practice in New York under his "Experience" tab.

Under these circumstances—where one of the key architects of YPF's defense strategy is now a partner in the law firm prosecuting this action and, indeed, in the same Practice that is working on this action—YPF has a legitimate and serious concern that no firewall, and certainly not the one White & Case has proposed, could adequately protect its confidential and privileged information.[1] This concern about the insufficiency of these screening procedures is only exacerbated by the fact that, as YPF has just learned, Ms. Boelter is engaged to be married to Thomas Lauria, the Global Head of White & Case's Financial Restructuring and Insolvency Practice, which further renders your proposed screen entirely inadequate to vindicate YPF's legitimate expectations in engaging Ms. Boelter and to protect its interests in this lawsuit.

Given the seriousness of this situation, we request that you inform us of your firm's position in light of the facts discussed above as promptly as possible. We would also welcome the opportunity to discuss this matter with you.

YPF reserves all rights and remedies, including but not limited to moving to disqualify White & Case from the above-referenced matter.

---

[1]     *See, e.g.*, DELAWARE RULES OF PRO. CONDUCT, r. 1.10 cmt. 6 ("Where the conditions of paragraph (c) are met, imputation is removed, and consent to the new representation is not required. Lawyers should be aware, however, that courts may impose more stringent obligations in ruling upon motions to disqualify a lawyer from pending litigation."); Enzo Life Scis., Inc. v. Adipogen Corp., No. 1:11-CV-00088-RGA, 2013 WL 6138791, at *3−4 (D. Del. Nov. 20, 2013).

Sincerely,

/s/ Howard S. Zelbo
Howard S. Zelbo
(hzelbo@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999

# Exhibit E

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2609
vhou@cgsh.com

THOMAS J. MOLONEY
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
HOWARD S. ZELBO
DAVID E. BRODSKY
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE

CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
RESIDENT PARTNERS

SANDRA M. ROCKS
JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W. S. YUDIN
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

November 6, 2020

**VIA EMAIL**

Jennifer Paradise, Esq.
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095

> Re: *Maxus Energy Corp.*, Docket No. 1:16-bk-11501 (Bankr. D. Del.) and *Maxus Liquidating Trust v. YPF S.A. et al*, Docket No. 1:18-ap-50489 (Bankr. D. Del.)

Dear Jennifer:

    I write in response to your letters of October 1 and October 27, 2020. Without conceding that any ethical screen could adequately address the conflict created by your firm's ongoing representation of Ms. Boelter's litigation adversaries, we ask that you provide promptly the following information concerning White & Case's efforts to protect confidential information of YPF S.A. and its affiliates (collectively, "YPF"), so that YPF can assess the risks to YPF's confidences as well as to the integrity of the above-captioned proceedings.

1. Please provide the date(s) on which the "screening procedures" described by your October 1, 2020 letter were adopted.

2. Please provide the specific instructions and any other document given to White & Case personnel, including Ms. Boelter, concerning any screening procedures or measures that were adopted with respect to Ms. Boelter (the "Screening Measures"), as well as any other written description of the Screening Measures. Please also provide the date(s) on which any such instructions were sent, and please identify to whom they were sent and

Jennifer Paradise, Esq., p. 2

the method(s) by which they were sent.  To the extent any White & Case personnel were asked to acknowledge receipt or understanding of these measures, please also provide the date(s) of such acknowledgement.

3.  Please explain the meaning of your assertion in your October 1 letter that Ms. Boelter is "[r]estrict[ed] from all electronic files in W[hite] & C[ase]'s document management systems related to the Screened Matter."  In particular, please describe all measures that prevent Ms. Boelter from accessing those files, the instructions provided to White & Case personnel concerning those measures, and how (as a logistical matter) and by what criteria (as a substantive matter) electronic files are identified as "related to the Screened Matter."  In addition, please provide the date on which any such restrictions were implemented.

4.  Please explain the meaning of your assertion in your October 1 letter that "hard copy files related to the Screened Matter" are "plac[ed] . . . in a restricted location to which Jessica Boelter does not have access."  In particular, please describe all measures that prevent Ms. Boelter from accessing those files, the instructions provided to White & Case personnel concerning those measures, and how (as a logistical matter) and by what criteria (as a substantive matter) hard copy files are identified as "related to the Screened Matter."  In addition, please provide the date on which any such restrictions were implemented.

5.  Please provide any and all information Ms. Boelter provided to White & Case concerning her representation of YPF and the nature and substance of her involvement in the above-referenced cases.

6.  Please provide any and all information Mr. Bojan Guzina provided to White & Case concerning his knowledge of any representation of YPF and the nature and substance of his involvement, if any, in the above-referenced cases.

7.  Please provide any and all information concerning any proposal or attempt to obtain a conflict waiver from YPF with respect to Ms. Boelter or Mr. Guzina joining White & Case.

8.  For each matter on which Ms. Boelter or Mr. Guzina has been staffed since joining White & Case, please identify all attorneys or staff staffed on those matters who have ever also been staffed on matters for:

    a.  Maxus Energy Corp., the Maxus Liquidating Trust, its trustee, or any affiliate of the foregoing (collectively, "Maxus"), or

    b.  Occidental Chemical Corp., Occidental Petroleum Corp., or any affiliate of the foregoing (collectively, "Occidental").

9.  For each matter on which Ms. Boelter or Mr. Guzina has been staffed since joining White & Case, please identify any experts or consultants retained by White & Case or the client in those matters who have also been involved with Maxus or Occidental matters.

Jennifer Paradise, Esq., p. 3

10. Please state whether Mr. Thomas Lauria has ever billed time to, or otherwise worked on or supervised, any Maxus matters.  If so, please provide the hours and date(s) of any such work and describe the nature of any such work.  Please also state whether Mr. Lauria may bill time to or otherwise work on or supervise any Maxus matters in the future.

11. Please provide the total time Mr. Lauria has billed to matters for Occidental since January 1, 2016, the dates of such work, and the nature of such work.  Please also state whether Mr. Lauria may bill time to or otherwise work on or supervise any Occidental matters in the future.

12. Please identify:

    a. the first date on which any employee or partner of White & Case first discussed with Ms. Boelter the possibility of her joining White & Case;

    b. the date on which White & Case first made an offer of employment or partnership to Ms. Boelter, and, if not identical, the date on which White & Case made the offer of partnership on the basis of which Ms. Boelter joined the firm; and

    c. the date on which Ms. Boelter accepted any offer of employment or partnership with White & Case, and, if not identical, the date on which Ms. Boelter accepted the offer of partnership on the basis of which she joined the firm.

13. Please identify each attorney, including associates, who has joined White & Case since the commencement of White & Case's representation of Maxus, and who was, at any time prior to joining White & Case, an employee or partner of Sidley Austin LLP, Norton Rose Fulbright, or Chadbourne & Park.  For each such attorney, please:

    a. Provide the date on which that attorney joined White & Case and, to the best of White & Case's knowledge, the dates of that attorney's employment by or partnership in Sidley Austin LLP, Norton Rose Fulbright, or Chadbourne & Park;

    b. Provide all information, if any, that attorney provided to White & Case concerning any representation of or work for YPF;

    c. State whether the attorney has been staffed on or worked on, or may be staffed on or work on in the future, any matter for Maxus or Occidental; and

    d. Identify all screening procedures or measures, if any, that have been implemented to prevent that attorney from disclosing confidential YPF information to others at White & Case, or to prevent the disclosure of confidential Maxus or Occidental information to that attorney, as well as the date on which such screening measures were implemented.

14. Please describe any analysis or opinion that White & Case obtained from a third party with respect to the adequacy of the Screening Measures to address the conflict created by your firm's ongoing representation of Ms. Boelter's litigation adversaries.

Jennifer Paradise, Esq., p. 4

15. Please identify the first date on which you or any partner at White & Case learned of the existence of a romantic relationship between Ms. Boelter and Mr. Lauria, and please describe the screening measures, if any, that were implemented with respect to this relationship before October 1, 2020, and the date on which such measures were implemented.

***

     Please provide written answers to the above questions and the documents that these questions request by close of business on Friday, November 13, 2020.  YPF continues to reserve all rights.

     Sincerely,

     Victor L. Hou

# Exhibit F

| | |
|---|---|
| **From:** | Paradise, Jennifer |
| **To:** | Hou, Victor L. |
| **Cc:** | Zelbo, Howard S. |
| **Subject:** | Your Correspondence of November 6 |
| **Date:** | Thursday, November 12, 2020 3:17:30 PM |
| **Attachments:** | image001.png |

Dear Victor,

I write in response to your letter of November 6, 2020.  We note first that your correspondence to date does not appear to be targeted to ensuring that client confidences are protected but rather to engage in discovery prior to contemplated litigation.

To the extent you do want to discuss the items in your letter that relate to the efficacy of our screening provisions, we invite you to give us a call.   We seek your assurance in advance that any such discussion will be protected as settlement communications pursuant to FRE Rule 408.
Warm regards,
Jennifer

**Jennifer Paradise**  |  General Counsel
**T** +1 212 819 2664   **M** +1 347 254 1239   **E** jparadise@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095

===================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

===================================================================

# Exhibit G

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2609
vhou@cgsh.com

THOMAS J. MOLONEY
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
HOWARD S. ZELBO
DAVID E. BRODSKY
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRÉS DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE

CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
    RESIDENT PARTNERS

SANDRA M. ROCKS
JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
    RESIDENT COUNSEL

LOUISE M. PARENT
    OF COUNSEL

November 18, 2020

<u>VIA EMAIL</u>

Jennifer Paradise, Esq.
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095

Re: *Maxus Energy Corp.*, Docket No. 1:16-bk-11501 (Bankr. D. Del.) and *Maxus Liquidating Trust v. YPF S.A. et al.*, Docket No. 1:18-ap-50489 (Bankr. D. Del.)

Dear Jennifer:

I write in response to your e-mail, dated November 12, 2020, ("November 12 Email"), which purports to respond to my November 6 letter requesting that White & Case promptly provide specific information concerning your firm's efforts to protect confidential information of YPF S.A. and its affiliates (collectively, "YPF") so that YPF can assess the risks to its confidences and the integrity of the above-captioned proceedings. Your refusal to provide the requested information, apparently based on the pejorative suggestion that YPF's inquiries are not "targeted to ensuring that client confidences are protected" and appear to be motivated by a desire "to engage in discovery prior to contemplated litigation," is inconsistent with both your firm's ethical obligations and with your prior acknowledgement in your October 1 letter that YPF is entitled to seek judicial review of the adequacy of the assurances you have offered. It is unclear how you expect YPF to rely solely on your conclusory representations about the efficacy and sufficiency of the screen purportedly erected by White & Case when the firm fails to provide basic details about its scope, its features, or the timing of its implementation. Your failure to provide *any* information in response to our questions is both concerning and untenable, and your offer to only share some unspecified information about White & Case's purported screen as part of "settlement negotiations" subject to the protections of Federal Rule of Evidence 408 is unfounded and unacceptable for several reasons.

Jennifer Paradise, Esq., p. 2

*First*, your position that you will withhold critical information about White & Case's protective screen unless YPF agrees that information be treated as privileged under FRE 408 is flatly inconsistent to the unconditional offer in your October 27 letter that "[n]otwithstanding our strong disagreement . . . we will, of course, make ourselves available to discuss with you the steps we have taken to screen Ms. Boelter from the lawyers representing Maxus Liquidating Trust." As an initial matter, we do not concede that a screen would ever be sufficient on the extraordinary facts here. Nor do we agree that application of FRE 408 would necessarily bar the submission of any of this information to the Court in connection with judicial review of White & Case's screen, since such information does not relate to any "claim" at issue in the underlying actions. Even if it would, your prior offer to share information was not conditioned on any similar limitation on the use of the information, including in the very litigation that you acknowledged could result from your decision to hire Ms. Boelter. It is surprising, and gives YPF no comfort at all, that you would require YPF to commence litigation in order to obtain basic information about your screening procedures, while at the same time asserting they are adequate and that any such litigation is unnecessary. Similarly, there is no principled basis for White & Case to condition its sharing of basic information about its screen on obtaining the protections of FRE 408, presumably to prevent YPF from using such information in any disqualification motion. If the dispute is not resolved, YPF would be required, under your apparent approach, to file the motion for disqualification and then re-acquire the same information in any ensuing litigation on the same topics. Given your refusal to provide information unless subject to FRE 408, YPF reserves all rights, including to seek judicial intervention in order to obtain any necessary information from White & Case.

*Second*, the ethical rules under which White & Case purports to establish its ethical screen explicitly require the firm to "agree[] . . . to respond promptly to any written inquiries or objections by the former client about the screening procedures." MRPC 1.10(a)(2)(ii). YPF is entitled to prompt responses to its inquiries, without any of the conditions you seek to place on the provision of this information, as a necessary (though not sufficient) condition of your compliance with Rule 1.10. Separately, Ms. Boelter's independent and continuing fiduciary duties to her former client require her to fully inform YPF of potential risks to its confidential information.

*Third*, your insistence on an "assurance" that any information communicated by White & Case about its existing screen must be protected by FRE 408 is perplexing because YPF has requested information and detail about *historic* measures purportedly taken by White & Case. Your insistence that such information would only be shared as part of a "settlement discussion" implies that White & Case has not, contrary to its representations to YPF, taken necessary steps to safeguard YPF's confidential information but would be willing to take further steps to resolve YPF's concerns. If this is the case, then obviously any subsequent, after-the-fact backfilling of the protective screen is itself evidence of its inadequacy in the first instance and further grounds for disqualification of White & Case.

We therefore request a meet and confer with you and your Delaware counsel on the issues and questions raised by my November 6 letter on the afternoon of Friday, November 20. We are currently available between 2:00 p.m. and 5:00 p.m.

Jennifer Paradise, Esq., p. 3

        We look forward to your prompt response on the scheduling of the meet and confer on November 20.  In the interim, we would of course welcome any responses to our requests in my November 6 letter.  YPF continues to reserve all rights.

        Sincerely,

        Victor L. Hou

# Exhibit H

| | |
|---|---|
| **From:** | Paradise, Jennifer |
| **To:** | Hou, Victor L. |
| **Cc:** | Zelbo, Howard S. |
| **Subject:** | RE: Your Correspondence of Yesterday Evening |
| **Date:** | Monday, November 23, 2020 11:06:07 AM |
| **Attachments:** | image001.png |

Victor,

Thanks for your note of late Thursday evening.  I am again somewhat confused by the tone and content of your correspondence which appears to suggest issues where none exist.

As noted in my email to you of Thursday, I will be sending you, in accordance with your request, a written response to your specific inquiries about our screening procedures before the Thanksgiving holiday.  We would be happy to arrange a time for a meet and confer after you have reviewed that response.  Please let me know a few times that might work for you and your team to discuss our response on Wednesday or immediately following the Thanksgiving holiday.

Thanks,
Jennifer

**Jennifer Paradise**  |  General Counsel
**T** +1 212 819 2664  **M** +1 347 254 1239  **E** jparadise@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095

---

**From:** Hou, Victor L. <vhou@cgsh.com>
**Sent:** Thursday, November 19, 2020 9:47 PM
**To:** Paradise, Jennifer <jparadise@whitecase.com>
**Cc:** Zelbo, Howard S. <hzelbo@cgsh.com>
**Subject:** RE: Your Correspondence of Yesterday Evening

Hi Jennifer

Thank you for your email.

I wanted to respond quickly to your email as we believe serious ethical issues are at stake and further delay by White & Case to provide details about your purported screen and the resulting uncertainty about the scope and extent of any such protection is unacceptable.

While you claim to be willing to have discussions if we have "any concerns whatsoever about the efficacy of, or suggested modifications to, the screening procedures" that White & Case claims to have put in place, the fact is, we sent you a list of questions nearly two weeks ago because our client *has* serious concerns, in response to which you took an entire week to write back, only to not respond to a single one of those questions.  Instead, you claimed you would not even speak to us unless under cover of FRE 408.   We disagree with this for the reasons I set forth in my letter to you last night, including because it is contrary to your prior offer to provide more information and because Ms. Boelter has an ethical duty to provide the requested information to her former client without any strings attached.

As you know, under Model Rule 1.10(a)(2)(ii), as a condition of addressing this clear conflict, your firm is required and agreed "to respond promptly to any written inquiries or objections by the former client".  We provided you written inquiries with our concerns and are still waiting your written responses.

It is premature to have a Rule 408 discussion "to see if we can reach a reasonable accommodation" before White & Case provides the requested information to us – information to which there can be no serious dispute that our client is entitled to at this stage.

To be clear, we do not believe under the extraordinary circumstances here, that it is likely any screen would ever be sufficient to undo the clear ethical breaches that have occurred.  However, we recognize that White & Case and

Ms. Boelter believe otherwise, which is why we took up your prior offer to obtain more information from White & Case.

So let me reiterate our request that you provide written answers to the questions we previously asked.  Please do so by Monday morning, November 23.  We are also prepared to meet with you and your litigators, for a meet and confer on November 23 (right now we are available between 12:00 to 2:30), at which time we would expect White & Case to have provided written responses so that we can discuss them during the meet and confer.

Best,

Victor

⎯⎯

**Victor Hou**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: ccoyle@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2609
vhou@cgsh.com  |  clearygottlieb.com

---

**From:** Paradise, Jennifer <jparadise@whitecase.com>
**Sent:** Thursday, November 19, 2020 4:04 PM
**To:** Hou, Victor L. <vhou@cgsh.com>
**Cc:** Zelbo, Howard S. <hzelbo@cgsh.com>
**Subject:** Your Correspondence of Yesterday Evening

Dear Victor,

I am writing in response to your letter of yesterday evening.   While I am unable to respond in detail at this time, I did want to inform you now that I am not able to "meet and confer" this coming Friday and would therefore like to provide you with some of my preliminary reactions to your letter.

I admit to being somewhat mystified by the tone and content of the letter.  As you know, I have repeatedly invited you to have discussions with me if you have any concerns whatsoever about the efficacy of, or suggested modifications to, the screening procedures we have employed.  That offer remains open.  If you would like to take advantage of it, please let me know a convenient time in which you and I can speak next week.

I am also somewhat baffled by the umbrage you appear to be taking with respect to the request that our discussion be subject to FRE 408.  My request is to simply have a without prejudice discussion between our two firms in order to see if we can reach a reasonable accommodation of the parties' interests and thereby avoid potentially costly and un-necessary motion practice.  Since any such discussion would be for the purpose of avoiding litigation, it seems perfectly appropriate that FRE 408 would apply.  If, however, you want a pre-litigation "meet and confer" to occur on the record, I'll check for the availability of our litigators and you and they can proceed down that route.

I will be happy to send a more detailed response to your correspondence next week.  In the interim, please let me know when you can meet next week either with me or with our litigation team.

Warm regards,

Jennifer

**Jennifer Paradise**  |  General Counsel
**T** +1 212 819 2664   **M** +1 347 254 1239   **E** jparadise@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095

**From:** Hou, Victor L. <vhou@cgsh.com>
**Sent:** Wednesday, November 18, 2020 10:22 PM
**To:** Paradise, Jennifer <jparadise@whitecase.com>
**Cc:** Zelbo, Howard S. <hzelbo@cgsh.com>
**Subject:** RE: Your Correspondence of November 6

Dear Jennifer

Thanks for your email.  Please see the attached response.

Best,

Victor

---

**Victor Hou**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: ccoyle@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2609
vhou@cgsh.com  |  clearygottlieb.com

**From:** Paradise, Jennifer <jparadise@whitecase.com>
**Sent:** Thursday, November 12, 2020 3:17 PM
**To:** Hou, Victor L. <vhou@cgsh.com>
**Cc:** Zelbo, Howard S. <hzelbo@cgsh.com>
**Subject:** Your Correspondence of November 6

Dear Victor,

I write in response to your letter of November 6, 2020.  We note first that your correspondence to date does not appear to be targeted to ensuring that client confidences are protected but rather to engage in discovery prior to contemplated litigation.

To the extent you do want to discuss the items in your letter that relate to the efficacy of our screening provisions, we invite you to give us a call.   We seek your assurance in advance that any such discussion will be protected as settlement communications pursuant to FRE Rule 408.

Warm regards,

Jennifer

**Jennifer Paradise**  |  General Counsel
**T** +1 212 819 2664   **M** +1 347 254 1239   **E** jparadise@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095

====================================================================================
This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

========================================================================

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

========================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

========================================================================

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

========================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

========================================================================

# Exhibit I

**WHITE & CASE**

November 25, 2020

VIA E-MAIL

Howard Zelbo, Esq.
Victor Hou, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006-1470

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
**T** +1 212 819 8200

whitecase.com

**Re:** *Maxus Energy Corp.*, Docket No. 1:16-bk-11501 (Bankr. D. Del.) and Maxus *Liquidating Trust v. YPF S.A. et al.*, Docket No. 1:18-ap-50489 (Bankr. D. Del.)

Dear Messrs. Zelbo and Hou:

We write in response to your various inquiries regarding the screening procedures White & Case LLP (the "Firm") has implemented in accordance with ABA Model Rule of Professional Conduct 1.10(a). These procedures were described in our letter dated October 1, 2020 which was sent to your client on the date that Ms. Boelter became a partner of this Firm. Following that date, we have repeatedly offered to speak with you to answer any questions you have about the efficacy of our screening procedures as described in that letter. Most recently, on November 12, 2020, we offered, as a preliminary step, to discuss, subject to Rule 408, a potential global consensual resolution. You have declined to participate in any discussion aimed at a consensual resolution and instead have insisted on written responses to a detailed series of questions followed by an on-the-record discussion of this matter between litigators.

In advance of that discussion, we have repeatedly asked you to indicate whether there are any additional reasonable measures you are asking this Firm to implement. To date, you have not requested or identified any such additional measures. Rather, you have steadfastly ignored all our offers and invitations to have a phone conversation between professionals to work through any issues raised in your correspondence, and have instead requested an answer in writing to your inquiries as a pre-condition to the on-the-record discussion. We therefore respond as follows:

<u>**Question 1:**</u> You have asked when the screening procedures described in our letter dated October 1, 2020 were adopted. As applied to Ms. Boelter, these procedures were implemented on the date Ms. Boelter joined this Firm.

<u>**Question 2**</u>: You have inquired as to the method by which personnel at this Firm were notified of the screening procedures. All personnel affected by the screening procedures were notified of those procedures either before or on the date that Ms. Boelter joined the Firm. The screen notifications were sent and an acknowledgement was requested and received from all personnel currently providing services to Maxus Liquidating Trust. The notification and acknowledgements were handled via our ethical screen software, INTAPP Walls. Each individual who received the screen notification was also provided with a link to the Firm's *Ethical Screen Procedures* (attached for convenience as Exhibit A hereto) which are also posted on our Firm's Policy Site. In addition, notice of the screening of Ms. Boelter was posted on our Firm IntraNet site.

Howard Zelbo, Esq.
Victor Hou, Esq.
November 25, 2020

You have also requested information pertaining to the identities of all individuals who received screen notifications and the date upon which they acknowledged them. We believe this to be an inappropriate inquiry as it calls for disclosure of potentially privileged and confidential information about this Firm's representation of the Maxus Liquidating Trust. To the extent you have questions about any particular individual and the date he or she received notice and/or acknowledged the existence of the screen, we can discuss that this evening. Please be advised that Ms. Boelter received the screen notification on the date that she joined this Firm and acknowledged it on October 5, 2020. A copy of the screen instructions provided to Ms. Boelter is attached hereto as Exhibit B.

**Questions 3 and 4:** You have asked a number of questions about the method by which the screening procedures described in our letter of October 1 have been practically implemented. In particular, you have asked a number of questions about the efficacy of the screen in protecting the Maxus Liquidating Trust's confidential information.

This line of inquiry is confusing, as the key question with which your client should be concerned is how *its own* confidences and secrets are being protected, not those of its adversary.

Notwithstanding our confusion, we respond as follows: The ethical screen software referenced above is integrated with our Firm's time entry, records and document management systems. When an individual is screened from a matter, that individual is electronically blocked from entering, viewing or otherwise accessing any time entries relating to the screened matter (identified by client matter number) and any documents stored in the Firm's document or records management systems relating to the screened matter (again, identified by client matter number). In addition, our screening software automatically notifies various personnel within the Firm of the existence of the screen, including those personnel responsible for the records, attorney assignment and technology functions within the Firm. Any concerns about the securing of hard copy documents relating to the above-referenced matter (to the extent not stored with the Firm's records team) are misplaced as the attorneys affected by the screen are all currently working from home because of the pandemic.

**Questions 5, 6, 14, and 15:** You have inquired as to the form of Ms. Boelter's and Mr. Guzina's notice to this Firm of any involvement on behalf of YPF in the above-captioned matter. As you are aware from our prior correspondence, Ms. Boelter's involvement in the above-captioned matter was known to Mr. Lauria and was therefore disclosed to the Firm by Mr. Lauria prior to any discussions commencing between this Firm and Ms. Boelter.

As we previously explained to you, it is our understanding that Ms. Boelter disclosed her relationship with Mr. Lauria to Sidley Austin LLP at the time that they began dating and while she was still a partner there. These disclosures occurred long before this Firm commenced any discussions with Ms. Boelter. We understand that at no point prior to Ms. Boelter joining this Firm did any one raise any concern as to Ms. Boelter's ability to maintain your client's confidences while in an ongoing relationship with Mr. Lauria.

For the avoidance of doubt and without waiving privilege as to the content of those discussions, the only substantive discussions between lawyers at this Firm and Ms. Boelter about her involvement in the above-captioned matter were handled by the Firm's Office of the General Counsel and outside counsel. To the best of our knowledge, no conversations occurred between Mr. Guzina and the Firm about Ms. Boelter's involvement in the above-captioned matter, and it is our understanding that Mr. Guzina has never been involved in the above-captioned matter.

**Questions 7 and 13:** You have requested that this Firm provide information about any proposal or attempt to obtain a waiver from YPF. You have also requested the identity of, and all precautions taken with respect to, any lateral joiner from any of the multiple law firms that have provided legal advice to YPF in connection

2

WHITE & CASE

Howard Zelbo, Esq.
Victor Hou, Esq.
November 25, 2020

with the above-captioned matter, irrespective of whether those individuals worked on this matter. We view these questions to be wholly inappropriate as they potentially request privileged and confidential information and, in any event, are not relevant to any assessment of the adequacy of the screening procedures adopted in relation to Ms. Boelter's affiliation with this Firm. We therefore decline to provide a response, although we are happy to discuss this with you further in order to better understand your client's concerns and to see if we can reach a disclosure accommodation.

**Questions 8 through 11:** You have requested that we provide you with a list of the individuals currently staffed on matters with Ms. Boelter and Mr. Guzina unrelated to the above-captioned matter who have also provided prior or concurrent services to either Maxus or Occidental (as those entities are defined in your correspondence). You have also asked for information on experts retained by this Firm on matters unrelated to the above-captioned matter. Finally, you have asked us to provide details of Mr. Lauria's involvement in the above-captioned matter or matters for Occidental, including disclosure of the nature and scope of his advice. We view these as wholly inappropriate requests which call for potentially privileged and confidential information and which are not relevant to assessing the efficacy of our screening procedures. We therefore decline to respond, again subject to a further discussion in which we might better understand your client's concerns. We do note that Mr. Lauria is screened from involvement in the ongoing litigation between YPF and the Maxus Liquidating Trust and is neither working on nor supervising lawyers in this Firm's conduct of the matter.

**Question 12:** You have asked a number of questions relating to this Firm's negotiations with Ms. Boelter. To the extent these questions relate to the efficacy of the screening procedures employed by this Firm, we refer you to our response to your Question 2 above.

We, in turn, reserve all rights.

Sincerely,

*Jennifer Paradise*

**Jennifer Paradise**
Partner and General Counsel

**T** +212.819.2664
**E** jparadise@whitecase.com

Attachments

cc:    Christopher Shore, Esq.
       Glenn Kurtz, Esq.

3

# EXHIBIT A

WHITE & CASE

# Ethical Screen Procedures

Global Policy

The Firm employs three types of ethical screens as detailed below:

☐ Exclusionary Screens:  These types of screens are implemented either at the request of a client or due to an identified current or potential conflict of interest.  Such screens prohibit one matter team from accessing materials being handled by the team working on the conflicting matter.

☐ Inclusionary Screens:  These types of screens ensure that only individuals assigned to a matter have access to that matter in the Firm's systems.  Such screens are implemented when the Firm is handling particularly sensitive matters for clients or when the Firm has or is to be in possession of material non-public information about a publicly traded entity during the course of the representation.

☐ Lateral Screens:  These are implemented when an individual is blocked from working on a specific matter due to his or her work prior to joining White & Case.

**Procedures Relevant to All Screens**

The implementation of any ethical screen must be approved by the General Counsel.  **The Firm will treat any breach, inadvertent or otherwise, of an ethical screen as a serious disciplinary offense**.  The following procedures apply to all screens:

☐ No member of a matter team may discuss any aspect of a matter with any individual who has been screened from such matter.

☐ No individual may work on, release time to or access the Firm's records in hard copy or electronic form (including documents stored on the Firm's electronic systems) relating to a matter from which such individual has been screened.

☐ Anyone who maintains active files at their desk or office which are subject to a screen is responsible for securing these files, clearly marking them as confidential and ensuring that access to the files is restricted.

☐ To the extent practicable, individuals subject to an exclusionary or lateral screen will be physically segregated from the individuals working on the matter from which they have been screened.

☐ No individual who is subject to a lateral or exclusionary screen shall share in fees or profits derived by the Firm from the matter from which she or he has been screened.

☐ All individuals subject to a screen must complete the Form of Acknowledgement appended to the relevant screen notification.

☐ All lateral and exclusionary screens are posted on Connect.  A list of all active screens is maintained by the CNB.

☐ The respective clients will be advised of the establishment of an ethical screen, unless the General Counsel decides to the contrary.

☐ Matters subject to ethical screens should not be the subject of office wide or practice group communications or trainings.

**Additional Procedures Relevant to Exclusionary Screens**

☐ No individual may become a Team Member of a matter from which he or she has been screened.

☐ No Team Member can share secretarial coverage with a member of a matter team from which such individual has been screened.  If this is unavoidable, the secretary will be put on the same Team as the most senior attorney, and be denied access to any documents or records for the other Team.

☐ The respective Matter Partner for each matter subject to a screen will designate the lawyers, legal assistants and secretarial support staff (each a "Team Member") to work on each side of the screen upon matter entry.  To add new Team Members, please contact the Compliance and New Business Department.

☐ Once an individual accesses a document or enters diary time to a matter subject to an exclusionary screen, that individual will automatically be added to the Team for that screened matter.

**Additional Procedures Relevant to Inclusionary Screens**

☐ No individual may disclose information about a matter subject to an inclusionary screen with anyone other than fellow team members, except with the permission of the relevant Matter Partner.

☐ Access to documents on the document management system will be limited to individuals assigned to the matter.

☐ No individual, unless assigned to the matter, may work on or record time to a matter to which an inclusionary screen has been applied.

☐ To request the addition of a new member to the matter team, please contact the Service Desk or the Compliance and New Business Department.  The Matter Partner must be copied on any such request.

**Additional Procedures Relevant to Lateral Screens**

☐ No individual may share secretarial coverage with an individual assigned to a matter from which such individual has been screened.

☐ No individual who has been screened from a matter may discuss any aspect of the matter which occasioned the implementation of the screen with any person associated or affiliated with the Firm.

The Firm regularly monitors adherence to these procedures.  Any questions relating to these procedures should be addressed to the General Counsel.

Regular training on these procedures is provided to the Firm's lawyers and staff.

# EXHIBIT B

**From:**          CNB Screens
**Sent:**          Thursday, October 1, 2020 3:42 AM
**Subject:**       Lateral Screen Notice: Lateral Screen - Jessica Boelter

As a result of your prior work on the matter captioned *Maxus Energy Corporation*, Docket No. 1:16-bk-11501 (Bankr. D. Del.) and related proceedings including the adversary proceeding *The Maxus Liquidating Trust v. YPF S.A. et al*, Docket No. 1:18-ap-50489 (Bankr. D. Del.) (the "Maxus Matter"), an ethical screen has been established between you and the Firm's work on the Maxus Matter (1161579-0002).

In accordance with this screen, you may not review or access any documents related to the Maxus Matter (including any digital files); discuss the Maxus Matter with anyone in the Firm, either formally or informally, regardless of whether such individual is working on the Maxus Matter;  or work in an office location in close proximity to any of the attorneys working on the Maxus Matter.

In addition to adhering to the above requirements, you are required to review the <u>Firm's Global Policy on Ethical Screens</u> and acknowledge your compliance with the policy and the above enumerated requirements by clicking below:

The Firm will treat any breach of an ethical screen, inadvertent or otherwise, as a serious disciplinary offense.

 If you have any questions, please contact the Compliance and New Business Department at CNB@whitecase.com or at *8828.

REDACTED



# Exhibit J

**WHITE & CASE**

# People

White & Case lawyers are recognized for their legal innovation and outstanding service to clients worldwide.

85 results



**Philip Abelson**
Partner, New York

**T** +1 212 819 8903
**E** philip.abelson@whitecase.com



**Rob Bennett**
Partner, New York

**T** +1 212 819 8249
**T** +917 275 3274 (mobile)
**E** rbennett@whitecase.com



**Joshua A. Berman**
Partner, New York

**T** +1 212 819 8547
**E** joshua.berman@whitecase.com



**David Bilkis**
Partner, New York

**T** +1 212 819 8413
**T** +1 212 819 8200
**E** dbilkis@whitecase.com



**Jessica C.K. Boelter**
Partner, New York

**T** +1 212 819 7097
**E** jessica.boelter@whitecase.com

**Rupa Briggs**
Partner, New York

**T** +1 212 819 7621
**E** rupa.briggs@whitecase.com





**Ipek Candan Snyder**
Partner, New York

**T** +1 212 819 2684
**E** ipek.candansnyder@whitecase.com



**Adam Cieply**
Partner, New York

**T** +1 212 819 8514
**E** adam.cieply@whitecase.com



**John K Cunningham**
Partner, Miami, New York

**T** +1 305 995 5252
**T** +1 212 819 8200
**E** jcunningham@whitecase.com



**Harrison Denman**
Partner, New York

**T** +1 212 819 2567
**E** hdenman@whitecase.com



**Michael Deyong**
Partner, New York

**T** +1 212 819 2577
**E** michael.deyong@whitecase.com



**Binoy Dharia**
Partner, New York

**T** +1 212 819 8260
**E** bdharia@whitecase.com



**Brenda Dieck**
Partner, Los Angeles, New York

**T** +1 213 620 7717
**T** +1 212 819 8200
**E** bdieck@whitecase.com



**David Dreier**
Partner, New York

**T** +1 212 819 8781
**T** +1 212 819 8200
**E** ddreier@whitecase.com



**Elizabeth Feld**
Partner, New York

**T** +1 212 819 8549
**E** efeld@whitecase.com



**Rebecca Gottlieb**
Partner, New York

**T** +1 212 819 8802
**E** rgottlieb@whitecase.com



**Scott Greissman**
Partner, New York

**T** +1 212 819 8567
**T** +1 212 819 8200
**E** sgreissman@whitecase.com



**Andrew Hammond**
Partner, New York

**T** +1 212 819 8297
**T** +1 212 819 8200
**E** ahammond@whitecase.com



**Kim Havlin**
Partner, New York

**T** +1 212 819 8683
**E** kim.havlin@whitecase.com



**David Johansen**
Partner, New York

**T** +1 212 819 8509
**T** +1 212 819 8200
**E** djohansen@whitecase.com



**Gary Kashar**
Partner, New York

**T** +1 212 819 8223
**T** +1 212 819 8200
**E** gkashar@whitecase.com



**Elizabeth J. Kirk**
Partner, New York

**T** +1 212 819 7822
**E** ekirk@whitecase.com



**Glenn M. Kurtz**
Partner, New York

**T** +1 212 819 8252
**T** +1 212 819 8200
**E** gkurtz@whitecase.com



**Thomas Lauria**
Partner, New York, Miami

**T** +1 305 995 5282
**T** +1 212 819 2637
**E** tlauria@whitecase.com



**Frank Lupinacci**
Partner, New York

**T** +1 212 819 8984
**E** flupinacci@whitecase.com



**Thomas MacWright**
Partner, New York

**T** +1 212 819 8259
**E** tmacwright@whitecase.com



**Gordon Mak**
Partner, New York

**T** +1 212 819 2579
**E** gordon.mak@whitecase.com



**Jonathan Michels**
Partner, New York

**T** +1 212 819 8661
**E** jmichels@whitecase.com



**Elena Millerman**
Partner, New York

**T** +1 212 819 8977
**T** +1 212 819 8200
**E** elenamaria.millerman@whitecase.com



**Stephen Moeller-Sally**
Partner, Boston, New York

**T** +1 617 979 9324
**T** +1 212 819 7599
**E** ssally@whitecase.com



**Daniel Nam**
Partner, New York

**T** +1 212 819 8542
**T** +1 212 819 8200
**E** dnam@whitecase.com



**Henrik Patel**
Partner, New York

**T** +1 212 819 8205
**T** +1 212 819 8200
**E** henrik.patel@whitecase.com



**Brian Pfeiffer**
Partner, Miami, New York

**T** +1 305 995 5271
**T** +1 212 819 8237
**E** brian.pfeiffer@whitecase.com



**Michael Shenberg**
Partner, New York

**T** +1 212 819 8535
**E** mshenberg@whitecase.com



**Michael Shepherd**
Partner, Miami, New York

**T** +1 305 925 4790
**T** +1 212 819 8709
**E** mshepherd@whitecase.com



**Chris Shore**
Partner, New York

**T** +1 212 819 8394
**E** cshore@whitecase.com



**Sabrena Silver**
Partner, New York

**T** +1 212 819 7056
**E** sabrena.silver@whitecase.com



**Raymond Simon**
Partner, New York

**T** +1 212 819 8857
**T** +1 212 819 8200
**E** rsimon@whitecase.com



**Michael W. Smith**
Partner, New York

**T** +1 212 819 8968
**T** +1 212 819 8200
**E** msmith@whitecase.com



**Sherri Snelson**
Partner, New York

**T** +1 212 819 8430
**E** sherri.snelson@whitecase.com



**Gregory Starner**
Partner, New York

**T** +1 212 819 8839
**T** +1 212 819 8200
**E** gstarner@whitecase.com



**David H. Suggs**
Partner, New York

**T** +1 212 819 2686
**E** dsuggs@whitecase.com



**David Thatch**
Partner, New York

**T** +1 212 819 8342
**T** +1 212 819 8200
**E** dthatch@whitecase.com



**David Turetsky**
Partner, New York

**T** +1 212 819 8904
**E** david.turetsky@whitecase.com



**Andrew Weisberg**
Partner, New York

**T** +1 212 819 8980
**E** aweisberg@whitecase.com



**Colin T. West**
Partner, New York

**T** +1 212 819 7977
**E** cwest@whitecase.com



**Andrew Zatz**
Partner, New York

**T** +212 819 8504
**E** azatz@whitecase.com



**Amy L. Delsack**
Counsel, New York

**T** +1 212 819 8200
**E** adelsack@whitecase.com



**Joseph Furst III**
Counsel, New York

**T** +1 212 819 8551
**E** joseph.furst@whitecase.com



**Richard Graham**
Counsel, New York

**T** +1 212 819 7993
**E** rgraham@whitecase.com



**Michele J. Meises**
Counsel, New York

**T** +1 212 819 8436
**E** michele.meises@whitecase.com



**Joshua Weedman**
Counsel, New York

**T** +1 212 819 8963
**E** jweedman@whitecase.com



**Andrea Amulic**
Associate, New York

**T** +1 212 819 7061
**E** andrea.amulic@whitecase.com



**Brett Bakemeyer**
Associate, New York

**T** +1 212 819 2545
**E** brett.bakemeyer@whitecase.com



**Brandon Batzel**
Associate, New York

**T** +1 212 819 7098
**E** brandon.batzel@whitecase.com



**Dr. Viktor Braun**
Associate, New York

**T** +1 212 819 2526
**E** viktor.braun@whitecase.com



**Ashley Rona Chase**
Associate, New York

**T** +1 212 819 7089
**E** ashley.chase@whitecase.com



**Anne-Karine Dabo**
Associate, New York

**T** +1 212 819 7028
**E** anne-karine.dabo@whitecase.com



**Christine DeVito**
Associate, New York

**T** +1 212 819 2660
**E** christine.devito@whitecase.com



**Evelyn Fanneron**
Associate, New York

**T** +1 212 819 8310
**E** evelyn.fanneron@whitecase.com



**Mark Franke**
Associate, New York

**T** +1 212 819 2532
**E** mark.franke@whitecase.com



**Laura Garr**
Associate, New York

**T** +1 212 819 8849
**E** lgarr@whitecase.com

---



**Ruben Henriquez**
Associate, New York

**T** +1 212 819 2557
**E** ruben.henriquez@whitecase.com

---



**Sam Hershey**
Associate, New York

**T** +1 212 819 2699
**E** sam.hershey@whitecase.com

---



**Michael Anthony Jaoude**
Associate, New York

**T** +1 212 819 8270
**E** michael.jaoude@whitecase.com

---



**Charles R. Koster**
Associate, New York

**T** +1 212 819 7845
**E** ckoster@whitecase.com

---



**Laurent Lantonnois van Rode**
Associate, New York

**T** +1 212 819 8760
**E** laurent.lantonnois@whitecase.com

---



**Sam Lawand**
Associate, New York

**T** +1 212 819 8534
**E** sam.lawand@whitecase.com

---



**Cody Lehrer**
Associate, New York

**T** +1 212 819 7538
**T** +1 646 384 8693
**E** cody.lehrer@whitecase.com



**Remy Lotero**
Associate, New York

**T** +1 212 819 7576
**E** remy.lotero@whitecase.com



**Dimitrios Lyratzakis**
Associate, New York

**T** +44 20 7532 1788
**E** dimitrios.lyratzakis@whitecase.com



**Drew Magee**
Associate, New York

**T** +1 212 819 7509
**E** drew.magee@whitecase.com



**Livy Mezei**
Associate, New York

**T** +1 212 819 8384
**E** livy.mezei@whitecase.com



**Matthew Nicholson**
Associate, New York

**T** +1 212 819 2606
**E** matthew.nicholson@whitecase.com



**Dorian Panchyson**
Associate, New York

**T** +1 212 819 8393
**E** dorian.panchyson@whitecase.com



**Ricardo Machado Pasianotto**
Associate, New York

**T** +1 212 819 7593
**T** +1 646 657 4662
**E** ricardo.pasianotto@whitecase.com



**John Ramirez**
Associate, New York

**T** +1 212 819 7021
**E** john.ramirez@whitecase.com



**Julia Rubin**
Associate, New York

**T** +1 212 819 8200
**E** jrubin@whitecase.com



**Steven Schwartz**
Associate, New York

**T** +1 212 819 7002
**E** steven.schwartz@whitecase.com



**Erin Smith**
Associate, New York

**T** +1 212 819 2595
**E** erin.smith@whitecase.com



**Kathryn Sutherland-Smith**
Associate, New York

**T** +1 212 819 8437
**E** kathryn.sutherland.smith@whitecase.com



**Sherna Tamboly**
Associate, New York

**T** +1 212 819 8663
**E** sherna.tamboly@whitecase.com



**Alice Tsier**
Associate, New York

**T** +1 212 819 2643
**E** atsier@whitecase.com



**Claire Tuffey**
Associate, New York

**T** +1 212 819 2502
**E** claire.tuffey@whitecase.com



**Jason J. Woolmer**
Associate, New York

**T** +1 212 819 2658
**E** jason.woolmer@whitecase.com

# Exhibit K

https://r3.gti.co.uk/profile/sidley-austin-llp    Go

1 capture
11 Nov 2020

OCT   **NOV**   DEC
      **11**
◀     **2020**   ▶
2019          2021

About this capture



⌂ Directory home

# R3 DIRECTORY 2020

## Sidley Austin LLP

**Website:** **http://www.sidley.com**



Sidley Austin LLP is a premier law firm with a practice attuned to the everchanging international landscape. The firm advises clients around the globe, with 2,000 lawyers in 20 offices worldwide.

Sidley's Global Restructuring group consists of over 60 full-time restructuring lawyers, located principally in our Chicago, Dallas, Houston, London, Los Angeles, Munich and New York offices. We have in-depth experience in acting for the fulcrum parties in a restructuring, whether acting for the debtor, the sponsor or key creditors and creditor committees. Our matters generally involve the restructuring of large and mid-size companies throughout North America, Europe and Asia. We have navigated our clients through some of the largest and most complicated global restructurings.

Our capabilities extend to virtually every aspect of the reorganization and special situations space, and we have practical experience in advising and implementing comprehensive consensual and non-consensual restructurings, both in and out of court.



objectives and drive the creation of innovative solutions. This includes capital markets (including high-yield), private equity, dispute resolution, finance, insurance, investment funds, regulatory and tax. The extensive experience of the firm's other practice areas enables us to marshal a team of professionals that can provide key strategic advice across the entire spectrum of stressed or distressed situations.

**Select recent global engagements include representing:**

- YPF, an international oil company, which we represent in a US$14 billion law suit brought by its former subsidiary in the Delaware bankruptcy court.

- Exide, an international battery maker, which we represent in disputes arising out of its prior Delaware bankruptcy case and environmental matters related to the same.

- Maremont Corporation in connection with the Maremont Enties's pre-packaged chapter 11 bankruptcy case – a landmark mass tort bankruptcy case because it is one of only a few successful prepackaged asbestos-driven bankruptcy cases.

- Legacy Reserves Inc. on strategic restructuring and reorganization matters in connection with its chapter 11 protection filing.

- New Residential Investment Corp. and its subsidiaries, in connection with the chapter 11 cases of Ditech Holding Corporation and its affiliated debtors and debtors in possession.

- Honda North America in connection with the high-profile and complex U.S. bankruptcy cases, a related adversary proceeding and underlying litigation involving Takata and defective Takata inflators.

- Mattress Firm in connection with its pre-packaged bankruptcy filing in the United States Bankruptcy Court for the District of Delaware.

## Contacts

Global Practice Leader
**Jessica C. K. Boelter**
**Bojan Guzina**



https://r3.gti.co.uk/profile/sidley-austin-llp     Go     OCT **NOV** DEC

1 capture
11 Nov 2020                                                2019 **11 2020** 2021

About this capture

## Chicago

**Matthew A. Clemente**

**James F. Conlan**

**Bojan Guzina**

**Kenneth P. Kansa**

**Thomas A. Labuda Jr.**

**Kerriann S. Mills**

**Andrew F. O'Neill**

**Jeffrey C. Steen**

**Dennis M. Twomey**

## Dallas
**Charles Persons**

## Houston
**Duston K. McFaul**

## London

**Jifree Cader**

**Patrick Corr**

**Mark Knight**

**Phillip D. Taylor**

**Marc D. Wassermann**

## Los Angeles

**Jennifer C. Hagle**

**Sam Newman**

**Genevieve Weiner**

## Munich
**Kolja von Bismarck**

## New York

**Lee S. Attanasio**

**Jessica C. K. Boelter**

**Michael G. Burke**

**Alex R. Rovira**

**Offices**

https://r3.gti.co.uk/profile/sidley-austin-llp   Go

1 capture
11 Nov 2020

OCT **NOV** DEC
2019 **11** 2021
**2020**

About this capture

Copyright © R3 Disclosures 2020   |   **Legal & privacy statement** | **Terms & Conditions**   |   **Group GTI privacy policy**

# Exhibit L



# [White & Case LLP](#)

Bankruptcy/Restructuring Department

*New York*

Current View:    

**Contacts**

| Chambers Review | Department Profile | Ranked Individuals |

*This content is provided by White & Case LLP.*

## Overview

To learn more about our practice, please visit: whitecase.com/law

## Members

[Abelson, Philip](#)

[Boelter, Jessica](#)

[Greissman, Scott](#)

[Lauria, Thomas E](#)

[Shore, Christopher](#)

[Wofford, Keith H](#)

---

## Products

[Insight](#)

[Enhanced Profiles](#)

[Become a contributor](#)

[Ranking Brochures](#)

[Ranking Plaques](#)

[About our Products](#)

[Worldwide Law Firms](#)

[Worldwide Lawyers](#)

## Careers

[Chambers' Careers](#)

### Student & Associate

[Student](#)

[Associate](#)

## Events

[Awards](#)

[Editors' Receptions](#)

[Forums](#)

[Seminars](#)

[Commercial Opportunities](#)

## Contact Details

Chambers and Partners
No.3 Waterhouse Square
138 Holborn
London, United Kingdom
EC1N 2SW

[View in maps](#)

**Contact Us**

© Copyright 2020 Chambers and Partners | [Terms and Conditions](#) | [Privacy](#) | [FAQ](#)