UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, et al.<br><br>Debtors, | Chapter 11<br><br>Case No: 16-11501 (CSS)<br>Jointly Administered |
| MAXUS LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>-against-<br><br>YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., CLH HOLDINGS INC., REPSOL, S.A., REPSOL EXPLORACION, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED and REPSOL SERVICES CO.,<br><br>Defendants. | Adv. Proc. No. 18-50489 (CSS) |

**DECLARATION OF JESSICA C. LAURIA (FORMERLY BOELTER)**

**Jessica C. Lauria (formerly Boelter)**, pursuant to 28 U.S.C. §1746, declares as follows:

1. I am a partner in White & Case LLP. I submit this declaration in response to the motion (the "Motion") by YPF S.A., YPF International S.A., YPF Holdings, Inc. and CLH Holdings (hereafter, collectively referred to as "YPF") to disqualify White & Case LLP ("White & Case") from continuing to represent Maxus Liquidating Trust ("Maxus") in the above-captioned adversary proceeding.

2. I was formerly a partner in the restructuring group of Sidley Austin LLP ("Sidley") before I joined White & Case in October 2020. I started at Sidley in their Chicago office in 2002 after graduating from law school. I became a partner at Sidley in 2010. I transferred to Sidley's New York office in 2017.

3. Sidley was retained by YPF in the summer of 2018.  Former Sidley partner James Conlan led the Sidley engagement from the outset until his departure from Sidley in June 2020.  Current Sidley partner John Kuster assumed lead responsibility for the engagement after Mr. Conlan left the firm.

4. Along with other lawyers, I participated in the initial Sidley pitch for the engagement in the summer of 2018, the negotiation of the engagement letter, and meetings with the client in 2018 and early 2019.  I also consulted with other members of the Sidley team on certain motions and related analysis in 2018 and early 2019.

5. I believe I spoke to the court on the record only once in this matter regarding a scheduling issue during a telephonic hearing in 2018.  I also attended some of the oral argument on a motion to dismiss, and may have attended another hearing in the spring of 2019, although I do not specifically recall doing so.  The Motion states that I billed a total of 300 hours to YPF during the entirety of the engagement.  To the best of my recollection, I believe approximately 200 of these hours were billed in 2018, approximately 100 hours were billed in 2019 (with the majority billed during the first half of the year), and no hours were billed in 2020.

6. The Motion refers to my marriage to Thomas Lauria, a partner at White & Case.  Mr. Lauria and I were married on November 6, 2020.  I do not believe Mr. Lauria ever entered an appearance in this case or has done any work for Maxus in this litigation.  I disclosed my relationship with Mr. Lauria to my colleagues at Sidley in 2018, and it is my understanding that YPF was aware of my relationship with Mr. Lauria in 2019.

7. The YPF case played no role in my decision to leave Sidley.  When I decided to leave Sidley, I never anticipated asking YPF to consider retaining whatever law firm I joined.

8. During White & Case's recruitment of me, I did not discuss the YPF case other than to identify it in connection with White & Case's conflicts clearing process.  I have not,

directly or indirectly, revealed any confidential or privileged information about the YPF litigation to anyone at White & Case, including in the conflicts clearing process.

9. From the beginning of my recruitment by White & Case, I understood that a comprehensive ethical screen in accordance with Model Rule 1.10 would be necessary if I joined the firm. White & Case's general counsel explicitly emphasized the necessity of a screen and compliance with Model Rule 1.10. It was also made clear to me by White & Case that I was not being recruited because of my past involvement in the YPF litigation or because of my relationship with Mr. Lauria.

10. As set forth and explained elsewhere in a written exhibit to YPF's motion, White & Case erected a comprehensive ethical screen walling me off from any confidential Maxus information. To my knowledge, White & Case put the screen into effect before I started at the firm in October 2020.

11. I take my ethical responsibilities as a lawyer very seriously. I was informed of the screen in writing before my first day at White & Case. I have acknowledged the screen and its terms in writing, and have abided by all screening directives at all times. I am aware that I will not directly share in any fees paid to White & Case in respect to this case. I have never seen any documents physically or electronically stored by White & Case with respect to this case. Since I joined White & Case, because of the ongoing pandemic, I have not physically been to the firm's New York office. I know that I can and will be disciplined severely were I to violate any screening protocol. I am willing to provide any periodic reports concerning compliance with the screen that are required by Model Rule 1.10 or by this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 29, 2021
      Miami, Florida

                                                       _____
                                                       JESSICA C. LAURIA (formerly BOELTER)