# Exhibit M

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, *et al.,*<br><br><br>Debtors.[1] | Chapter 11<br><br>Case No. 16-11501 (CSS)<br>(Jointly Administered) |
| MAXUS LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACION, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO.,<br><br>Defendants. | Adversary Proceeding No. 18-50489 (CSS) |

## MAXUS LIQUIDATING TRUST'S RESPONSES & OBJECTIONS TO YPF'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("Federal Rules"), as made applicable by Rules, 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the Local Rules of the United States District Court for the District of Delaware, made applicable hereto pursuant to the Local Rules of the United States Bankruptcy Court for the District of Delaware ("Local Rules"), the Maxus Liquidating Trust (the "Trust"), by and through its undersigned counsel, hereby responds and objects, without prejudice and while reserving all rights, to YPF's *Requests for the Production of Documents to the Maxus Liquidating Trust*, served on the Trust on January 21, 2021 (the "Requests") in connection with the *YPF*

*Defendants' Motion to Disqualify White & Case LLP as Counsel for the Maxus Liquidating Trust*,

dated December 19, 2020 [D.I. 306] (the "Motion"),[1] as set forth within.  Except where indicated,

any agreement by the Trust to provide documents or information in response to a Request is

expressly contingent on entry or modification of an appropriate protective order applicable to the

production of such documents or information, and a scheduling order governing the remainder of

proceedings relating to the Motion.

## GENERAL RESPONSES AND OBJECTIONS

The following general objections ("General Objections") apply to each Definition,

Instruction, and Request, and shall have the same force and effect as if fully set forth in the

response to each individual Request.  The Trust does not waive any General Objections by

providing responses and objections to any specific Request.

1.    The Trust objects to the Requests, including each and every Request, Definition,

and Instruction, to the extent that they purport to impose obligations that are broader than, or

inconsistent with, those required or authorized by the Federal Rules, the Bankruptcy Rules, the

Local Rules, the American Bar Association ("ABA") Model Rules of Professional Conduct

("Model Rules"), or any other applicable laws, rules or regulations.  Similarly, any agreement

herein to produce any Documents or Communications in response to any Request constitutes only

an agreement to produce Documents or Communications as required under applicable law.  No

agreement to produce any Document or Communication should be construed as obligating the

Trust to produce Documents or Communications of which the Trust is not in possession, custody

or control, or Documents or Communications that the Trust intends to use only for purposes of

impeachment.  The Trust further objects that it is not in possession of and does not control the

---

[1]  Capitalized terms used but not defined herein shall have the meanings set forth in the Requests.

private, non-business-related communications of Jessica Boelter or Thomas Lauria, and will not collect and review, nor produce such communications.

2.    The Trust objects to each Request and each Definition and Instruction of the Requests to the extent it purports to require the Trust to conduct anything beyond a reasonable and diligent search for readily accessible sources of information.

3.    The Trust objects to the Requests to the extent that they seek disclosure of documents or information protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest or joint defense privilege, or any other protection, privilege or immunity against disclosure (collectively, "Privileged Materials").  The Trust expressly reserves the right to redact non-responsive, proprietary, commercially sensitive, private, privileged or protected portions of any documents that may be produced in response to the Requests.  Pursuant to Federal Rule of Evidence 502(d) as well as any other applicable laws, rules or regulations, if any Privileged Material is inadvertently produced or disclosed, the Trust does not waive or intend to waive any privilege or immunity from discovery pertaining to such Privileged Material or to any other documents or information and reserves the right to demand the return of all copies of any such document(s).

4.    By responding and objecting to the Requests, the Trust does not waive or intend to waive any attorney-client privilege, joint or common interest privilege, or any other applicable privilege, doctrine or immunity protecting its Privileged Materials from disclosure.  Accordingly, any response or objection inconsistent with the foregoing is wholly inadvertent and shall not constitute a waiver of any such privilege, doctrine or immunity.  To the extent that there are inconsistencies in the types of privilege or other protections asserted with respect to various copies

of the same document, the most comprehensive privilege or protection is intended to apply to all copies of such document.

5.      By agreeing to produce documents pursuant to the Requests, the Trust does not waive any request the Trust has made for YPF to produce documents responsive to said or similar Requests.

6.      The Trust objects to the Requests to the extent that they seek documents containing confidential, personal or private, proprietary, or sensitive business information, or information protected from disclosure by any law (including, but not limited to, foreign laws), court order or any agreement with respect to confidentiality or non-disclosure (collectively, "Confidential Materials").  To the extent that it produces any Confidential Materials, the Trust will produce such materials using either the designation "Professional Eyes Only - Highly Confidential" or "Confidential," as the circumstances dictate, pursuant to the existing *Confidentiality and Discovery Agreement and Protective Order* entered by the Court on November 7, 2019 [D.I. 209] (the "Protective Order"), as may be amended or superseded.

7.      The Trust objects to the Requests to the extent that they seek information or documents that are publicly available, already in the possession, custody, or control of YPF, or more readily or equally available from any other party to the above-captioned action, without subjecting the Trust to unnecessary burden or expense.  The Trust objects to the Requests to the extent that they seek disclosure of information or documents that are unreasonably cumulative or duplicative, including, but not limited to, Requests that seek disclosure of information or documents that are cumulative or duplicative of information or documents received from, or more appropriately sought from, some other source or by some other means that is more convenient, less burdensome, or less expensive.

8.      The Trust objects to each of the Definitions, Instructions and Requests to the extent that they seek disclosure of documents or information concerning matters that are not relevant to the claims or defenses of any party and/or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  In particular, the Trust objects to each of the Definitions, Instructions and Requests to the extent they seek disclosure of documents or information concerning matters not raised in the Motion or not relevant to the issues, claims and allegations raised, or relief sought, therein.

9.      The Trust objects to each of the Definitions, Instructions and Requests to the extent that they are overly broad and unduly burdensome, fail to identify the documents sought with reasonable particularity or seek information that is outside the scope of discovery permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, the Model Rules, or any other applicable rules or orders.  The Trust further objects to the extent that providing a response to any Request in light of the Definitions and Instructions would cause unreasonable annoyance, harassment, oppression, undue burden and/or unreasonable expense, disadvantage or other prejudice to the Trust or any of the Trust's potential witnesses in this proceeding.

10.      The Trust objects to the terms or phrases defined in the Requests to the extent that those terms and phrases are vague and/or ambiguous or used beyond their customary meanings. The Trust has done its best to understand the terms in the Requests as used in context, but the Trust makes its responses and objections based on its understanding of such terms and it reserves the right to amend the responses and objections herein if YPF asserts meanings of such terms that are different from those employed by the Trust.

11.     The Trust objects to the Requests to the extent that they contain any factual and/or legal misrepresentations.

12.     Nothing herein shall be construed as an admission concerning the admissibility or the relevance of any documents or information, an admission that documents or information exist, or an admission of the truth or accuracy of any characterization or assertion contained in the Requests.

13.     No specific objection to any Request is to be construed as a waiver of any General Objection applicable to the Request.

14.     The Trust's failure to object to the Requests on a particular ground shall not be construed as a waiver of its right to object on that ground or any additional ground at any time.

15.     The Trust does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the use of any document or information produced in response to the Requests, or the subject matter thereof, in connection with any evidentiary proceeding or in any subsequent proceeding; and (b) all rights to object on any ground to any request for further responses to the Requests or any other document request.

16.     The Trust objects to each Request to the extent the provision of a response could entail any actual or potential breach by White & Case of the ethical screen it implemented upon Ms. Boelter's joining the firm so as to prevent disclosure of any YPF confidential or privileged information of which she may have come into possession during her work for YPF while a partner at Sidley Austin, LLP.  To the extent the Trust or White & Case is compelled to respond to, or to undertake any action in response to, any Request in a manner that leads to the disclosure of privileged or confidential information belonging to YPF, the Trust reserves all rights to use the information so disclosed in this matter for any and all purposes.

17.     The Trust's responses and objections to the Requests are made to the best of its present knowledge, information and belief.  The objections are made without prejudice to the assertion of additional objections and responses by the Trust at a later date.  The Trust reserves the right to supplement and amend any or all of its responses and objections to the Requests, pursuant to Bankruptcy Rule 7026 and Federal Rule 26(e).

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.     The Trust objects to the definition of "Communication" set forth in Definitions Paragraph No. 3 to the extent that it is vague and ambiguous, overly broad, unduly burdensome and not proportional to resolution of the Motion, and to the extent that it seeks to impose discovery obligations that are broader than, or inconsistent with, the Trust's obligations under the Federal Rules, Bankruptcy Rules, the Local Rules or the Model Rules.

2.     The Trust objects to the extent that individual Requests are unlimited with respect to time.  For purposes of responding to these Requests, the Trust will only search for and produce documents created after July 30, 2020.

3.     The Trust objects to the definition of "Document" set forth in Definitions Paragraph No. 5 to the extent that it is vague and ambiguous, overly broad, unduly burdensome and not proportional to the needs of the case, and to the extent that it seeks to impose discovery obligations that are broader than, or inconsistent with, the Trust's obligations under the Federal Rules, Bankruptcy Rules, the Local Rules or the Model Rules.

## SPECIFIC RESPONSES AND OBJECTIONS

### Document Request No. 1

All Communications between Jessica C. K. Boelter and Thomas Lauria, including but not limited to text messages, WhatsApp messages, and emails, concerning YPF and/or the Maxus Liquidating Trust.

## RESPONSE TO DOCUMENT REQUEST NO. 1

The Trust repeats and incorporates its General Objections.  The Trust objects to this Request on the ground that the Communications sought, particularly for the period prior to the commencement of the recruiting process that resulted in Ms. Boelter's ultimately joining White & Case, do not relate to any issue, claim or allegation raised in the Motion.  The Trust further objects that neither it nor White & Case possesses nor controls communications between Ms. Boelter and Mr. Lauria that are unrelated to the business of White & Case.  The Trust further objects that this Request seeks information that is cumulative and/or duplicative of other information in YPF's possession.  *See* Declaration of Jessica C. Lauria, dated Jan. 29, 2021 [D.I. 331] at ¶ 8 ("I have not, directly or indirectly, revealed any confidential or privileged information about the YPF litigation to anyone at White & Case, including in the conflicts clearing process.").  The Trust will not gather, review or produce the Communications requested subject to a meet and confer between the Parties regarding appropriate protections, to be incorporated into a protective order entered by the Court.

### Document Request No. 2

All Documents concerning Ms. Boelter's potential move to White & Case, including event calendars, attendee lists, meeting minutes, agendas, summaries, correspondence, or other Communications, as well as Documents sufficient to identify the date of any such meetings and the nature of the discussions, as well as any resume, CV, and description of clients and/or professional experience that Ms. Boelter provided to White & Case.

### RESPONSE TO DOCUMENT REQUEST NO. 2

The Trust repeats and incorporates its General Objections.  The Trust objects to this Request on the ground that the Documents sought do not relate to any issue, claim or allegation raised in the Motion.  The Trust further objects that this Request seeks information that is cumulative and/or duplicative of other information in YPF's possession.  *See* Declaration of

Jessica C. Lauria, dated Jan. 29, 2021 [D.I. 331] at ¶ 8.  The Trust will only produce Documents responsive to this Request, if any are located upon a reasonable search, that relate to Maxus, YPF or the Trust.

### Document Request No. 3

All Documents concerning conflicts in connection with Ms. Boelter's move to White & Case, including but not limited to those arising from White & Case's ongoing representations of the Maxus Liquidating Trust and Occidental.

### RESPONSE TO DOCUMENT REQUEST NO. 3

The Trust repeats and incorporates its General Objections.  The Trust objects to this Request on the ground that it is vague and ambiguous, including that the phrase "concerning conflicts" is unduly broad and does not specify with sufficiently particularity the Documents sought.  The Trust further objects to this Request on the ground that the Documents sought do not relate to any issue, claim or allegation raised in the Motion.  The Trust further objects that this Request is improperly broad and unduly burdensome to the extent it calls for the production of Documents pertaining to conflicts or potential conflicts arising from Ms. Boelter's work with respect to clients other than YPF while she was a partner at Sidley Austin, LLP.  To the extent not already produced, the Trust will provide responsive, non-privileged documents that pertain to the conflict arising from Ms. Boelter's prior work for YPF in this matter when she was a partner at Sidley Austin, LLP and the ethical screen that White & Case put into place as a result.

### Document Request No. 4

All Documents concerning the screening measures to address potential conflicts arising from Ms. Boelter's move to White & Case and White & Case's ongoing representations of the Maxus Liquidating Trust and Occidental.

**RESPONSE TO DOCUMENT REQUEST NO. 4**

The Trust repeats and incorporates its General Objections.  The Trust objects that this Request is improperly broad and unduly burdensome to the extent it calls for the production of Documents pertaining to conflicts or potential conflicts arising from Ms. Boelter's work on clients other than YPF while she was a partner at Sidley Austin LLP.  The Trust further objects to this Request on the ground that it calls for the disclosure of Privileged Materials.  The Trust further objects that it has already provided YPF with all relevant Documents that pertain to the conflict arising from Ms. Boelter's prior work for YPF in this matter when she was a partner at Sidley Austin LLP, and the ethical screen that White & Case put into place as a result.  To the extent not already produced, the Trust will provide responsive, non-privileged documents that pertain to the conflict arising from Ms. Boelter's prior work for YPF in this matter when she was a partner at Sidley Austin LLP and the ethical screen that White & Case put into place as a result.

**Document Request No. 5**

All Documents related to time that Mr. Lauria billed or recorded to matters for the Maxus Liquidating Trust or Occidental since January 1, 2016, including event calendars, attendee lists, meeting minutes, agendas, summaries, correspondence, or other Communications, as well as Documents sufficient to identify the date and nature of such work.

**RESPONSE TO DOCUMENT REQUEST NO. 5**

The Trust repeats and incorporates its General Objections.  The Trust objects to this Request on the ground that the Documents sought do not relate to any issue, claim or allegation raised in the Motion.  The Trust further objects to this Request to the extent it seeks Documents related to Mr. Lauria's work for White & Case clients other than the Trust or, with respect to Occidental, other than on Chapter 11 Cases.  Subject to the foregoing, and following a reasonable search for responsive Documents under the circumstances, the Trust has no documents responsive to this Request.

**Document Request No. 6**

All Documents concerning White & Case's prospective employment of a Norton Rose Fulbright LLP ("Norton Rose") associate who had previously done work for YPF, including its attempts to obtain a conflict waiver from YPF and decision not to hire the Norton Rose associate.

## RESPONSE TO DOCUMENT REQUEST NO. 6

The Trust repeats and incorporates its General Objections.  The Trust objects to this Request on the ground that the Documents sought do not relate to any issue, claim or allegation raised in the Motion.  The Trust further objects to the extent that the Request calls for the production of Privileged Materials.  The Trust further objects that this Request is improperly broad, unduly burdensome and calculated to harass.  The Trust further objects to this Request on the ground that the Documents sought are cumulative and duplicative of information already in YPF's possession, as YPF admits that it denied White & Case's request that it waive the conflict to which the associate was subject by virtue of his prior work for YPF.  *See* Motion at 4.  The Trust will not produce Documents sought by this Request.

**Document Request No. 7**

All Documents You intend to use at any hearing on the Motion.

## RESPONSE TO DOCUMENT REQUEST NO. 7

The Trust repeats and incorporates its General Objections.  The Trust agrees to negotiate a scheduling stipulation or order with regard to any evidentiary proceedings relating to the Motion, and will produce trial exhibits in accordance therewith, but will not produce Documents that it intends to use solely for impeachment.

Dated: February 19, 2021

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4098)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

J. Christopher Shore (admitted *pro hac vice*)
Matthew L. Nicholson (admitted *pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
cshore@whitecase.com
matthew.nicholson@whitecase.com

*Attorneys for the Liquidating Trust*

# Exhibit N
# (FILED UNDER SEAL)

# Exhibit O





**FIRM PROFILE > WHITE & CASE LLP > HOUSTON, UNITED STATES**

## WHITE & CASE LLP



**WHITE & CASE LLP**
**609 MAIN STREET**
**SUITE 2900**
**HOUSTON, TEXAS 77002**
**UNITED STATES**

🌐 Visit website

## WHITE & CASE LLP > THE LEGAL 500 **RANKINGS**

**ANTITRUST > CARTEL**  **TIER 1**

**White & Case LLP** is widely recognized for the global reach of its cartel practice, representing not just US multinationals but more often assisting companies headquartered outside the country with antitrust issues in the United States. A substantial part of the team's work is for pharmaceuticals clients, with an increasing amount of technology and transportation industry expertise. Cartel investigations are the focal point of department leader **Mark Gidley**'s personal practice in Washington DC with an emphasis on assisting pharmaceutical clients. The DC-based Peter Carney is regularly appointed to support clients with cartel investigations brought by antitrust enforcers in the US and far beyond. In addition to his DC disputes practice, **Christopher Curran** also boasts vast cartel enforcement experience across industry sectors. Located in Boston, Michael Kendall is often

| Carlyle Power Partners

| Antin Infrastructure Partners

| Mizuho Bank

| Korea Development Bank

| Avangrid Renewables

| Tellurian

| Deutsche Bank

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## FINANCE > RESTRUCTURING (INCLUDING BANKRUPTCY): CORPORATE   TIER 1

**White & Case LLP** has a global financial restructuring and insolvency group with main offices in New York, Miami, and Chicago. With rock-solid expertise in complex restructuring proceedings, global head **Thomas Lauria** coordinates the department alongside **John Cunningham**, who is in charge of a team of experts in Latin America multinationals, and **Scott Greissman** in New York whose team focuses on bank lender cases (especially Chapter 11 proceedings in the oil and gas industry.) Within this sector, the firm has been further cementing its reputation in Houston, where it opened a new office in 2018. After twelve years at Kirkland & Ellis LLP, William Guerrieri joined the team in Chicago in 2019.

## Leading lawyers

**John Cunningham** - **White & Case LLP**
**Thomas Lauria** - **White & Case LLP**

## Practice head(s):

**Thomas Lauria**; **John Cunningham**

## Other key lawyers:

**Scott Greissman**; William Guerrieri; Chris Shore

## Testimonials

'Very experienced and all-star players. White & Case has consistently strong practitioners'



*'Understandable communications based on law and experience. Also excellent at listening to a client and understanding the issues. Great retention of facts and attention to detail'*

*'Outstanding litigators with an incredible experience. Among the top tier of firms'*

*'Chris Shore is best in class. An incredible experience and very effective in the courtroom'*

## Key clients

Oi SA

Sempra Energy

Maxus Liquidating Trust

US Bank National Association and UMB Bank, National Association, in their capacities as indenture trustees for Windstream's senior unsecured notes

OAS

Constellation Oil Services

UBS Puerto Rico Family of Funds

Joseph J. Farnan, Jr., in his capacity as independent director to the Zohar Funds

Elliott Management Corporation

The ad hoc group of Revolving Credit Facility lenders to Pacific Drilling SA

BNP Paribas

Pinpoint Multi-Strategy Fund

Value Partners Greater China High Yield Income Fund

Value Partners Credit Opportunities Fund SP

Oaktree Capital Management and Hartree Partners

The Indenture Trustee for Unsecured Notes of iHeart Communications

Joerns WoundCo Holdings

Beal Bank

ABN AMRO Bank NV

Citibank, NA

Credit Agricole Corporate and Investment Bank

Deutsche Bank AG

EFA Syndicated Commodity Trade Finance Master Fund

KfW Ipex Bank GmbH

Natixis

Société Générale

MUFG Bank

Standard Chartered Bank

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ANTITRUST > CIVIL LITIGATION/CLASS ACTIONS: DEFENSE   TIER 2

**White & Case LLP** shines across the whole gamut of antitrust defense and is also well versed to handle related trials. With offices in Washington DC, Boston, New York and Silicon Valley, it puts a special emphasis on the pharmaceutical industry such as issues involving biosimilars, reverse payment patent settlements and product-hopping monopolization. The *'exceptional'* and *'diligent'* **Mark Gidley** operates a multifaceted antitrust practice out of the Washington DC office and leads the department, and **Christopher Curran** is regularly involved in novel litigation such as the defense of an amnesty agreement. Pharmaceuticals expert Peter Carney adds to the bench in Washington DC. In New York, Jack Pace displays an identical sector focus with key knowledge of product-hopping challenges. The Silicon Valley office boasts the *'incredibly thorough and knowledgeable'* Heather Burke, who defends parallel class actions, opt-out and state AG lawsuits.

### Leading lawyers

**Christopher Curran** - **White & Case LLP**
**Mark Gidley** - **White & Case LLP**
Jack Pace - **White & Case LLP**

### Practice head(s):

**Mark Gidley**

# Exhibit P

# YPF Sociedad Anónima Announces Results of its Exchange Offer and Consent Solicitation

NEWS PROVIDED BY
**YPF Sociedad Anónima**
Feb 11, 2021, 08:16 ET

BUENOS AIRES, Argentina, Feb. 11, 2021 /PRNewswire/ -- YPF S.A. ("**YPF**" or the "**Company**") announced today the results of its Exchange Offers and Consent Solicitation made pursuant to exchange offer and consent solicitation memorandum dated January 7, 2021, as most recently amended on February 7, 2021 (the "**Exchange Offer and Consent Solicitation Memorandum**"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Exchange Offer and Consent Solicitation Memorandum.

The 2021 Old Notes Early Participation Deadline and the Expiration Time with respect to the Exchange Offers corresponding to the 2024 Old Notes, March 2025 Old Notes, July 2025 Old Notes, 2027 Old Notes, 2029 Old Notes and 2047 Old Notes was 11:59 p.m., New York City time, on February 10, 2021.  Pursuant to the Exchange Offer and Consent Solicitation Memorandum, Eligible Holders of Old Notes were required to validly tender and not validly withdraw their Old Notes prior to or at such time and date to be eligible to receive the Exchange Consideration or 2021 Old Notes Early Exchange Consideration, as applicable.

Based on information provided by D.F. King & Co., Inc. ("**D.F. King**"), the exchange agent and information agent for the Exchange Offers and Consent Solicitation, tender instructions and Proxies relating to the Old Notes in the amounts set forth in Table 1 below were validly delivered and not validly withdrawn prior to or at 11:59 p.m., New York Citytime, on February 10, 2021. YPF has accepted all valid tender instructions and Proxies delivered pursuant to the Exchange Offers and Consent Solicitation.

**Table 1**

| Title of Old Notes[1] | CUSIPs and ISINs (144A and Reg S) | Aggregate Principal Amount Tendered | Percentage of Aggregate Principal Amount Outstanding Tendered |
|---|---|---|---|
| 2021 Old Notes | 984245AM2 / US984245AM20 P989MJBG5 / USP989MJBG51 | US$ 246,735,000 | 59.79% |
| 2024 Old Notes | 984245AK6 / US984245AK63 P989MJAY7 / USP989MJAY76 | US$ 656,382,382 | 43.12% |
| March 2025 Old Notes | 984245AT7 / US984245AT72 P989MJBQ3 / USP989MJBQ34 | US$ 201,667,138 | 37.15% |
| July 2025 Old Notes | 984245AL4 / US984245AL47 P989MJBE0 / USP989MJBE04 | US$ 368,228,998 | 24.55% |
| 2027 Old Notes | 984245AQ3 / US984245AQ34 P989MJBL4 / USP989MJBL47 | US$ 190,697,000 | 19.07% |
| 2029 Old Notes | 984245AS9 / US984245AS99 P989MJBP5 / USP989MJBP50 | US$ 101,028,000 | 20.21% |
| 2047 Old Notes | 984245AR1 / US984245AR17 P989MJBN0 / USP989MJBN03 | US$ 213,387,500 | 28.45% |

The Old Notes validly tendered pursuant to the Exchange Offer and Consent Solicitation Memorandum are sufficient to satisfy the Minimum Issuance Condition.

Subject to the satisfaction or waiver of the conditions set forth in the Exchange Offer and Consent Solicitation Memorandum, as consideration for the Old Notes listed in Table 1, the Company intends to:

- on the 2021 Old Notes Early Settlement Date, (a) issue US$775,312,599 aggregate principal amount of New Secured 2026 Notes and (b) pay U.S.$ 100,667,880 in cash, to Eligible Holders who validly tendered their 2021 Old Notes prior to the 2021 Old Notes Early Participation Deadline; and
- on the Settlement Date, issue US$747,833,257 principal amount of New 2029 Notes and US$575,649,021 principal amount of New 2033 Notes to Eligible Holders who validly tendered their Old Notes (other than the Old 2021 Notes) prior to the Expiration Time.

In addition, since (i) Eligible Holders of 2021 Old Notes representing 59.79% of the aggregate principal amount outstanding of such notes have validly tendered into the applicable Exchange Offer, and (ii) the Central Bank has approved the aggregate results of the Exchange Offers as a valid refinancing plan under the Communication "A" 7106, including access by YPF to the foreign exchange market to make the cash payment to Eligible Holders who tendered their Old 2021 Notes pursuant to the Exchange Offers and to repay any 2021 Old Notes that are not exchanged pursuant to the Exchange Offer on their maturity date, the Company has decided to waive the 2021 Old Notes Minimum Exchange Condition.

The 2021 Old Notes Early Settlement Date for the 2021 Old Notes validly tendered and not validly withdrawn prior to or at the 2021 Old Notes Early Expiration Date will be February 12, 2021.  The settlement date for Old Notes of all other series validly tendered and not validly withdrawn prior to or at the Expiration Time will be February 12, 2021.

Given that Proxies received were not sufficient to reach the Requisite Majorities as of the registration date, the Proposed Amendments will not become effective. The Company has decided to waive the condition to the Exchange Offers relating to the execution and delivery of the Old Notes Indentures implementing the Proposed Amendments.

**Tax Notice**

For a summary of certain U.S. federal income tax consequences of the Exchange Offers and Consent Solicitation that may be relevant to a beneficial owner of the Old Notes or the New Notes, please review the section entitled "*Taxation—Certain U.S. Federal Income Tax Considerations*" in the Exchange Offer and Consent Solicitation Memorandum and the below notice. If the information in this tax notice differs from the information contained in the Exchange Offer and Consent Solicitation Memorandum, you should rely on the information in this tax notice.

*Issue Date and Issue Price of the New Notes*

Subject to the discussion in the second succeeding paragraph, for U.S. federal income tax purposes, the "issue date" of the New Notes is expected to be February 12, 2021.  Subject to the discussions in the first and second succeeding paragraphs, for U.S. federal income tax purposes, the "issue price" of the New Notes generally will be their fair market value on the issue date if the New Notes are "traded on an established market." A series of New Notes will be considered to be traded on an established market if, at any time during the 31-day period ending 15 days after the issue date, there is a sales price for the series or there are one or more firm or indicative quotes for the series. We expect that each series of New Notes will be treated as traded on an established market.

Notwithstanding the preceding paragraph, if we were to issue a substantial amount of any series of New Notes pursuant to a cash offering substantially contemporaneous with the issue date of the New Notes (as described above), the issue price of any New Notes of that series issued pursuant to the Exchange Offers generally would be equal to the settlement price of the cash offering (excluding, for avoidance of doubt, any amount paid in respect of interest accrued prior to the settlement of the cash offering).

If the yield of the New Secured 2026 Notes based on market value as of the 2021 Old Notes Late Settlement Date declines sufficiently from the yield on the New Secured 2026 Notes based on issue price (as described above), it is possible that New Secured 2026 Notes that are settled on the 2021 Old Notes Late Settlement Date ("**Late 2026 Notes**") would not be treated as part of the same "issue" for U.S. federal income tax purposes as New Secured 2026 Notes settled on the 2021 Old Notes Early Settlement Date ("**Early 2026 Notes**").  In that case, for U.S. federal income tax purposes, the issue date for Late 2026 Notes would be the 2021 Old Notes Late Settlement Date and the issue price for Late 2026 Notes would be different than the issue price of Early 2026 Notes.  Accordingly, Late 2026 Notes may be assigned a different CUSIP number than Early 2026 Notes.

U.S. Holders should consult their own tax advisors concerning the application of these rules, including the application of the rules to their particular circumstances.

D.F. King is acting as the Information and Exchange Agent for the Exchange Offers and Consent Solicitation. Questions or requests for assistance related to any of the Exchange Offers and Consent Solicitation or for additional copies of the Exchange Offer and Consent Solicitation Documents may be directed to D.F. King & Co., Inc. by telephone at +1 (800) 848-3410 (U.S. toll free) and +1 (212) 269-5550 (collect), in writing at 48 Wall Street, New York, New York 10005, by email to ypf@dfking.com or by facsimile transmission at (212) 709-3328. You may also contact your broker, dealer, commercial bank, trust company or other nominee for assistance concerning the Exchange Offers and Consent Solicitation. The Exchange Offer and Consent Solicitation Documents are available for Eligible Holders at the following web address: www.dfking.com/ypf.

Citigroup Global Markets Inc., HSBC Securities (USA) Inc., Itau BBA USA Securities, Inc., and Santander Investment Securities Inc. are acting as dealer managers (the "**Dealer Managers**") for the Exchange Offers and Consent Solicitation.

| **Citigroup Global Markets Inc.** | **HSBC Securities (USA) Inc.** | **Itau BBA USA Securities, Inc.** | **Santander Investment Securities Inc.** |
|---|---|---|---|
| 388 Greenwich Street, 7th Floor | 452 Fifth Avenue | 540 Madison Avenue, 24th Floor | 45 East 53rd Street 5th Floor |
| New York, New York 10013 | New York, New York 10018 | New York, NY 10022 | New York, New York 10022 |
| United States | United States | United States | United States |
| | | | |
| Attention: Liability Management Group | Attention: Global Liability Management Group | Attention: Debt Capital Markets | Attention: Liability Management |
| Call Collect: (212) 723-6106 | Toll Free: +1 (888) HSBC-4LM | Collect: +1 (212) 710-6749 | Collect: +1 (212) 940-1442 |
| US Toll-Free: (800) 558-3745 | Collect: +1 (212) 525-5552 | Toll Free: +1 (888) 770-4828 | Toll Free: +1 (855) 404-3636 |
| | lmamericas@us.hsbc.com | | |

## Important Notice

This announcement is not an offer of securities for sale in the United States, and none of the New Notes has been or will be registered under the Securities Act and they may not be offered or sold within the United States or to, or for the account or benefit of, U.S. persons except pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act. This press release does not constitute an offer of the New Notes for sale, or the solicitation of an offer to buy any securities, in any state or other jurisdiction in which any offer, solicitation or sale would be unlawful. Any person considering making an investment decision relating to any securities must inform itself independently based solely on an offering memorandum to be provided to eligible investors in the future in connection with any such securities before taking any such investment decision.

The Exchange Offer and Consent Solicitation is being made solely by means of the Exchange Offer and Consent Solicitation Memorandum (and the applicable document in Argentina). The Exchange Offer and Consent Solicitation Memorandum is confidential and is only directed at, and can only be accessed by, Eligible Holders (as defined in the Exchange Offer and Consent Solicitation Memorandum). Documents relating to the exchange offer will only be distributed to Eligible Holders of Old Notes. Eligible Holders of Old Notes can only access the Exchange Offer and Consent Solicitation Memorandum and related documents if they electronically complete an eligibility letter by following the procedures described in the Exchange Offer and Consent Solicitation.

The distribution of materials relating to any of the Exchange Offers and Consent Solicitation may be restricted by law in certain jurisdictions. Any of the Exchange Offers and Consent Solicitation are void in all jurisdictions where they are prohibited. If materials relating to the Exchange Offers and Consent Solicitation come into your possession, you are required by the Company to inform

yourself of and to observe all of these restrictions. The materials relating to the Exchange Offers and Consent Solicitation, including this communication, do not constitute, and may not be used in connection with, an offer or solicitation in any place where offers or solicitations are not permitted by law. If a jurisdiction requires that the Exchange Offers and Consent Solicitation be made by a licensed broker or dealer and a dealer manager or any affiliate of a dealer manager is a licensed broker or dealer in that jurisdiction, the Exchange Offers and Consent Solicitation shall be deemed to be made by the dealer manager or such affiliate on behalf of the Company in that jurisdiction.

**Forward-Looking Statements**

Statements contained in this press release that state the Company's or management's intentions, expectations or predictions of the future are statements that YPF believes constitute forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. These forward-looking statements may include statements regarding the intent, belief or current expectations of YPF and its management, including statements with respect to trends affecting its financial condition, financial ratios, results of operations, business, strategy, geographic concentration, reserves, future hydrocarbon production volumes, YPF's ability to satisfy its long-term sales commitments from future supplies available to YPF, YPF's ability service its outstanding debt, dates or periods in which production is scheduled or expected to come on-stream, as well as its plans with respect to capital expenditures, business, strategy, geographic concentration, cost savings and investments. These statements are not a guarantee of future performance and are subject to material risks, uncertainties, changes and other factors which may be beyond YPF's control or may be difficult to predict. Accordingly, YPF's future financial condition, prices, financial ratios, results of operations, business, strategy, geographic concentration, production volumes, reserves, capital expenditures, cost savings, investments and ability to meet YPF's long-term sales commitments or pay dividends or service its outstanding debt could differ materially from those expressed or implied in any such forward-looking statements. Such factors include, but are not limited to, currency fluctuations, inflation, the domestic and international prices for crude oil and its derivatives, the ability to realize cost reductions and operating efficiencies without unduly disrupting business operations, replacement of hydrocarbon reserves, environmental, regulatory and legal considerations, including the imposition of further government restrictions on the Company's business, changes in YPF's business strategy and operations, its ability to find partners or raise funding under its current control, the ability to maintain the YPF's concessions, and general economic and business conditions in Argentina, the effects of pandemics, such as the novel

coronavirus, on the economy of Argentina and its effects on global and regional economic growth, supply chains, YPF's creditworthiness and the creditworthiness of Argentina, counter-party risks, as well as on logistical, operational and labor matters, as well as those factors described in "Risk Factors" in the Exchange Offer and Consent Solicitation Memorandum and in the filings made by YPF and its affiliates with the Securities and Exchange Commission, in particular, those described in YPF's 20-F "Item 3. Key Information—Risk Factors" and "Item 5. Operating and Financial Review and Prospects." YPF does not undertake to publicly update or revise these forward-looking statements even if experience or future developments make it clear that the projected results or condition expressed or implied therein will not be realized.

**Notice to Investors in the European Economic Area and the United Kingdom**

The New Notes are not intended to be offered, sold or otherwise made available to and should not be offered, sold or otherwise made available to any retail investor in the European Economic Area ("**EEA**"). For these purposes, a retail investor means a person who is one (or more) of: (i) a retail client as defined in point (11) of Article 4(1) of Directive 2014/65/EU (as amended, "**MiFID II**"); or (ii) a customer within the meaning of Directive (EU) 2016/97 (the "**Insurance Distribution Directive**"), where that customer would not qualify as a professional client as defined in point (10) of Article 4(1) of MiFID II; or (iii) not a qualified investor as defined in the **Prospectus Regulation**. The expression an offer includes the communication in any form and by any means of sufficient information on the terms of the offer and the Notes to be offered so as to enable an investor to decide to purchase or subscribe for the Notes. Consequently, no key information document required by Regulation (EU) 1286/2014 (as amended, the "**PRIIPs Regulation**") for offering or selling the New Notes or otherwise making them available to retail investors in the EEA has been prepared and therefore otherwise offering or selling the New Notes or otherwise making them available to any retail investor in the EEA may be unlawful under the PRIIPs Regulation.

**United Kingdom**

The New Notes are not intended to be offered, sold or otherwise made available to and should not be offered, sold or otherwise made available to any retail investor in the United Kingdom. For these purposes, a retail investor means a person who is one (or more) of: (i) a retail client as defined in point (8) of Article 2 of Regulation (EU) No 2017/565 as it forms part of domestic law by virtue of the EUWA; or (ii) a customer within the meaning of the provisions of the UK Financial Services ь

Market Act 2000 ("**FSMA**") and any rules or regulations made under the FSMA to implement Directive (EU) 2016/97, where that customer would not qualify as a professional client, as defined in point (8) of Article 2(1) of Regulation (EU) No 600/2014 as it forms part of domestic law by virtue of the EUWA; or (iii) not a qualified investor as defined in Article 2 of the Prospectus Regulation as it forms part of domestic law by virtue of the EUWA.

This document has not been approved by an authorized person for the purposes of section 21 of the FSMA. This document is only being distributed to and is only directed at: (i) persons who are outside the United Kingdom; or (ii) persons who have professional experience in matters relating to investments falling within Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005 (as amended, the "**Financial Promotion Order**"); or (iii) persons falling within Articles 49(2)(a) to (d) ("high net worth companies, unincorporated associations, etc.") of the Financial Promotion Order; or (iv) persons to whom an invitation or inducement to engage in investment activity (within the meaning of section 21 of the FSMA) in connection with the issue or sale of any New Notes may otherwise lawfully be communicated or caused to be communicated (all such persons together being referred to as "**relevant persons**"). This document is directed only at relevant persons and must not be acted on or relied upon by persons who are not relevant persons. Any investment or investment activity to which this document relates is available only to relevant persons and any invitation, offer or agreement to subscribe, purchase or otherwise acquire such New Notes will be engaged in only with relevant persons.

SOURCE YPF Sociedad Anónima

# Exhibit Q

# Leading International Bondholders of YPF Form Group to Block Company's Exchange Offer

USA - English ▾

NEWS PROVIDED BY
**White & Case LLP**
Jan 17, 2021, 19:47 ET

NEW YORK, Jan. 17, 2021 /PRNewswire/ -- On January 7, YPF SA (the "Company") launched an exchange offer and consent solicitation (the "Exchange Offer") affecting seven series of the Company's outstanding international bonds (the "Bonds").  Concerned about the terms and structure of the Exchange Offer and the expeditious timeline contemplated therein, many of the Company's largest international bondholders have formed a group (the "Ad Hoc YPF Bondholder Group" or the "Group") to oppose the Exchange Offer.

The Ad Hoc YPF Bondholder Group currently comprises 13 major international institutional investors, operating as fiduciaries on behalf of their clients, and holds over 25% of the Bonds in the aggregate, including approximately 40% of the Bonds that are set to mature in 2021 and 2024, and well over 50% of the Bonds maturing in March 2025.  The Group's immediate objective is to block the Exchange Offer so as to avoid unnecessary and unacceptable destruction of bondholder value.  In this regard, the Group is coordinating with the group of bondholders represented by Dechert LLP.

On January 14, in response to concerns expressed by members of the Group and other investors, the Company announced that the amendments to each series of the Bonds set out in the Exchange Offer would only come into force if approved by a majority of the outstanding principal amount of each such series.  In reliance on the Company's statement, the members of the Group have determined that the best way to oppose and block the Exchange Offer is to take no action at this time.  Accordingly, the Group members will not be submitting proxies or tendering their Bonds in the Exchange Offer.

The Group is supported by White & Case and Bomchil as legal advisors.  Holders of YPF's international bonds who wish to learn more about the Group and the Exchange Offer are encouraged to contact White & Case at ypfexchange@whitecase.com.


Contact:

White & Case LLP

Erin Hershkowitz in New York

T +1 646 885 2200

E erin.hershkowitz@whitecase.com


SOURCE White & Case LLP

# Exhibit R



# People

White & Case lawyers are recognized for their legal innovation and outstanding service to clients worldwide.

| eg. name, service | 🔍 | Financial Restructuring and Insolvency ⇕ | Partner ⇕ |
| --- | --- | --- | --- |
| | | - New York ⇕ | Language ⇕ |

Partner ✕   - New York ✕   Financial Restructuring and Insolvency ✕   Reset

48 results



**Jessica C. Lauria (formerly Boelter)**
Partner, New York

**T** +1 212 819 7097
**E** jessica.boelter@whitecase.com



**Philip Abelson**
Partner, New York

**T** +1 212 819 8903
**E** philip.abelson@whitecase.com



**Rob Bennett**
Partner, New York

**T** +1 212 819 8249
**T** +917 275 3274 (mobile)
**E** rbennett@whitecase.com



**Joshua A. Berman**
Partner, New York

**T** +1 212 819 8547
**E** joshua.berman@whitecase.com



**David Bilkis**
Partner, New York

**T** +1 212 819 8413
**T** +1 212 819 8200
**E** dbilkis@whitecase.com

**Rupa Briggs**
Partner, New York

**T** +1 212 819 7621
**E** rupa.briggs@whitecase.com





**Ipek Candan Snyder**
Partner, New York

**T** +1 212 819 2684
**E** ipek.candansnyder@whitecase.com



**Adam Cieply**
Partner, New York

**T** +1 212 819 8514
**E** adam.cieply@whitecase.com



**John K Cunningham**
Partner, Miami, New York

**T** +1 305 995 5252
**T** +1 212 819 8200
**E** jcunningham@whitecase.com



**Harrison Denman**
Partner, New York

**T** +1 212 819 2567
**E** hdenman@whitecase.com



**Michael Deyong**
Partner, New York

**T** +1 212 819 2577
**E** michael.deyong@whitecase.com



**Binoy Dharia**
Partner, New York

**T** +1 212 819 8260
**E** bdharia@whitecase.com



**Brenda Dieck**
Partner, Los Angeles, New York

**T** +1 213 620 7717
**T** +1 212 819 8200
**E** bdieck@whitecase.com

People | White & Case



**David Dreier**
Partner, New York

**T** +1 212 819 8781
**T** +1 212 819 8200
**E** ddreier@whitecase.com



**Elizabeth Feld**
Partner, New York

**T** +1 212 819 8549
**E** efeld@whitecase.com



**Rebecca Gottlieb**
Partner, New York

**T** +1 212 819 8802
**E** rgottlieb@whitecase.com



**Scott Greissman**
Partner, New York

**T** +1 212 819 8567
**T** +1 212 819 8200
**E** sgreissman@whitecase.com



**Andrew Hammond**
Partner, New York

**T** +1 212 819 8297
**T** +1 212 819 8200
**E** ahammond@whitecase.com



**Kim Havlin**
Partner, New York

**T** +1 212 819 8683
**E** kim.havlin@whitecase.com



**David Johansen**
Partner, New York

**T** +1 212 819 8509
**T** +1 212 819 8200
**E** djohansen@whitecase.com



**Gary Kashar**
Partner, New York

**T** +1 212 819 8223
**T** +1 212 819 8200
**E** gkashar@whitecase.com



**Elizabeth J. Kirk**
Partner, New York

**T** +1 212 819 7822
**E** ekirk@whitecase.com



**Charles R. Koster**
Partner, New York

**T** +1 212 819 7845
**E** ckoster@whitecase.com



**Glenn M. Kurtz**
Partner, New York

**T** +1 212 819 8252
**T** +1 212 819 8200
**E** gkurtz@whitecase.com



**Thomas Lauria**
Partner, New York, Miami

**T** +1 305 995 5282
**T** +1 212 819 2637
**E** tlauria@whitecase.com



**Frank Lupinacci**
Partner, New York

**T** +1 212 819 8984
**E** flupinacci@whitecase.com



**Thomas MacWright**
Partner, New York

**T** +1 212 819 8259
**E** tmacwright@whitecase.com



**Gordon Mak**
Partner, New York

**T** +1 212 819 2579
**E** gordon.mak@whitecase.com



**Jonathan Michels**
Partner, New York

**T** +1 212 819 8661
**E** jmichels@whitecase.com



**Elena Millerman**
Partner, New York

**T** +1 212 819 8977
**T** +1 212 819 8200
**E** elenamaria.millerman@whitecase.com



**Stephen Moeller-Sally**
Partner, Boston, New York

**T** +1 617 979 9324
**T** +1 212 819 7599
**E** ssally@whitecase.com



**Daniel Nam**
Partner, New York

**T** +1 212 819 8542
**T** +1 212 819 8200
**E** dnam@whitecase.com





**Henrik Patel**
Partner, New York

**T** +1 212 819 8205
**T** +1 212 819 8200
**E** henrik.patel@whitecase.com



**Brian Pfeiffer**
Partner, Miami, New York

**T** +1 305 995 5271
**T** +1 212 819 8237
**E** brian.pfeiffer@whitecase.com



**Michael Shenberg**
Partner, New York

**T** +1 212 819 8535
**E** mshenberg@whitecase.com



**Michael Shepherd**
Partner, Miami, New York

**T** +1 305 925 4790
**T** +1 212 819 8709
**E** mshepherd@whitecase.com



**Chris Shore**
Partner, New York

**T** +1 212 819 8394
**E** cshore@whitecase.com



**Sabrena Silver**
Partner, New York

**T** +1 212 819 7056
**E** sabrena.silver@whitecase.com



**Michael W. Smith**
Partner, New York

**T** +1 212 819 8968
**T** +1 212 819 8200
**E** msmith@whitecase.com



**Sherri Snelson**
Partner, New York

**T** +1 212 819 8430
**E** sherri.snelson@whitecase.com



**Gregory Starner**
Partner, New York

**T** +1 212 819 8839
**T** +1 212 819 8200
**E** gstarner@whitecase.com



**David H. Suggs**
Partner, New York

**T** +1 212 819 2686
**E** dsuggs@whitecase.com



**David Thatch**
Partner, New York

**T** +1 212 819 8342
**T** +1 212 819 8200
**E** dthatch@whitecase.com



**David Turetsky**
Partner, New York

**T** +1 212 819 8904
**E** david.turetsky@whitecase.com



**Andrew Weisberg**
Partner, New York

**T** +1 212 819 8980
**E** aweisberg@whitecase.com



**Colin T. West**
Partner, New York

**T** +1 212 819 7977
**E** cwest@whitecase.com

---



**Keith H. Wofford**
Partner, New York

**T** +1 212 819 7595
**E** kwofford@whitecase.com

---



**Andrew Zatz**
Partner, New York

**T** +212 819 8504
**E** azatz@whitecase.com

---