Civil Action No. 21-_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 16-11501 (CSS)<br>(Jointly Administered) |
| MAXUS LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>YPF S.A., et al.,<br><br>Defendants. | Adversary Proceeding No. 18-50489 (CSS) |
| YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., and CLH HOLDINGS, INC.,<br><br>Appellants,<br><br>v.<br><br>MAXUS LIQUIDATING TRUST,<br><br>Appellee. | Appeal from the United States Bankruptcy Court for the District of Delaware |

## YPF APPELLANTS' MOTION FOR LEAVE
## TO FILE INTERLOCUTORY APPEAL OF THE
## BANKRUPTCY COURT'S FEBRUARY 21, 2021 DISCOVERY ORDER

---

[1] The Debtors in the above-captioned Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Maxus Energy Corporation (1531), Tierra Solutions, Inc. (0498), Maxus International Energy Company (7260), Maxus (U.S.) Exploration Company (2439), and Gateway Coal Company (7425). The address of each of the Debtors is 10333 Richmond Avenue, Suite 1050, Houston, Texas 77042.

**SIDLEY AUSTIN LLP**
John J. Kuster (admitted *pro hac vice*)
Martin B. Jackson (admitted *pro hac vice*)
Andrew P. Propps (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
jkuster@sidley.com
mjackson@sidley.com
apropps@sidley.com

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Lisa M. Schweitzer (admitted *pro hac vice*)
Victor L. Hou (admitted *pro hac vice*)
Ari D. MacKinnon (admitted *pro hac vice*)
Mark E. McDonald (admitted *pro hac vice*)
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
lschweitzer@cgsh.com
vhou@cgsh.com
amackinnon@cgsh.com
memcdonald@cgsh.com

*Counsel for Appellants YPF S.A., YPF International S.A.,*
*YPF Holdings, Inc., and CLH Holdings, Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .........................................................................................1

JURISDICTIONAL STATEMENT ..................................................................................4

FACTS NECESSARY FOR THE QUESTIONS PRESENTED ......................................4

STATEMENT OF QUESTIONS PRESENTED................................................................9

RELIEF SOUGHT............................................................................................................9

LEAVE TO APPEAL SHOULD BE GRANTED.............................................................9

    I.     The Bankruptcy Court Committed Reversible Error by Holding that YPF
Cannot Establish that a Dual-Hat Director Received Privileged
Information in His YPF-Parent Capacity...................................................11

    II.    The Bankruptcy Court Committed Reversible Error by Requiring Two-Hat
Individuals to Disclose Pre-Deposition, Privileged Communications with
Their Counsel.............................................................................................14

CONCLUSION................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bertoli v. D'Avella (In re Bertoli),*
  812 F.2d 136 (3d Cir. 1987)......................................................................................9

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.,*
  No. 15-CV-03424-JCS, 2016 WL 7475581 (N.D. Cal. Dec. 29, 2016)...............................13

*Coleman v. Sterling,*
  No. 09-CV-1594-W(BGS), 2012 WL 12952831 (S.D. Cal. Feb. 21, 2012) ...................14, 17

*Fox Sports Net West 2, LLC v. L.A. Dodgers LLC (In re L.A. Dodgers LLC),*
  465 B.R. 18 (D. Del. 2011)......................................................................................10

*Garza v. Citigroup, Inc.,*
  No. 15-537-SLR, 2016 WL 50327 (D. Del. Jan. 4, 2016)......................................................13

*Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.,*
  No. 13-284, 2014 WL 3887750 (E.D. Pa. Aug. 7, 2014) .................................................14, 17

*Hess v. A.I. DuPont Hosp. for Child.,*
  No. Civ. A. 08–0229, 2009 WL 2776606 (E.D. Pa. Aug. 28, 2009)......................................10

*Estate of Juanita Jackson v. Gen. Elec. Cap. Corp. (In re Fundamental Long
  Term Care, Inc.),*
  515 B.R. 874 (Bankr. M.D. Fla. 2014) ......................................................................11

*LaPoint v. AmerisourceBergen Corp.,*
  Civil Action No. 327-N, 2006 WL 2105862 (Del. Ch. July 18, 2006)...................................16

*Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.),*
  617 B.R. 806 (Bankr. D. Del. 2020) ......................................................................1, 5

*McNeal v. Glazman,*
  No. 17-1397-RGA, 2018 WL 4109266 (D. Del. Aug. 29, 2018) ..........................................15

*Mohawk Indus., Inc. v. Carpenter,*
  558 U.S. 100 (2009)........................................................................................13, 15

*Off. Bondholders Comm. v. Chase Manhattan Bank (In re Marvel Ent. Grp., Inc.),*
  209 B.R. 832 (D. Del. 1997)....................................................................................10

*In re Ohio Execution Protocol Litig.,*
  No. 15-0305, 2016 U.S. App. LEXIS 23716 (6th Cir. Feb. 22, 2016) ....................................15

*Pharmathene, Inc. v. Siga Techs., Inc.*,
Civil Action No. 2627-VCP, 2009 WL 2031793 (Del. Ch. July 10, 2009) ............................ 15

*Price v. Porter Novelli, Inc.*,
No. 07-Civ-5869, 2008 WL 2388709 (S.D.N.Y. June 11, 2008) ............................................ 16

*Stanziale v. Sun Nat'l Bank (In re Dwek)*,
Civ. No. 3:09-cv-5046, 2010 WL 234938 (D.N.J. Jan. 15, 2010) ........................................ 10

*Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*,
493 F.3d 345 (3d Cir. 2007) .................................................................................... 2, 11, 12, 13

*U.S. v. Bestfoods*,
524 U.S. 51 (1998) ........................................................................................................... 11

**Statutes**

28 U.S.C. § 158(a)(3) ................................................................................................. 1, 4, 9

28 U.S.C. § 1292(b) ......................................................................................................... 10

**Other Authorities**

Federal Rules Bankruptcy Procedure 8002; 8004(a)(1) ................................................. 4

Del. Ethics Rule 1.13(g) ................................................................................................. 16

Pursuant to 28 U.S.C. § 158(a)(3), and in accordance with Rule 8004 of the Federal Rules of Bankruptcy Procedure, Appellants YPF S.A. ("YPF"), YPF International S.A., YPF Holdings, Inc., and CLH Holdings, Inc. (collectively "YPF Defendants") hereby file their motion for leave to appeal the *Order* regarding discovery disputes among the parties (Adv. Dkt. 340) ("Order"), entered on February 21, 2021, by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and the corresponding February 8, 2021 *Opinion* (Adv. Dkt. 333) ("Opinion").

## PRELIMINARY STATEMENT

1.      In its sweeping and unprecedented Order, the Bankruptcy Court allowed into the record thousands of YPF's core privileged documents, and required former and/or current employees of the YPF Defendants to disclose attorney-client privileged communications they had with their own counsel concerning deposition preparation. The Bankruptcy Court's Order not only violates YPF's and these witnesses' attorney-client privilege, it threatens to contaminate all remaining proceedings, which are at serious risk of an enormous "do over" at the end of the case, absent the Court's intervention now. Accordingly, the YPF Defendants respectfully request that the Court grant interlocutory review and reverse the Order.

2.      In the pending adversary proceeding, the Maxus Liquidating Trust (the "Trust") seeks to impose $14 billion in damages against the YPF Defendants based upon their direct or indirect ownership of the debtor Maxus Energy Company[2] ("Maxus")—formerly an oil and gas exploration company—primarily arising from Maxus's legacy environmental liabilities that YPF Defendants did not cause, and which arose decades before YPF acquired Maxus in 1995. Lacking evidence to support its claims, the Trust has sought to invade the attorney-client privilege of YPF

---

[2] Maxus and its affiliated debtors are referred to as the Debtors.

and the YPF Defendants' key witnesses in this case. Unfortunately, by its Order, the Bankruptcy Court has permitted the Trust to do so.

3.        While privilege rulings do not ordinarily warrant interlocutory review, this appeal easily satisfies the standard for immediate review because the Order presents two controlling issues of law as to which there is—at minimum—substantial ground for difference of opinion, the resolution of which may—and likely will—materially expedite the ultimate termination of the litigation.

4.        *First*, the Bankruptcy Court committed clear error by ruling that YPF "waived" privilege over communications with its own employees who were simultaneously serving as directors of Maxus (the "Dual-Hat Directors"), solely because the interests of YPF and Maxus may have been "adverse." Contrary to the Order, the Third Circuit's decision in *Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 359 (3d Cir. 2007), requires a determination of the *capacity* in which a dual-hat individual received a privileged communication in order to assess whether it is privileged as against the subsidiary. The YPF Defendants submitted evidence, which the Trust did not dispute, that the privileged communications at issue were shared with the Dual-Hat Directors solely in their capacity as employees of YPF, and not as directors of Maxus. The communications therefore remained privileged.

5.        The Bankruptcy Court ignored this evidence based on its erroneous ruling that there is an "adversity" exception to *Teleglobe*—i.e. disclosure by the parent to dual-hat directors when the parent and subsidiary are adverse *automatically* waives the parent's privilege—thereby eliminating the required "capacity" determination. There is no support for any such sweeping "adversity" exception. *Teleglobe* and other precedents applying Delaware law make clear that a parent company may maintain its privilege vis-à-vis its subsidiary, even when they are adverse.

When adversity arises—as it frequently does, not just in the potential insolvency context, but in minority buyouts and other routine parent-subsidiary transactions—the parent is not required to remove its representatives from the board of its subsidiary, nor to wall off those representatives from the parent's privileged communications, in order to maintain its privilege. The law is clear: So long as the parent communicates with dual-hat representatives in their *parent* capacity, as happened here, the parent's privilege is maintained. The Bankruptcy Court's contrary ruling not only prejudices YPF Defendants because it affects thousands of privileged documents that concern core issues in the case, if allowed to stand the Order disturbs decades of settled Delaware law on an issue of critical importance to Delaware corporations.

6.      *Second*, the Order also wrongfully forces former dual-hat employees of the YPF Defendants and Maxus to divulge their privileged communications with their own counsel in preparation for their depositions, solely on the grounds that (1) they are former employees of Maxus (although they are also former and current employees of various YPF Defendants and/or affiliates), and (2) their counsel is also counsel to the YPF Defendants. The Bankruptcy Court, however, failed to identify any law supporting this novel purported exception to the attorney-client privilege, because there is none.

7.      This aspect of the Order is not tangential or immaterial—it affects most of the ten individuals noticed by the Trust for depositions, who believed they were having privileged communications with their counsel in a good faith effort to prepare for depositions. The Order would allow the Trust to violate these witnesses' reasonable expectations of confidentiality through no fault of their own, and based on a clearly erroneous view of the law.

8.      Both aspects of the Order have far-reaching implications and threaten to upend this case. Among other things, the Trust is now poised to take depositions of witnesses with the benefit

of using YPF's and the witnesses' own privileged communications against them. Once that happens, it will be exceedingly difficult—if not impossible—to assess the damage done on any appeal from a final judgment, raising the possibility that if there is a remand, the record may need to be redeveloped substantially to remove the taint of the privileged communications that should never have been allowed into the record.

9.      The Order should be reviewed now, and reversed.

## JURISDICTIONAL STATEMENT

10.      YPF Defendants seek interlocutory review of the Opinion and the Order pursuant to 28 U.S.C. § 158(a)(3). This Motion and accompanying Notice of Appeal, filed within fourteen days after the Order was entered on February 21, 2021, are timely under Bankruptcy Rules 8004(a)(1) and 8002.

11.      Though filed in the first instance with the Bankruptcy Court, this Motion is properly directed to this Court.

## FACTS NECESSARY FOR THE QUESTIONS PRESENTED

12.      The Trust commenced this proceeding on June 14, 2018. Count I of the Complaint is a "claim" for alter-ego liability, in which the Trust seeks to hold the YPF Defendants liable for all of the allowed proofs of claim filed by creditors against the Debtors (up to $14 billion) for historical environmental liabilities that arose decades before the YPF Defendants had any ownership interest in Maxus and are wholly unrelated to Maxus's business. The Complaint also asserts various claims against YPF Defendants for avoidance of alleged fraudulent transfers, unjust enrichment, and civil conspiracy.

13.      On October 12, 2018, the YPF Defendants moved to dismiss the Complaint, which the Bankruptcy Court denied on February 15, 2019. The YPF Defendants filed a motion for leave

to appeal the denial of the motion to dismiss (Adv. Dkt. 121, 124), which this Court denied. *See* 2019 WL 4343722 (D. Del. Sept. 12, 2019).

**Dual-Hat Director Documents**

14.     After the commencement of discovery, the parties submitted a number of discovery disputes to the Bankruptcy Court for resolution. On June 23, 2020, the Bankruptcy Court issued an opinion (*Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 617 B.R. 806 (Bankr. D. Del. 2020) and separate order (Adv. Dkts. 227-228) (the "June 2020 Order"), resolving certain of the parties' discovery disputes relating (*inter alia*) to privilege issues. While the June 2020 Order required the YPF Defendants to produce certain documents involving "shared employees," it did not find any privilege waiver with respect to documents exchanged with Dual-Hat Directors.[3]

15.     In response to the June 2020 Order, YPF inadvertently produced and then timely clawed back certain privileged communications that had been received by the Dual-Hat Directors, who were employees of the parent company but also served simultaneously for certain periods of time as directors of certain of the Debtors (the "Clawback Documents"). (Adv. Dkt. 275.) On October 14, 2020, the Trust sought to compel production of these Clawback Documents.

16.     The Clawback Documents comprise more than 2,000 documents that are unquestionably privileged, many of which also constitute core attorney work product, including attorney-client communications with both internal and external counsel, witness interview notes, presentations, and analyses of legal claims prepared for YPF. The Clawback Documents also include two memoranda prepared by YPF's external legal counsel, Chadbourne and Parke LLP

---

[3] To the extent the Trust argues the YPF Defendants' Motion for Leave to Appeal is an untimely challenge to the Bankruptcy Court's June 2020 Order, this is wrong. The June 2020 Order did not address documents exchanged with individuals who were Dual-Hat Directors. *Id.*

("Chadbourne"), concerning YPF's defenses in parallel litigation involving substantially the same issues as in this case. (Adv. Dkt. 333.) Critically, Chadbourne was litigation counsel to YPF, not to the Debtors, which had separate litigation counsel.

17.    On October 23, 2020, YPF Defendants submitted their response to the Trust's motion, together with unrebutted evidence, including a declaration from Mr. Francisco García Tobar (the "Tobar Declaration") and documents establishing the capacity in which Mr. Teodoro Marcó and Mr. Tobar (i.e., the Dual-Hat Directors) received the privileged documents at issue. YPF also submitted for *in-camera* review two privileged memoranda (attached to a single email) addressed to individuals that were employed by YPF (the parent company) from its external legal counsel Chadbourne (the "Chadbourne Legal Documents"). Through these submissions, YPF Defendants established the following:

- From 2008 until 2012, Mr. Teodoro Marcó served as in-house counsel to YPF, was never an employee of the Debtors, and only served as a director of the Debtors from Dec. 2008 to July 2012 [Adv. Dkt. 283 at 5];

- Mr. Marcó received the Clawback Documents solely in his capacity as in-house counsel for YPF, not in his capacity as a director of the Debtors [*id.* at 5, 9-12].

- From June 2012 until August 2013, Mr. Francisco García Tobar was the Controller of International Business for YPF, with responsibility for the supervision of the international commercial operations of its international subsidiaries, including the Debtors (Tobar Decl. ¶¶ 5-6) [Adv. Dkt. 283-1 at 100];

- From December 2012 through July 2014, Mr. Tobar also served as a director for Maxus (*id.* ¶ 12) [Adv. Dkt. 283-1 at 102];

- As International Business Controller for YPF, Mr. Tobar was responsible for supervising litigation involving YPF and he was in contact with YPF's in-house lawyers and external lawyers from Chadbourne (*id.* ¶¶ 7-8) [Adv. Dkt. 283-1 at 101];

- In February 2013, Mr. Tobar received the Chadbourne Legal Documents addressed to YPF and other Clawback Documents, exclusively in his

capacity as International Business Controller for YPF (*id.* ¶¶ 9-14, 18) [Adv. Dkt. 283-1 at 101-03];

- Mr. Tobar did <u>not</u> receive the Chadbourne Legal Documents or other Clawback Documents in his capacity as a director of the Debtors (*id.* ¶¶ 11-14, 18) [Adv. Dkt. 283-1 at 102-03];

18.     The Trust failed to present any evidence to rebut the evidence submitted by the YPF Defendants. Additionally, the YPF Defendants sought the opportunity to present additional briefing and evidence to the Bankruptcy Court concerning privileged materials exchanged with Dual-Hat Directors so an assessment could be made that they received those materials in their YPF-parent capacity, including *in-camera* review of all such documents, which the Bankruptcy Court denied. (Adv. Dkt. 283 at 8 n.4; *see also* Hrg. Tr. at 34:23-35:2.)

### Required Disclosure of Deposition Preparation with Counsel

19.     On October 27, 2020, the Trust sought a further order compelling another dual-hat individual, Mr. Fernando Segovia, to testify regarding his pre-deposition communications with his own counsel because his counsel also represented the YPF Defendants. (Adv. Dkt. 288.)  The Trust sought to invade Mr. Segovia's attorney-client privilege even though Mr. Segovia retained Sidley as his counsel prior to his deposition, and Sidley prepared Mr. Segovia for his deposition and represented him during his deposition as his individual counsel. (Adv. Dkt. 295-1 at 6 (Tr. 56:4-57:6).) Although the Trust had known for *seven months* that Sidley represented Mr. Segovia and several other "shared employee" witnesses, *i.e.*, witnesses who historically had dual roles at the YPF Defendants and the Debtors (collectively, the "<u>Two-Hat Individuals</u>"), the Trust *first* raised the argument that Mr. Segovia's discussions with Sidley were not privileged at his deposition. (Adv. Dkt. 295 at 5-6.) Accordingly, the Trust improperly chose to lay in wait before springing its objection *after* it knew that the Two-Hat Individuals would have had privileged deposition preparation discussions with Sidley.

20.     On November 2, 2020, the YPF Defendants submitted their response and presented irrefutable evidence that Mr. Segovia was never instructed not to answer questions during his deposition regarding substantive matters. Rather, the only questions Mr. Segovia was instructed not to answer concerned what he discussed with his lawyers in preparation for his deposition. (Adv. Dkt. 295 at 2 (citing deposition transcript).)[4]

**The Decision Below**

21.     On February 8, 2021, the Bankruptcy Court issued its Opinion (Adv. Dkt. 333), in which it held for the first time that YPF waived its privilege concerning documents shared with Dual-Hat Directors, and also that the Trust could inquire into dual-hat witnesses' privileged deposition preparation discussions with their counsel at Sidley. More specifically, the Bankruptcy Court held:

- "[B]ased on the content of the communication and the obviously adverse positions of YPF and Maxus at the time, YPF's decision to appoint its employee [Mr. Tobar] as a director and officer of Maxus waived the privilege" (Adv. Dkt. 333 at 2);

- The YPF entities "have not" and "cannot" "establish that even though Mr. Tobar was a director of Maxus he was only receiving the privileged information in his capacity as a YPF employee" (Adv. Dkt. 333 at 3); and

- Mr. Segovia's communications with his counsel during "deposition preparation related to his employment by the debtors" is not protected, "all that is protected . . . is any information about Mr. Segovia's current employment with YPF and any deposition preparation related solely to his current status as an employee of YPF." (Adv. Dkt. 333 at 4.)

22.     In its February 21, 2021 Order (Adv. Dkt. 340), the Bankruptcy Court further ordered that "[t]he Clawback Requests are denied, and the Trust shall retain, and

---

[4] The Segovia deposition transcript (Adv. Dkt. 295 at 2) unequivocally disproves the Bankruptcy Court's finding that "[a]t Mr. Segovia's deposition, he was instructed by counsel to YPF not to answer questions regarding certain substantive matters related to his employment by the debtors . . ." (Adv. Dkt. 333 at 4).

may use any document subject to the Clawback Requests . . . , including the [Chadbourne Legal Documents]" and "counsel for YPF [shall not] shield or seek to shield" discovery into "any witness's deposition preparation by counsel for YPF related to his or her employment by any Debtor." (Adv. Dkt. 340 at 2-3.)

## STATEMENT OF QUESTIONS PRESENTED

23.    The questions presented in this Appeal are:

### QUESTION 1

Whether the Bankruptcy Court erred by holding that YPF *cannot* establish that a Dual-Hat Director received privileged information in his YPF-parent capacity during the time he also served as a director of Maxus because YPF and Maxus were "adverse" at the time?

### QUESTION 2

Whether the Bankruptcy Court erred by holding that Two-Hat Individuals must answer deposition questions concerning their deposition preparation with counsel related to his or her employment by any Debtor if such counsel for the Two-Hat Individual is also counsel for the YPF Defendants?

## RELIEF SOUGHT

24.    The YPF Defendants request that this Court consider this appeal on an interlocutory basis and reverse the Order.

## LEAVE TO APPEAL SHOULD BE GRANTED

25.    This Court has jurisdiction to hear interlocutory appeals of orders of the bankruptcy court in this District on the same grounds that the Third Circuit reviews interlocutory orders of the District Courts. 28 U.S.C. § 158(a)(3); *Bertoli v. D'Avella (In re Bertoli)*, 812 F.2d 136, 139 (3d Cir. 1987). "In determining whether to grant leave to appeal an interlocutory order of the

Bankruptcy Court, District Courts apply the standards of 28 U.S.C. § 1292(b), which permits appeal of an order: (1) involving a controlling question of law, (2) upon which there is substantial ground for difference of opinion, and which (3) if appealed immediately may materially advance the ultimate termination of the litigation." *Fox Sports Net West 2, LLC v. L.A. Dodgers LLC (In re L.A. Dodgers LLC)*, 465 B.R. 18, 29 (D. Del. 2011).

26.    All three factors supporting interlocutory appeal are met here.

27.    First, the Bankruptcy Court's Order involves controlling questions of law because the Bankruptcy Court's erroneous privilege rulings are reversible on final appeal. *See Stanziale v. Sun Nat'l Bank (In re Dwek)*, Civ. No. 3:09-cv-5046, 2010 WL 234938, at *2 (D.N.J. Jan. 15, 2010) (a "'controlling question of law' encompasses 'any order which, if erroneous, would be reversible error on final appeal.'") (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (*en banc*)).

28.    Second, there is substantial ground for difference of opinion concerning the two controlling questions of law because the Bankruptcy Court's Order is contrary to well-established law or, at minimum, creates new law. *See Off. Bondholders Comm. v. Chase Manhattan Bank (In re Marvel Ent. Grp., Inc.)*, 209 B.R. 832, 837-38 (D. Del. 1997) (granting interlocutory appeal where "the bankruptcy court's decision is contrary to well-established law"); *Hess v. A.I. DuPont Hosp. for Child.*, No. Civ. A. 08–0229, 2009 WL 2776606, at *2 (E.D. Pa. Aug. 28, 2009) ("'[T]he absence of controlling law on a particular issue can constitute substantial grounds'" for difference of opinion.") (citing *Chase Manhattan Bank v. Iridium Afr. Corp.*, 324 F. Supp. 2d 540, 545 (D. Del. 2004)).

29.    Third, an immediate appeal of the Order will materially advance the ultimate termination of this litigation because, *inter alia*, a reversal by this Court would prevent the Trust's

improper use of thousands of clearly privileged documents, ensure that Two-Hat Individuals are not deprived of their right to maintain privilege over pre-deposition communications with their chosen counsel, and may avoid the need for substantial additional proceedings upon remand from an appeal after trial.

I.    **The Bankruptcy Court Committed Reversible Error by Holding that YPF *Cannot* Establish that a Dual-Hat Director Received Privileged Information in His YPF-Parent Capacity**

30.    The Bankruptcy Court's holding that YPF waived privilege and "cannot" establish that a Dual-Hat Director received privileged documents in his YPF-parent capacity is manifestly contrary to the law because it creates a new requirement that a parent and subsidiary cannot have any adverse position at the time of disclosure of privileged information to dual-hat individuals. Specifically, the Bankruptcy Court held that "based on the content of the communication and the *obviously adverse positions of YPF and Maxus at the time*, YPF's decision to appoint its employee as a director and officer of Maxus *waived* the privilege." (Adv. Dkt. 333 at 2) (emphasis added).

31.    This aspect of the Order involves a controlling question of law upon which there is substantial ground for difference of opinion because it is reversible on final appeal and contrary to well-established law. Moreover, the underlying facts are not in dispute.

32.    The Third Circuit has established that "it does not break confidence to share an attorney-parent communication with an officer of the parent *in her capacity as officer of the parent*, even though she is also a director or officer of a subsidiary."[5] *Teleglobe*, 493 F.3d at 372 (emphasis added); *see also Estate of Juanita Jackson v. Gen. Elec. Cap. Corp. (In re Fundamental Long Term Care, Inc.)*, 515 B.R. 874, 878-79 (Bankr. M.D. Fla. 2014).

---

[5] Moreover, it is "well established" that "directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *U.S. v. Bestfoods*, 524 U.S. 51, 69 (1998) (quotation omitted).

33.    The YPF Defendants presented unrebutted evidence (ignored by the Bankruptcy

Court) that Mr. Tobar received the privileged documents solely in his capacity as an employee of

YPF (Adv. Dkt. 283-1 at 100-104.) Additionally, even the Bankruptcy Court identified in its

Opinion, but ignored in its analysis, that the other three addressees on the privileged documents,

like Mr. Tobar, were all YPF employees. No other Maxus directors, officers or employees received

these privileged documents. *See* (Adv. Dkt. 333 at 2-3) (noting all three "YPF recipients").

Therefore, the YPF Defendants carried their burden under *Teleglobe* to show that these documents

are privileged.

34.    The Bankruptcy Court, however, departed from the rule in *Teleglobe*, without citing

anything to justify such a departure, when it ruled that YPF "cannot" establish that a Dual-Hat

Director received privileged information in his parent capacity based upon its conclusion that there

were "adverse positions" between YPF and Maxus at the time of the disclosure. But that is not the

law.

35.    Indeed, in *Teleglobe*, the Third Circuit noted that it is "inevitable that on occasion

parents and subsidiaries will see their interests diverge," 493 F.3d at 373, and expressly addressed

the concern of an *amicus* in that case that "disclosures to parent/subsidiary cross-directors" not be

seen as "creating broad joint representations that subsidiaries can use to invade the parent's

privilege in subsequent adverse litigation." *Id.* at 372. Far from concluding that such disclosures

in the face of adversity between parent and subsidiary would always waive privilege, as the

Bankruptcy Court ruled here, the Third Circuit came to the *opposite* conclusion: "In thinking about

these situations, courts should keep in mind the definition of disclosure. For purposes of the

disclosure rule, a disclosure occurs when the parent shares an otherwise confidential attorney-

parent communication with an officer, director, or agent of a subsidiary *in that capacity*. . . . Thus

12

it does not break confidence to share an attorney-parent communication with an officer of the parent in her capacity as officer of the parent, even though she is also a director or officer of a subsidiary." *Id.* (emphasis added). The Bankruptcy Court's invented "adversity" exception is thus directly contrary to *Teleglobe*, and raises the very concerns that the Third Circuit addressed therein.

36.     While the YPF Defendants recognize that immediate review of privileged determinations is not appropriate in all circumstances, interlocutory appeal is appropriate where, as here, the ruling "is of special consequence" to the litigation (*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)) and is "serious to the conduct of this litigation" (*Garza v. Citigroup, Inc.*, No. 15-537-SLR, 2016 WL 50327, at *1 (D. Del. Jan. 4, 2016)).

37.     There can be no question that the Bankruptcy Court's decision to find a privilege waiver in relation to thousands of YPF's highly sensitive attorney-client communications is "of special consequence" insofar as it tramples on YPF's attorney-client privilege and work product protections and threatens the integrity of the case and all future rulings. *Accord, e.g.*, *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-03424-JCS, 2016 WL 7475581, at *3 (N.D. Cal. Dec. 29, 2016) (privilege waiver ruling was "of special consequence" "given the amount of material that may be subject to that waiver and its potential consequence to [plaintiff's] claims").

38.     Finally, given the Bankruptcy Court's error in finding a privilege waiver and in precluding YPF from establishing the capacity in which the Dual-Hat Directors received the privileged documents, an immediate appeal of this controlling issue of law will materially advance the ultimate termination of this litigation. These privileged documents go straight to the core issues in the case and will undoubtedly factor prominently in future submissions and at any trial. Moreover, it will be impossible to disentangle their impact on any final judgment in the event of a

successful appeal, which would require the parties to substantially redo discovery after remand. Therefore, correcting the Bankruptcy Court's erroneous ruling now will best serve the "interests of efficiency." *See, e.g.*, *Coleman v. Sterling*, No. 09-CV-1594-W(BGS), 2012 WL 12952831, at *5 (S.D. Cal. Feb. 21, 2012) (motion granted because "post-judgment appeal on [the court's privilege waiver ruling] is highly probable" and "[r]esolving this issue now, before trial, may ultimately serve the interests of efficiency"); *Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, No. 13-284, 2014 WL 3887750, at *5 (E.D. Pa. Aug. 7, 2014) (finding disclosure of allegedly privileged information was serious to the conduct of the litigation and granting interlocutory appeal based upon "novel privilege ruling").

## II. The Bankruptcy Court Committed Reversible Error by Requiring Two-Hat Individuals to Disclose Pre-Deposition, Privileged Communications with Their Counsel

39.     The Bankruptcy Court's Order also requires immediate review and reversal because it invades the attorney-client privilege of Two-Hat Individuals with respect to their privileged communications with counsel during deposition preparation. (Adv. Dkt. 333 at 4; Adv. Dkt. 340 at 3.) Citing no authority, the Bankruptcy Court concluded that because the YPF Defendants' counsel was also retained by Two-Hat Individuals, communications between Two-Hat Individuals and their legal counsel in preparation for their depositions are privileged *only* to the extent that they relate to the Two-Hat Individuals' "current employment with YPF and any deposition preparation related solely to [their] current status as an employee of YPF." *Id.* In other words, privileged communications between the Two-Hat Individuals and their counsel were ordered to be disclosed if the communications relate to the Two-Hat Individuals' time as employees of the Debtors (when they were also employed by YPF).

40.     This erroneous privilege ruling is appropriate for interlocutory appeal because it invades the sanctity of the attorney-client privilege, prevents all Two-Hat Individuals noticed for

14

deposition by the Trust from employing counsel of their choice to help prepare them for their depositions, and affects the majority of the individual witnesses noticed for depositions by the Trust. This aspect of the Order thus also satisfies the standard for an interlocutory appeal. *See In re Ohio Execution Protocol Litig.*, No. 15-0305, 2016 U.S. App. LEXIS 23716, at \*5 (6th Cir. Feb. 22, 2016) (permitting interlocutory appeal of discovery order and noting that "*Mohawk* supports the conclusion that discovery orders qualify for interlocutory review if the 1292(b) factors are met").

41.     The Bankruptcy Court's Order clearly involves a controlling question of law because it is reversible on final appeal. The relevant facts are not in dispute—Mr. Segovia is a current employee of a subsidiary of YPF (Adv. Dkt. 295 at 2 n.2), he was an employee of various YPF Defendants and certain of the Debtors during the relevant period covered by his deposition (Adv. Dkt. 288 at 1 n.1), and he selected Sidley to represent him as his legal counsel in connection with his deposition, which created an attorney-client relationship.[6] *See, e.g., Pharmathene, Inc. v. Siga Techs., Inc.,* Civil Action No. 2627-VCP, 2009 WL 2031793, at \*1 (Del. Ch. July 10, 2009) ("[I]n determining whether an attorney-client relationship exists, courts look at the contacts between the potential client and its potential lawyers to determine whether it would have been reasonable for the 'client' to believe that the attorney was acting on its behalf as counsel.") (internal citation omitted).

42.     The fact that Mr. Segovia selected the same counsel as the YPF Defendants to represent him during his deposition did not diminish or destroy his attorney-client privilege. *See, e.g., McNeal v. Glazman*, No. 17-1397-RGA, 2018 WL 4109266, at \*3 (D. Del. Aug. 29, 2018)

---

[6] The Bankruptcy Court's Opinion repeatedly refers to Sidley as "YPF's counsel" (Adv. Dkt. 333 at 4), but Mr. Segovia made clear during his deposition that Sidley was Mr. Segovia's chosen personal legal counsel in connection with his deposition (Adv. Dkt. 295-1 at 11;Tr. at 56:4-57:6).

(noting generally that Rule 1.13(g) allows an organization's lawyer to represent its current employees and other constituents subject to conflict rules). There simply is no rule that a corporation may not make its counsel available to represent current and/or former employees, where the individual may have been employed, at one point in time, at an adversary – especially when, as here, there is no conflict between the YPF Defendants and the Two-Hat Individuals. Neither the Trust nor the Bankruptcy Court cited any contrary precedent.

43.     The decision in *LaPoint v. AmerisourceBergen Corp.*, Civil Action No. 327-N, 2006 WL 2105862, *3 (Del. Ch. July 18, 2006), is instructive. In that case, which involved a dispute between selling shareholders of a business and the acquiring company, counsel for the acquiring company had privileged communications with former employees/shareholders of the selling company, who were now employed by the acquiring company. *Id.* at *1, 3. Unlike the Bankruptcy Court here, the court in that case expressly found that communications between counsel for a party and former employees of the party's litigation adversary were *privileged* and not discoverable by the other side. *See id.* at *3.

44.     Here, there was absolutely no attempt to preclude Mr. Segovia from testifying about his knowledge on the merits of the parties' respective claims and defenses and no instruction was ever given to Mr. Segovia not to answer questions that did not request disclosure of his communications with his legal counsel during his deposition preparation. (Adv. Dkt. 295 at 1-2.) Therefore, the Bankruptcy Court's Order is contrary to the law, constitutes reversible error, and should be reviewed and reversed now. *See, e.g., Price v. Porter Novelli, Inc.*, No. 07-Civ-5869, 2008 WL 2388709, at *2 (S.D.N.Y. June 11, 2008) (motion to compel denied where Plaintiff's counsel "was seeking only information about the [defendant former employee] witness's preparation and not about the substance" of her knowledge).

45.     Finally, interlocutory appeal of this aspect of the Order will materially advance the termination of this litigation because it is more efficient to correct the Bankruptcy Court's manifest error now, rather than after the parties complete discovery (including numerous depositions), dispositive motions, and any trial (if necessary), only to then have the Order reversed. *See, e.g., Henriquez-Disla*, at *5 (granting motion for interlocutory appeal because "[i]f the case proceeded in the ordinary course and post-trial [defendant] succeeded in challenging this court's pretrial [privilege] ruling, a second trial could be required and privileged information would have been improperly revealed"). "[F]inal-judgment review does not account for the significant strategic decisions that arise out of" decisions like the Order below, which permit inquiry into privileged communications, "and may therefore come too late." *Coleman*, 2012 WL 12952831, at *4-5 (quotations omitted). Thus, the Bankruptcy Court's Order should be reviewed and reversed now.

## <u>CONCLUSION</u>

WHEREFORE, the YPF Defendants respectfully request that this Court exercise its discretion to consider this appeal on an interlocutory basis.

Dated: March 7, 2021
Wilmington, Delaware

LANDIS RATH & COBB LLP

/s/ Matthew B. McGuire
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com

– and –

SIDLEY AUSTIN LLP
John J. Kuster (admitted *pro hac vice*)
Martin B. Jackson (admitted *pro hac vice*)
Andrew P. Propps (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
jkuster@sidley.com
mjackson@sidley.com
apropps@sidley.com

– and –

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Lisa M. Schweitzer (admitted *pro hac vice*)
Victor L. Hou (admitted *pro hac vice*)
Ari D. MacKinnon (admitted *pro hac vice*)
Mark E. McDonald (admitted *pro hac vice*)
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
lschweitzer@cgsh.com
vhou@cgsh.com
amackinnon@cgsh.com
memcdonald@cgsh.com

*Counsel for YPF S.A., YPF International S.A.,*
*YPF Holdings, Inc., and CLH Holdings, Inc.*

**<u>Certification of Compliance</u>**

Undersigned counsel certifies that this document complies with the word limit of Fed. R.

Bankr. P. 8013(f)(3)(A). Excluding the parts of the document exempted by Fed. R. Bankr. P.

8015(g), this document contains 5,097 words.


Dated: March 7, 2021                     */s/ Matthew B. McGuire*
                                         Matthew B. McGuire (No. 4366)