**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**



| | |
|---|---|
| **CHRISTOPHER S. SONTCHI** | **824 N. MARKET STREET** |
| **CHIEF JUDGE** | **WILMINGTON, DELAWARE** |
| | **(302) 252-2888** |

March 8, 2021

<u>**VIA CM/ECF**</u>

| | |
|---|---|
| Brian E. Farnan | Adam G. Landis |
| Michael J. Farnan | Matthew B. McGuire |
| Farnan LLP | Landis Rath & Cobb LLP |
| 919 North Market Street | 919 Market Street |
| 12th Floor | Suite 1800 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| -and- | -and- |
| J. Christopher Shore | John J. Kuster |
| Thomas MacWright | Jessica C. Knowles Boelter |
| WHITE & CASE LLP | Sidley Austin LLP |
| 1221 Avenue of the Americas | One South Dearborn Street |
| New York, New York 10020 | Chicago, Illinois 60603 |

　　　　RE:　　Maxus Energy Corporation, et al., 16-11501
　　　　　　　<u>Maxus Liquidating Trust v. YPF, et al., 18-50489</u>

Dear Counsel,

　　　　Before the Court is a discovery dispute[1] between (i) the Maxus Liquidating Trust, the plaintiff (the "Trust"), and (ii) defendants YPF S.A., YPF International S.A., YPF Holdings, Inc. and CLH Holdings, Inc. (collectively, "YPF"). The main question is whether two confidential memoranda that were sent by YPF's counsel to a YPF employee who served as a director and subsequently officer of YPF's subsidiary, Maxus, must be produced. Based on the Court's *in camera* review of the documents, the Court finds that the memoranda were subject to the attorney client privilege of YPF and that the privilege was waived because the employee was a director and, ultimately, officer of Maxus. While

---

[1] Adv. D.I. 275, 279. 282, 288, and 295 (each a "Letter," and collectively, the "Letters").

case law might support a finding that YPF's privilege was preserved, in this case, based on the content of the communications and the obviously adverse positions of YPF and Maxus at the time, YPF's decision to appoint its employee as a director and officer of Maxus waived the privilege.  Thus, the memoranda must be produced and the attempt to claw back its production is moot.[2]

This adversary action was commenced by the Trust on June 18, 2018.[3]  In the last 2 ½ years, the defendants have pursued numerous motions and interlocutory appeals.  Also, extensive discovery has occurred.  Relevant to the current dispute, on June 23, 2020, the Court issued its Opinion[4] and Order[5] regarding a discovery dispute in this adversary proceeding ("Opinion" and "Order").  In that Opinion, the Court rejected the "two-hat" basis for withholding production of documents and communications based on privilege claimed by YPF.  More specifically, the Court held that YPF had failed to establish that YPF employees that were simultaneously acting as employees of its subsidiary, Maxus, were nonetheless receiving privileged communications (many sent to their Maxus email addresses) solely in their capacity as employees of YPF.  Through its Order, the Court required the production of the "two-hat" documents.  After the Court issued its Opinion and Order, the Court entered an *Amended Case Management Plan and Scheduling Order Scope of Discovery* ("Case Scheduling Order"),[6] pursuant to which the current dispute now arises.

Following issuance of the Opinion and Order, YPF produced approximately 7,000 documents to the Trust.  Included in the production was an executive summary of a much more extensive memorandum that was prepared by YPF's outside counsel, Chadbourne & Park LLP and shared via email with a director of Maxus.  The Trust requested that YPF produce a complete copy of the underlying memorandum.  In response, YPF sent a series of "claw back" requests, pursuant to the Case Scheduling Order.

Included in the claw-back requests were two Spanish-language memoranda prepared by Chadbourne & Park:

a) an executive summary of a memorandum dated September 4, 2012 prepared by attorneys from Chadbourne & Park and addressed to Rodrigo Cuesta, Eduardo

---

[2] The Court previously issued a letter, D.I. 333, and an order, D.I. 340, setting forth its ruling.  On March 7, 2021, YPF filed a motion for leave to file an interlocutory appeal from the Court's decision. D.I. 358.  Pursuant to Del. Bankr. LR 8003-2, the Court is issuing this letter to clarify and to supplement its ruling of February 8, 2021.

[3] Adv. D.I. 1.

[4] *Maxus Liq. Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 617 B.R. 806 (Bankr. D. Del. 2020).

[5] Adv. D.I. 228.

[6] Adv. D.I. 230.  The Court notes that no appeal was taken from the Opinion and Order.

Pigretti and Mariano José Oteiza of YPF, which was shared with a director of Maxus[7] ("Executive Summary")[8]; and

b) a memorandum dated February 24, 2013 prepared by the same Chadbourne & Park lawyers and addressed to the same three YPF recipients shown on the Executive Summary but adding as well as Francisco García Tobar[9] ("Jazz 2013 Memo," and, with the Executive Summary, the "Memos").

Mr. Tobar was Controller for International Business for YPF, S.A. from December 14, 2012 through August 1, 2013, during which time he received the Jazz 2013 Memo. While Mr. Tobar served as a director of Maxus and Tierra from December 2012 through July 2014 (again, during which time he received the Jazz 2013 Memo), it was not until August 1, 2013 (after he received the Jazz 2013 Memo) that Mr. Tobar became Chief Financial Officer of YPFH, Maxus and Tierra. Thus, Mr. Tobar was a **director** of Maxus as of December 14, 2012, and the cover correspondence of the copies of the Memos YPF produced reflects that Mr. Tobar received the Memos from Chadbourne & Park on February 24, 2013, and forwarded them to Fernando Giliberti (then YPF's director of strategy and business development) on February 26, 2013.[10] Mr. Tobar thereafter became an **officer** of Maxus (CFO) on August 1, 2013, and continued to receive transmissions of Chadbourne's Project Jazz[11] related legal advice after that date.

In the Court's previous Opinion relating to "two-hat discovery," the issue involved "shared" employees, which included "the Debtors' management, including their ex-Chief Executive Officers, Chief Financial Officers, treasurer, comptroller, Human Resources director, and Debtors' successive general counsels."[12] YPF argues that the

---

[7] Letter to The Honorable Christopher Sontchi from Michael J. Farnan regarding Renewed Discovery Dispute dated October 14, 2020, D.I. 275 at p. 2 ("Among those documents was an executive summary of a much more extensive memorandum that had been prepared by Chadbourne & Park LLP (YPF's outside counsel) and shared via email with a director of Maxus while he was a director of Maxus.").

[8] YPF_MAXUS_PRIV_0000002149.

[9] YPF_MAXUS_PRIV_0000002141.

[10] YPF_MAXUS_PRIV_0000002140.

[11] "Project Jazz" was the legal and operational "Strategy" adopted by YPF that involved installation of "independent directors" at Maxus.

[12] *Maxus Energy Corp.*, 617 B.R. at 817-18 ("The only argument in Court was that there should not be a blanket waiver of privilege because these employees wore 'two hats,' however, YPF did not produce any information to show that these individuals were not working in their capacity for the Debtors at the time of the e-mails and YPF is required to carry that burden. The Court presumes that these shared employees were acting on behalf of Maxus, as YPF has not met its burden. As a result, the documents must be produced. To be clear, YPF has not met its burden to those shared employees regardless of whether they were using a 'Maxus' email.").

Court's previous ruling is not controlling because Mr. Tobar was not a shared employee, rather, at the time, he was a YPF employee and a Maxus director, not a Maxus employee. The Court finds that YPF's argument is based on a distinction without a difference.[13] The Court finds that whether an officer or director of the subsidiary entity is of no import in this case. As a fiduciary of the debtor entity – Mr. Tober had duties to that debtor and acted to make and to approve matters on behalf of that entity.[14] The point, however, is that privileged information was shared with a person that was acting (either as an employee or a director) on behalf of separate entities. As such, it is YPF's burden to establish that even though Mr. Tobar was a director of Maxus he was only receiving the privileged information in his capacity as a YPF employee.[15] This they have not done and, based upon the Court's *in camera* review of the Memos, this they cannot do.[16] Because the Memos are subject to production under the Court's previous Opinion and Order the claw back requests are moot.[17]

The other question, which was raised by supplemental letters,[18] involves the deposition of Roberto Fernando Segovia who served as an employee and officer of one or more of the debtors from 2011 through the effective date of the plan in July 2017. Importantly, after the effective date, Mr. Segovia was hired by YPF and currently works for YPF in Bolivia. At his deposition he was represented by YPF's counsel in this matter. At Mr. Segovia's deposition, he was instructed by counsel to YPF not to answer questions regarding certain substantive matters related to his employment by the debtors as well as his deposition preparation.

To be clear, the Trust owns and maintains the debtors' privilege including any privileged communications and documents Mr. Segovia received while employed by the debtors.[19] This is consistent with the case law that states that two types of information

---

[13] The Court could find no distinction in any cases regarding whether the individual was a director of one and an officer or another, or whether such person was a director or one or an employee of the other.

[14] *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997).

[15] *Id.* at 818 (citations and footnotes omitted).

[16] As the Court finds there is no difference between and employee and a director in this instance it need not address the effect, if any, of Mr. Tobar's subsequent position with Maxus as an employee.

[17] The claw back requests are, in effect, a motion for reconsideration of the Court's Opinion based on a change in interpretation of the Court's decision. Neither are legitimate. Obviously, a motion for reconsideration requires an actual motion and would be untimely in any event. Also, a claw back for inadvertent production cannot be based on a change of interpretation. A clever argument contrived after the fact is not sufficient to constitute inadvertent production.

[18] Adv. D.I. 288 and 295.

[19] *See* D.I. 1460 (Plan Art. VI.C) ("In connection with the Liquidating Trust Assets, any attorney-client privilege, work product privilege, joint interest privilege or other privilege or immunity attaching to any documents or communications (in any form, including, without limitation, written, electronic or oral) shall

remain privileged after a pre-deposition preparation session of a former employee of a corporation: (a) privileged information that the former employee received during his or her employment; and (b) communications designed to allow the employer's counsel to ascertain facts relevant to the lawsuit that the former employee witnessed while employed.[20]

As a former employee of the debtors, Mr. Segovia cannot be prevented from testifying by YPF or its counsel as to any matters related to his employment by the debtors. Nor can counsel for YPF shield Mr. Segovia's deposition preparation related to his employment by the debtors. What is protected - and all that is protected - is any information about Mr. Segovia's current employment with YPF and any deposition preparation related solely to his current status as an employee of YPF.

The parties are directed to consult upon an agreeable order and to submit it under certification of counsel. If the parties cannot reach an agreement, they may submit dueling orders under certification of counsel.

Sincerely,

*[signature]*

Christopher S. Sontchi, Chief Judge
United States Bankruptcy Court

---

be transferred to and shall vest in the Liquidating Trust. The Liquidating Trust's receipt of such privileges associated with the Liquidating Trust Assets shall not operate as a waiver of those privileges possessed or retained by the Debtors, nor shall it operate to eliminate the rights of any co-defendant to any applicable joint privilege.").

[20] *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 41 (D. Conn. 1999).