# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 16-11501 (CSS)<br>(Jointly Administered) |
| MAXUS LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>-against-<br><br>YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO.,<br><br>Defendant. | Adv. Proc. No. 18-50489 (CSS) |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
### THE YPF DEFENDANTS' MOTION FOR STAY OF DISCOVERY

The YPF Defendants,[1] by and through their undersigned counsel, respectfully submit their reply memorandum in further support of the Motion and in response to the *Plaintiff's Opposition to YPF Defendants' Motion for Stay of Discovery*, dated June 15, 2021 [D.I. 427] (the "Opposition").

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the YPF Defendants' Motion for Stay of Discovery, dated June 1, 2021 [D.I. 416] (the "Motion").

**PRELIMINARY STATEMENT**

1.  YPF's Motion makes a straightforward and commonsense request. As authorized by this Court, YPF has sought leave to appeal the Disqualification Order to the Third Circuit. At issue in that appeal is whether this Court applied the correct legal standard in determining that screening is sufficient to cleanse White & Case's imputed conflict and to protect YPF's confidential information and the integrity of these proceedings. If the ultimate outcome of that appeal is White & Case's disqualification, depositions or other discovery conducted in the interim will be tainted because they were conducted by a firm afflicted by an unacceptable conflict. Under these circumstances, while the permissibility and adequacy of White & Case's screen is still in question, the Court should not allow the consequences of taint to grow. Staying discovery now will limit the extent of the taint while imposing only the minimal inconvenience of requiring the rescheduling of a discrete number of depositions in a case that is years from trial. This rescheduling would be far less disruptive than retaking those depositions entirely and other harm to YPF should YPF's position be determined meritorious. Accordingly, the Trust's accusation that the Motion is brought for purposes of delay is a case of penny-wisdom and pound-foolishness. The purpose of a brief stay now is to insure against the risk of more disruptive and expensive delays later.

2.  Other than challenging the merits of *YPF's Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A)*, dated June 1, 2021, Appeal No. 21-8033 [ECF 1] (the "Petition"), the Trust's main substantive response to YPF's request for a stay is to complain that YPF should have sought its requested relief through different procedural means, under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8007 or Federal Rule of Civil Procedure ("Federal Rule") 16, but this procedural protest misconstrues not only the basis for YPF's request

but also the very precedents upon which the Trust relies in support of its arguments, which are all without merit.

3. Despite the Trust's cavalier approach, YPF's Motion presents a very serious issue. At stake in the appeal certified to the Third Circuit by this Court is the question whether White & Case's continued service as counsel to the Trust represents an unacceptable risk to YPF's confidential information. The Trust's complaints about a 60-day delay or the procedural mechanism they incorrectly believe should have been invoked by YPF simply pale in comparison to the important policy considerations underlying the ethical rules, which the Trust essentially mocks in its entire approach to the Motion.

## ARGUMENT

### I. The Court Is Empowered to Grant a Stay Pursuant to Its Inherent Authority, and Should Do So to Protect YPF's Confidential Information

4. YPF moved for a stay of discovery pursuant to two sources of authority: Federal Rule 26(c) and the Court's "inherent power to conserve judicial resources by controlling its own docket." *Cost Bros v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *see also* Mot. ¶ 13. Rather than addressing the substantive standards that govern the relief requested in the Motion, the Trust seeks to apply other standards to the Motion. According to the Trust, YPF should have moved for a modification of the scheduling order under Federal Rule 16, or, alternatively, should have moved—before permission to appeal was even granted—under Bankruptcy Rule 8007 to stay all proceedings pending the outcome of a possible future appeal. But the Trust's proposed approach makes no sense, and it is not the basis on which YPF was required to, or did, move.

5. Therefore, YPF properly invoked Federal Rule 26 and the Court's inherent discretion, so that the Court may balance the risk that discovery conducted now may be tainted by White & Case's participation against the need to reschedule depositions. The former risk threatens

3

the fairness and integrity of these proceedings; the latter threatens nothing more than temporary inconvenience. As YPF has argued before, given the absence of binding Third Circuit precedent on screening, from the moment White & Case decided to hire Ms. Boelter, the Trust voluntarily assumed the risk of judicial review of the conflict and any attendant inconvenience posed by a stay of discovery during the proceedings surrounding the Motion to Disqualify.

6.  The Trust also spills much ink on YPF's adherence to the Court's directive for the parties to attempt to agree upon, and submit by April 16, 2021, a revised scheduling order. *See* Disqualification Order at 1. At that time, however, YPF had not yet sought certification and, most critically, this Court had not yet certified a direct appeal. It was only after the issuance of the Certification Order that YPF properly concluded that circumstances had changed sufficiently to warrant the relief requested in the Motion. Now that permission to appeal may be granted, just as the parties agreed to stay discovery during the pendency of the Motion to Disqualify before this Court, discovery similarly should be stayed pending the Third Circuit's decision on the Petition.

7.  Finally, the Trust asserts that YPF has failed to show that "any of the aforementioned [discovery] work streams would be so tainted by White & Case's participation pending appeal that they would need to be redone." Opp'n ¶ 23. But this is a far cry from both the standard and public policy underlying disqualification in the first place. The ethical rules and cases interpreting those rules do *not* impose upon YPF the burden to prove that a breach of confidentiality has already occurred or will occur in the future. Rather, the rules against former-client conflicts are "prophylactic," existing to "prevent *even the potential* that a former client's confidences and secrets *may* be used against him." *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984) (emphasis added). Indeed, screening itself is premised on the recognition that the former client's confidences are at risk when its former lawyer is now working

with counsel to its adversary.[2]  And in the event that a particular screen, under the circumstances, is deemed to be inadequate, the aggrieved party does not need to show that there has been actual information leakage in order to secure disqualification of the conflicted firm.  When evaluated again these principles—rather than the Trust's self-fulfilling assertions—the merits of YPF's motion is clear and uncontested.  This Court should err on the side of caution by forfending against the possibility that, in light of the Third Circuit's re-articulation of the applicable legal standard, White & Case's conflict will have so compromised its prosecution of the case that discovery must be re-done in order to ensure the integrity of the proceedings and ensure the enforceability of any adverse judgment.  Rescheduling a discrete number of depositions is far less burdensome than retaking those depositions, and a brief stay now threatens no real disruption to a case where trial is, according to the Court, more than "two years" away.  Certification Opinion at 24.

**II.     The "Good Cause" Standard Under Rule 16 Is Not Applicable**

8.     The Trust insists that YPF's request for a stay should be evaluated under the "good cause" standard of Federal Rule 16(b)(4), which provides that "[a case] schedule may be modified only for good cause and with the judge's consent."  The above discussion demonstrates good cause.  But the Trust argues that "[g]ood cause exists when the schedule cannot be met despite the moving party's diligence."  Opp'n ¶ 17.  While this may be an *additional* basis for good cause under other circumstances, it is inapplicable to the questions raised by the Motion, which concern a stay of proceedings necessary to prevent an extraneous risk of prejudice and injury to one of the parties.  It simply cannot be the case that the Court is powerless to find good cause or stay proceedings so

---

[2]     The Trust's argument that the Court has rejected "a default view that the attorneys practicing before it will breach their ethical obligations for personal gain" makes no sense in a world where the Model Rules *do* impose additional restrictions on all attorneys who move to adversary firms.  Opp'n ¶ 15.  If courts just presumed that lawyers do not breach their ethical obligations, whether inadvertently or for personal gain, then a lawyer's ordinary duty not to disclose client confidences would be sufficient to protect her former client even if that lawyer moves to an adversary firm, with no need for the screening apparatus mandated by ABA Model Rule of Professional Conduct 1.10.

long as it believes YPF can complete discovery with diligence, even if it concludes that prejudice to YPF *will* occur from the continuation of discovery by White & Case. Thus, the Trust's proposed standard must be incorrect.

9. The cases the Trust cites are inapposite to the point of mischaracterization. *Meda Pharmaceuticals Inc. v. Teva Pharmaceuticals USA, Inc.*, No. 15–785–LPS, 2016 WL 6693113, at *1 (D. Del. Nov. 14, 2016), concerned a motion for leave to amend after the relevant deadline had expired; accordingly, the diligence of the movant in seeking to make the appropriate amendment was at issue. And the Trust selectively quotes *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortgage Services*, 785 F.3d 96, 102 (3d Cir. 2015), mischaracterizing the Court's statement. The full sentence from which the Trust's quotation is drawn reads: "*We will not interfere with the discretion of the district court by overturning a discovery order* absent a demonstration that the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible." *Id.* (emphasis added; citation and internal quotation marks omitted). In other words, *Lehman Bros.* concerns the appellate standard of review applicable to a discovery order, and *confirms* the trial court's broad discretion to manage discovery. *Lehman Bros.* certainly does not hold that YPF is powerless to protect itself from extraneous injury simply because it is logistically capable of conforming to an existing discovery schedule.

**III.    Bankruptcy Rule 8007 Does Not Govern YPF's Request, But YPF Would Still Meet That Standard**

10. As discussed above, YPF has not requested a full-bore stay of proceedings pending appeal, in part because no appeal is yet pending. Therefore, while a stay of proceedings will likely be appropriate once the Third Circuit grants YPF leave to appeal, at this stage Bankruptcy Rule

8007 does not govern YPF's request. However, even if it were the appropriate standard, YPF would still meet it.

### a. YPF's Appeal Has a Strong Likelihood of Success on the Merits

11. Although not a necessary showing at this stage, YPF's direct appeal (once authorized) has a strong likelihood of success. *In re Genesis Health Ventures, Inc.*, 367 B.R. 516, 521 (Bankr. D. Del. 2007), which the Trust cites for the applicable standard, is instructive. There, the court indicated that although it was "confident that [its opinion] is supported by the language of [the applicable statute] and case law," the issue being appealed "has not been addressed in a reported opinion in the Third Circuit." *Id.* Accordingly, despite the court's confidence in its decision (as is presumably *always* the case), it also recognized that the lack of Third Circuit precedent on the issue created uncertainty and a corresponding likelihood of success on the merits. *Id.*

12. That is precisely the situation here. The Certification Opinion expressly recognized that "there is no controlling Third Circuit law on the . . . issue of when, if ever, an ethical screen that is fully compliant with Model Rule 1.10(a)(2) is nonetheless insufficient to prevent imputation of a conflict of a lawyer who has changed firms to her new firm." Certification Op. at 14. Therefore, the uncertainty identified as a basis for a stay in *Genesis Health Ventures* is also present here.[3]

---

[3] The Trust also urges that YPF conceded that the Court's "exceptional cases" standard was the appropriate one during the April 1, 2020 hearing, and so has waived its right to appeal this issue. Opp'n ¶ 13. But the "exceptional cases" standard, or even that language, did not appear in any of the cases cited by either of the parties during briefing on the Motion to Disqualify, nor was it urged by either party. The Court added that requirement on its own initiative by looking to out-of-circuit cases. YPF counsel's general agreement that it's an extraordinary situation that typically leads to disqualification of counsel could not have been an agreement that the applicable legal standard includes this "exceptional cases" requirement; nor would it prevent the Third Circuit from rejecting the standard adopted by the Court in deciding the Motion to Disqualify.

### b. *Irreparable Harm is Likely*

13. Although YPF need not show a likelihood of irreparable harm at this stage, the further risk of disclosure of YPF's confidences—which the Trust incorrectly characterizes as "counter-factual" and "conclusory" in a fashion that wipes out the ethical principles entirely—comprises irreparable harm. While at Sidley Austin LLP, Ms. Boelter had a "significant" relationship with YPF and was "privy to client confidences, and YPF's strategy and tactics in defending the suit." Disqualification Opinion at 15-17 [D.I. 389]. Ms. Boelter was also specifically involved in discussions concerning the possibility of settlement or other out-of-court resolutions of the case. Disqualification Opinion at 5. Now, as the parties prepare for imminent discussions of potential out-of-court resolution during their upcoming mediation in mid-July, Ms. Boelter is a partner at White & Case in its restructuring group, the same group litigating against YPF in this Adversary Proceeding. *See* Opp'n ¶¶ 1, 7. These facts are sufficient to show irreparable harm is likely. *See Melville Cap., LLC v. Tennessee Com. Bank*, No. 3:11–cv–00888, 2011 WL 6026599, at *1 (M.D. Tenn. Dec. 2, 2011) (finding that "somehow [having] possession of confidential information concerning [d]efendant that [p]laintiff might improperly use to its advantage" would be sufficient to demonstrate irreparable harm).[4]

14. The Trust's wait-and-see approach to evaluate how "[discovery] work streams would be so tainted by White & Case's participation," Opp'n ¶ 23, poses an unacceptable risk of irreparable harm. Specifically, courts have long recognized that once confidences are revealed, they cannot be unsaid. *See e.g., United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 238 (2d

---

[4] The cases on which the Trust relies are readily distinguishable. *See Deluna v. Del. Harness Racing Comm'n*, No. 19-1788 (MN), 2019 U.S. Dist. LEXIS 175250, at *9-10 (D. Del. Oct. 9, 2019) (finding plaintiff failed to show he is likely to suffer immediate irreparable harm where he failed to provide evidence of claimed injuries); *In re Revel AC, Inc.*, 802 F.3d 558, 575 (3d Cir. 2015) (rejecting claim where *only* "proof" party had of irreparable harm was counsel's statement to court that irreparable harm would happen); *In re Tribune Co.*, 477 B.R. 465, 476-80 (Bankr. D. Del. 2012) (assessing likelihood of irreparable harm concerning requested stay to prevent distribution of funds in bankruptcy proceeding).

Cir. 2016) ("Information once used or exposed would not be forgotten and could be used against [petitioner] . . . .") (citation omitted).  To prevent this risk and the accompanying irreparable harm from coming to fruition, discovery should be stayed until the Third Circuit grants or denies YPF's Petition.[5]

### IV.    The Trust, Witnesses, and the Court Will Not Be Prejudiced by the Requested Stay

15.    The Trust, witnesses, and the Court will not be prejudiced by the requested 60-day stay of discovery pending resolution of YPF's request for leave to appeal to the Third Circuit. Rather than countering YPF's point that courts in this district have found a short delay by itself, is not prejudicial, Mot. ¶ 16, the Trust instead continues its cynical, unwarranted attacks against YPF suggesting that the "only tangible purpose of the Motion is to increase the Trust's litigation costs." *See* Opp'n ¶ 22.  The record on the Motion to Disqualify, however, is clear that YPF's main concern is avoiding any risk of disclosure of YPF's confidential information, and YPF's request for a temporary stay of discovery is fully consistent with addressing that understandable concern. And YPF has repeatedly sought to speed up resolution of the Motion to Disqualify and the related proceedings.  As the Court is aware, YPF agreed to forgo depositions and most document discovery and to hold the evidentiary hearing on the Motion to Disqualify weeks earlier than originally scheduled.  *See* March 3, 2021 Hr'g Tr. at 9:11-14, 11:5-16 [D.I. 354].  YPF filed its Petition on June 1, 2021, over a week before the June 9 deadline imposed by Bankruptcy Rule

---

[5]    The Trust also mentions in passing the requirement that a stay be in the public interest.  It cites *In re Genesis Health Ventures* for the proposition that there is a "strong public interest in having lawsuits move forward to resolution as speedily as possible," Opp'n ¶ 10 (quoting *Genesis Health*, 367 B.R. at 522), but again, the case actually supports YPF's position.  After noting this general principle, the *Genesis Health* court goes on to explain in the very next sentence that "it is also not preferable to compel parties to go through the expense of preparing a case for trial when all of that preparation could be rendered moot by a reversal on an interlocutory appeal," and in this situation the public interest weighs in favor of a stay.  *Genesis Health*, 367 B.R. at 522.  That is precisely the evil YPF's Motion seeks to avoid.

8006(g). And YPF asked the Trust to agree to an expedited briefing schedule once the Third Circuit grants permission to appeal. *See* Mot. ¶ 9.

16.   While the Trust focuses upon the burden of rescheduling fact and expert depositions, there is no debate that *re-deposing* witnesses and experts—which will likely be necessary if YPF prevails on its appeal—would be both more time consuming and costly than rescheduling efforts, both to the parties and to witnesses and other third parties. Further, the Trust indicates concern regarding litigation costs but ignores that a temporary stay will allow the parties to focus their efforts on expediting the appeal rather than duplicating resources to handle both the appeal and the Adversary Proceeding simultaneously. Accordingly, on balance, the temporary stay will not be prejudicial to the Trust or the witnesses and experts.

17.   Finally, while the Trust passingly mentions the Court would be prejudiced by the stay, Opp'n ¶ 21, the Trust provides no explanation (because it cannot) for how avoiding duplicative discovery and resolving the appeal in the Third Circuit as quickly as possible would prejudice the Court. Indeed, given that YPF and the Trust have already agreed that if and when the Third Circuit accepts a direct appeal of the Motion to Disqualify, the parties will meet and confer to discuss an expedited briefing schedule, the requested stay would support efficient use of judicial resources.

## **CONCLUSION**

18.     The YPF Defendants respectfully request that the Court grant the relief sought in the Motion.

Dated:  June 22, 2021
         Wilmington, Delaware

                                              Respectfully submitted,

                                              */s/ Matthew B. McGuire*
                                              Adam G. Landis (No. 3407)
                                              Matthew B. McGuire (No. 4366)
                                              LANDIS RATH & COBB LLP
                                              919 Market Street, Suite 1800
                                              Wilmington, Delaware
                                              T: 302-467-4400
                                              F: 302-467-4450

                                              -and-

                                              Victor L. Hou (*pro hac vice*)
                                              Ari D. MacKinnon (*pro hac vice*)
                                              CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                              One Liberty Plaza
                                              New York, New York  10006
                                              T: 212-225-2000
                                              F: 212-225-3999

                                              *Attorneys for the YPF Defendants*