# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE



**CHRISTOPHER S. SONTCHI**  
**JUDGE**

**824 N. MARKET STREET**  
**WILMINGTON, DELAWARE**  
**(302) 252-2888**

August 16, 2021

**VIA CM/ECF**

Brian E. Farnan  
Michael J. Farnan  
FARNAN LLP  
919 North Market Street  
12th Floor  
Wilmington, DE 19801

-and-

J. Christopher Shore  
Matthew L. Nicholson  
WHITE & CASE LLP  
1221 Avenue of the Americas  
New York, New York 10020

Adam G. Landis  
Matthew B. McGuire  
LANDIS RATH & COBB LLP  
919 Market Street  
Suite 1800  
Wilmington, DE 19801

-and-

Jeffrey A. Rosenthal  
CLEARY GOTTLIEB STEEN  
& HAMILTON LLP  
One Liberty Plaza  
New York, New York 10006

RE: Maxus Energy Corporation, et al., 16-11501  
<u>Maxus Liquidating Trust v. YPF, S.A., et al., 18-50489</u>

Dear Counsel,

Before me are cross motions requesting the production of purportedly privileged documents. These requests are made at the 11th hour of discovery in this adversary proceeding. Document production is long concluded, most of the depositions have been taken, and, under the current scheduling order, fact discovery ends on August 16th – the date of this letter. Nonetheless, I will consider the motions on the merits without regard to their tardy submission.[1]

There are three categories of documents at issue: (1) the Trust argues that the YPF Defendants have waived attorney client privilege with regard to "Project Jazz," and, notwithstanding that the documents were not shared with any directors, officers or

---

[1] In the interest of time, I am writing for the parties, and I assume the reader has knowledge of the underlying facts.

employees of Maxus, seek the production of purportedly privileged documents that appear (based on the categorical privilege logs) to be related to Project Jazz,; (2) the YPF Defendants seek the production of privileged documents that were shared with members of the Maxus Board of Directors who were serving as the designees of YPF, the parent of Maxus, on the basis of a Delaware Chancery Court decision that holds that the stockholder designating a director to a corporation is entitled to privileged documents shared with its designee; and (3) the YPF Defendants seek the production of privileged documents with regard to the activities of the Maxus Special Independent Committee ("SIC"), arguing that the Trust has waived attorney client privilege by referring to the activities of the SIC in the Complaint, notwithstanding that I previously held on two occasions that the privilege had not been waived in connection with the so-called MoFo Report, which was the result of the SIC's activities and investigation.

1. Project Jazz

I have issued three discovery opinions relating to Project Jazz. The June 2020 and March 8, 2021, opinions generally denied assertions of privilege by the YPF Defendants over communications in the possession of YPF employees that were simultaneously acting as employees or directors of its subsidiary, Maxus (the "Two-Hatters"), and required that the YPF Defendants produce all such documents. *See In re Maxus Energy Corporation*, 2021 WL 856040 at *2 (Bankr. D. Del. Mar. 8, 2021) (reiterating the holding that the YPF Defendants "failed to establish that YPF employees that were simultaneously acting as employees of . . . Maxus, were nonetheless receiving privileged communications . . . solely in their capacity as employees of YPF.") (citing *In re Maxus Energy Corporation*, 617 B.R. 806, 817-18 (Bankr. D. Del. 2020)). The March 11, 2021, opinion held that the YPF Defendants' disclosure of the Executive Summary of the Chadbourne Memorandum to Mr. Francisco Garcia Tobar during his tenure as a director of Maxus "resulted in a subject matter waiver of the attorney-client privilege as to the issues discussed in the [Chadbourne] Memorandum." *In re Maxus Energy Corporation*, 2021 WL 924302 at *2 (Bankr. D. Del. Mar. 11, 2021). I did not address in the March 11, 2021, opinion whether there was a broader subject matter waiver with respect to Project Jazz.

After numerous email discussions and a meet and confer, the Trust has narrowed its request to 5,692 documents, inclusive of families, on YPF Defendants' privilege log concerning Categories 10, 11 and 17.[2]

---

[2] Category No. 10 contains communications dating between May 28, 2012, and April 29, 2017 "reflecting, in furtherance of or related to legal advice of counsel concerning the Debtor's bankruptcy proceedings, including the plan and decision to file for bankruptcy;

Category No. 11 contains communications dating between January 27, 2010, to November 3, 2016 "reflecting, in furtherance of or related to legal advice of counsel concerning a possible settlement of OCC's claims against the YPF Defendants in connection with the Passaic River Litigation; and

In support if its motion, the Trust cites to documents and the testimony of various Two-Hatters, senior YPF in-house counsel, senior YPF businesspeople, and former officers of Maxus to the effect that Project Jazz was not a closely guarded legal strategy internal to YPF. *See* Trust letter dated July 30, 2021 (D.I. 452), at 1-9 and exhibits 1-31 thereto. "Project Jazz is best understood as a business strategy (albeit a strategy with significant legal implications) whereby YPF and Maxus (as YPF's dominated subsidiary) would make a coordinated effort to avoid the risk to YPF of a finding of alter ego liability in the NJ Litigation through a bilateral, bankruptcy-effected settlement that could be enforced over the objections of Maxus's environmental creditors." *Id.* at 6. The Trust has established that Project Jazz was an open matter of dialogue between YPF and Maxus between 2012 and 2016, including between the CEOs and other senior management at YPF and Maxus. "Put simply, Project Jazz—and the subject matter of Project Jazz—was **never** treated by YPF as a matter to be kept secret from Maxus." *Id.* at 9 (emphasis in original).

Thus, the Trust does not actually argue that there has been a broad waiver of attorney client privilege as much as it argues that the documents were never privileged in the first place because there was no expectation of confidentiality. *Id.* at 10 ("Where, as here, there is no basis for finding YPF maintained confidentiality from Maxus over the Project Jazz strategy, but instead discussed the strategy regularly with Maxus personnel, the attorney-client privilege is inapplicable as between the two.").

As a preliminary matter, I would like to clarify what law controls as both the Trust and the YPF Defendants ping pong between Delaware and federal law. If all the claims in a case are state law claims, state law privilege rules apply. Fed. R. Evid. 501. If there is a mix of federal and state law claims, then federal common law privilege rules apply. *Id*. Here, as there are both state and federal claims at issue, federal common law applies, and Delaware law is inapplicable. *Compare* Complaint, Counts II-XXI (invoking 11 U.S.C. §§ 544 and 550 to assert state law fraudulent transfer claims), Counts I and XXII (asserting equitable claims under 11 U.S.C. §105 for veil piercing/alter ego liability and unjust enrichment, respectively), and Count XXIII (asserting claim for civil conspiracy under Delaware and New Jersey law).

Broadly speaking, the attorney-client privilege protects communications between a client and an attorney where the communications are intended to be and remain confidential. *Upjohn Co. v. United States*, 449 U.S. 383, 389(1981) ("The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law.") (citation omitted); *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014) ("The privilege protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance

---

Category No. 17 contains communications dating between December 29, 2008, to April 18, 2017 "reflecting, in furtherance of or related to legal advice of counsel concerning financial support and contributions provided by any of the Repsol Defendants or the YPF Defendants to YPFH and/or the Debtors.

to the client.") (citations and quotations omitted); and *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011) ("In order for the attorney-client privilege to attach to a communication, it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.") (internal citations and quotations omitted). The documentary and deposition evidence submitted by the Trust establishes a strong *prima facie* case that the documents at issue are not privileged because the facts and issues surrounding Project Jazz were not remotely confidential.

As it is the YPF Defendants that have asserted the documents are privileged, it is their burden to rebut the Trust's case. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (the party asserting the privilege bears the burden of proving the privilege applies). This they have not done. The YPF Defendants attempt to rebut the Trust's evidence by referencing self-serving testimony by their senior officers. *See* YPF Defendants' letter dated August 6, 2021 (D.I. 463) at 2-3; and YPF Defendants' letter dated August 16, 2021 (D.I. 480) at 1-2. This does not come close to refuting the extensive documentary and testimonial evidence proffered by the Trust. Rather, citing primarily to inapplicable law, they argue that the facts do not support a general waiver of attorney client privilege. Whether attorney client privilege had been waived was the issue with the Two-Hatters and the Chadbourne Memorandum, i.e., whether the attorney client privilege was waived by the disclosure of the confidential information to third parties. The issue here is subtly but importantly different. It is whether the attorney client privilege attached in the first place - as the information was never confidential - not whether it was waived. As such the cases cited by the YPF Defendants, such as *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991) ("When a party discloses a portion of otherwise privileged materials while withholding the rest, the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary."), and *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345 (3d Cir. 2007), are inapposite. In addition, my previous decisions of June 2020, March 8, 2021, and March 11, 2021, are inapplicable.

As the Trust has made a *prima facie* case that the documents it seeks are not confidential and, thus, not privileged, which the YPF Defendants have not rebutted, the documents must be produced. The YPF Defendants, however, raise a final argument: they should be permitted to perform a document-by-document analysis rather than being required to produce all the documents that they chose to place in Categories 10, 11 and 17. This argument is without merit and has long been waived. The parties agreed and I approved the use of categorical privilege logs. This is a common practice in litigation involving the review of an extremely large number of documents, such as here. It is an efficient and appropriate accommodation to allow for the production of meaningful privilege logs without undertaking the huge expense and significant delay arising from the production of a document-by-document log. However, with its benefits come its

Case 18-50489-CSS    Doc 482    Filed 08/16/21    Page 5 of 7

5

burdens. Having asked for permission to use a categorical privilege log and having produced a categorial privilege log, the YPF Defendants cannot now assert the right to produce a document-by-document privilege log. Moreover, as noted earlier, we are in the 11th hour of discovery. It is too late to undertake the months necessary to produce such a log, for the Trust to review the log, for the parties to meet and confer over the log and then submit it to me for decision if they cannot agree, and for me, finally, to render a decision (not to mention the probably motions for reconsideration and/or a stay pending appeal). As such, it would be significantly prejudicial to further delay discovery in this case by allowing the YPF Defendants to create a document-by-document log. Moreover, there can be no complaint as to the production of the entirely of documents that the YPF Defendants included in Categories 10, 11 and 17 – the descriptions of which the YPF Defendants wrote and which are clearly related to Project Jazz. Thus, I will grant the Trust's motion and require the immediate production of all the requested documents.

### 2. The YPF Two-Hatters

The YPF Defendants seek the production of Maxus's privileged documents that were shared with members of the Maxus Board of Directors who were serving as the designees of YPF, the parent of Maxus. One would expect that the YPF Defendants' argument would be a derivation of "what's good for the goose is good for the gander." That is to say, as I previously required YPF to produce its privileged documents that were shared with their employees that were also serving as directors, officers, or employees of Maxus, then I should require Maxus to produce its privileged documents that were share with its directors that were also serving as directors, officers or employees of YPF. *Q.E.D.* However, the YPF Defendants do not make that argument – cognizant of the fact that they have a pending appeal before the District Court in which they argue that my previous ruling was erroneous and rightfully wary of an argument in the District Court that invoking my ruling on their own behalf might result in a waiver of their appellate arguments.

Rather, the YPF Defendants rely on a Delaware Chancery Court case holding that the stockholder designating a director to a corporation is entitled to privileged documents shared with its designee. *Kalisman v. Friedman*, C.A. No. 8447–VCL, 2013 WL 1668205, (Del. Ch. Apr. 17, 2013). This argument fails for two reasons. First, *Kalisman* is a Delaware case and, thus, is not applicable. Federal law controls, and the YPF Defendants have not cited to any federal authority in support of the proposition put forth in *Kalisman*. Second, I reject the reasoning of *Kalisman*. The argument that a stockholder is entitled to privileged communications shared with its designee ignores basic principles of the corporate form. Being a director must mean something. If nothing else, it comes with the burden of fiduciary duties. Allowing a stockholder to avoid being subject to fiduciary duties and, at the same time, obtain confidential privileged corporate information through the backdoor from a designee on the board runs counter to my view of the proper application of the corporate form.

I will require Maxus to produce the documents immediately. To be perfectly clear, however, I make this ruling *based solely on my previous reasoning currently being appealed*. There is no other legitimate basis to require production of the documents. I leave it to the District Court to determine the effect of this production, if any, on the pending appeal.

### 3. The SIC Investigation Documents

The YPF Defendants argue that the Trust has waived attorney client privilege regarding the activities of the SIC because the Trust refers to the activities of the SIC in the Complaint. It cannot be disputed that the documents at issue are subject to the attorney client privilege. Nor have these privileged documents been previously disclosed to any YPF director, officer, or employee. Thus, the sole issue is whether reference to the work of the SIC in the Complaint constitutes a general waiver of attorney client privilege. It does not.

As referenced above, I previously faced the same argument with the so-called MoFo Report. The MoFo report was the product of the SIC's activities and investigation. It was referenced twice in the Complaint, which the YPF Defendants argued constituted a waiver. I rejected that argument twice (once in denying the original request and again in distinguishing the required production of the Chadbourne Memorandum from the non-production of the MoFo Report).

The YPF Defendants seek to distinguish my MoFo Report decision by focusing on the following statement:

> Here, there were two references to the MoFo Report in a lengthy Complaint – with only one of those references relating to the MoFo Report's conclusions regarding the alter-ego claims being asserted against the Defendants. The Court finds that this is not even "light use" of the MoFo Report and the privilege was not waived by such limited use in the Complaint.

*In re Maxus Energy Corp.*, 617 B.R. at 820.

In contrast to the "not even 'light use'" of the MoFo Report, the YPF Defendants argue that the Trust has made "heavy use" of the SIC investigation and proposed settlement in its Complaint. While it is true that there are more references to the work of the SIC in the Complaint than there are of the MoFo Report that is not determinative. More importantly, the references to the activities of the SIC are based on publicly available information. The YPF Defendants ignore the fact that they were present for and heavily involved in the very bankruptcy proceedings in which the SIC's activities were discussed, debated, and tried. Indeed, the SIC and the settlement were among the most highly contested issues in a highly contested bankruptcy. The Trust's reference to publicly available information, which never comes close to disclosing confidential attorney client privileged information, in support of its claims cannot constitute a waiver of the privilege. I will deny the YPF Defendants' request for production of the SIC Investigation Documents.

I direct the parties to confer and to submit an agreed order implementing this ruling by no later than 4:00 p.m. on August 18, 2021. If the parties cannot agree competing orders shall be submitted by 4:00 p.m. on August 19, 2021. As refenced at oral argument, I will not entertain further motions to compel the production of non-expert related documents absent a showing of extraordinary circumstances. In addition, the parties may present a revised scheduling order to allow for an extension of the fact discovery deadline beyond August 16, 2021, provided, however, no other dates in the current order are changed.

Sincerely,

Christopher S. Sontchi
United States Bankruptcy Judge