IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MAXUS ENERGY CORPORATION., | : | Case No. 16-11501-CSS |
| Debtors. | : | (Jointly Administered) |
| YPF, S.A., *et al.*, | : | |
| Appellants, v. | : | Adv. 18-50489-CSS |
| MAXUS LIQUIDATING TRUST, | : | Misc. No. 21-mc-353-RGA |
| Appellee. | : | |

**MEMORANDUM ORDER**

Before the Court is the *Appellants' Emergency Motion for Stay Pending Ruling on Request for Interlocutory Appeal* (D.I. 2) ("Emergency Stay Motion"), filed by YPF S.A., YPF International S.A., YPF Holdings, Inc., and CLH Holdings, Inc. (collectively, "YPF"), which seeks a stay pending the Court's adjudication of YPF's *Motion for Leave to File Interlocutory Appeal*, dated September 2, 2021 (D.I. 1) ("Leave Motion"), requesting leave to challenge, on an interlocutory basis, the Bankruptcy Court's opinion (Adv. D.I. 482)[1] ("Discovery Opinion" or "Op."), dated August 16, 2021, and related order (Adv. D.I. 490) ("Discovery Order"), dated August 19, 2021. The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. For the reasons set forth below, the Leave Motion is denied. Accordingly, the Emergency Stay Motion is dismissed as moot.

[1] The docket of the adversary proceeding, captioned *Maxus Liquidating Trust v. YPF S.A., et al.*, Adv. No. 18-50489-CSS (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

1. **Background.** The Maxus Liquidating Trust ("Trust") filed a motion requesting the production of purportedly privileged documents, and YPF filed a cross-motion. The cross-motions involved three categories of documents related to "Project Jazz."

2. For the reasons set forth in the Discovery Opinion, the Bankruptcy Court entered the Discovery Order directing YPF to produce the documents to the Trust within seven days—*i.e.*, August 30, 2021. YPF did not produce the documents and instead filed on August 30, 2021 a *Motion to Stay and Extend the Deadline For YPF Defendants' Compliance with the August 19, 2021 Discovery Order* (D.I. 492) ("Stay Motion").

3. On September 1, 2021, the Bankruptcy Court held a status conference, set a briefing schedule, and scheduled a hearing for September 13, 2021, which was ultimately held on September 14, 2021. On September 16, 2021, the Bankruptcy Court issued a letter ruling ("Letter Ruling") and Order (Adv. D.I. 518, 519) which denied the Stay Motion, found that YPF had been in violation of the Discovery Order since August 30, and ordered that "the YPF Defendants shall comply with all their obligations under the Discovery Order by no later than September 27, 2021, at 4:00 p.m. EST, and no further extension of this period will be granted." (Adv. D.I. 519 at 1). The Bankruptcy Court further determined to "hold a hearing on October 5, 2021, at which time [the court] will consider: (1) whether to impose sanctions on the YPF Defendants for violation of the Discovery Order; (2) whether to hold the YPF Defendants in contempt if they fail to comply with all their obligations …; and (3) if the YPF Defendants are held in contempt, what sanction to impose." (*Id.* at 2).

4. On September 21, 2021, the Bankruptcy Court entered a revised version of the Letter Ruling (Adv. D.I. 525) ("Revised Letter Ruling"), which did not affect YPF's obligations under the Discovery Order or the deadline.

5. Contemporaneously with the stay proceedings in the Bankruptcy Court, YPF filed in this Court the Leave Motion (D.I. 1), seeking leave to appeal the interlocutory Discovery Order. On September 17, 2021, the Trust filed an opposition to the Leave Motion (D.I. 7) and the Emergency Stay Motion (D.I. 8, 9). On September 22, 2021, YPF filed its replies in further support of the Motion for Leave (D.I. 11, 12) and the Emergency Stay Motion (D.I. 13, 14).

6. **Jurisdiction and applicable standards.** This Court has jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3).

7. Section 158(a) does not identify the standard district courts should use in deciding whether to grant leave for interlocutory appeal. "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).[2] Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir.

[2] *See also In re Philadelphia Newspapers, LLC,* 418 B.R. 548, 556 (E.D. Pa. 2009) ("Based upon the decision of the Third Circuit in *Bertoli v. D'Avella (In re Bertoli)*, 812 F.2d 136, 139 (3d Cir. 1987), courts within this Circuit confronted with the decision whether to grant leave to allow an interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b).").

1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

8. ***Controlling question of law as to which there is substantial ground for difference of opinion.*** "A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz*, 496 F.2d at 755. "'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally. And on the practical level, saving of time of the district court and of expense to the litigants [has been] deemed . . . to be a highly relevant factor." *Id.* (internal citation omitted). The "controlling question of law" also must be one as to which there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). This element may be satisfied where "the bankruptcy court's decision is contrary to well-established law." *In re Marvel Entm't Grp., Inc.,* 209 B.R. 832, 837 (D. Del. 1997).

9. According to YPF, the Bankruptcy Court's ruling is contrary to well-established law because it failed to apply the Third Circuit's required subject matter waiver analysis in finding that the Project Jazz Documents are not privileged. "The Bankruptcy Court disregarded sacrosanct principles of privilege law," YPF argues, by ordering the production of attorney-client privileged documents based on an alleged lack of confidentiality surrounding the "facts and issues" in the documents. YPF argues this holding "circumvented the subject-matter waiver analysis mandated by the Third Circuit"—which "indisputably cannot be met here"—by holding that thousands of documents were not privileged in the first place, "even though it was undisputed that each document was between lawyer and client, for the purpose of receiving legal advice, never disclosed outside the lawyer-client relationship, and described in [YPF's] privilege log consistent with Rule

26(b)(5) which was never challenged." (D.I. 1 at 1-2). YPF argues that in so ruling, the Bankruptcy Court created new law to justify its forced production of thousands of privileged documents and on such issues as YPF's litigation strategy regarding the very claims in this case. (*Id.* at 3).

10. The Trust argues that YPF has deliberately misread the Discovery Opinion and that the Bankruptcy Court's ruling was based, not on a novel rule of law, but rather on an extensive record and factual findings. While the Trust concedes that, in seeking production of the Project Jazz documents at issue, it did make a subject matter waiver argument, the Trust also argued that, given the breadth and frequency of communications between Maxus and YPF on Project Jazz, the documents at issue on YPF's privilege log were neither privileged nor confidential and should be produced. Having provided evidence of same, the burden then shifted to YPF to establish the existence of any applicable privilege as to any of the Project Jazz documents. YPF made virtually no evidentiary showing, according to the Trust, and thus the Bankruptcy Court did not err in finding that YPF had failed to rebut the Trust's case and in ordering production of the Project Jazz documents.

11. It is clear from the Discovery Opinion that the Bankruptcy Court's ruling is not based on a novel theory of law, as YPF has asserted. YPF contends the Bankruptcy Court erred because the Trust failed to establish the necessary predicates for a broad subject-matter waiver over the Project Jazz Documents. (D.I. 1 at 14-15). A subject-matter waiver ruling, however, was not necessary, as the Trust argued that the Project Jazz Documents were not privileged in the first place. Rather, the Bankruptcy Court concluded, based on the extensive factual record and submissions, that the Trust had made a *prima facie* case that the documents it sought were not confidential and, thus, not privileged, a case which the YPF had failed to rebut.

12. The record reflects that the Bankruptcy Court had issued three prior discovery opinions relating to Project Jazz. The June 23, 2020 and March 8, 2021 opinions generally denied assertions of privilege by YPF over communications in the possession of YPF employees that were simultaneously acting as employees or directors of its subsidiary, Maxus (the "Two-Hatters") and required that YPF produce all such documents. *See In re Maxus Energy Corp.*, 2021 WL 856040 at *2 (Bankr. D. Del. Mar. 8, 2021) (reiterating the holding that YPF "failed to establish that YPF employees that were simultaneously acting as employees of . . . Maxus, were nonetheless receiving privileged communications . . . solely in their capacity as employees of YPF.") (citing *In re Maxus Energy Corp.*, 617 B.R. 806, 817-18 (Bankr. D. Del. 2020)). The March 11, 2021 opinion held that YPF's disclosure of the Executive Summary of the Chadbourne Memorandum to Mr. Francisco Garcia Tobar during his tenure as a director of Maxus "resulted in a subject matter waiver of the attorney-client privilege as to the issues discussed in the [Chadbourne] Memorandum." *In re Maxus Energy Corp.*, 2021 WL 924302 at *2 (Bankr. D. Del. Mar. 11, 2021). The Bankruptcy Court did not address in the March 11, 2021 opinion whether there was a broader subject matter waiver with respect to Project Jazz.

13. After numerous email discussions and a meet and confer, the Trust narrowed its request to 5,692 documents on YPF's privilege log concerning Category Nos. 10, 11 and 17. Category No. 10 contains communications dating between May 28, 2012, and April 29, 2017 "reflecting, in furtherance of or related to legal advice of counsel concerning the Debtor's bankruptcy proceedings, including the plan and decision to file for bankruptcy;" Category No. 11 contains communications dating between January 27, 2010, to November 3, 2016 "reflecting, in furtherance of or related to legal advice of counsel concerning a possible settlement of OCC's claims against the YPF Defendants in connection with the Passaic River Litigation;" and Category No. 17 contains communications dating between December 29, 2008, to April 18, 2017 "reflecting,

in furtherance of or related to legal advice of counsel concerning financial support and contributions provided by any of the Repsol Defendants or the YPF Defendants to YPFH and/or the Debtors." (D.I. 1-3 at 2 n.2).

14. Seeking to compel these documents, the Trust asserted, "Project Jazz is best understood as a business strategy (albeit a strategy with significant legal implications) whereby YPF and Maxus (as YPF's dominated subsidiary) would make a coordinated effort to avoid the risk to YPF of a finding of alter ego liability in the NJ Litigation through a bilateral, bankruptcy-effected settlement that could be enforced over the objections of Maxus's environmental creditors." (*See* Trust letter dated July 30, 2021 (Adv. D.I. 452) ("Trust Letter") at 6). The Trust attached documents and testimony of various Two-Hatters, senior YPF in-house counsel, senior YPF businesspeople, and former officers of Maxus to the effect that Project Jazz was not a closely guarded legal strategy internal to YPF. (*See id.* at 1-9 and exhibits 1-31 thereto). Based on this evidence, the Trust argued, "Project Jazz—and the subject matter of Project Jazz—was never treated by YPF as a matter to be kept secret from Maxus." (*Id.* at 9). Based on the evidence submitted, the Bankruptcy Court found, "The Trust has established that Project Jazz was an open matter of dialogue between YPF and Maxus between 2012 and 2016, including between the CEOs and other senior management at YPF and Maxus." (Op. at 3). Thus, the Bankruptcy Court determined, "the Trust does not actually argue that there has been a broad waiver of attorney client privilege as much as it argues that the documents were never privileged in the first place because there was no expectation of confidentiality." (*Id.* (citing Trust Letter at 10 ("Where, as here, there is no basis for finding YPF maintained confidentiality from Maxus over the Project Jazz strategy, but instead discussed the strategy regularly with Maxus personnel, the attorney-client privilege is inapplicable as between the two")).

15. In determining whether YPF had rebutted the Trust's arguments, the Bankruptcy Court noted, "Broadly speaking, the attorney-client privilege protects communications between a client and an attorney where the communications are intended to be and remain confidential." (Op. at 4 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The Bankruptcy Court further stated, "In order for the attorney-client privilege to attach to a communication, it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.") (*Id.* (citing *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011)). The Bankruptcy Court further noted, "As it is the YPF Defendants that have asserted the documents are privileged, it is their burden to rebut the Trust's case." (*Id.* (citing *In re Grand Jury,* 705 F.3d 133, 160 (3d Cir. 2012) (the party asserting the privilege bears the burden of proving the privilege applies))). The application of these standards is consistent with well-established law.

16. Applying these standards to the evidence before it, the Bankruptcy Court determined that YPF had failed to rebut the Trust's case:

> The YPF Defendants attempt to rebut the Trust's evidence by referencing self-serving testimony by their senior officers. *See* YPF Defendants' letter dated August 6, 2021 (D.I. 463) at 2-3; and YPF Defendants' letter dated August 16, 2021 (D.I. 480) at 1-2. This does not come close to refuting the extensive documentary and testimonial evidence proffered by the Trust. Rather, citing primarily to inapplicable law, they argue that the facts do not support a general waiver of attorney client privilege. Whether attorney client privilege had been waived was the issue with the Two-Hatters and the Chadbourne Memorandum, i.e., whether the attorney client privilege was waived by the disclosure of the confidential information to third parties. The issue here is subtly but importantly different. It is whether the attorney client privilege attached in the first place - as the information was never confidential - not whether it was waived.

(Op. at 4). The Bankruptcy Court concluded, "As the Trust has made a *prima facie* case that the documents it seeks are not confidential and, thus, not privileged, which the YPF Defendants have not rebutted, the documents must be produced." (*Id.*)

17. It is clear that the issues YPF cites in its Leave Motion are not issues of "controlling law" that arise from a genuine doubt as to the correct legal standard, but rather involve a disputed evidentiary determination, which is not the proper basis for an interlocutory appeal. *Springer v. Henry*, 435 F.3d 268, 279 (3d Cir. 2006) ("[D]isputes of fact preclude this court from exercising jurisdiction.") That YPF disagrees with the Bankruptcy Court's application of the legal standard to the particular facts before it does not constitute the requisite "substantial grounds for difference of opinion." *In re Greenfield Energy Servs.*, 2017 WL 6524525, at *3 (D. Del. Dec. 21, 2017) ("A party's disagreement with the bankruptcy court's ruling does not constitute 'a substantial ground for difference of opinion' within the meaning of § 1292(b)") (citation omitted).

18. ***Whether immediate appeal will materially advance termination of the litigation.*** YPF argues that, in light of the Bankruptcy Court's manifest errors, an immediate appeal of these issues will materially advance the litigation's ultimate termination. YPF argues that, since the Trust has otherwise failed to make its case, the Trust clearly intends to make the privileged communications the centerpiece of any future submissions and at any trial. YPF argues that it will be impossible to disentangle the impact of the privileged Project Jazz documents on any final judgment in the event of a successful appeal and would require a redo of trial, if not discovery also, after remand. The Trust disagrees, arguing that the Court should await a final order to issue from the contempt hearing to be held, if at all, on October 5, 2021. According to the Trust, to the extent the Bankruptcy Court enters an order of contempt, the Leave Motion will become moot, as any contempt order would become a final order for appellate purposes. *In re Grand Jury*, 705 F.3d 133, 142-43 (3d Cir. 2012) (internal citations omitted) (a "contempt order is itself immediately appealable because it is a final judgment imposing penalties on the willfully disobedient witness in what is effectively a separate proceeding."). Conversely, if YPF does produce the subject

documents, then the very premise of the Leave Motion recedes and any appeal can be handled through the normal appellate processes. The Court agrees.

19. ***Whether exceptional circumstances justify immediate appeal.*** In order to obtain interlocutory review, YPF must also show "exceptional circumstance" sufficient to justify departure from the fundamental principle of postponing review until entry of final judgment. *See, e.g., In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del.), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). YPF contends that, although discovery orders are rarely proper candidates for interlocutory review, this case presents an exception. (D.I. 1 at 3). According to YPF, the Bankruptcy Court "essentially re-cast[] a waiver argument . . . as a lack of privilege," and, in so doing, "contravene[d] controlling Third Circuit law" and "improper[ly] abdicat[ed] its obligation to conduct a document-by-document analysis." (D.I. 1 at 16). YPF contends that this purported legal error is "of special consequence" to, or "serious to the conduct of," this litigation, and must be corrected now; otherwise, "irreparable harm" will result from the "forced disclosure" of privileged documents. (*Id.*)

20. YPF's allegation that the Opinion is "of special consequence" to, or "serious to the conduct of," this litigation, does not supplant or alter the underlying requirements for an interlocutory appeal. *See, e.g., Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110-11 (2009) ("The preconditions for § 1292(b) review—'a controlling question of law,' the prompt resolution of which 'may materially advance the ultimate termination of the litigation'—are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence."). Thus, the opinions YPF cites do not stand for the proposition that privilege rulings create an exception in which review is freely obtainable. On the contrary, "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege." *Mohawk Indus.*, 558 U.S. at 109. If a would-be appellant needed only make the most conclusory

allegation that a privilege ruling is "serious to the conduct of litigation," then the exception would swallow the rule and interlocutory appeals would be available in every case in which a trial court denied a claim of privilege. *See Hinton v. Dep't of Justice*, 844 F.2d 126, 130 (3d Cir. 1988) ("If the fact that [the] court has directed a party to take some action [. . .] is enough to constitute the order as an injunction, then every discovery order would qualify for immediate interlocutory appeal . . . However, the general non-appealability of discovery orders is well-established.").

21. This record, in which the Bankruptcy Court received submissions from both sides, held a hearing, reviewed evidence, made factual findings, and applied existing law does not present the type of "exceptional circumstances" that warrant an interlocutory appeal.

22. **Conclusion.** YPF has failed to establish that the issues presented meet the standard for interlocutory appeal.

NOW, THEREFORE, it is HEREBY ORDERED that the Leave Motion (D.I. 1) is DENIED. Accordingly, the Emergency Stay Motion (D.I. 2) is DISMISSED as moot.

Entered this 27th day of September, 2021.

United States District Judge