## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MAXUS ENERGY CORPORATION, | Case No. 16-11501 (CSS) |
| Debtor. | (Jointly Administered) |

| | |
|---|---|
| MAXUS LIQUIDATING TRUST, | |
| Plaintiff, | |
| -against- | |
| YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO., | Adv. Proc. No. 18-50489 (CSS) |
| Defendants. | |

### YPF DEFENDANTS' MOTION TO STAY PROCEEDINGS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

JURISDICTION AND VENUE ................................................................................... 1

PRELIMINARY STATEMENT ................................................................................... 2

FACTUAL BACKGROUND ....................................................................................... 4

A.  Defendants' Motions to Dismiss and Pre-Trial Scheduling ........................................ 4

B.  The Disqualification Order and the Pending Appeal before the Third
Circuit ....................................................................................................................... 5

C.  The Acceleration of the Summary Judgment Schedule............................................... 7

RELIEF REQUESTED.................................................................................................. 8

BASIS FOR RELIEF ................................................................................................... 8

A.  The YPF Defendants Have The Requisite "Reasonable Chance" Of
Success On Their Appeal Before The Third Circuit .................................................... 9

B.  Absent A Stay, YPF Is Exposed To A Danger Of Irreparable Harm
By White & Case's Participation In, And An Expedited Adjudication
Of, Dispositive Motion Practice ................................................................................. 11

C.  A Short Delay To Allow For The Third Circuit's Ruling On The
Disqualification Order Appeal And Adjudication By The Judge
Overseeing This Case Will Not Prejudice The Trust .................................................. 15

D.  The Public Interest In Judicial Economy Favors A Stay............................................. 17

RESERVATION OF RIGHTS ...................................................................................... 18

PRIOR REQUEST........................................................................................................ 18

CONCLUSION.............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Albert E. Price, Inc. v. Metzner*,
574 F. Supp. 281 (E.D. Pa. 1983) ...........................................................................................11

*In re Adelphia Commc'ns Corp.*,
361 B.R. 337 (S.D.N.Y. 2007)..............................................................................................12

*In re Corn Derivatives Antitrust Litig.*,
748 F.2d 157 (3d Cir. 1984)..................................................................................................18

*In re Cujas*,
376 B.R. 480 (E.D. Pa. 2007) ...............................................................................................12

*In re Genesis Health Ventures, Inc.*,
367 B.R. 516 (Bankr. D. Del. 2007) .............................................................................. *passim*

*In re Glob. Home Prods., LLC*,
No. 06–10340–KG, 2006 WL 2381918 (D. Del. Aug. 17, 2006) ...........................................12

*In re Howmedica Osteonics Corp.*,
867 F.3d 390 (3d Cir. 2017)..................................................................................................17

*In re L.A. Dodgers LLC*,
465 B.R. 18 (D. Del. 2011)............................................................................................12, 15

*In re Revel AC, Inc.*,
802 F.3d 558 (3d Cir. 2015)......................................................................................8-9, 11-12

*In re Sandenhill, Inc.*,
304 B.R. 692 (E.D. Pa. 2004) .................................................................................................9

*In re Welded Constr., L.P.*,
No. 19-50180 (CSS).............................................................................................................13

*N. Am. Commc'ns, Inc. v. InfoPrint Sols. Co., LLC*,
C.A. No. 3:08-288, 2011 WL 4571727 (E.D. Pa. July 13, 2011)..................................... 15-16

*Repub. of Phil. v. Westinghouse Elec. Corp.*,
949 F.2d 653 (3d Cir. 1991)...............................................................................................8, 12

*United States v. Prevezon Hldgs. Ltd.,*
    839 F.3d 227 (2d Cir. 2016) ............................................................................. 11-12

**Statutes**

28 U.S.C. § 157 ...................................................................................................... 1

28 U.S.C. § 157(b)(2) ............................................................................................ 1

28 U.S.C. § 158(d)(2) ........................................................................................ 6, 10

28 U.S.C. § 158(d)(2)(A) ....................................................................................... 1

28 U.S.C. § 1334 .................................................................................................... 1

28 U.S.C. § 1408 .................................................................................................... 1

28 U.S.C. § 1409 .................................................................................................... 1

**Rules**

Del. Bankr. L.R. 9013-1(f) ..................................................................................... 1

Fed. R. App. P. 5 .................................................................................................... 6

Fed. R. App. P. 6 .................................................................................................... 6

Fed. R. Bankr. P. 8006(g) ...................................................................................... 6

Fed. R. Bankr. P. 8007 ...................................................................................... 8, 18

Fed. R. Civ. P. 26 ................................................................................................. 18

Fed. R. Evid. 404 ................................................................................................. 10

Defendants YPF S.A., YPF International S.A., YPF Holdings, Inc., and CLH Holdings, Inc. (collectively, "YPF" or the "YPF Defendants"), by and through their undersigned counsel, respectfully request through this motion (the "Motion") the entry of an order granting a stay of summary judgment proceedings pending the United States Court of Appeals for the Third Circuit's (the "Third Circuit") decision on YPF's appeal of the Court's order denying YPF's Motion to Disqualify White & Case LLP as Counsel for the Maxus Liquidating Trust (the "Disqualification Order") [D.I. 390] directly to the Third Circuit pursuant to 28 U.S.C. § 158(d)(2)(A).  In support of this Motion, the YPF Defendants respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  The consideration of this Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.[1]  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are provided by Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 8007.

---

[1]      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the YPF Defendants hereby confirm their consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  For the avoidance of doubt, such consent does not extend to the Complaint filed by the Trust in the above-captioned adversary proceeding (the "Adversary Proceeding").

1

## PRELIMINARY STATEMENT

3.      Briefing before the Third Circuit has just been completed and the potential disqualification of White & Case LLP ("White & Case") is looming.  In light of the Third Circuit's impending decision, this is now the proper time to consider whether summary judgment briefing should be paused until the Third Circuit has ruled.  The YPF Defendants did not expect this Court to suggest last week that it would accelerate consideration of summary judgment motions and thereby potentially outpace the Third Circuit's decision whether White & Case should be disqualified before resolution of the upcoming potentially dispositive motions.

4.      This Court has previously declared that it "has to have an adequate opportunity to actually decide what I anticipate will be motions for summary judgment," which it explained would require at least three or four months to make a decision after briefing is completed.  Apr. 10, 2019 Pre-Trial Conf. Tr. 36:15-21 [D.I. 150].  That declaration was made back in 2019, before the parties subsequently conducted 26 fact depositions and exchanged reports of no fewer than 12 experts comprising approximately 3,000 pages.

5.      Nevertheless, the YPF Defendants learned that during a January 5, 2022 conference in the underlying bankruptcy proceeding (the agenda for which did not in any way provide notice that this Adversary Proceeding would be raised and thus the YPF Defendants did not attend), counsel for the Maxus Liquidating Trust (the "Trust") raised certain developments relating to this Adversary Proceeding, in response to which the Court advised counsel that it intends to rule on summary judgment motions by June 30, 2022, a mere five weeks after the completion of summary judgment briefing.  We urge the Court to reconsider this position, especially given that the Court itself understood that this accelerated timing is an "artificial deadline" brought about by the Court's upcoming retirement.  Jan. 5, 2022 Status Conf. Tr. 4:4-5 (Ex. A).  As the Court surely appreciates, rendering a decision in such a quick time frame is far faster than this Court's typical time to render

summary judgment decisions, especially in such a large and complex case as this one involving multiple corporate entities, dozens of transfers, and conduct spanning more than 20 years where numerous discrete claims and defenses are at issue. When combined with the overarching possibility that the Third Circuit may rule that White & Case should not be participating in this case at all, and the possible irreparable harm to YPF's due process rights that may stem from a decision by this Court before the Third Circuit's ruling is rendered, the YPF Defendants urge this Court to pause summary judgment briefing to allow the Third Circuit to rule, rather than accelerate the resolution of summary judgment motions before the Court of Appeals can render its decision.

6.       In support, YPF respectfully submits that judicial economy counsels in favor of a stay. YPF is cognizant that the Court indicated that its deadline was motivated by a desire to avoid "leaving what I assume will be very heavy lifting to a colleague on the summary judgment when I'm the one with the history of the case and the familiarity with it." Jan. 5, 2022 Status Conf. Tr. 4:4-12 (Ex. A). But that history involved resolving discovery disputes nearly exclusively concerning issues of privilege; it did not involve becoming familiar with the substantial factual record that will be presented to the Court for the very first time in earnest on the summary judgment motions. The Court recognized this as well, observing just months ago that "I have yet to rule on the merits, [not] one iota have I ruled on the merits of this litigation." Sept. 14, 2021 Hr'g Tr. 22:9-11 [D.I. 516]. The Court was right about that. Other than its ruling denying the Defendants' pre-discovery motions to dismiss at the outset of this lawsuit, this Court has not been called upon to consider a single legal or factual issue germane to summary judgment; it has not seen any of the thousands of pages of expert reports; and other than a few snippets relevant to discrete privilege disputes, it has not had meaningful exposure to the enormous volume of documentary and testimonial evidence that will likely underlie the summary judgment motions. Given the likely

need for this Court's successor to familiarize himself or herself with the legal issues and factual record after Your Honor's retirement on June 30, the YPF Defendants respectfully submit that judicial economy actually counsels in favor of the successor judge considering the summary judgment motions rather than have two judges familiarize themselves with this substantial record. This is all the more prudent because it will allow the Third Circuit time to rule on whether the Trust's counsel should be disqualified before the most important motions in this $14 billion complex case are filed.

## **FACTUAL BACKGROUND**

7.      The Trust commenced this Adversary Proceeding against the YPF Defendants and Repsol S.A. ("Repsol") and certain of its affiliates (collectively with Repsol, the "Repsol Defendants") on June 14, 2018 by filing a 130-page Complaint. *See generally* Compl. [D.I. 1].

**A.      Defendants' Motions to Dismiss and Pre-Trial Scheduling**

8.      On October 19, 2018, the YPF Defendants and the Repsol Defendants moved to dismiss the Complaint as a matter of law (without reference, of course, to the enormous factual record later developed). *See, e.g.*, [D.I. 51]. Briefing on the motions to dismiss was completed on December 11, 2018. *See* [D.I. 88]. Six weeks later, on January 22, 2019, the Court held oral argument, and called the motions to dismiss "some of the more extensive and complex briefing" that the Court has "ever read." Jan. 22, 2019 Hr'g Tr. 8:22-23 [D.I. 100].

9.      Following the Court's Opinion denying defendants' motions to dismiss [D.I. 107], at a pre-trial conference on April 10, 2019, the parties discussed the proposed Case Management Plan and Scheduling Order (entered the next day as D.I. 151), which provided for the completion of briefing on dispositive motions on August 14, 2020, followed by a status conference on August 19, 2020. Oral argument on dispositive motions was not included in the Scheduling Order. Remarking about what the parties should contemplate following the completion of summary

judgment briefing, the Court stated that it would need at least "three or four months at the earliest" in order for the Court "to go through the briefs and make a decision."  Apr. 10, 2019 Pre-Trial Conf. Tr. 36:12-21 [D.I. 150].  The Court explained that "these are complicated cases. . . . I understand there's a lot here."  *Id.* Tr. 37:9-17.

10.    Thereafter, the parties proceeded to produce over 1 million documents, take dozens of fact depositions,[2] and exchange more than 3,000 pages of reports from 12 experts.  Other than tangentially and minimally with respect to occasional discovery disputes, the Court has not had an opportunity to receive, review or consider any of this massive record, which will surely require careful scrutiny on summary judgment.  Indeed, at a hearing on September 14, 2021, the Court made clear that "I have yet to rule on the merits, [not] one iota have I ruled on the merits of this litigation."  Sept. 14, 2021 Hr'g Tr. 22:9-11 [D.I. 516].

11.    The Scheduling Order was amended several times, most recently in the Fifth Amended Case Management Plan and Scheduling Order on October 19, 2021, which provided for hundreds of pages collectively for the parties' summary judgment briefs (moving, opposition, and reply), the completion of summary judgment briefing on May 25, 2022, and a status conference on June 1, 2022.  This Scheduling Order likewise did not include a date for oral argument on summary judgment, with that presumably to be scheduled at the June 1, 2022 status conference.

## B.    The Disqualification Order and the Pending Appeal before the Third Circuit

12.    As it relates to the Disqualification Order, on December 19, 2020, the YPF Defendants filed the *Motion to Disqualify White & Case LLP as Counsel for the Maxus Liquidating*

---

[2]    Additionally, dozens of fact depositions were taken in *New Jersey Dep't of Environ. Prot. et al. v. Occidental Chem. Corp. et al.*, No. ESX-L-9868-05 (Super. Ct. N.J. 2005) (the "New Jersey Litigation") and may be incorporated into the factual record by the parties.  This Court previously denied as premature Defendants' request to use certain depositions taken in the New Jersey Litigation.  *See, e.g.*, Op. [D.I. 193] at 7-9, 10 ("Thus, the Court denies, without prejudice, the ability to use the depositions from the New Jersey Action in this action").  The parties subsequently agreed to the use of at least four in this action.  *See* Stipulation of Maxus Liquidating Trust and Repsol and YPF Parties Regarding Use of Prior Depositions [D.I. 534].

*Trust* [D.I. 306] (the "Motion to Disqualify"). As set forth in the Motion to Disqualify, no ethical

screen can cure the conflict that White & Case has created, and White & Case must be disqualified

from representing the Trust in this litigation against the YPF Defendants.

13.    On April 6, 2021, the Bankruptcy Court issued an Opinion, as well as the

Disqualification Order, denying the Motion to Disqualify [D.I. 389 & 390].

14.    On April 20, 2021, YPF filed the *Motion for Leave to File Interlocutory Appeal of*

*the Bankruptcy Court's April 6, 2021 Disqualification Order* [App. Dkt. 1] (the "Motion for

Leave") with the United States District Court for the District of Delaware (the "District Court").

Contemporaneously therewith, YPF filed the *Motion of YPF Defendants for Certification of Direct*

*Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. §*

*158(d)(2)* [D.I. 399] (the "Direct Certification Motion") with the Bankruptcy Court.

15.    On May 10, 2021, the Bankruptcy Court issued an Opinion and Order granting the

request for certification of a direct appeal [D.I. 411 & 412] (the "Certification Opinion").  Along

with the Certification Opinion, the Bankruptcy Court issued a *Certification of Direct Appeal to the*

*United States Court of Appeal for the Third Circuit* [D.I. 413] (the "Direct Certification").

16.    On June 1, 2021, pursuant to Bankruptcy Rule 8006(g) and Federal Rules of

Appellate Procedure 5 & 6, YPF filed a *Petition for Permission to Appeal from the Order Denying*

*Defendants' Motion to Disqualify Dated April 6, 2021, Certified for Appellate Review by the*

*United States Bankruptcy Court for the District of Delaware* on May 10, 2021, No. 18-50489

(CSS) [App. Dkt. 1-1] (the "Petition for Permission to Appeal") with the United States Court of

Appeals for the Third Circuit (the "Third Circuit") well in advance of the deadline.

17.    On June 1, 2021, YPF filed a motion for a stay of discovery pending the appeal of

the disqualification motion to the Third Circuit [D.I. 416].  On July 27, 2021, the Bankruptcy Court

6

issued a Memorandum Order denying the request [D.I. 446]. At the time of YPF's motion for a stay and the Court's denial of that motion, the Third Circuit had not ruled on YPF's Petition for Permission to Appeal.

18.      On July 30, 2021, the Third Circuit issued an Order granting YPF's Petition for Permission to Appeal [App. Dkt. 11-1]. On August 10, 2021, YPF asked the Trust to consent to a stay of proceedings pending resolution of that appeal and offered to meet and confer to discuss an expedited briefing schedule in order to minimize any delay. The Trust did not respond to YPF's request.

19.      Pursuant to the schedule set by the Third Circuit, briefing was completed on the disqualification appeal one week ago on January 7, 2022.

**C.      The Acceleration of the Summary Judgment Schedule**

20.      On November 15, 2021, this Court announced its retirement effective June 30, 2022.

21.      As briefing before the Third Circuit was being completed, on January 5, 2022, the Court emailed counsel for the Trust requesting oral argument either on May 23, 2022 (with the deadline for reply briefs being advanced to May 21, 2022) or all day on May 27, 2022 (with reply briefs remaining on May 25, 2022). *See* Email from D. Gadson to M. Farnan, dated Jan. 5, 2022 (Ex. B). The Court noted that it "will not agree to any further schedule changes that would result in further delay of briefing and argument on summary judgment." *Id.* At the Court's request, counsel for the Trust forwarded this email to counsel for the YPF Defendants and the Repsol Defendants.

22.      At a status conference on another matter (which did not concern the YPF Defendants, and for which the YPF Defendants did not receive notice and therefore did not attend) in the underlying bankruptcy case later that day, counsel for the Trust began by stating "as Your

7

Honor noted this is a status conference for the main case, but I thought I would take two minutes to just give you an update on the adversary proceeding." Jan. 5, 2022 Status Conf. Tr. 3:10-12 (Ex. A).

23.    After the Trust acknowledged the Court's request that morning to schedule oral argument two days after the YPF Defendants and Repsol Defendants filed their summary judgment reply briefs, the Court responded, "I mean that is an artificial deadline based on my own schedule, but I am very cognizant of leaving what I assume will be very heavy lifting to a colleague on the summary judgment when I'm the one with the history in the case and the familiarity with it.  So if it's at all possible, absent, you know, something that makes it simply unworkable, I would really prefer to be able to keep my people busy one last time before I retire and get that out by June 30th." Jan. 5, 2022 Status Conf. Tr. 4:4-12 (Ex. A).

## RELIEF REQUESTED

24.    By this Motion, YPF requests that the Bankruptcy Court stay summary judgment and all subsequent proceedings in connection with the pending litigation between YPF and the Trust, pursuant to Bankruptcy Rule 8007, pending resolution of YPF's appeal to the Third Circuit.

## BASIS FOR RELIEF

25.    Under Bankruptcy Rule 8007, a party can apply to the bankruptcy court for a stay of proceedings pending an appeal.  In evaluating such an application, the court considers the following four factors:  "(1) whether the [party] has made a strong showing of the likelihood of success on the merits; (2) will the [party] suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest." *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015) (citing *Repub. of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991)).  Although "the most critical factors

. . . are the first two," *Revel*, 802 F.3d at 568, each of these factors favors the issuance of a stay of proceedings in this case.

**A.    The YPF Defendants Have The Requisite "Reasonable Chance" Of Success On Their Appeal Before The Third Circuit**

26.    A stay is warranted where the appealing party has at least "a reasonable chance, or probability, of winning."  *Revel*, 802 F.3d at 568 (citation omitted).  This is not an exacting standard:  the Bankruptcy Court need not determine that it is "more likely than not" the appellant will succeed, only that the appellant has a fighting chance. *Id.* at 565, 569.

27.    In considering this factor, the Court need not agree with the YPF Defendants that the Disqualification Order will ultimately be reversed by the Third Circuit, following its decision to certify a direct appeal.  While the Court's views on the issues underlying the YPF Defendants' currently-pending appeal are well known by virtue of this Court's written opinions,[3] the case law is clear that the absence of binding authority alone creates a "substantial ground[] for a difference of opinion," and therefore constitutes a meaningful chance the appellant will succeed.  *In re Genesis Health Ventures, Inc.*, 367 B.R. 516, 521 (Bankr. D. Del. 2007).  This is true even where the lower court is certain of its reasoning.  *See In re Sandenhill, Inc.*, 304 B.R. 692, 694 (E.D. Pa. 2004) (finding uncertainty even where they "frankly cannot imagine that the Third Circuit" would disagree with the trial court, but where there was no actual Third Circuit authority on the issue).

28.    Consequently, YPF has at the very least a reasonable chance of success because – as this Court has recognized – the Disqualification Order was issued in the absence of Third Circuit authority governing the question of when an ethical screen is adequate to cleanse the conflict

---

[3]    The Court has also spoken publicly and written about this issue, for example at an Ethics Roundtable at the 95th Annual National Conference of Bankruptcy Judges in Indianapolis, Indiana from October 6-9, 2021.  Hon. Christopher S. Sontchi, *Big Brother is Watching: When Must an Attorney Disclose a Romantic Relationship to a Client?*, Ethics Roundtable, 95th Ann. Nat'l Conf. of Bankr. Judges (Oct. 2021) (Ex. C).

created in the event that a party's counsel moves to an adversary firm. *See* [D.I. 414] at 14. Nor was any Third Circuit authority available to resolve the question of whether a screened lawyer's spouse must also be prevented from receiving fees in connection with the screened matter. *See id.* at 14-16.[4] With respect to both questions, the Third Circuit will be writing on a blank slate. Moreover, with respect to one of the issues certified by this Court – whether Ms. Boelter's prior misconduct was properly excluded under Federal Rule of Evidence 404 – the Trust essentially conceded this Court's error in its Third Circuit brief. After successfully persuading this Court to exclude consideration of Ms. Boelter's prior ethical violations, *see* Memorandum of Law in Opposition to YPF Defendants' Motion to Disqualify at 31-33 [D.I. 327]; *see also* Apr. 6, 2021 Opinion at 21 [D.I. 389], the Trust's new counsel on appeal argued to the Third Circuit that "it is not impossible to imagine that there are some circumstances that could reasonably lead a supervisory court to exercise its discretion to grant a disqualification motion:  a lawyer with a history of non-compliance moving to a new firm . . ."  Brief of Plaintiff-Appellee, *YPF S.A. et al. v. Maxus Liquidating Trust*, No. 21-2496 (3d Cir. Dec. 3, 2021) at 34 [App. Dkt. 28].  Thus, even if the Third Circuit agrees with the Trust, it should, for the reasons that the YPF Defendants have argued on appeal, reverse the Disqualification Order, given this Court's refusal to consider the YPF Defendants' uncontested evidence of Ms. Boelter's "history of non-compliance."  *Id.*

29.    The legal uncertainty arising from the absence of Third Circuit authority gives YPF the requisite chance of success on the merits to warrant a stay of dispositive motions. *See In re Genesis Health Ventures,* 367 B.R. at 521.  YPF therefore clears the threshold required to show a

---

[4]    While this Court did not certify this issue under 28 U.S.C. § 158(d)(2), the Third Circuit's jurisdiction is over the entire order appealed from, not just the questions the Bankruptcy Court identified as a basis for appeal under § 158(d)(2).  *See* 28 U.S.C. § 158(d)(2) (noting that the court of appeals "shall have jurisdiction of appeals" without any limitation to the issues that the court of appeals may consider or rule upon).  Both parties have addressed this issue in their Third Circuit briefs.

strong chance of success on the merits, even if the Court does not share YPF's confidence in the likelihood of success.

**B.    Absent A Stay, YPF Is Exposed To A Danger Of Irreparable Harm By White & Case's Participation In, And An Expedited Adjudication Of, Dispositive Motion Practice**

30.    The second factor is indisputably satisfied.    White & Case's participation in summary judgment briefing – and particularly the threat that this Court will dispose of the case before the Third Circuit can rule – presents a risk that YPF will experience irreparable harm "that cannot be prevented or fully rectified by the tribunal's final decision."  *Revel*, 802 F.3d at 571 (citation omitted).  The Court has recognized that "there is no doubt that Ms. Boelter was one of the senior attorneys in the YPF Adversary Proceeding.  As such, she was privy to client confidences, and YPF's strategy and tactics in defending the suit."   [D.I. 389] at 15. Uncontroverted evidence submitted at the April 1 hearing before this Court noted that Ms. Boelter had specifically been involved in discussions concerning significant issues of overall case strategy, including on sensitive topics relating to final disposition, such as out-of-court resolution of the case.  [D.I. 389] at 6.  As the Court is aware, these are the issues about to become most salient as the case moves out of discovery and into the impending summary judgment phase.[5]

31.    The Third Circuit appeal on White & Case's potential disqualification should be decided before summary judgment because otherwise the summary judgment motion and decision will be significantly tainted with advocacy by a firm that the appellate court may find should not have been representing the Trust.  Moreover, summary judgment granted in favor of the Trust

---

[5]      Accordingly, there is a continuing risk that Ms. Boelter could – even if inadvertently – disclose such confidences to YPF's adversaries, and there is no adequate post-trial remedy when a client's confidential information is exposed in this way.  *See United States v. Prevezon Hldgs. Ltd.*, 839 F.3d 227, 237-38 (2d Cir. 2016) (risk of disclosure of client confidences constitutes irreparable harm in favor of stay motion); *see also Albert E. Price, Inc. v. Metzner*, 574 F. Supp. 281, 289 (E.D. Pa. 1983) (in the context of injunctive relief, noting that "[f]uture injury of uncertain date and incalculable magnitude is 'irreparable harm'").

could limit the effectiveness of the relief sought from the Third Circuit, forcing YPF to seek to unscramble the proverbial egg in the event that the Third Circuit later rules White & Case should be disqualified.  *See Revel*, 802 F.3d at 568 (noting that irreparable harm is "'harm that cannot be prevented or fully rectified' by a successful appeal") (citation omitted).[6]

32.    Even the threat that disposition could moot the effectiveness of disqualification counsels in favor of a finding of irreparable harm.  *See In re Cujas*, 376 B.R. 480, 487 (E.D. Pa. 2007) (finding that loss of appellate rights due to mootness constitutes irreparable harm); *see also In re L.A. Dodgers LLC*, 465 B.R. 18, 36 (D. Del. 2011) ("As the Third Circuit has stated, '[c]ertainly, the fact that the decision on the stay may be dispositive of the appeal . . . is a factor that [a court] must consider' in determining whether irreparable harm will result from the denial of a stay") (citing *Repub. of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991)); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 348 (S.D.N.Y. 2007) (adopting the significant but minority view that the "loss of appellate rights is a 'quintessential form of prejudice'" and finding that "where the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied").  While courts have found that the fact that an appeal "could be rendered moot . . . does not in and of itself constitute irreparable harm," *In re Glob. Home Prods., LLC*, No. 06–10340–KG, 2006 WL 2381918, at *1 (D. Del. Aug. 17, 2006), here the additional resulting harm from White & Case's participation itself in any motion for summary judgment that could lead to a final disposition of this case warrants a stay.  *See United States v. Prevezon Hldgs. Ltd.*, 839 F.3d at  237-38 (2d Cir. 2016) (risk that client confidences can be disclosed and "misused" constitutes irreparable harm because there is no sufficient remedy after trial or final judgment).

---

[6]    The YPF Defendants of course intend to vigorously oppose any such motion by the Trust, but given the possibility exists, a stay is warranted here.

33.     Given the volume of fact and expert discovery (comprising more than 1 million documents produced, 26 fact depositions conducted, and the submission of reports by 12 experts), summary judgment no doubt will be exponentially more complex and factually detailed than the motions to dismiss, which this Court described as "some of the more extensive and complex briefing" that the Court has "ever read." Jan. 22, 2019 Hr'g Tr. 8:22-25 [D.I. 100]. Setting a deadline of barely more than a month to decide the most important motion in this case is not warranted, particularly when (i) this Court recently acknowledged that it has not yet considered the merits in any respect; (ii) the record is large and legal issues many; and (iii) the next judge will most likely have to become familiar with the case in any event.[7] For a case of this magnitude and Court-acknowledged complexity (where the 130-page Complaint alone consisted of 23 counts, involving disparate sets of unrelated and complicated transfers involving different assets, and different periods of different corporate ownership, all over a more than 20-year span), resolution of the parties' summary judgment motions in the approximately one month period that the Court has planned between the completion of briefing and Your Honor's June 30, 2022 retirement is unusual and, respectfully, unnecessary. Indeed, the YPF Defendants have been unable to find an example of a case of comparable complexity and magnitude in which this Court has ruled on a summary judgment motion in such a short period of time.[8] An analysis of publicly available decisions of this Court reveals that Your Honor typically takes an average of five months to issue

---

[7]      The Court seeks to hold argument barely more than 24 hours after the motion is fully briefed. Given this is the most important motion in the case to date by far, the parties should be able to have sufficient time to present the very best oral argument they can by organizing what surely will be a substantial record on those motions. Moreover, the judge considering the merits of the parties' arguments must have the requisite time to carefully consider all of the many and varied legal and factual issues that are very likely to be presented on that motion.

[8]      Those few cases where the Court resolved a summary judgment motion in less than a few months did not appear to involve extensive discovery, let alone the incredibly voluminous discovery present here. *See Extraction Oil & Gas, Inc. v. Grand Mesa Pipeline, LLC*, No. 20-50816 (CSS) (summary judgment ruling issued 21 days after final brief with no discovery); *In re Welded Constr., L.P.*, No. 19-50180 (CSS) (summary judgment ruling issued 23 days after opposition brief with limited discovery, no reply, and no oral argument).

decisions on summary judgment following the filing of the last reply brief.  This is consistent with the Court's earlier statements that in order to have an "adequate opportunity" to decide the parties' summary judgment motions, the Court would need *at least* "three or four months at the earliest" following their summary judgment motions in order for the Court "to go through the briefs and make a decision."  Apr.10, 2019 Pre-Trial Conf. Tr. 36:12-21 [D.I. 150]; *see id.* Tr. 37:9-17 [D.I. 150] ("I mean these are complicated cases. . . . I understand there's a lot here.").  If anything, summary judgment in a case that this Court has called "more extensive and complex" than this Court has ever read at the motion to dismiss stage (*before* presentation of the enormous factual and expert record here) should take considerably longer than the average, even if the Court is not burdened with other case responsibilities during this very brief period of time.

34.    Since the Court's statements in 2019 regarding the minimum "three or four months" necessary to adjudicate the complex and voluminous summary judgment motions, there have been no changes in the parties' circumstances that warrant the acceleration in decision-making that is currently contemplated.  YPF certainly appreciates that the Court has based its decision to accelerate the schedule on Your Honor's June 30, 2022 retirement date, expressing a desire to avoid passing off the "heavy lifting to a colleague . . . when I'm the one with the history in the case and the familiarity with it."  Jan. 5, 2022 Status Conf. Tr. 4:5-12 (Ex. A).  But we believe that the Court's ruling will not obviate the "heavy lifting" the next judge presiding over this case inevitably will face.  And, as we noted earlier, the Court has itself observed that it has never ruled on any aspect of the merits of this case up to this point.  Indeed, the Court has not yet been presented with any *evidence* regarding the merits of the Trust's claims or YPF's defenses.  As Your Honor knows, up until now the parties have been before Your Honor only on discovery disputes (largely limited to privilege issues) and the motions to dismiss.  *See* Sept. 14, 2021 Hr'g Tr. 21:25-22:13

[D.I. 516].   Consequently, YPF respectfully submits that the opportunity to engage with the substance of the evidence and the parties' legal arguments for the first time in this case may be better left to the Court that will preside over any potential future trial (if one were needed), and only after the Third Circuit has ruled on whether White & Case should be disqualified, therefore ensuring that no law firm with a conflict will be permitted to participate in as fundamental a phase as dispositive motion practice.

35.    Accordingly, a stay is appropriate to minimize the continuous risk of this irreparable injury.  *See In re L.A. Dodgers LLC*, 465 B.R. at 35 (finding irreparable injury where appellant simply suffered an increased risk it would lose a valuable unique asset).

**C.    A Short Delay To Allow For The Third Circuit's Ruling On The Disqualification Order Appeal And Adjudication By The Judge Overseeing This Case Will Not Prejudice The Trust**

36.    In contrast to the YPF Defendants being exposed to the considerable risk that White & Case will participate in the disposition of this case before the Third Circuit has the opportunity to consider the merits of YPF's appeal, the only effect a stay of proceedings will have on the Trust will be to delay the ultimate outcome of the case by the few months until the Third Circuit decides the appeal, which was fully briefed just days ago as of January 7, 2022.  The burden imposed by a few months' delay "is minimal."  *N. Am. Commc'ns, Inc. v. InfoPrint Sols. Co., LLC*, C.A. No. 3:08-288, 2011 WL 4571727, at *4 (E.D. Pa. July 13, 2011).  This is especially the case where a plaintiff waited a long time to file its claim, suggesting that it did not regard time as of the essence, just as the Trust waited almost a year after it was constituted to file suit against YPF.  *Id.*; *see also In re Genesis*, 367 B.R. at 522.

37.    Although the Court has expressed concern when presented with YPF's motion to stay discovery (before the Third Circuit elected to accept the appeal) that any delay as a result of a stay would cause "the underlying litigation to grow older, and the facts to grow even more

unattainable," [D.I. 446] at 8, circumstances are much different today.  With discovery nearly complete, there is no longer any danger of memories dimming.  The evidence has all been preserved.[9]  Moreover, this case concerns conduct allegedly stretching back to 1995 and an additional wait until the Third Circuit renders its decision on a fully-briefed appeal is accordingly unlikely to have a material impact on the attainability of the relevant facts.[10]

38.    Another key factor cited in the Court's rejection of the YPF Defendants' previous stay motion, [D.I. 416], was the fact that the Third Circuit had not yet decided whether it would hear the Disqualification Order appeal.  *See* Op. [D.I. 446] at 8-9 (noting that "[t]here are too many paths that the Third Circuit could choose, including the timing of a possible allowance of a direct appeal . . . .").  The "guesswork" as to whether an appeal may proceed that this Court previously found had counseled against granting the stay motion has been significantly reduced, *id.* at 8, since the Third Circuit granted certification of the YPF Defendants' direct appeal, the parties fully briefed the appeal, and the Third Circuit is expected to schedule oral argument imminently, with a decision on the merits of the Disqualification Order and White & Case's continued participation as counsel to the Trust expected thereafter.

39.    Consequently, there is no material prejudice that could result from a short stay of the proceedings in order to allow the Third Circuit the appropriate time to consider the merits of the parties' submissions and issue its decision.  Putting a pause on the proceedings at the summary

---

[9]    Although this Court has previously stated that there could be "prejudice" in "additional delay in getting this case to trial," Sept. 14, 2021 Hr'g Tr. 22:1-11 [D.I. 516], such general concerns regarding delay cannot constitute the requisite prejudice to the Trust under this third factor; otherwise, no stay requests would ever pass muster over this factor, since all stays – by their very nature – cause some "additional delay."

[10]    Indeed, in addressing the same argument with respect to a case in which "relevant events occurred as long as six years ago," the court in *In re Genesis* found that where "so much time has already elapsed, it is doubtful that Plaintiffs will be prejudiced significantly by another delay."  *In re Genesis*, 367 B.R. at 522.  That argument applies *a fortiori* to a case whose relevant events took place as long as a quarter-century ago:  it is doubtful that a few months one way or the other will change a witness's memory of events that took place more than two decades before.

judgment stage – before the Third Circuit's decision – may actually benefit the Trust by preventing the expenditure of additional resources by White & Case, only for White & Case to be disqualified on appeal and a new firm hired to assume responsibility for litigating this case.[11]

**D.    The Public Interest In Judicial Economy Favors A Stay**

40.    The Court previously noted the possibility that a reversal by the Third Circuit could require that discovery conducted since Ms. Boelter joined White & Case be "disgorged." [D.I. 446] at 8.  That would pale in comparison to the taint of summary judgment proceedings and potentially a final disposition of this case.  Accordingly, given the proximity of the Third Circuit's decision, it is not in the public interest "to compel parties to go through the expense of preparing a case for trial when all of that preparation could be rendered moot by a reversal on an interlocutory appeal."  *In re Genesis*, 367 B.R. at 522.  Nor is it in the public interest to expedite summary judgment proceedings in order to obtain a rushed decision in the disposition of a "complex," $14 billion litigation for the reason of Your Honor's retirement.  *See* Jan. 5, 2022 Status Conf. Hr'g Tr. 4:5-6 (Ex. A).  If anything, judicial economy (and thus the public interest) counsels in favor of permitting a stay so that summary judgment proceedings and a potential future trial are adjudicated by the same judge; otherwise, both this Court (which has not been introduced to the factual record germane to summary judgment) and the successor judge will have to learn the extensive, complex factual record underlying this $14 billion case.  *See, e.g.*, *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (in context of a *mandamus* motion, stating that the Third Circuit "regard[s] these public interests to include judicial economy considerations").

---

[11]    Despite this Court's suggestion that the Trust could be harmed by a stay because the Trust has a "finite amount of money to fund this litigation," Sept. 14, 2021 Hr'g Tr. 23:21-24:2 [D.I. 516], at no time has the Trust demonstrated any financial concern in continuing this litigation.  The Trust's eagerness to proceed with full knowledge that its actions may need to be repeated if its counsel is disqualified belies any such concern.

41.     Moreover, even if a reversal of the Disqualification Order does not require a recapitulation of any proceedings, one of the critical issues at stake is how the rules on former-client conflicts need to be enforced in order to ensure "the maintenance of public confidence in the integrity of the bar." *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984). Allowing the case to proceed potentially all the way to disposition, while the integrity of the proceedings is in question is potentially detrimental to that public confidence and thus to the public interest.

## RESERVATION OF RIGHTS

42.     The YPF Defendants expressly reserve, and do not waive, any and all of their rights, defenses or objections in connection with any pending discovery or future discovery under the Bankruptcy Code, Bankruptcy Rules or the Local Rules or otherwise against the Trust, White & Case, any other professional of the Trust, any successor in interest to the foregoing parties and any and all third parties by filing this Motion and reserves all rights with respect thereto.

## PRIOR REQUEST

43.     As discussed herein, YPF additionally requested a brief stay of discovery under Federal Rule of Civil Procedure 26 following the Court's certification of a direct appeal to the Third Circuit, *see* [D.I. 416], which this Court denied. *See generally* Op. [D.I. 446].[12]

---

[12]     The YPF Defendants also previously sought a stay of production of specific documents pending the outcome of a motion for leave to appeal a discovery ruling to the District Court under Bankruptcy Rule 8007, *see* [D.I. 492], which this Court denied. *See* Op. [D.I. 518].

## CONCLUSION

WHEREFORE, based upon all of the foregoing, the YPF Defendants respectfully request that the Bankruptcy Court enter an order, substantially in the form attached hereto, staying proceedings pending the outcome of the YPF Defendants' appeal of the Disqualification Order to the Third Circuit.

Dated: January 14, 2022
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400

-and-

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Jeffrey A. Rosenthal (*pro hac vice*)
Victor L. Hou (*pro hac vice*)
Ari D. MacKinnon (*pro hac vice*)
Mark E. McDonald (*pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000

-and-

**SIDLEY AUSTIN LLP**
John J. Kuster (*pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300

*Counsel for YPF S.A., YPF International S.A., YPF Holdings, Inc., and CLH Holdings, Inc.*