## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MAXUS ENERGY CORPORATION, *et al.*, | Case No. 16-11501 (CSS) (Jointly Administered) |
| Debtors. | |
| MAXUS LIQUIDATING TRUST, | |
| Plaintiff, | |
| v. | |
| YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACION, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO., | Adversary Proceeding No. 18-50489 (CSS)<br><br>**Re: Docket No. 559** |
| Defendants. | |

## PLAINTIFF'S OPPOSITION TO YPF DEFENDANTS' MOTION FOR STAY OF SUMMARY JUDGMENT PROCEEDINGS

Dated: January 28, 2022

J. Christopher Shore (admitted *pro hac vice*)
Matthew L. Nicholson (admitted *pro hac vice*)
Erin M. Smith (admitted *pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
cshore@whitecase.com
matthew.nicholson@whitecase.com
erin.smith@whitecase.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for the Liquidating Trust*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND.............................................................................3

ARGUMENT ....................................................................................................6

    I.      THERE IS NO BASIS TO STAY DISPOSITIVE MOTION SUBMISSIONS PENDING APPEAL OF THE DQ DENIAL ........................................................6

        A.    The Motion Fails to Make the Requisite Strong Showing of a Likelihood of Success on the Merits............................................................ 7

        B.    The Motion Fails to Establish That Any Harm Would Result From Denial of a Stay of Dispositive Motion Submissions ................................ 9

        C.    The Trust Would Be Prejudiced By a Stay................................................ 11

        D.    A Stay Is Not in the Public Interest ........................................................ 12

CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ferrone v. RPP, LLC (In re RPP, LLC),*
    547 B.R. 158 (Bankr. W.D. Pa. 2016) ..................................................................7

*Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures, Inc.),*
    367 B.R. 516 (Bankr. D. Del. 2007) .............................................................6, 7

*In re Energy Future Holdings Corp.*, 575 B.R. 616 (Bankr. D. Del. 2017) ...................................2

*In re Maxus Energy Corp.*, 633 B.R. 215 (Bankr. D. Del. 2021) ....................................................7

*In re Tribune Co.*, 477 B.R. 465 (Bankr. D. Del. 2012) .................................................9

*Revel AC, Inc. v. Idea Boardwalk, LLC*, 802 F.3d 558 (3d Cir. 2015) ........................................6, 7

## STATUTES AND RULES

28 U.S.C. § 158(2)(d) ..............................................................................................3,7,8

Federal Rule of Civil Procedure 59(e) ............................................................................1

Federal Rules of Civil Procedure 26(c) .........................................................................1

Federal Rule of Evidence 404 ......................................................................................8

Federal Rules of Bankruptcy Procedure Rule 8007 ...............................................1, 2, 6

Federal Rules of Bankruptcy Procedure Rule 9023 ......................................................2

Model Rule 1.10 ................................................................................................7, 8

Joseph J. Farnan, Jr., the Liquidating Trustee for the Maxus Liquidating Trust (the "Trust"), by and through his undersigned counsel, respectfully submits this brief in opposition to the *YPF Defendants' Motion to Stay Proceedings*, dated January 14, 2022 [D.I. 559] (the "Motion" or "Mot."), by which the YPF Defendants ("YPF") request that the Court enter an order staying summary judgment proceedings pending resolution of YPF's Third Circuit appeal of this Court's opinion [D.I. 389] (the "DQ Opinion") and order [D.I. 390] (the "DQ Order," and, with the DQ Opinion, the "DQ Denial") denying their motion to disqualify White & Case as counsel to the Trust in this action [D.I. 306] (the "DQ Motion").

## PRELIMINARY STATEMENT

On June 1, 2021 YPF moved for a stay of all proceedings in this action pending an appeal of this Court's DQ Order. On June 22, 2021 the Court denied that motion.[1] Then on August 30, 2021, YPF again sought to stay the action, this time pending an appeal of one of this Court's discovery orders. On September 16, 2021, the Court denied that motion. In both cases, and indeed throughout this case, this Court has expressed its desire for this case to proceed expeditiously.[2]

---

[1] In its opinion denying the June 2021 Stay Motion, the Court decided the motion on its face as a motion for stay of discovery under Rule 26(c) of the Federal Rules of Civil Procedure rather than as a motion for stay pending appeal pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure as the Trust suggested. Nevertheless, the bases for relief raised by YPF in the June 2021 Stay Motion are substantially similar to the bases for relief YPF asserts in the instant Motion regarding irreparable harm to the Defendants and lack of prejudice to the Trust. The Court has already considered (and denied) both.

[2] *See, e.g.*, Hr'g Tr. at 35:22-36:3, April 10, 2019 ("I agree with Mr. Shore no one ever shortened their pretrial schedule in the history of litigation and I am concerned about having a two-year schedule in this proceeding that will even if I say today won't be extended somebody will ask, and may ask for really good reasons. I'm not saying it wouldn't be inappropriate, but let's stick with the short schedule as now."); Hr'g Tr. at 4:16-19, Sept. 1, 2021 ("I want to continue to move the case forward, it's not getting any younger, and I want to make sure I have an opportunity to make the decision in a timely way."); *id.* at 14:18-21 ("You know, this case was filed in 2018, I know it's a big case and I guess the litigators are used to ten-year cases, but I'm certainly not, and I'm not inclined to have this continue to be such a long case."); Hr'g Tr. at 22:1-5, Sept. 14, 2021 ("I mean the prejudice is additional delay in getting this case to trial. And while it's a big case and

Now, for the third time, YPF has moved for a stay of proceedings, essentially holding in abeyance the dispositive motion deadlines under the existing scheduling order. And, for the third time, YPF has failed to justify the stay. As an initial matter, the Motion is properly viewed as a motion to amend the scheduling order, but YPF failed to show the risk of irreparable harm necessary to modify that scheduling order.[3]

Even were this Court inclined to view the Motion as a request for a stay pending appeal, it fails on two grounds. *First*, the Motion attempts to reargue the Court's June 22, 2021 Order, but fails to address the standards for a motion for reconsideration governed by Federal Rule of Civil Procedure 59(e) and made applicable by Rule 9023 of the Federal Rules of Bankruptcy Procedure.[4]

*Second*, to the extent the Court considers anew YPF's entitlement to a stay pending appeal, YPF fails to meet any of the requisite standards of Bankruptcy Rule 8007. At heart, the Motion proceeds from the unwarranted assumption that this Court's resolution of dispositive motions will prejudice YPF by making it more likely that the Court will grant summary judgment in favor of the Trust, rather than on a fair consideration of the merits and application of law to fact. YPF couches this accusation in its purported concern that this Court's consideration of dispositive motions will "outpace" the Third Circuit's resolution of YPF's appeal of the DQ Denial. Mot. ¶ 3. But even at the time of YPF's first stay motion, it was *always* possible that the Court would

---

it's a lot of money, I'm not used to, frankly, having litigation last this long, I don't think it's appropriate if it can be avoided."); *id.* at 32:4-5 ("I really want to hold that briefing schedule, though, if at all possible.").

[3] *See* Fifth Amended Scheduling Order, Section 4 ("Modification for Cause. The Parties may, on written agreement, modify any of the provisions in paragraphs 3(a), (b), and (c). The Court may modify any provision hereof but will do so on a finding of a risk of irreparable harm.").

[4] "A motion for reconsideration may be granted under Rule 9023 where (i) there has been an intervening change in controlling law; (ii) new evidence has become available; or (iii) there is a need to prevent manifest injustice or to correct a clear error of law or fact." *In re Energy Future Holdings Corp.*, 575 B.R. 616, 628 (Bankr. D. Del. 2017) (Sontchi, J.).

2

adjudicate summary judgment motions before the Third Circuit rendered an opinion on YPF's appeal. Even so, YPF has since twice stipulated its agreement to the current scheduling order. This Court should hold YPF to that agreed schedule and deny the Motion.

## **FACTUAL BACKGROUND**

1.      YPF filed the DQ Motion on December 19, 2020. [D.I. 306]. The Court denied the DQ Motion on April 6, 2021 and directed the Parties to submit a revised proposed scheduling order by April 16, 2021. [D.I. 390]. The Parties agreed to and submitted a proposed Third Amended Case Management Plan and Scheduling Order, which this Court entered on April 20, 2021 (the "Third Amended Scheduling Order"). [D.I. 396]. The Third Amended Scheduling Order established deadlines for dispositive motions submissions, with the Trust's opening brief due January 21, 2022 and the Defendants' final reply briefs due April 15, 2022.

2.      On June 1, 2021, YPF filed its *Motion for Stay of Discovery*, requesting that the Court stay discovery for 60 days pending YPF's application to appeal the DQ Denial directly to the Third Circuit (the "June 2021 Stay Motion"). [D.I. 416]. Simultaneously, YPF filed its *Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A)* (the "Petition for Permission to Appeal"), by which it sought leave to appeal the DQ Denial directly to the Third Circuit.[5] The Court denied the June 2021 Stay Motion on July 27, 2021. [D.I. 446]. All case deadlines in the Third Amended Scheduling Order remained in effect.

3.      On July 30, 2021, the Third Circuit granted YPF's Petition for Permission to

---

[5] Petition for Permission to Appeal from the Order Denying Defendants' Motion to Disqualify Dated April 6, 2021, Certified for Appellate Review by the United States Bankruptcy Court for the District of Delaware on May 10, 2021, No. 18-50489 (CSS), *In re Maxus Energy Corp.*, C.A. No. 21-8033 (3d Cir. June 1, 2021) (ECF No. 1).

Appeal.[6]  YPF did not seek to modify the then-operative Third Amended Scheduling Order.

4.      Near the close of fact discovery, on August 30, 2021, YPF filed a *Motion to Stay and Extend the Deadline for YPF Defendants' Compliance With the August 19, 2021 Discovery Order*, requesting a stay for its compliance with the Court's order to produce the Project Jazz Documents [D.I. 490], pending resolution of YPF's application for leave to appeal that order before the United States District Court for the District of Delaware (the "District Court") on an interlocutory basis (the "August 2021 Stay Motion").  [D.I. 492].

5.      While briefing for the August 2021 Stay Motion was underway, during a status conference on September 1, 2021, the Court suggested the Parties extend all the case deadlines 30 days to allow the Court and the District Court, respectively, sufficient time to decide the August 2021 Stay Motion and YPF's motion for leave for interlocutory appeal of the discovery order, as well as to prevent piece-meal depositions with the remaining fact witnesses.  *See* Hr'g Tr. 14:12-17, 17:1-18:6, Sept. 1, 2021.  This Court denied the August 2021 Stay Motion on September 16, 2021 [D.I. 519]; the District Court ultimately denied YPF's motion for leave on November 8, 2021. [D.I. 536].

6.      As directed by the Court, the Parties agreed upon and submitted a proposed Fourth Amended Case Management Plan and Scheduling Order, which the Court entered on September 18, 2021 (the "Fourth Amended Scheduling Order").  [D.I. 522].  In discussing modified dates, YPF made no mention of any need to adjourn the summary judgment dates based on the Third Circuit appeal, nor conditioned in any way this Court's resolution of the summary judgment motions while that appeal was pending.  The Fourth Amended Scheduling Order extended all case deadlines by approximately one month, with the Trust's opening dispositive motion submission

---

[6] Order, *In re Maxus Energy Corp.*, C.A. No. 21-8033 (3d Cir. June 16, 2021) (ECF No. 11-1).

due February 23, 2022 and the Defendants' final reply briefs due May 18, 2022.

7.       Finally, in order to complete the remaining fact depositions (including 30(b)(6) depositions of YPF and Repsol) before the first expert submission deadline in the Fourth Amended Scheduling Order, the Parties agreed to push all remaining case deadlines (including the dispositive motion deadlines) by one additional week.  YPF again never raised any need to adjourn the summary judgment dates based on the Third Circuit appeal.  The Parties submitted the proposed Fifth Amended Case Management Plan and Scheduling Order on October 13, 2021 [D.I. 533], which the Court entered on October 19, 2021 (the "Fifth Amended Scheduling Order").  [D.I. 535].  Under the Fifth Amended Scheduling Order, the Trust's opening dispositive motion submission is due March 2, 2022, and the Defendants' final reply briefs are due May 25, 2022. Again, the Fifth Amended Scheduling Order (which remains the operative scheduling order) says nothing about when, or how, the Court would rule on any summary judgment motions that might be filed.

8.       After October 2021, the Parties have twice more agreed to modify certain expert discovery deadlines without any discussion of a substantial modification of the summary judgment briefing schedule.  In late October 2021, the Parties agreed to build in two additional days to submit initial expert reports and rebuttal reports.  None of the Parties suggested any other dates in the schedule would need to move.  On October 29, 2021, the Trust submitted two initial expert reports. The YPF and Repsol Defendants decided not to submit any reports in the initial round.

9.       Then on December 3, 2021, the Defendants requested that the Trust agree to give Defendants an additional week (6 weeks total) to submit up to 11 expert reports on December 17, 2021.  After a meet-and-confer, the Parties agreed that in consideration for Defendants having an additional week to submit their expert reports, the Trust would receive (1) an additional week to

prepare its rebuttal reports and (2) crucially, a commitment that Defendants would work cooperatively to schedule the depositions of the expert witnesses throughout the (now shortened) period for expert discovery.  In reaching that agreement, the Trust stated that it would not agree to change any other dates (including the close of expert discovery on February 18 or the dispositive motion briefing schedule pursuant to Section 3(d)), consistent with the Court's direction to the Parties.  *See* Ex. A at 5-6, Email from E. Smith dated Dec. 2, 2021 (agreeing to move two expert discovery deadlines and stating the Trust's intent to "otherwise maintain the current schedule"); *id.* at 4, Email from E. Smith dated Dec. 3, 2021 ("We cannot agree to shorten that time, nor are we moving other dates per Judge Sontchi's direction.").  Defendants never suggested otherwise.

10.    In keeping with the agreed-to schedule, the Trust's experts worked under a compressed deadline (and through the holidays) to prepare rebuttal reports to the ten expert reports that were filed (comprised of over 2,800 pages of material) submitted by the Defendants.  Minutes after the Trust submitted its reports in the last round of expert submissions, YPF filed the Motion.  In its Motion, YPF does not explain why, if the Third Circuit's acceptance of the appeal necessitated a stay, it agreed to proceed with, and held the Trust to, the deadlines agreed to in the various scheduling orders.

## ARGUMENT

## I.    THERE IS NO BASIS TO STAY DISPOSITIVE MOTION SUBMISSIONS PENDING APPEAL OF THE DQ DENIAL

11.    Pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure ("FRBP"), YPF must establish good cause to stay proceedings, given the "strong public interest in having lawsuits move forward to resolution as speedily as possible."  *Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures, Inc.)*, 367 B.R. 516, 522 (Bankr. D. Del. 2007) (quotation omitted).  Courts in the Third Circuit consider the following four factors when a party seeks a stay pending

appeal: (1) whether movant has made a strong showing of likelihood of success on the merits; (2) whether movant will suffer irreparable injury if a stay is not granted; (3) whether a stay will substantially injure the other parties to the proceeding; and (4) whether a stay is in the public interest. *See Revel AC, Inc. v. Idea Boardwalk, LLC*, 802 F.3d 558, 568 (3d Cir. 2015). "The most significant among these factors are the movant's ability to demonstrate a likelihood of success (arguably the most important consideration) and irreparable harm in the event a stay is not granted." *Ferrone v. RPP, LLC (In re RPP, LLC)*, 547 B.R. 158, 163 (Bankr. W.D. Pa. 2016) (citing *id.*). In weighing those critical factors, the Third Circuit has adopted a sliding scale, i.e., "if the chance of success on the merits [is only] better than negligible and the possibility of irreparable injury is low, a stay movant's request fails. Likewise, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the [stay opponent] if a stay is granted [it] is still required to show, at a minimum, serious questions going to the merits." *In re Maxus Energy Corp.*, 633 B.R. 215 (Bankr. D. Del. 2021) (Sontchi, J.) (citing *Revel AC, Inc.*, 802 F.3d at 570).

12.     None of these factors weigh in favor of granting the Motion.

**A.     The Motion Fails to Make the Requisite Strong Showing of a Likelihood of Success on the Merits**

13.     Establishing the requisite good cause for a stay pending appeal requires that the movant make "a strong showing that he is likely to succeed on the merits." *In re Genesis Health Ventures, Inc.*, 367 B.R. at 522 (citing *Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991)); *see also Revel AC, Inc.*, 802 F.3d at 565. The Motion does not meet this standard. Rather, as with its June 2021 Stay Motion, YPF simply contends that it has a reasonable chance of prevailing on appeal because this Court certified, and the Third Circuit authorized, an appeal under Section 158(d)(2)(A)(i) on the grounds that there is no binding Third Circuit or

Supreme Court precedent that would require a court to disqualify a firm that complied with the written requirements of Model Rule 1.10. *Compare* [D.I. 429] ¶ 11 ("[T]he lack of Third Circuit precedent on the issue created uncertainty and a corresponding likelihood of success on the merits.") *with* Mot. ¶ 29 ("The legal uncertainty arising from the absence of Third Circuit authority gives YPF the requisite chance of success on the merits to warrant a stay of dispositive motions.").

14.    As the Trust noted in opposing the June 2021 Stay Motion, YPF's observation—that, when presented with the DQ Motion, this Court certified two questions of law as to which there was no controlling decision by the Third Circuit or the United States Supreme Court because the technical requirements of Section 158(d)(2)(A)(i) were met—says nothing about the likelihood of success of YPF's appeal of the DQ Denial to the Third Circuit. Further, as it did in the DQ Leave Application, YPF's appellate submissions to the Third Circuit argue that the Court was required to disqualify White & Case as a matter of law and only concluded to the contrary by erroneously adding an "exceptional cases" requirement to the applicable legal standard, despite YPF conceding that disqualifications based on the adequacy of a screen that complies with Model Rule 1.10 are "extraordinary." *See, e.g.*, Hr'g Tr. 136:22-137:3, Apr. 1, 2021.

15.    The only new argument in the Motion regarding the likelihood of success is YPF's false contention that the Trust "essentially conceded" that the Court erred in excluding "Ms. Boelter's prior misconduct under Federal Rule of Evidence 404." Mot. ¶ 28. *First*, the Court did not make a finding that Ms. Boelter had engaged in misconduct at all, and the Trust never conceded that she did. *Second*, far from "conceding" the Rule 404 issue, the Trust's submission to the Third Circuit made clear that YPF in fact forfeited that issue by failing to raise it in its opening

submission.[7] YPF has no reasonable likelihood of success on an issue that it has not preserved for

appeal (notwithstanding the single footnote in YPF's Third Circuit reply submission "addressing"

the issue).

      **B.**      **The Motion Fails to Establish That Any Harm Would Result From Denial of a Stay of Dispositive Motion Submissions**

      16.      "To establish irreparable harm, a movant must demonstrate an injury that is neither

remote nor speculative, but actual and imminent." *In re Tribune Co.*, 477 B.R. 465, 476 (Bankr.

D. Del. 2012).  The YPF Defendants contend that a stay pending decision by the Third Circuit is

necessary because "White & Case's participation in summary judgment briefing—and particularly

the threat that this Court will dispose of the case before the Third Circuit can rule—presents a risk

that YPF will experience irreparable harm that cannot be prevented or fully rectified by the

tribunal's final decision."  Mot. ¶ 30 (internal citations omitted).

      17.      The Court has already found that continuing with the current case schedule would

not prejudice YPF.  [D.I. 446] at 7 ("There are no allegations that White & Case's purported

'conflict' makes it impossible for YPF to comply with the existing schedule.").  And, YPF does

not identify any change in circumstances or any new facts necessitating what is, in essence, a do-

over of the June 2021 Stay Motion.  *See* Mot. ¶¶ 26–29.  In denying the June 2021 Stay Motion,

the Court concluded that the harms alleged by the YPF Defendants were unfounded, specifically

finding that "there was no dispute that White & Case's ethical wall complied with Model Rules,"

that "no confidential information was being comprised by Ms. Boelter working at White & Case,"

and that "[White & Case's] ethical wall was sufficient to protect confidential information, if any,

that Ms. Boelter had."  [D.I. 446 at 7].  In the Motion, YPF does not allege that White & Case's

---

[7] Brief of Plaintiff-Appellee Maxus Liquidating Trust at 44–45, *In re Maxus Energy Corp.*, C.A. No. 21-2496 (3d Cir. Dec. 3, 2021) (ECF No. 28).

ethical wall no longer complies with the Model Rules or that confidential information passed from Ms. Boelter since the Court's prior factual findings, but merely reprises arguments this Court has already rejected.

18.     The only "new harm" that the Motion describes is the "threat that this Court will dispose of the case before the Third Circuit can rule," and that "summary judgment motion and decision will be significantly tainted with advocacy by a firm that the appellate court may find should not have been representing the Trust."  Mot. ¶ 30.  Additionally, YPF avers that the Court has recently committed itself to an "artificial" and "accelerated" time table that will be insufficient to allow the Court to properly adjudicate such a large commercial litigation.  Mot. ¶¶ 3–4.  Of course, the Court did not "advise[] counsel that it intends to rule on summary judgment motions by June 30, 2022," as YPF contends.  Mot. ¶ 5.[8]  And, no dates set forth in the applicable scheduling order have materially changed since YPF agreed (twice) to the schedule this fall,[9] nor does the Motion allege that YPF will be unable to submit its dispositive motion pleadings by the agreed deadlines.  This Court has consistently told the Parties that the Court wanted the case to progress so the Court could issue a decision in a timely manner.  *See, e.g.,* Hr'g Tr. at 4:16-19, Sept. 1, 2021 ("I want to continue to move the case forward, it's not getting any younger, and I want to make sure I have an opportunity to make the decision in a timely way.").  Additionally, YPF's "new

---

[8] *See* Mot. ¶ 23 ("I am very cognizant of leaving what I assume will be very heavy lifting to a colleague on the summary judgment when I'm the one with the history in the case and the familiarity with it.  So if it's at all possible, absent, you know, something that makes it simply unworkable, I would really prefer to be able to keep my people busy one last time before I retire and get that out by June 30th.").

[9] As noted above, following the certification to the Third Circuit, YPF agreed in September and October 2021 to the same general summary judgment briefing schedule in the Fourth and Fifth Scheduling Orders.  *See* Fourth Amended Scheduling Order [D.I. 522]; Fifth Amended Scheduling Order [D.I. 535].  YPF also agreed to leave those dates in place when it received the Trust's accommodation for an additional week to file its expert reports.

harm" argument makes no sense and simply assumes that the Court will enter summary judgment in favor of the Trust, on an allegedly "accelerated" time table.  Several other dispositions are also plainly possible—the Court could (i) enter summary judgment in favor of the YPF Defendants, (ii) deny summary judgment for all parties, or (iii) determine not to resolve the summary judgment motions at all and leave those motions to the Court's replacement.   None of those would "prejudice" YPF.

19.    The only "prejudicial" disposition would be one in which the Court rules against YPF.  Yet, the Motion fails to make any link between a grant of summary judgment in favor of the Trust (the only scenario in which YPF could be harmed), and a potential ruling by the Third Circuit that White & Case "should not have been representing the Trust."  Presumably, the harm to YPF is posed by the unsupported insinuation that Ms. Boelter "could—even inadvertently—disclose" YPF's confidences to counsel to the Trust (or to her husband).  *See* Mot. ¶ 30 n.5.  There is, however, no evidence to support that insinuation, and the Motion is nothing more than another attack on Ms. Boelter, a lawyer whom the Court has already determined did not engage in misconduct.[10]

### C.    The Trust Would Be Prejudiced By a Stay

20.    Contrary to YPF's arguments, *see* Mot. ¶¶ 36–39, and unlike YPF, the Trust would be prejudiced by a stay of summary judgment proceedings.  The Court has already rejected YPF's contention that "general concerns regarding delay cannot constitute the requisite prejudice to the Trust" (Mot. ¶ 37 n.9), and properly recognized that delay can indeed be prejudicial.  *See, e.g.*, Hr'g Tr. 22:14-15, Sept. 14, 2021 ("The Court: [I]t's a balancing test against further delay and

---

[10] *See* [D.I. 389 at 21] ("[I]t is clear to the Court that the discussion of Ms. Boelter's and Mr. Lauria's marriage is solely offered by YPF in a shabby attempt to embarrass Ms. Boelter and Mr. Lauria and/or to prejudice the Court in some manner.  It has accomplished neither.").

what harm might arise.). The Court has also already found that delays to the agreed schedule threaten to prejudice the Trust. *See, e.g.*, Hr'g Tr. 22:2-5, 12-13; 23:21-24:2, Sept. 14, 2021 ("The Court: [W]e're three years into this case, I mean the prejudice is *additional delay in getting this case to trial*. . . . There is harm because the Trust is an entity created through the plan with a finite amount of money to fund this litigation, which is important, possibly, to the recovery to the creditors under that plan, and allowing the case to bankrupt the Trust because it does not move expeditiously is prejudicial to [the Trust] and prejudicial to the unsecured creditors of Maxus.") (emphasis added).

21.     Finally, if irreparable harm to the YPF Defendants is predicated on the assumption that the Trust will prevail in summary judgment, then the harm to the Trust by delaying summary judgment is even more clear. In the *only* scenario in which the YPF Defendants are harmed, both the Trust and Maxus's unsecured creditors are by definition harmed by any delay in entry of a judgment and recovery of damages necessary to satisfy Maxus's creditors.

### D.    A Stay Is Not in the Public Interest

22.     YPF concludes with a series of unconvincing arguments that grant of a stay would further the public interest in judicial economy. *First*, YPF states that it is not in the public interest "to compel parties to go through the expense of preparing a case for trial when all of that preparation could be rendered moot by a reversal on an interlocutory appeal." Mot. ¶ 40 (quoting *In re Genesis*). But this argument comes too late. This proceeding has already moved through one of the most expensive parts of this case, *after* the Third Circuit granted leave, with YPF's express agreement.

23.     *Second,* YPF contends that judicial economy would be best served by allowing the same judge to adjudicate summary judgment proceedings and future trial. Mot. ¶ 40. This

argument ignores the fact that it is common practice in an adversary proceeding such as this (where

a party asserts certain claims are non-core, as YPF does here), for summary judgment proceedings

and a trial of non-core matters to be handled by different judges.  While the Trust does not concede

that this is a non-core matter, YPF's argument, that a trial judge should supervise all pre-trial

proceedings, does not square with the practice in this District.  YPF's argument is also counter to

what the Court has indicated is its preference here, which is to insure that a new presiding judge is

not left with "what I assume will be very heavy lifting… on the summary judgment when I'm the

one with the history in the case and the familiarity with it."  Mot. at ¶ 23 (citing Hr'g Tr. 4:4-12,

Jan. 5, 2022).

## **CONCLUSION**

For the foregoing reasons, the Trust respectfully requests that the Court deny the Motion

and grant such other and further relief as the Court deems appropriate and necessary.


Date: January 28, 2022                                        Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

J. Christopher Shore (admitted *pro hac vice*)
Matthew L. Nicholson (admitted *pro hac vice*)
Erin M. Smith (admitted *pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
cshore@whitecase.com

13

matthew.nicholson@whitecase.com
erin.smith@whitecase.com

*Attorneys for the Liquidating Trust*