

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

CHRISTOPHER S. SONTCHI
JUDGE

824 N. MARKET STREET
WILMINGTON, DELAWARE
(302) 252-2888

February 22, 2022

**VIA CM/ECF**

Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 North Market Street, 12 Floor
Wilmington, DE 19801
  -and-
J. Christopher Shore
Thomas MacWright
White & Case LLP
1221 Avenue of the Americas
New York, New York 10020

Adam G. Landis
Matthew B. McGuire
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
  -and-
Jeffrey A. Rosenthal
Cleary, Gottlieb, Steen
& Hamilton LLP
One Liberty Plaza
New York, New York 10006

Edward Soto
Weil, Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
  -and-
Daniel B. Butz
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, 16th Floor
Wilmington, DE 19801

> RE: Maxus Energy Corporation, et al., 16-11501
> Maxus Liquidating Trust v. YPF, et al., 18-50489

Dear Counsel,

Before me are two inter-related issues relating to expert discovery. The first concerns the terms of the order that I will enter memorializing my bench ruling of

February 14th, allowing the submission of surrebuttal expert reports by defendants and the additional limited depositions of certain experts. The second concerns plaintiff's purportedly late production of certain documents in violation of its obligation under the discovery rules. However, both issues are also inextricably intertwined with the deadlines under the current scheduling order and, more specifically, whether briefing and consideration of summary judgment should be delayed.

I will set a schedule in line with defendants' request regarding the submission of surrebuttal reports and discovery related thereto. In addition, I find that plaintiff has not violated its obligations under the discovery rules in connection with its recent production of documents and no further action is required by me. Finally, I will adjust the summary judgment briefing schedule to accommodate the delay related to the surrebuttal reports and discovery.

**1) Surrebuttal Expert Reports**

The scheduling order in this case contains the following provisions regarding expert discovery, subject to minor changes among the parties:

i. August 16, 2021 shall be the date by which the Parties must designate initial expert witnesses, including a brief description of the general topics on which those witnesses will testify.

ii. October 27, 2021 [modified to October 29, 2021 by agreement of the parties] shall be the date by which the Parties shall engage in the simultaneous exchange of expert reports on issues for which they bear the burden of proof (it being understood that the submission of such expert reports shall not be deemed admissions by the submitting party that it bears the burden of proof on any issue). These reports must satisfy the requirements of Rule 26(a)(2)(B) of the FRCP.

iii. December 8, 2021 [modified to December 17, 2021 by agreement of the parties] shall be the date by which the Parties shall engage in the simultaneous exchange of any expert rebuttal reports or initial reports addressing issues that were not addressed in the initial expert reports, as well as any disclosures prepared by the rebuttal expert witnesses in response to initial expert reports. These disclosures must satisfy the requirements of Rule 26(a)(2)(B) of the FRCP. No party shall be obligated to submit an expert rebuttal report.

iv. January 5, 2022 [modified to January 14, 2022 by agreement of the parties] shall be the date by which the Parties shall submit any expert rebuttal or reply reports in response to the rebuttal or initial reports previously exchanged by the Parties. These disclosures must satisfy the requirements of Rule 26(a)(2)(B) of the FRCP. No party shall be obligated to submit an expert rebuttal report.

> v. February 18, 2022 shall be the date on which all expert discovery shall be complete. The parties shall confer and agree upon dates for conducting expert deposition in advance of this date.

The bulk of the counts in the complaint are claims for the avoidance of fraudulent transfers allegedly made by Maxus to avoid environmental liabilities. Thus, a reliable estimate of Maxus's environmental liabilities is relevant to Maxus's purported insolvency at the time of alleged fraudulent transfers. As such, pursuant to section (i) above, the Trust identified its *initial* expert witness on that subject on August 18, 2021. Defendants also disclosed on August 18th the identities and subject matter of five *initial* experts who would testify to the extent of Maxus's contingent environmental liabilities. Based on the description provided by defendants of the general topics on which their environmental experts would testify and in anticipation of providing rebuttal testimony thereto the Trust hired (but did not identify) Mr. Stephen Johnson in mid-October 2021.

Pursuant to section (ii) above, the Trust timely submitted the report of its expert on environmental liabilities on October 29, 2021. The defendants did not submit any expert reports at that time, taking the position that the reports were not due at that time because plaintiff bears the burden of proof on all issues, including insolvency.[1] Pursuant to section (iii) above, defendants timely submitted all ten of its expert reports on December 17, 2021, including five related to environmental liabilities. Pursuant to section (iv) above, on January 14, 2022, the Trust identified Mr. Johnson as a rebuttal expert for the first time and submitted his report (the "Johnson Report"), which the Trust asserts is in rebuttal to the expert reports submitted by defendants on December 17th, particularly those of Dr. Michael Palermo and Dr. Neil Ram.

Shortly thereafter, Repsol filed the Repsol Defendants' Motion To Strike The Expert Report Of Stephen A. Johnson, Or In The Alternative, Motion For An Extension Of Time To Prepare A Rebuttal (the "Motion to Strike"), asserting that the Johnson Report was not fair rebuttal.[2] YPF filed a joinder in the Motion to Strike. The parties engaged in briefing, and I conducted a hearing on February 14th.

---

[1] Defendants have raised numerous affirmative defenses for which they bear the burden of proof. To the extent defendants seek to rely on any expert testimony in support of those affirmative defenses, the report of any such expert was required to be filed in October, 2021.

[2] *See* Motion to Strike, D.I. 563 at 2-3 ("On January, 2022 . . . the Trust served an over 200-page expert report (longer than both of the Trust's opening expert reports with over 900 citations). Tellingly, the report is not even titled a rebuttal report in contrast to those reports of the Trust's other experts, Mr. Pulliam (titled a reply report) and Mr. Menenberg (titled a rebuttal report), which were served simultaneously. The reason is apparent when one reads the extensive report: the vast majority of it goes to issues that the Trust bears the burden on and which are not rebuttals to Defendants' environmental experts' opening reports. And there is no reason to take Repsol's word on the matter: Mr. Johnson himself describes his "Assignment" from the Trust in Section 2.0 of his report, in which he draws a dichotomy between being asked to provide his opinions on relevant topics discussed in the expert reports of Drs. Palermo, Ram, Sharma, and Tomasi (Part 1) and then separately offer *affirmative opinions* on four different topics (Part 2), but which would have been appropriate in an initial report from the Trust, such as (i) the supposed state-of-technology for environmental remediation in the 1990s, (ii) the appropriateness of

3

At the February 14th hearing, I made the following bench ruling:

So, there are a few issues here that I think play into what the Court is going to do, one of which is this decision or this question of whether Mr. Johnson's report should have been, or at least portions of Mr. Johnson's report, should have been put forward way back in October or whether it's a proper rebuttal report that was done on time, pursuant to rebuttal reports due date in the scheduling order; that goes to whether the scheduling order has been violated.

And I think it's a mixed issue. I think there are elements, and I'd say most of the elements of Mr. Johnson's report -- I haven't read the whole thing. I read the briefs. I skimmed the report -- but as far as I can tell, the most of Mr. Johnson's report is truly just what Mr. Shore says: it's a rebuttal report. It's a rebuttal report to the positions that were taken by the defendants' experts.

However, I think it's a mixed bag and there are clearly elements of it, which I would say, would more fairly be considered, or should have been considered, as initial reports and should have been identified and produced in October. It's a little bit of the tail wagging the dog, but it's a big tail and it may be a small dog. So, you know, it is a mixed bag there.

So, that leads us to this issue of, what do we do to fix it?

And there are a couple of different ways to do this. One, I could strike the report and prevent the plaintiffs from making a large portion of their case, both, their initial case and their case in rebuttal at a future trial. I think after having spent so much time and effort in developing this case, that that would be a cure that's much worse than the disease. It would be an extreme response to a -- I won't say "minor" -- but I would say, let's just say a "partial violation" of the deadlines in the Court's order.

At the same time, I think that just allowing it to stand and not giving the opportunity to further develop the record on discovery -- and, remember, you know, discovery for experts, in my mind, is all about preparation and disclosure and less about fixing down facts that are what the facts are, like you do in fact discovery. So, I view it through that lens. And I think we're much better off, all of us, or whoever ultimately has this case, to have a full disclosure here. So, I am going to deny that portion of the motion seeking to strike the deposition -- excuse me -- strike the expert report, allow the filing of surrebuttal reports in a fixed amount of time, and

---

Maxus's pre-YPF assessment of likely remedies, (iii) the potential magnitude of Maxus's environmental liability at the Passaic River as of 1995, and (iv) changes to that potential magnitude over time post-1995. While the former is not actual rebuttal in sum and substance, the latter just on its face is not.").

allowing for further deposition, discovery related solely to the surrebuttal reports.[3]

That decision stands. The sole issue remaining is the timeline for submission of expert reports and the parameters of additional depositions. I requested submission of letter proposals by February 18th. Repsol has proposed and the Trust has agreed that defendants be given until March 14, 2022, to submit surrebuttal reports responding to the Johnson Report.[4] YPF has requested March 25, 2022. As set forth below, I disagree with YPF's complaint about the timeliness of the production of certain documents. Nonetheless, I will acquiesce to their request of a deadline of March 25th for submission of surrebuttal reports.

In addition, Repsol has proposed that between March 14, 2022 and March 28, 2022, defendants and the Trust be permitted to take additional depositions of each other's experts limited to the subjects covered in any surrebuttal reports submitted by defendants with each of these additional depositions not to exceed three hours. I mostly agree but I will set the time limit as between March 25 and April 8 and limit it to the Trust and the defendants taking additional depositions of any expert that submits a surrebuttal report, which will be limited to the subjects covered in said report, with each of these additional depositions not to exceed three hours. Mr. Johnson will not be subject to further deposition.[5]

**2) Late Production of Documents**

That leads to the second issue - plaintiff's recent production of certain documents in purported violation of its obligation under the discovery rules. The facts and issues before me arise from the Johnson Report and have developed in real time over the last week or so. I have done my best to distill them and what is set forth below is my understanding of the parties' current legal positions and my determination of the facts based on the documents provided and the representation of counsel.

This adversary proceeding is not being written on a blank slate. In addition to the hotly contested preceding Chapter 11 case, which led to the creation of the Trust and funding of this litigation, Maxus, its creditors, and its owners have been engaged in massive litigation related to Maxus's environmental liabilities for well over a decade. As such, in framing discovery in this litigation, the parties sought to avoid, if possible, replicating previous discovery and reached several agreements to that end.[6]

Defendants seek to stay briefing and disposition of summary judgment, and, perhaps, to reopen fact discovery based upon the premise that the Trust inexcusably

---

[3] Feb. 14, 2022 Hrg. Tr. at 47-48.

[4] Based on the purportedly late production of documents

[5] It is my understanding that Mr. Johnson's deposition at least began on February 21st.

[6] *See*, e.g., D.I. 601 at Exh. 2.

withheld 5,740 documents bearing Bates prefix "MLT-OCC-CERCLA" (the "SPG Images") in violation of the Trust's fact and expert discovery obligations.[7]

The SPG Images are taken from documents that were contained in boxes that the Trust made available for either group of defendants to inspect at their option in 2019. Indeed, the Trust offered defendants access to the "thousands of bankers boxes (comprised of millions of pages)" that had been stored by Maxus, which the Trust inherited as Maxus's successor.[8] Defendants did not seek access.[9] However, contemporaneous meet and confer communications show that all parties operated from the assumption that the parties' hard-copy documents had been picked over as part of productions of documents in the 10-year New Jersey litigation. In addition, the Trust, which is the successor to Maxus, informed the defendants that all the information it had about those documents was set forth on two document inventories, which the Trust provided on October 2, 2019.[10]

Subsequently, in connection with a wholly unrelated litigation with the "Small Parties Group" or "SPG"[11], SPG reviewed certain boxes within the Trust's custody, identified documents responsive to SPG's subpoena, and paid to have those hard copies scanned and given back to the Trust, so that the Trust could bates stamp them for record-keeping purposes. Those are the 5,740 documents bearing Bates prefix "MLT-OCC-CERCLA" identified above as the SPG Images. The entirety of the SPG Images were produced to defendants on February 18th.

How did two documents from the SPG Images end up in the Johnson Report?

The Johnson Report includes over 900 footnotes and cites to hundreds of documents considered in support of Mr. Johnson's opinions. The Johnson Report also included as Attachment 2 a list of "Documents Received and Considered" that is 30 pages long. When Defendants advised that they could not locate four documents on that list, all four were produced within five days.

Mr. Johnson himself never accessed any of the SPG Images. Rather, the Trust provided Mr. Johnson's team access to the SPG Images as a potential source of documents for Mr. Johnson's rebuttal report. Mr. Johnson's team ran searches, downloaded, and saved two documents from those images, and then provided them to Mr. Johnson for his consideration (Mr. Johnson also reviewed an index of the SPG

---

[7] There was some confusion at the February 18th status conference as to the number of documents at issue. During the hearing, the parties occasionally confused page numbers with documents. In fact, the MLT-OCC-CERLA bates range includes 5,740 documents (comprising 136,914 pages).

[8] D.I. 600 at 2.

[9] *Id*. ("Defendants were offered access to these boxes but declined to go fishing through them when the Trust did not even offer a basis to believe they possessed responsive documents.").

[10] *See* D.I. 601 at Exh. 3.

[11] *Occidental Chemical Corporation v. 21st Century Fox America, Inc., et al.*, No. 2:18-cv-11273-MCA-JAD (D.N.J. 2018).

Images). Those two documents from the SPG Images were then disclosed in Attachment 2 to the Johnson Report and produced to the defendants nine days before the deposition of Mr. Johnson.

Defendants make several arguments as to why production of the SPG Images was inexcusably late. First, they argue that the SPA Images should have been produced in connection with fact discovery. Defendants concede that, as agreed by the parties, they were offered an opportunity to review the paper documents in the Trust's possession, a subset of which are the SPG Images, but declined to do so. Nonetheless, they argue they never did so because the Trust did not "offer a basis to believe [the boxes] contained responsive material."[12] But Defendants never asked the Trust to offer such a basis and, in fact, the Trust identified the boxed materials as potentially responsive. No more was required by the Trust.

Defendants go on to argue that even if the documents from which the SPG Images were drawn need not have been provided initially, the Trust had a duty to supplement its production under FRCP 26(e)(1)(A) when the SPG Images were created, i.e., in connection with their production in response to a subpoena in unrelated litigation. But Rule 26(e)(1)(A) provides that a party must only supplement its disclosure if it "learns that in some material respect the disclosure or response is incomplete or incorrect." Here, there was no prior disclosure of the Trust under Rule 26 that became "in some material respect" "incomplete or incorrect" due to the SPG's subpoena, review of documents, or the imaging of those documents. The fact that the materials that the SPG decided to review and to scan were responsive to a separate litigation has no bearing on the Trust's Rule 26 disclosures to defendants here.[13] The Trust had no obligation to supplement its document production to include the SPG Images.

Second, defendants argue that the SPG Images should have been produced in their entirety based on Mr. Johnson's consideration of a small portion of those documents or his staff's broader review of the documents. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii) requires that expert reports contain all "the facts, documents and data considered *by the witness* in forming his opinions . . . and the bases and reasons for them." (emphasis added). Mr. Johnson is the witness, and I am satisfied that all documents considered by Mr. Johnson were produced within days of defendants stating they could not be located and well before Mr. Johnson's deposition.

With respect to the work of Mr. Johnson's team, defendants argue that an expert is required to disclose every document made available or even considered by the

---

[12] D.I. 600 at 2.

[13] Defendants further argue that their document request asking for all documents considered by any expert required earlier production of the SPG Images. That is incorrect. The Trust objected to that request, correctly stating that production of any documents considered by an expert not already produced would be produced in connection with expert discovery. That is exactly what occurred here.

expert's team, essentially turning the word "witness" in Rule 26(a)(2)(b)(ii) to "witness and his or her team." At the February 18th status conference, YPF's counsel stated that he "could never conceive" of a distinction between documents considered by the expert and those reviewed by his staff but not provided to the expert for consideration. But courts do recognize just such a distinction.[14] Moreover, the cases cited by defendants at the February 18th status conference do not support such a result.[15] The Trust has fully complied with its expert discovery obligations.

I fundamentally disagree that if Mr. Johnson referred to an index or a database then he must produce all the documents listed in the index as documents he considered. This flies in the face of the entire purpose, understanding and use of an index. Consider this. The Tolkein Estate is involved in a copyright case over the purportedly infringing use of the word "Mathom-house" in a thinly veiled work of Tolkein fan fiction. The Tolkein Estate retains Ms. Christina Scull as an expert on the works of Tolkein.[16] In providing her opinion, Ms. Scull references the index of The Lord of the Rings and notes that "Mathom-house" is refenced on pages 6, 13 and 317, which she reviews. Must she provide her opponent with the entire 1,178 pages of The Lord of The Rings, containing myriad passages on "Faramir or Aragorn or Elrond or Galadriel or Gandalf or anyone else?"[17] No. She must provide the referenced pages or, at most, the entirety of the relevant chapter for context. While Ms. Scull's assistants may have (once again) read the entire work - a worthwhile venture – what is relevant is what is provided and considered by the *witness in the context of forming her opinion*.

In the end, however, all of this is irrelevant. As stated above, I am granting the relief requested by YPF, i.e., an extension of time to file any surrebuttal reports and an extension of time for depositions. I find there was no violation. Nonetheless, assuming

---

[14] *See Pearlman v. Cablevision Sys. Corp.*, No. CV 10-4992 (JS) (AKT), 2016 U.S. Dist. LEXIS 196422, at *4 and 7 (E.D.N.Y. Sep. 19, 2016); and *America's Collectibles Network, Inc. v. Sterling Commerce (Am.), Inc.*, No 3:09-cv-143-TRM-HBG, 2017 U.S. Dist. LEXIS 96799, at *8 (E.D. Tenn. Apr. 18, 2017).

[15] In *Helios Software, LLC v. Spectorsoft Corp.*, C.A. No. 12-081-LPS, 2014 U.S. Dist. LEXIS 135379, at *9–10 (D. Del. Sept. 18, 2014) the court allowed discovery to resolve confusion over whether the expert's testing relied on previous testing by his staff. If so, disclosure would have been required. Nor is *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 581 B.R. 370 (Bankr. S.D.N.Y. 2017) supportive of defendants' position. In that case, an expert testifying as to corporate due diligence had hired Duff & Phelps to assist him in forming the opinions expressed in his report. *Id*. at 381. The opposing party argued that Rule 26(a)(2)(B)(ii) required the testifying expert to disclose "not only documents reviewed by [the expert] himself, but also documents reviewed by [Duff & Phelps]." *Id*. In instructing the parties to meet and confer as to whether supplemental discovery was necessary, the court emphasized that the justification for this remedy was "to mitigate any prejudice the Defendants may have suffered *because they did not know which specific documents [the testifying expert] considered*." Id. at 382 (emphasis added). Again, there is no such confusion here.

[16] Ms. Scull with her husband and collaborator, Mr. Wayne G. Hammond, are well-known Tolkein scholars and the authors of numerous scholarly works, including The Lord of the Rings: A Reader's Companion (2005).

[17] The Lord of the Rings, p. 708 (2021).

there was a violation, I am granting YPF what it has requested and certainly the most to which it is entitled.

### 3) Summary Judgment Schedule

That leads to the third issue - whether briefing and consideration of summary judgment should be delayed. Throughout this litigation defendants have repeatedly sought to delay the proceedings, which have now last for more than three years. On February 14th, I denied a motion for a stay[18] and I understand that YPF have brought a similar motion before the Third Circuit.[19] A delay has once again been sought in connection with the purported deficiencies in the production of the SPG Images. As there was no deficiency, that does not serve as a reason to delay or stay the proceedings.

Nonetheless, the additional production of surrebuttal reports and related discovery does merit a short delay. Thus, the Court will modify the summary judgment briefing schedule in the scheduling orders as follows:

i. plaintiff's opening brief due **March 16, 2022**,
ii. defendants' opposition briefs and defendants' opening briefs due **April 27, 2022**,
iii. plaintiff's reply brief and plaintiff's opposition brief due **May 18, 2022**,
iv. defendants' reply briefs due **June 8, 2022**,
v. oral argument on **June 13, 2022 at 9:30 a.m.**

The remaining provisions of the scheduling order remain intact.

An order will be entered.

Sincerely,

Christopher S. Sontchi
United States Bankruptcy Judge

---

[18] D.I. 595.

[19] *YPF, S.A., et al. v. Maxus Liquidating Trust*, Case No. 21-2496, D.I. 35 (3d Cir.).