## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 16-11501 (CTG)<br>(Jointly Administered) |
| MAXUS LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO.,<br><br>Defendants. | Adv. Proc. No. 18-50489 (CTG) |

## NOTICE OF INTENT TO SERVE SUBPOENAS ON NON-PARTY UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

**PLEASE TAKE NOTICE THAT** pursuant to Federal Rule of Civil Procedure 45, made applicable to this proceeding by Rule 9016 of the Federal Rules of Bankruptcy Procedure, Defendants YPF S.A., YPF International S.A., YPF Holdings, Inc., CLH Holdings, Inc., Repsol S.A., Repsol Exploración, S.A., Repsol USA Holdings Corp., Repsol Offshore E&P USA Inc., Repsol E&P USA, Inc., Repsol E&P T&T Limited, and Repsol Services Co., in the above-captioned adversary proceeding, will serve the attached subpoenas upon non-party United States Environmental Protection Agency.

1

Dated: October 23, 2022

/s/ Curtis S. Miller

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
Daniel B. Butz (No. 4227)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

-and-

**WEIL, GOTSHAL & MANGES LLP**
Edward Soto
Lara Bach
Corey Berman
Brian Liegel
Mark Pinkert
1395 Brickell Avenue
Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159

*Attorneys for the Repsol Defendants*

/s/ Nicolas E. Jenner

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Nicolas E. Jenner (No. 6554)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400

-and-

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Jeffrey A. Rosenthal (pro hac vice)
Victor L. Hou (pro hac vice)
Ari D. MacKinnon (pro hac vice)
Mark E. McDonald (pro hac vice)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000

-and-

**SIDLEY AUSTIN LLP**
John J. Kuster (pro hac vice)
Andrew P. Propps (pro hac vice)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300

*Attorneys for the YPF Defendants*

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

In re MAXUS ENERGY CORPORATION
>                    Debtor.

>                                              Case No. 16-11501 (CTG)


MAXUS LIQUIDATING TRUST
>                         Plaintiff,                  Chapter 11
>                    v.

YPF S.A., et al.
>                         Defendants.                 Adv. Proc. No. 18-50489 (CTG)

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: U.S. Environmental Protection Agency
   1200 Pennsylvania Avenue, N.W.
   Washington, D.C. 20460

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding).  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: See Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Sidley Austin LLP, 1501 K Street, N.W., Washington, D.C. 20005 | December 9, 2022 9:30 am |

The deposition will be recorded by this method: Stenographic and Video Recording.

☐ *Production*:  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

    The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  10/21/2022

                    CLERK OF COURT

                                        OR

    _____        /s/ John Kuster
    _____        _____
      *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., and CLH HOLDINGS, INC. who issues or requests this subpoena, are: John Kuster,  787 7th Ave, New York, NY 10019, jkuster@sidley.com, (212) 839-7336.

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

   *(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

   *(2) Command to Produce Materials or Permit Inspection.*
   *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

   *(3) Quashing or Modifying a Subpoena.*
   *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

   *(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

   *(2) Claiming Privilege or Protection.*
   *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## ATTACHMENT A

## DEFINITIONS

1.      The term "2007/2008 YPF Settlement Agreement" means the settlement agreement, made as of October 8, 2007, by and among YPF, YPFI, YPFH, CLHH, Tierra, Maxus, and MUSE, as such agreement may have been amended, supplemented, or modified, including as of November 29, 2007, February 29, 2008, and March 31, 2008, whereby, among other things, the Assumption Agreement and the Contribution Agreement were terminated.

2.      The term "2007 Repsol Settlement Agreements" means the settlement agreement dated April 5, 2007, entered into between Maxus and Repsol Services Company; the settlement agreement dated April 27, 2007, entered into between Maxus and Repsol Services Company; and the settlement agreement dated July 1, 2007, entered into between Repsol E&P T&T Limited and Maxus.

3.      The term "2009 Repsol Settlement Agreement" means the settlement agreement dated July 8, 2009, entered into by and among Maxus and the Repsol Defendants.

4.      The term "Assumption Agreement" means the assumption agreement dated as of August 14, 1996, by and among Tierra (as Chemical Land Holdings, Inc.) and Maxus, as such agreement may have been amended, supplemented, or modified, whereby, among other things, Tierra assumed certain of Maxus's obligations and liabilities, including those arising from certain Environmental Claims (as defined therein) or under the indemnification provisions of the Oxy SPA.

5.      The term "Bolivian Transfer" means the transfer on or about July 1, 1996, by MIEC of its shares of Maxus Bolivia, Inc., to YPFI.

6.      The term "CLHH" means CLH Holdings, Inc. and its predecessors, successors, and assigns.

7.      The term "communication" means any oral, written, electronic or other transfer of information, ideas, opinions, or thoughts by any means or forms from the person or thing.

8.      The term "concerning" means relating to, referring to, describing, evidencing or constituting.  In this regard, a document or communication "concerning" a given subject matter means any document or communication that relates to, refers to, describes, evidences, constitutes, is incidental to, contains, pertains to, embodies, comprises, reflects, indicates, records, memorializes, evaluates, considers, reviews, reports, demonstrates, identifies, discusses, mentions, states, deals with, comments on, responds to, analyzes, or is in any way pertinent to that subject, including, without limitation, documents concerning the presentation of other documents.

9.      The term "Contribution Agreement" means the contribution agreement, dated as of August 14, 1996, by and among YPF, YPFI (as YPF International Ltd.), YPFH, CLHH, Tierra (as Chemical Land Holdings, Inc.), and Maxus, as such agreement may have been amended, supplemented, or modified, whereby YPF, YPFI, YPFH, and CLHH agreed to make certain capital contributions to Tierra related to its obligations under the Assumption Agreement.

10.     The term "Crescendo Transfer" means the transfers in December 1999 and January 2000 by Midgard Energy Company of its share in the Crescendo joint venture to BP Amoco and Apache Resources.

11.     The term "Debtors" means Maxus, Tierra, MIEC, MUSE, Gateway, and their respective predecessors, collectively.

12.     The term "Diamond Alkali Superfund Site" means the former manufacturing facility at 80-120 Lister Avenue in Newark, New Jersey, the Lower Passaic River Study Area (including the 17-mile tidal stretch of the river from Dundee Dam to Newark Bay and

tributaries), and the Newark Bay Study Area (including Newark Bay and portions of the Hackensack River, Arthur Kill and Kill van Kull).

13.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a), including, without limitation, communications and electronic or computerized data compilations.  The terms "document" and "documents" are used herein in the broadest possible sense, including, without limiting the generality of this definition, any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation, including, but not limited to, any written, typed, or other graphic material, of any kind or nature, including communications, and any other tangible thing by or on which information or data is stored or can be obtained, translated (if necessary) by You through detection devices into reasonably usable form, including, without limitation, any writing, drawing, film, graph, chart, photograph, telephone record, mechanical or electrical sound recording or transcript thereof; any retrievable data, whether in computer storage, carded, punched, taped or coded form or stored electrostatically, electromagnetically, or otherwise; and any other data compilation from which information can be obtained. Without limiting the generality of the foregoing, "document" specifically includes all communications, contracts, agreements, electronic mails, forms, correspondence, letters, telegrams, telephone messages, notices, notes, memoranda, computer files, reports, studies, analyses, working papers, summaries, statistical statements, financial statements, financial analyses, opinions, forecasts, budgets, projections, audits, press releases, brochures, pamphlets, circulars, minutes of meetings, notes and summaries of investigations, diaries, minutes, statements, worksheets, books, journals,

ledgers, maps, diagrams, drafts, newspapers, appointment books, desk calendars, inter- and intraoffice memos and communications, faxes, and telexes. Such term shall also include all contemporaneously or subsequently created non-identical duplicates or copies and all drafts, preliminary versions, or revisions of documents, whether completed or not, by whatever means made. As used in these Requests, "document" also includes every "document" that is no longer identical by virtue of any notation or modification of any kind.

14.     The term "Ecuadorian Transfer" means the transfer on or about December 31, 1997, by MIEC of its holdings in YPF Ecuador, Inc. to YPFI.

15.     The term "Financial Status" means, with respect to any Person (as defined herein), such Person's anticipated ability to meet its obligations, including such Person's solvency, whether such Person's assets exceed such Person's debts, whether such Person has adequate cash flow to pay debts as they come due, and whether such Person is adequately capitalized.

16.     The term "Gateway" means Gateway Coal Company and its predecessors, and with respect to each, its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

17.     The term "including" means including, but not limited to.

18.     The term "Indonesian Transfer" means the transfer on or about December 31, 1997, by Maxus Indonesia, Inc., of its interests in YPF Java Baratlaut B.V. and Maxus Southeast Sumatra LLC to YPFI.

19.     The term "Liquidating Trust" means the plaintiff in this action, the trust created by the Liquidating Trust Agreement.

20.     The term "Maxus" means Maxus Energy Corporation and its predecessors, and with respect to each, its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

21.     The term "MIEC" means Maxus International Energy Company and its predecessors, and with respect to each, its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

22.     The term "MIEC-YPF Transfer" means the transfer on or about July 1, 1996, by MIEC of its shares in YPFI to YPF.

23.     The term "MUSE" means Maxus (U.S.) Exploration Company and its predecessors, and with respect to each, its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

24.     The term "New Jersey Litigation" means the action captioned as *New Jersey Dep't of Environmental Protection, et al. v. Occidental Chemical Corp., et al.*, No. L9868-05 (N.J. Super. Ct.), including without limitation the allegations contained therein with respect to intentional and constructive fraudulent conveyance claims concerning the Transfers, the purported insolvency of Maxus, and alleged alter ego conduct by the YPF Defendants and/or the Repsol Defendants to strip assets away from Maxus to hinder, delay or defraud environmental creditors, as claimed by NJDEP and/or Oxy, and the appellate proceedings related thereto, including *New Jersey Dep't of Environmental Protection v. Occidental Chemical Corp.*, Nos. A-2036-17, A-2038-17 (N.J. App. Div.).

25.     The term "NJDEP" means New Jersey Department of Environmental Protection (formerly known as New Jersey Department of Environmental Protection and Energy) and its

past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

26.     The term "NRD Trustee" means one or all of, and in any capacity, the United States Department of the Interior ("DOI"), acting through the Fish and Wildlife Service; the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration ("NOAA"); or the NJDEP; and its or their past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

27.     The term "Oxy" means Occidental Chemical Corporation and its direct and indirect parents and subsidiaries and its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

28.     The term "Person(s)" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

29.     The term "Relevant State Regulators" means Ohio Environmental Protection Agency and State of Wisconsin Department of Natural Resources.

30.     The term "Repsol Defendants" means Repsol S.A., Repsol Exploración, S.A., Repsol USA Holdings, Corp., Repsol E&P USA, Inc., Repsol Offshore E&P USA, Inc., Repsol E&P T&T Limited and Repsol Services Company.

31.     The term "Tierra" means Tierra Solutions, Inc. and its predecessors (including Chemical Land Holdings, Inc.), and with respect to each, its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

32.     The term "Transfer" means any or all of the Bolivian Transfer, the Venezuelan

Transfers, the MIEC-YPF Transfer, the Ecuadorian Transfer, the Indonesian Transfer, the

Crescendo Transfer, the YPFI Transfers, the 2007/2008 YPF Settlement Agreement, the 2007

Repsol Settlement Agreements, and the 2009 Repsol Settlement Agreement.

33.     The term "Venezuelan Transfers" means the transfers in or about June and July

1996 by MIEC of its shares of Maxus Venezuela S.A. and Maxus Venezuela (C.I.) Ltd. to YPFI.

34.     The terms "You" and "Your" mean the United States Environmental Protection

Agency, and any person acting on Your behalf or under Your control, including any of Your

officers, directors, employees, agents, attorneys, representatives, or independent consultants.

35.     The term "YPF" means YPF, S.A. and its predecessors, successors, and assigns.

36.     The term "YPF Defendants" means YPF, YPFI, YPFH, and CLHH.

37.     The term "YPFH" means YPF Holdings, Inc. and its predecessors, successors,

and assigns.

38.     The term "YPFI" means YPF International, S.A. and its predecessors, successors,

and assigns.

39.     The term "YPFI Transfers" means the transfers in 2001 and 2002 by YPFI of its

assets in Bolivia, Ecuador, Indonesia, and Venezuela or its interests in entities operating in those

countries.

## **INSTRUCTIONS**

1.     Pursuant to Federal Rule of Civil Procedure 30(b)(6), made applicable in the

above-captioned proceeding pursuant to Federal Rule of Bankruptcy Procedure 7030, You are

directed to designate the Person or Persons to testify on Your behalf about information known or

reasonably available to You regarding the Topics for Testimony set forth below (the "Topic" or "Topics").

2.       You shall set forth, for each Person designated, the matters on which the Person will testify.

3.       The Person(s) so designated shall testify as to matters known or reasonably available to You.

4.       The following rules of construction shall apply to this subpoena:

(a)      The terms "any" and "all" mean "any and all" where the effect of such construction is to broaden the scope of the Topic.

(b)      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Topic all responses that might otherwise be construed to be outside the scope.

(c)      The term "including" means including, but not limited to, and is intended to provide examples of information that is subject to examination under the Topics.  Such examples are not intended to be exhaustive of the information sought and shall not, in any way, be read to limit the scope of the Topic.

(d)      The singular includes the plural and vice versa.

(e)      The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense as necessary to bring within the scope of these Topics any information that might otherwise be construed to be outside their scope.

8

5.     Unless otherwise indicated, the time frame for knowledge shall be from January 1, 1995 through June 17, 2016.

**TOPICS FOR TESTIMONY**

1.     Your knowledge of the Transfers.

2.     Your knowledge of Maxus's and/or Tierra's Financial Status.

3.     Your knowledge of any alleged strategy, plan, or conspiracy involving any of the Debtors, the YPF Defendants, and/or the Repsol Defendants to prevent Debtors from being able to satisfy their obligations (including with regard to the Diamond Alkali Superfund Site) by removing Maxus's or Tierra's assets, taking other intentional actions to the detriment of Maxus's or Tierra's Financial Status, or commencing bankruptcy cases concerning Debtors.

4.     Your communications with any NRD Trustees, the United States Department of Justice, NJDEP, or other Relevant State Regulators regarding Maxus, Tierra, or the New Jersey Litigation.

5.     Your knowledge of agreements between You and NJDEP (or among You, NJDEP, and one or more other Persons) in which the parties thereto agreed to provide updates to other parties thereto regarding any litigation involving the Diamond Alkali Superfund Site.

6.     Your knowledge of agreements, understandings, pledges of cooperation or any other similar arrangements between You and any other agency or entity concerning litigation or claims asserted against Maxus, the YPF Defendants and/or the Repsol Defendants.

7.     Your knowledge of NJDEP's and Oxy's allegations in the New Jersey Litigation.

8.     Your knowledge of any publicly filed materials by the Debtors, the Repsol Defendants and/or the YPF Defendants with the Securities and Exchange Commission describing any of the Transfers and/or the Financial Status of Maxus and/or Tierra.

9

9.      Your knowledge of potential claims against the YPF Defendants and/or the Repsol Defendants in the December 7, 2005 Star-Ledger article titled "Passaic cleanup plan stirs the waters."

10.      Your statements in the December 7, 2005 Star-Ledger article titled "Passaic cleanup plan stirs the waters."

11.      Your communications with the Liquidating Trust and its counsel and other advisors regarding the Transfers, Maxus's and/or Tierra's Financial Status, other issues (other than facts relating solely to the contamination and remediation of the Diamond Alkali Superfund Site) in the New Jersey Litigation and the above-captioned action, or Your ability to timely avoid one or more of the Transfers under any applicable law.

12.      Your participation in any and all meetings of the Trustee Council pursuant to the 2003 Memorandum of Agreement between NJDEP, NOAA, and DOI, and any proceedings or documents exchanged pursuant to such Agreement.

13.      Identification of any and all of Your employees or representatives, including any attorneys in the United States Department of Justice, charged with handling or monitoring matters related to Maxus and/or Tierra.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

In re MAXUS ENERGY CORPORATION
        Debtor.

Case No. 16-11501 (CTG)


MAXUS LIQUIDATING TRUST,
                    Plaintiff,
            v.

YPF S.A., et al.,
                    Defendants.

Chapter 11



Adv. Proc. No.  18-50489 (CTG)


## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:    U.S. Environmental Protection Agency
       1200 Pennsylvania Avenue, N.W.
       Washington, D.C. 20460


☒ *Production*:  **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Sidley Austin LLP, 1501 K Street, N.W., Washington, D.C. 20005 | November 14, 2022 10:00am |

☐ *Inspection of Premises*:  **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |


        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/21/2022

                    CLERK OF COURT

                                OR

                                            /s/ John Kuster
        _____        _____
        *Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., and CLH HOLDINGS, INC., who issues or requests this subpoena, are: John Kuster, 787 7th Ave, New York, NY 10019, jkuster@sidley.com, (212) 839-7336.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## ATTACHMENT A

## DEFINITIONS

1.      The term "2007/2008 YPF Settlement Agreement" means the settlement

agreement, made as of October 8, 2007, by and among YPF, YPFI, YPFH, CLHH, Tierra,

Maxus, and MUSE, as such agreement may have been amended, supplemented, or modified,

including as of November 29, 2007, February 29, 2008, and March 31, 2008, whereby, among

other things, the Assumption Agreement and the Contribution Agreement were terminated.

2.      The term "2007 Repsol Settlement Agreements" means the settlement agreement

dated April 5, 2007, entered into between Maxus and Repsol Services Company; the settlement

agreement dated April 27, 2007, entered into between Maxus and Repsol Services Company; and

the settlement agreement dated July 1, 2007, entered into between Repsol E&P T&T Limited and

Maxus.

3.      The term "2009 Repsol Settlement Agreement" means the settlement agreement

dated July 8, 2009, entered into by and among Maxus and the Repsol Defendants.

4.      The term "Assumption Agreement" means the assumption agreement dated as of

August 14, 1996, by and among Tierra (as Chemical Land Holdings, Inc.) and Maxus, as such

agreement may have been amended, supplemented, or modified, whereby, among other things,

Tierra assumed certain of Maxus's obligations and liabilities, including those arising from

certain Environmental Claims (as defined therein) or under the indemnification provisions of the

Oxy SPA.

5.      The term "Bolivian Transfer" means the transfer on or about July 1, 1996, by

MIEC of its shares of Maxus Bolivia, Inc., to YPFI.

6.      The term "CLHH" means CLH Holdings, Inc. and its predecessors, successors,

and assigns.

1

7.      The term "communication" means any oral, written, electronic or other transfer of information, ideas, opinions, or thoughts by any means or forms from the person or thing.

8.      The term "concerning" means relating to, referring to, describing, evidencing or constituting.  In this regard, a document or communication "concerning" a given subject matter means any document or communication that relates to, refers to, describes, evidences, constitutes, is incidental to, contains, pertains to, embodies, comprises, reflects, indicates, records, memorializes, evaluates, considers, reviews, reports, demonstrates, identifies, discusses, mentions, states, deals with, comments on, responds to, analyzes, or is in any way pertinent to that subject, including, without limitation, documents concerning the presentation of other documents.

9.      The term "Contribution Agreement" means the contribution agreement, dated as of August 14, 1996, by and among YPF, YPFI (as YPF International Ltd.), YPFH, CLHH, Tierra (as Chemical Land Holdings, Inc.), and Maxus, as such agreement may have been amended, supplemented, or modified, whereby YPF, YPFI, YPFH, and CLHH agreed to make certain capital contributions to Tierra related to its obligations under the Assumption Agreement.

10.     The term "Crescendo Transfer" means the transfers in December 1999 and January 2000 by Midgard Energy Company of its share in the Crescendo joint venture to BP Amoco and Apache Resources.

11.     The term "Debtors" means Maxus, Tierra, MIEC, MUSE, Gateway, and their respective predecessors, collectively.

12.     The term "Diamond Alkali Superfund Site" means the former manufacturing facility at 80-120 Lister Avenue in Newark, New Jersey, the Lower Passaic River Study Area (including the 17-mile tidal stretch of the river from Dundee Dam to Newark Bay and

tributaries), and the Newark Bay Study Area (including Newark Bay and portions of the Hackensack River, Arthur Kill and Kill van Kull).

13.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a), including, without limitation, communications and electronic or computerized data compilations.  The terms "document" and "documents" are used herein in the broadest possible sense, including, without limiting the generality of this definition, any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation, including, but not limited to, any written, typed, or other graphic material, of any kind or nature, including communications, and any other tangible thing by or on which information or data is stored or can be obtained, translated (if necessary) by You through detection devices into reasonably usable form, including, without limitation, any writing, drawing, film, graph, chart, photograph, telephone record, mechanical or electrical sound recording or transcript thereof; any retrievable data, whether in computer storage, carded, punched, taped or coded form or stored electrostatically, electromagnetically, or otherwise; and any other data compilation from which information can be obtained. Without limiting the generality of the foregoing, "document" specifically includes all communications, contracts, agreements, electronic mails, forms, correspondence, letters, telegrams, telephone messages, notices, notes, memoranda, computer files, reports, studies, analyses, working papers, summaries, statistical statements, financial statements, financial analyses, opinions, forecasts, budgets, projections, audits, press releases, brochures, pamphlets, circulars, minutes of meetings, notes and summaries of investigations, diaries, minutes, statements, worksheets, books, journals,

ledgers, maps, diagrams, drafts, newspapers, appointment books, desk calendars, inter- and intraoffice memos and communications, faxes, and telexes. Such term shall also include all contemporaneously or subsequently created non-identical duplicates or copies and all drafts, preliminary versions, or revisions of documents, whether completed or not, by whatever means made. As used in these Requests, "document" also includes every "document" that is no longer identical by virtue of any notation or modification of any kind.

14.     The term "Ecuadorian Transfer" means the transfer on or about December 31, 1997, by MIEC of its holdings in YPF Ecuador, Inc. to YPFI.

15.     The term "Financial Status" means, with respect to any Person (as defined herein), such Person's anticipated ability to meet its obligations, including such Person's solvency, whether such Person's assets exceed such Person's debts, whether such Person has adequate cash flow to pay debts as they come due, and whether such Person is adequately capitalized.

16.     The term "Gateway" means Gateway Coal Company and its predecessors, and with respect to each, its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

17.     The term "including" means including, but not limited to.

18.     The term "Indonesian Transfer" means the transfer on or about December 31, 1997, by Maxus Indonesia, Inc., of its interests in YPF Java Baratlaut B.V. and Maxus Southeast Sumatra LLC to YPFI.

19.     The term "Liquidating Trust" means the plaintiff in this action, the trust created by the Liquidating Trust Agreement.

20.     The term "Maxus" means Maxus Energy Corporation and its predecessors, and with respect to each, its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

21.     The term "MIEC" means Maxus International Energy Company and its predecessors, and with respect to each, its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

22.     The term "MIEC-YPF Transfer" means the transfer on or about July 1, 1996, by MIEC of its shares in YPFI to YPF.

23.     The term "MUSE" means Maxus (U.S.) Exploration Company and its predecessors, and with respect to each, its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

24.     The term "New Jersey Litigation" means the action captioned as *New Jersey Dep't of Environmental Protection, et al. v. Occidental Chemical Corp., et al.*, No. L9868-05 (N.J. Super. Ct.), including without limitation the allegations contained therein with respect to intentional and constructive fraudulent conveyance claims concerning the Transfers, the purported insolvency of Maxus, and alleged alter ego conduct by the YPF Defendants and/or the Repsol Defendants to strip assets away from Maxus to hinder, delay or defraud environmental creditors, as claimed by NJDEP and/or Oxy, and the appellate proceedings related thereto, including *New Jersey Dep't of Environmental Protection v. Occidental Chemical Corp.*, Nos. A-2036-17, A-2038-17 (N.J. App. Div.).

25.     The term "NJDEP" means New Jersey Department of Environmental Protection (formerly known as New Jersey Department of Environmental Protection and Energy) and its

past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

26.     The term "NRD Trustee" means one or all of, and in any capacity, the United States Department of the Interior ("DOI"), acting through the Fish and Wildlife Service; the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration ("NOAA"); or the NJDEP; and its or their past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

27.     The term "Oxy" means Occidental Chemical Corporation and its direct and indirect parents and subsidiaries and its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

28.     The term "Person(s)" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

29.     The term "Relevant State Regulators" means Ohio Environmental Protection Agency and State of Wisconsin Department of Natural Resources.

30.     The term "Repsol Defendants" means Repsol S.A., Repsol Exploración, S.A., Repsol USA Holdings, Corp., Repsol E&P USA, Inc., Repsol Offshore E&P USA, Inc., Repsol E&P T&T Limited and Repsol Services Company.

31.     The term "Tierra" means Tierra Solutions, Inc. and its predecessors (including Chemical Land Holdings, Inc.), and with respect to each, its past and present employees, officers, directors, agents, attorneys, representatives, independent consultants, predecessors, successors, and assigns.

32.     The term "Transfer" means any or all of the Bolivian Transfer, the Venezuelan Transfers, the MIEC-YPF Transfer, the Ecuadorian Transfer, the Indonesian Transfer, the Crescendo Transfer, the YPFI Transfers, the 2007/2008 YPF Settlement Agreement, the 2007 Repsol Settlement Agreements, and the 2009 Repsol Settlement Agreement.

33.     The term "Venezuelan Transfers" means the transfers in or about June and July 1996 by MIEC of its shares of Maxus Venezuela S.A. and Maxus Venezuela (C.I.) Ltd. to YPFI.

34.     The terms "You" and "Your" mean the United States Environmental Protection Agency, and any person acting on Your behalf or under Your control, including any of Your officers, directors, employees, agents, attorneys, representatives, or independent consultants.

35.     The term "YPF" means YPF, S.A. and its predecessors, successors, and assigns.

36.     The term "YPF Defendants" means YPF, YPFI, YPFH, and CLHH.

37.     The term "YPFH" means YPF Holdings, Inc. and its predecessors, successors, and assigns.

38.     The term "YPFI" means YPF International, S.A. and its predecessors, successors, and assigns.

39.     The term "YPFI Transfers" means the transfers in 2001 and 2002 by YPFI of its assets in Bolivia, Ecuador, Indonesia, and Venezuela or its interests in entities operating in those countries.

## **INSTRUCTIONS**

1.     In responding to the Requests, You shall comply to the broadest extent possible with Your obligations under Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Rules for the United States Bankruptcy Court for the District of Delaware, and any other applicable laws, rules, or regulations.

7

2.      The Requests require You to produce all documents called for herein that were created or originated by You, or that came into Your possession, custody, or control (or the possession, custody, or control of Your employees, agents, accountants, auditors, attorneys, or other professional personnel acting on Your behalf or under Your direction and/or control), from all files or other sources that contain responsive documents, wherever located and whether active, in storage, or otherwise.

3.      In order to bring within the scope of these Requests all information that might otherwise be construed to be outside of their scope, the following rules of construction apply:

    a.   the singular shall include the plural and vice versa;

    b.   the masculine, feminine or neuter pronoun shall not exclude other genders;

    c.   the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all responses that might otherwise be construed to be outside of its scope;

    d.   the terms "all," "any" and "each" shall each be construed as encompassing any and all;

    e.   the word "including" shall be read to mean including without limitation;

    f.   the present tense shall be construed to include the past tense and vice versa; and

    g.   references to employees, officers, directors or agents shall include both current and former employees, officers, directors and agents.

4.      These Requests are continuing in nature and, to the extent that Your responses may be enlarged, diminished or otherwise modified by information acquired subsequent to the production of documents and Your initial responses hereto, You are required, to the extent set forth in Rule 26(e) of the Federal Rules of Civil Procedure, as made applicable by Rule 7026 of

8

the Federal Rules of Bankruptcy Procedure, to produce promptly supplemental documents and responses in writing reflecting such changes.

5.      Where only a portion of a document or Communication relates or refers to the subject indicated, the entire document or Communication is to be produced nevertheless, along with all attachments, appendices and exhibits.

6.      "All communications" is meant to include all communications in Your possession, custody or control, whether the communications were drafted, sent, or received by You or by any other Person or entity.

7.      "All documents" is meant to include all documents in Your possession, custody or control, whether the documents were created or compiled by You or by any other Person or entity for any reason.

8.      All documents and communications shall be produced as they are kept in the usual course of business with any identifying labels, file markings, or similar identifying features, and in their original folder, binder, or other cover or container.  The name of the file from which it was produced, the identity of the person from whose file it was produced, and the identity of the present custodian of that file shall each be set forth.

9.      Where anything has been deleted or redacted from a document or communication produced in response to the Requests, You shall state with specificity: (i) the nature of the material deleted and redacted; and (ii) the reason for the deletion or redaction.

10.     Unless an agreement is otherwise reached, all ESI and "E-discovery" shall be produced in accordance with Rule 7026-3 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

11.    In the event that any document within the scope of these Requests is withheld from production upon a claim of privilege, You are requested to serve upon the YPF Defendants a written identification of each document withheld from production setting forth as to each such document:

      a.   the nature of the privilege claimed;

      b.   the date of the document;

      c.   the type of document (e.g., letter, chart, memorandum, etc.);

      d.   the author(s) of the document and its signatory(ies);

      e.   the addressee(s) of the document;

      f.   any indicated copyee(s) of the document;

      g.   all other Persons who received a copy of the document; and

      h.   a description of the subject matter of the document.

12.    Unless otherwise specifically indicated, documents to be produced pursuant to these Requests shall include all documents prepared, existing, used, sent, received, reviewed or read, or otherwise in Your possession, custody or control.

13.    If, in answering any of the following Requests, You claim any ambiguity in interpreting the Request or definition or instruction applicable thereto, such claim shall not be utilized by You as a basis for refusing to respond, but You shall set forth as part of Your response the language deemed to be ambiguous and the interpretation chosen or used in responding to the Request.

14.    If any document identified in Your answer to any Request is subject to destruction under any document retention or document destruction program, the document(s) should be

exempted from any scheduled destruction until the conclusion of this proceeding or unless otherwise permitted by the Court.

15.     Unless otherwise specified, the relevant time period is from January 1, 1995 through June 17, 2016.

## <u>REQUESTS</u>

1.     All documents concerning each of the Transfers.

2.     All documents concerning Maxus's and/or Tierra's Financial Status.

3.     All documents concerning the effect of each of the Transfers on Maxus's and/or Tierra's Financial Status.

4.     All documents concerning any alleged strategy, plan or conspiracy involving any of the Debtors, the YPF Defendants, and/or the Repsol Defendants to prevent Debtors from being able to satisfy their obligations (including with regard to the Diamond Alkali Superfund Site) by removing Maxus's or Tierra's assets, taking other intentional actions to the detriment of Maxus's or Tierra's Financial Status, or commencing bankruptcy cases concerning Debtors.

5.     All communications between You and any NRD Trustee, the United States Department of Justice, NJDEP, or other Relevant State Regulators regarding Maxus, Tierra or the New Jersey Litigation.

6.     All documents reflecting any agreement between You and NJDEP (or among You, NJDEP, and one or more other Persons) in which the parties thereto agreed to provide updates to other parties thereto regarding any litigation involving the Diamond Alkali Superfund Site.

7.      All agreements, understandings, pledges of cooperation or any other similar arrangements between You and any other agency or entity concerning litigation or claims asserted against Maxus, the YPF Defendants and/or the Repsol Defendants.

8.      All documents concerning allegations by NJDEP and/or Oxy in the New Jersey Litigation regarding alleged alter ego conduct by the YPF Defendants and/or the Repsol Defendants.

9.      All documents concerning allegations by NJDEP and/or Oxy in the New Jersey Litigation regarding alleged intentional or constructive fraudulent transfers or conveyances made to or for the benefit of the YPF Defendants and/or the Repsol Defendants.

10.     All documents concerning allegations by NJDEP and/or Oxy in the New Jersey Litigation regarding an alleged strategy, plan or conspiracy among the Debtors, the YPF Defendants and/or the Repsol Defendants.

11.     All documents concerning any publicly filed materials by the Debtors, the Repsol Defendants and/or the YPF Defendants with the Securities and Exchange Commission describing any of the Transfers and/or the Financial Status of Maxus and/or Tierra.

12.     All documents You received that were filed, produced, issued, or entered by any parties, non-parties, or judicial officers in the New Jersey Litigation.

13.     All documents regarding any potential claims against the YPF Defendants and/or the Repsol Defendants in the December 7, 2005 Star-Ledger article titled "Passaic cleanup plan stirs the waters."

14.     All documents regarding Your statements in the December 7, 2005 Star-Ledger article titled "Passaic cleanup plan stirs the waters."

15.    All documents concerning the letter sent by Carol E. Dinkins of Vinson & Elkins to Mark Barash of DOI, dated January 15, 2008, regarding the Diamond Alkali Superfund Site, including but not limited to, any documents exchanged with any other agency or entity that participated in meetings of the Trustee Council in accordance with the 2003 Memorandum of Agreement among the NJDEP, NOAA, and DOI.

16.    All documents to or from the Liquidating Trust or its counsel or other advisors regarding Your knowledge of the Transfers, Maxus's and/or Tierra's Financial Status, other issues (other than facts relating solely to the contamination and remediation of the Diamond Alkali Superfund Site) in the New Jersey Litigation and the above-captioned action, or Your ability to timely avoid one or more of the Transfers under any applicable law.