IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 16-11501 (CTG)<br>(Jointly Administered) |
| MAXUS LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACION, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO.,<br><br>Defendants. | Adv. Proc. No. 18-50489 (CTG)<br><br><br><br>**Re: D.I. 2568, Adv. D.I. 883** |

**ORDER GRANTING PLAINTIFF MAXUS LIQUIDATING TRUST'S
MOTION TO APPROVE SETTLEMENT AND FOR PLAN CLARIFICATION**

This matter coming before the Court on the Maxus Liquidating Trust's *Motion of Plaintiff Maxus Liquidating Trust to Approve Settlement and for Plan Clarification* (the "Motion"),[1] seeking approval of the *Settlement and Release*, dated March 31, 2023 (the "Settlement and Release"), attached hereto as **Exhibit 1**, and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*,

---

[1] All capitalized terms not defined herein shall have the same meaning ascribed to them in the Settlement and Release.

1

dated as of February 29, 2012; this Court having expressly retained jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases in the Plan [D.I. 1460-1] and Confirmation Order [D.I. 1460], including jurisdiction (i) "to hear and determine any Causes of Action preserved under the Plan (including the YPF Causes of Action, the Repsol Causes of Action, and the Preserved Contribution Claims)"; and (ii) "to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court"; *see* Plan §§ XIV(p), (r); *see also* Confirmation Order ¶ 67; and consideration of the Motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion—including notice that was provided to all creditors of the Debtors, all government entities and all potentially responsible parties ("PRPs") at sites where the Debtors had operations, and publication notice in a newspaper with nationwide circulation—being adequate, timely, sufficient, and appropriate under the particular circumstances and no other or further notice need be given; and upon the record of any hearing being held to consider the relief requested in the Motion; and upon all proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, including that the Settlement and Release is reasonable; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor; it is hereby:

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED and any objections or reservations of rights filed in respect of the Motion are overruled, with prejudice.

2. The Settlement and Release attached hereto as **Exhibit 1** is APPROVED.

3. For purposes of this Order, "Causes of Action," "Claim," "Trust Contribution Claims," and "Trust Derivative Claims" shall be defined as follows:

> (a) "Causes of Action" has the meaning set forth in the Plan and includes any and all Claims, actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtors and/or their bankruptcy estates), including, without limitation, any claims, causes of action, objections, rights, remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, sections 502, 510, 542 through 545 and 547 through 553 or 558 thereof, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, and whether held in a personal or representative capacity, that are or may be pending as of the date of the Plan or instituted thereafter against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the date of the Plan.
>
> (b) "Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.
>
> (c) "Trust Contribution Claims" means Causes of Action held by the Debtors and/or the Trust against any non-Debtor for contribution or cost recovery under any Environmental Law for actual expenses paid by or on behalf of the Debtors prior to the Petition Date.
>
> (d) "Trust Derivative Claims" means any and all Causes of Action that were or could have been asserted by the Debtors and/or the Trust against any of the YPF Released Parties or the Repsol

Released Parties, seeking relief or recovery arising from harm to any Debtor or any Debtor's estate based on, inter alia, any legal theory (i) that such Released Party was the corporate alter ego of any Debtor, (ii) that the corporate veil between any Debtor and such Released Party should be pierced, (iii) that such Released Party is liable under any theory of successor liability as a successor to any Debtor, (iv) that such Released Party wrongfully took or otherwise appropriated assets of any Debtor, or (v) that such Released Party otherwise interfered with any Debtor's ability to meet its legal obligations. For the avoidance of doubt, Trust Derivative Claims include (x) the Causes of Action that have been brought by the Trust in the Adversary Proceeding and (y) all Causes of Action that are similar or analogous to the Causes of Action set forth in (i)-(v) above and that arise from the same or substantially similar facts and allegations.

4. Consistent with the terms of the Plan, upon the Effective Date of the Settlement and Release, as set forth in the terms therein, the Trust shall forever release and discharge and shall be deemed to have released and discharged each of the YPF Released Parties and the Repsol Released Parties and their respective assets and properties of and from all of the Repsol Causes of Action, YPF Causes of Action, Trust Derivative Claims, and Trust Contribution Claims, and any and all manner of action or actions, cause or causes of action, counterclaims, cross-claims, damages, demands, in law or equity, suits, debts, liens, contracts, agreements, promises, liabilities, Claims (however denominated) including, but not limited to, Environmental Costs, Claims and Liabilities and all other Claims arising under or in connection with constitution, statute, regulation, ordinance, contract, common law, or otherwise, direct, derivative or indirect, whether known or unknown, foreseen or unforeseen, currently existing or arising in the future, based in whole or in any part on acts or omissions occurring on or before the Effective Date, suspected or unsuspected, fixed or contingent, concealed or hidden, latent or patent, asserted or unasserted, for any injury, damage or loss of any kind whatsoever, including, but not limited to, compensatory damages, consequential damages, treble damages, incidental damages, statutory damages, liquidated damages, exemplary damages, punitive damages, sanctions, costs, expenses, interest, and attorneys' fees, including, but

not limited to, any and all Claims that may be asserted under Chapter 5 of the Bankruptcy Code and Claims arising under similar statutes, rules or theories, any and all Claims under or related to veil-piercing or alter ego theories of liability (including without limitation to the fullest extent of any such liability alleged in the First Cause of Action in the Trust's Complaint by which the Trust seeks to impose veil-piercing or alter ego liability on Defendants for all liabilities and obligations of the Debtors, including, but not limited to, all Environmental Costs, Claims and Liabilities associated with the Diamond Alkali Superfund Site, including, but not limited to, those alleged in the United States Proofs of Claim), any and all Claims under or related to fraudulent conveyance theories, any and all Claims under or related to civil conspiracy theories, any and all Claims under or related to unjust enrichment theories, any and all Claims under or related to successor liability theories, a theory of debt recharacterization, or equitable subordination liability, and any and all Claims which any of the Debtors, their estates, and the Trust ever had or now have or may have against the YPF Released Parties and/or Repsol Released Parties arising from or related in any way to the Debtors, their estates, and the Trust, the Liquidating Trust Assets, or the Diamond Alkali Superfund Site, including those that any of the Debtors or their estates would have been legally entitled to assert against any of the YPF Released Parties and Repsol Released Parties in their own right (whether individually or collectively).

5. Upon the Effective Date of the Settlement and Release, all Proofs of Claim that any YPF Released Party filed in the Chapter 11 Cases are disallowed. On or after the Effective Date of the Settlement and Release, the Claims and Noticing Agent is authorized to amend the claims register for the Chapter 11 Cases to comport with the terms of this Order without the need for any further action of the Parties or the Court.

6. The escrowed amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000) that has been deposited to a separate and dedicated interest bearing account pursuant to the terms of the *Order Approving Stipulation of Neptune Sale Proceeds and YPF Claims*, dated March 1, 2018 (Case No. 16-11501, D.I. 2001), plus any interest that has accrued thereon, may be disbursed to and used by the Trust on or after the Effective Date of the Settlement and Release.

7. The Plan, including Articles IV.H and XI, enjoins and precludes all parties from prosecuting any and all Trust Derivative Claims and Trust Contribution Claims which were or could have been asserted by the Trust or other parties (but which became Trust Derivative Claims on the Petition Date) against any of the YPF Released Parties or the Repsol Released Parties.

8. Pursuant to this Order, the YPF Released Parties and Repsol Released Parties have standing to assert the Plan Injunction against any party that asserts any Trust Derivative Claims or Trust Contribution Claims prosecuted in violation thereof.

9. Pursuant to this Order, the YPF Released Parties and Repsol Released Parties that are not Parties to the Settlement and Release have standing to enforce the covenant not to sue contained in Section 5.8 of the Settlement and Release to the extent that any YPF Released Party, Repsol Released Party or Trust Released Party, as applicable, breaches its covenant not to sue.

10. Pursuant to this Order, each PRP has standing to enforce the covenants not to sue contained in Sections 5.3, 5.5, and 7.3 of the Settlement and Release to the extent that any YPF Released Party, the Repsol Released Party or Trust Released Party, as applicable, breaches its covenant not to sue such PRP thereunder.

11. Pursuant to this Order, the clarifications regarding Sections 3.8, 5.3, and 5.5 of the Settlement and Release included on pages 10-12 of the May 3, 2023 hearing transcript are so ordered.

12. To the extent that the Repsol Defendants or the YPF Defendants, but not both, elect to terminate the Settlement and Release prior to the Effective Date thereof, the Trust and the remaining Settling Defendants are authorized to consummate the settlement embodied in the Settlement and Release, Paragraph 4 hereof shall apply only to the remaining Settling Defendants and their Related Parties, and the provisions of the Settlement and Release addressing such a situation shall be effective.

13. Any decision by the Mediator pursuant to the procedures in Section 9.3 of the Settlement and Release shall be final, binding on all Parties to the Settlement and Release, not subject to challenge or review on any basis, and enforceable by this Court. In the event of any alleged breach of the Mediator's decision, the non-breaching party or parties may file a letter, not to exceed three (3) pages, requesting that the Court enforce the decision and providing the basis for that request. Any response(s) or objection(s) shall be filed no later than forty-eight (48) hours after the application is filed and shall be in the form of a letter not to exceed three (3) pages each. Any reply shall be filed no later than twenty-four (24) hours after the response(s) and/or objection(s) are filed and shall be in the form of a letter not to exceed two (2) pages.

14. The Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to interpretation and implementation of the Plan and the Settlement and Release, including the OCC Agreement and Government Agreement, and all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: May 8th, 2023
Wilmington, Delaware

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE